No. 23-16164

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION,

*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi,

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Hawaiʻi
No. 1:23-cv-00265-LEK-WRP, Hon. Leslie E. Kobayashi

---

## EXCERPTS OF RECORD (VOLUME 4 OF 6)

---

ANNE E. LOPEZ
　*Attorney General of the State of Hawaiʻi*
KALIKOʻONĀLANI D. FERNANDES
　*Solicitor General*
NICHOLAS M. MCLEAN
　*First Deputy Solicitor General*
STATE OF HAWAIʻI
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

NEAL KUMAR KATYAL
DANA A. RAPHAEL
　*Special Deputy Attorneys General*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

MARY B. MCCORD
RUPA BHATTACHARYYA
SHELBY B. CALAMBOKIDIS
   *Special Deputy Attorneys General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
(202) 661-6607
mbm7@georgetown.edu

BEN GIFFORD
   *Special Deputy Attorney General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
(202) 662-9835
bg720@georgetown.edu

*Attorneys for Defendant Anne E. Lopez, in her official capacity as
Attorney General of the State of Hawaiʻi*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION,<br><br>Plaintiffs,<br><br>v.<br><br>ANNE E. LOPEZ, in her official capacity as Attorney General of the State of Hawaiʻi; MAUI COUNTY,<br><br>Defendants. | Civil No. 1:23-cv-00265-LEK-WRP |

## <u>DECLARATION OF PATRICK MCCALL</u>

I, Patrick McCall, declare under penalty of perjury that the following is true and correct:

1.     I am the Director of the Department of Parks and Recreation for the County of Maui (Department). I have personal knowledge of and am competent to make this Declaration. I note that some of the materials discussed in this Declaration reflects information previously prepared by Department staff and/or available on our Department website.

2.     The mission of the Department is to provide safe, satisfying, and cost-effective recreational opportunities for the residents of and visitors to Maui County.

1

Our goal is to provide high-quality parks, recreational facilities, and recreation programming opportunities to the youth, persons with disabilities, senior citizens, and adults of Maui County, through collaborative partnerships and community interaction.

3.      The County of Maui operates over 130 park and recreation areas on the three islands of Maui, Lānaʻi, and Molokaʻi.

4.      Many of our parks are very popular with children and families.  Many of our County parks include playgrounds.  Playground facilities are used by children, including young children, and are popular with local families and visitors as well.  In recent years, the Department has made significant investments in playground facilities.  These facilities are a crucial resource for children and facilitate healthy physical activity and socialization.

5.      Many of our park facilities are regularly used by families and children.  In fact, 22 schools operated by the State Department of Education ("DOE") are located immediately adjacent to, or within one block of, one of our parks.   Most of those parks have playgrounds.  The DOE, as well as private schools, regularly use facilities operated by the Department, including for field trips.  Additionally, a number of our parks include recreation facilities that are regularly used by children and youth.

2

6.     For example, Napili Park has numerous recreational activities, including a Little League Field, a playground, picnic areas, pickleball courts, tennis courts, and basketball courts.  *See*

https://www.mauicounty.gov/DocumentCenter/View/4725/Visio422NapiliPark?bidId=; https://www.mauicounty.gov/Facilities/Facility/Details/139.   These facilities are regularly used by children and youths.

7.     In addition, the Lahaina Recreation Center borders the Boys & Girls Club of Maui – Lahaina.  *See*

https://www.mauicounty.gov/Facilities/Facility/Details/208.  The Lahaina Recreation Center is utilized by a number of local sports teams and includes a playground, facilities for little league, softball, baseball, soccer, football, basketball, and volleyball.  *Id.*  It also includes a Youth Center.

https://www.mauicounty.gov/DocumentCenter/View/5078/Lahaina-Recreation-Center-Site-Map?bidId=.  It is located just down the street from the Kamaaina Kids – Lahaina Preschool (https://www.kamaainakids.com/locations/lahaina-preschool). *See id.* (indicating that "[p]reschool classes take field trips to the pool and park weekly").  The Lahaina Recreation Center is also located close to the King Kamehameha III Elementary School.  (https://www.kkiii.org/).

8.     To take another important example, Keōpūolani Regional Park (https://www.mauicounty.gov/DocumentCenter/View/4754/Visio134EKeopuolani

RgPark?bidId=) includes numerous facilities for children and families.  *See*

https://www.mauicounty.gov/Facilities/Facility/Details/Keopuolani-Regional-Park-400.  The park is centrally located in Central Maui (Kahului) and is adjacent to the world-renowned Maui Arts and Cultural Center.

9.     Keōpūolani Regional Park is also adjacent to the Central Maui Building of the Boys & Girls Club of America[1] and the Maui YMCA Complex. The War Memorial Regional Complex, which is part of Keōpūolani Regional Park, has hosted the Maui County Fair.  https://mauifair.com/.

10.     Keōpūolani Regional Park includes a football stadium,

https://www.mauicounty.gov/DocumentCenter/View/4750/Visio134A1WarStencil?bidId=, Little League fields,

https://www.mauicounty.gov/DocumentCenter/View/4751/Visio134BBallfields?bidId=, and other recreational facilities,

https://www.mauicounty.gov/DocumentCenter/View/4756/Visio134X2RegionalOverview?bidId=.

---

[1] https://bgcmaui.org/s/.  According to the Boys and Girls Club website, "Boys & Girls Clubs of Maui is a second home for Maui's keiki. During those critical hours when school is out and youth are often left unsupervised, BGCM Clubhouses provide a safe and positive environment where youth can be themselves and participate in high quality programs. We are more than a daycare or study hall; Clubs are a place of 100% respect, where kids come first and great futures start." *Id.*

**4-ER-0684**

11.     To take another example, Maui Lani Park is located right next to Pōmaikaʻi Elementary School, which is home to approximately 550 students in grades K-5 (https://pomaikai.k12.hi.us/).

(https://www.mauicounty.gov/Facilities/Facility/Details/Maui-Lani-Regional-Park-413

12.     Other County Parks are located next to other types of school facilities. For example, Wailuku Elementary School Park is located right next to Wailuku Elementary School.  *See*

https://www.mauicounty.gov/facilities/Facility/Details/185;

https://www.mauicounty.gov/DocumentCenter/View/4810/Visio131WailukuElementary?bidId=.

13.     Keōpūolani Regional Park borders the University of Hawaii Maui College, https://maui.hawaii.edu/, a public college and one of the branches of the University of Hawaii System.

14.     Many other youth-focused programs use the Park system.  For example, H.A. Baldwin Park (https://www.mauicounty.gov/Facilities/Facility/Details/165) hosts the Paʻia Youth & Cultural Center (PYCC), which provides social, educational, cultural, vocational, and recreational experiences for youth aged 9-18 years old for Paʻia and surrounding communities.

5

15.     The County Parks System also hosts numerous classes for community members.  *See* https://www.mauicounty.gov/257/Community-Classes

16.     The "Play and Learn Sessions" (PALS) Program is administered by the County Parks Department.  PALS provides quality cultural and recreational programming for children ages 5 to 12 during the summer and intersession periods for all schools.  The program serves approximately 2,805 children in Summer and Winter PALS sessions.  *See*

https://www.mauicounty.gov/DocumentCenter/View/99167/060_12_Parks-and-Recreation.

17.     The mission of PALS is to provide a safe, nurturing, and quality recreation program for the children of Maui County that addresses their physical, social, cultural, and educational needs during summer and intersession breaks.

18.     Additional details on the PALS Program are available at the following websites:

> https://www.mauicounty.gov/589/PALS-Program;
> https://www.mauicounty.gov/DocumentCenter/View/139258/ABOUT-PALS-for-Parents;
> https://www.mauicounty.gov/DocumentCenter/View/139261/A-Day-In-the-Life-of-PALS-for-Parents;
> https://www.mauicounty.gov/DocumentCenter/View/139271/PALS-EVENTS-AND-PROGRAMS;

https://www.mauicounty.gov/DocumentCenter/View/139259/THE-PALS-EXPERIENCE.

19.    Many of our park facilities are frequented by persons with disabilities and are ADA accessible.

**4-ER-0687**

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct to the best of my knowledge, information, and
belief. 28 U.S.C. 1746.

Executed on July 13, 2023 at Wailuku, Maui.

8

**4-ER-0688**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION,<br><br>  Plaintiffs,<br><br>  vs.<br><br>ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII,<br><br>  Defendant. | CIVIL NO. 23-CV-00265 LEK-WRP<br><br>DECLARATION OF LAURA H. THIELEN |

DECLARATION OF LAURA H. THIELEN

I, LAURA H. THIELEN, hereby state and declare as follows:

1.      I am the Director of the Department of Parks and Recreation ("DPR"),

City & County of Honolulu.

2.      I have personal knowledge of, and am competent to make this

Declaration, concerning the matters set forth below.  I note, however, that the

specific statistical information provided herein regarding the numbers of

participants in certain programs, as well as the use of DPR facilities by specific

4-ER-0689

schools or organizations, was given to me by my subordinate employees based on

DPR's regularly kept business records.

3.      I was nominated to be Director of DPR in January 2021 – and

confirmed as Director in February 2021 – and have served in this capacity since

that time.  In this role, and as indicated on DPR's website, I oversee approximately

769 DPR employees and an additional 908 contract employees.  DPR, "About us"

(last updated July 10, 2023), available at

https://www.honolulu.gov/parks/default/about-us.html.

4.      As indicated on DPR's website, DPR manages 402 parks comprising

4,967 acres within the City & County of Honolulu.  This includes 62 beach parks,

156 playgrounds and swings, 221 baseball/softball diamonds, and 585 outdoor play

courts. DPR, "About us" (July 10, 2023), available at

https://www.honolulu.gov/parks/default/about-us.html.

5.      DPR facilities are generally closed from 10:00 p.m. to 5:00 a.m.,

though this can vary based on community input, with exceptions for New Year's

Eve and other special events. A dedicated website indicates these regular park

closure hours at https://www.honolulu.gov/parks/default/park-closure-hours.html.

\\

\\

\\

**4-ER-0690**

**Use of DPR facilities by children and for educational programs**

6.     DPR's facilities are heavily used by children, both for organized and unorganized activities; DPR also offers educational programming – including classes in the arts, language, culture, and athletics – for children and adults.  Just as a few examples:

a. The State Department of Education frequently uses DPR facilities – particularly the many DOE schools that are adjacent to DPR facilities.  For example, during the school year, Hōkūlani Elementary School has reserved the use of the large baseball field at the adjacent Kānewai Park every day during school hours.  Castle High School uses Kāneʻohe District Park for athletics practices after school.  Private schools, such as Kamehameha Schools Kapālama, use DPR facilities for field trips.  Private schools also use DPR facilities for athletics practices; for example, Maryknoll School often holds weekend basketball practices at a DPR gymnasium.

b. The City's Summer Fun program is a summer day camp for children between six and thirteen years old, with a program for Junior Leaders ages thirteen to seventeen, offered at 53 locations, including forty-seven parks and six DOE schools in 2023.

**4-ER-0691**

Summer Fun operates from 8:30 a.m. to 2:00 p.m. weekdays, and several locations have additional programming before 8:30 a.m. and/or after 2:00 p.m. ("Summer Plus After" and "Summer Plus Before & After"). Summer Fun's registration fee is $25 (with an additional excursion fee, depending on the particular site, of no more than $100) for the entire summer – June and July 2023, when most schools are closed – making this an affordable option for Honolulu parents with employment outside the home. Based on staff reports, my understanding is that, in 2023, approximately 7,755 children are participating in Summer Fun, along with approximately 1,300 Junior Leaders. Mililani District Park has approximately 425 child participants this summer, and Mānoa Valley District Park has approximately 350 child participants, meaning there are hundreds of children present in these parks during Summer Fun hours. DPR, "Summer Fun Program" (May 11, 2023), available at

https://www.honolulu.gov/parks/program/summer-fun-program.html.

c.  DPR offers a wide range of clinics and classes. There are classes specifically for children and teenagers, such as Beginner Boxing,

**4-ER-0692**

Basketball Skills Clinics, Chess, Gymnastics, Hula, Lifeguard Certification, Soccer, Percussion, Tennis, Ukulele, Volleyball, Water Polo, and various swimming courses.  There are also classes specifically for adults, including ceramics, ballroom dancing, English Language, Hawaiian Language, Korean Language and Culture, Meditation, Painting, Ti Leaf lei-making, and seniors club meetings, as well as hundreds of athletics classes and clinics.  There are also courses for parents and children to attend jointly.  DPR, Activities, available at https://bit.ly/DPR-Activities-Summer2023 (last accessed July 5, 2023).  Approximately 28,000 individuals (including children and adults) participate in these programs each year.  In the fall of 2022, there were approximately 615 classes for children and youths at DPR facilities, with approximately 5,789 child/youth participants.  In the spring of 2023, there were approximately 598 classes for children and youths at DPR facilities, with approximately 5,579 child/youth participants.

d. DPR's facilities are used extensively for private youth sports activities.  For example:

4-ER-0693

   i.   The American Youth Soccer Organization ("AYSO") uses DPR's facilities across Oʻahu for youth soccer leagues, with numerous leagues for children of different ages.  More information is available on its website, https://www.ayso178.org/.

   ii.   i9 Sports uses DPR's facilities across Oʻahu for youth soccer, baseball, flag football, basketball, and volleyball leagues, with numerous leagues for children of different ages.  More information is available on its website, https://www.i9sports.com/honolulu-youth-sports-leagues.

   iii.   Little League uses DPR's facilities across Oʻahu for baseball and softball year-round.  Little League's website helps to give some idea of the scale and intensity of Little League's use of DPR's facilities:  Honolulu Little League's "Majors" team – eleven- to twelve-year-olds – won the Little League World Series in 2022 and 2018, the Waipiʻo Little League team won the Little League World Series in 2008, and the ʻEwa Beach team won the Little League World Series in 2005.  See Honolulu Little League, "About Us," available at

4-ER-0694

https://honolululittleleague.com/about-us (last accessed July 5,
2023).

   iv. There are innumerable other youth sports leagues, classes, and
clinics at DPR facilities.  As just one example, Mānoa Valley
District Park has – among other things – its own youth
basketball league, its own youth baseball league, and its own
youth aquatics league.  On many days in 2022, either the
Mānoa Youth Baseball Federation or PAC 5 Football had
reserved use of one or more fields at the park.  Indeed, each of
the five districts within DPR has its own youth sports league –
usually including basketball and volleyball, and sometimes flag
football – with practices and games held on the weekends.

e. DPR's facilities are used for other youth-focused events, such as
the Annual North Shore Menehune Surfing Championship.

f. DPR issues thousands of "picnic," "park use," and camping
permits each year.  In Calendar Year 2022, DPR issued 11,753
"picnic" and/or "park use" permits, while also issuing 8,776
camping permits during that same time period. These permits
allow individuals to reserve specific areas of a park for things like
birthday parties, family picnics, or overnight camping in

**4-ER-0695**

designated campgrounds.  DPR does not ask permittees to list the type of event they intend to hold at the park site; however, these picnic sites and campgrounds are very commonly used for children's birthday parties.

**Beach parks and beaches**

7.     At DPR's 62 beach parks, the "beach" and the "park" are not two separate things.  Instead, the park includes the beach – that is, the beach park includes the sand or rocks constituting the beach, as well as some area that is not sand (such as grass or other plants), as one "park."  In most of these parks, there is no clear boundary between the "beach" and the rest of the park, for several reasons.  First, the sand shifts depending upon the weather and the season.  Second, where there is grass (or soil or other plants) adjacent to sand, there is typically a transition zone in which sand mixes with grass, soil, and/or other plants.  For example, at Ala Moana Regional Park – a 119-acre park in urban Honolulu – there is a half-mile long beach.  Most of the sand is adjacent to grass, and park users commonly set up pop-up tents in the grassy areas where they sit, leave their belongings, and cook food.  Park users will routinely move between the ocean, the sand, the grass, the sidewalk, and parking areas.  Going to "the beach" at one of these 62 beach parks necessarily means going to "the park."  Additional

information about Ala Moana Regional Park is available at

https://bit.ly/AlaMoanaPark.

      8.      Here are two photographs, publicly available on the internet, to better

illustrate this point.  This is a photograph of Ala Moana Beach Park:



Hawaii News Now, "State approves Honolulu plan to add sand to Ala Moana

beach," Feb. 18, 2021, available at https://bit.ly/HNN-photo-AlaMoanaBeachPark

(photo credit:  Associated Press).

\\

\\

\\

\\

\\

This is a photograph of Kuliʻouʻou Beach Park:



Available at https://bit.ly/Yelp-photo-KuliououBeachPark (photo credit: user

"Vincent L." on Yelp.com, dated March 1, 2021). Again, there is often no

meaningful distinction between "park" and "beach" at DPR facilities.

\\

\\

\\

\\

\\

\\

**4-ER-0698**

### First Amendment activities

9.      DPR's facilities are heavily used for First Amendment activities.

Here are just a few recent examples of recent and upcoming events, which I have

taken from DPR records (which records can be provided to the Court upon

request):

| 6/12/2022 | Parade | King Kamehameha Floral Parade | Kapiʻolani Park |
| 6/18/2022 | Event | Chaplain's Walk | Kapiʻolani Park |
| 6/24/2022 | March | Roe v. Wade support | Ala Moana Park |
| 6/25/2022 | Parade | AIDS Walk | Kapiʻolani Park |
| 6/28/2022 | Event | Papa Ola Lōkahi Meeting | Kapiʻolani Park |
| 7/1/2022 | Event | Lei draping and gathering at Gandhi Statue | Kapiʻolani Park |
| 7/7/2022 | Event | Music Recital | Kapiʻolani Park |
| 7/9/2022 | Parade | Family Day Parade – God's ʻOhana Day Parade | Atkinson to Kapiʻolani Park |
| 7/24/2022 | Event | Israeli Folk Dancing | Kapiʻolani Park |
| 7/31/2022 | Event | Lā Hoʻihoʻi Ea – Sovereignty Restoration Day | Thomas Square |
| 8/3/2022 | Event | Hula performance | Kapiʻolani Park |
| 8/20/2022 | Event | Celebration of Life | Kapiʻolani Park |
| 9/17/2022 | Rally | Freedom Rally | Kapiʻolani Park |

4-ER-0699

| 10/2/2022 | Parade | Komen Foundation More than Pink Walk | Kapiʻolani Park |
| 10/15/2022 | Parade | Honolulu Pride Parade | Atkinson to Kapiʻolani Park |
| 11/11/2022 | Event | Veteran's Day Ceremony | Kapiʻolani Park |
| 12/17/2022 | Parade | Chanukah Car Menorah Parade | King Kalakaua Park |
| 1/16/2023 | Parade | Martin Luther King Parade | Ala Moana Park to Kapiʻolani Park |
| 4/1-2/2023 | Event | Pow Wow in Paradise | Ala Moana Park |
| 4/23/2023 | Protest/ March | Red Hill Walk for Water | Ala Moana Park |
| 4/29/2023 | Event | Keiki Community Fair and Drag Story Hour | Aʻala Park |
| 4/29/2023 | Protest | Protest of Drag Story Hour | Aʻala Park |
| 5/17/2023 | Event | Kamehameha III Birthday Lei Draping | Thomas Square |
| 7/8/2023 | Parade | Family Day Parade – God's ʻOhana Day Parade | Atkinson to Kapiʻolani Park |

**Upcoming**

| 7/30/2023 | Event | Lā Hoʻihoʻi Ea – Sovereignty Restoration Day | Thomas Square |
| 7/30/2023 | Event | La Hoihoi Ea – Sovereignty Restoration Day | Pokai Bay |
| 8/26/2023 | Event | Celebration of Ukrainian Independence Day | Ala Moana Park |

**4-ER-0700**

10.     There are innumerable other events across Oʻahu within DPR's facilities that involve First Amendment protected activity, including:

> a.  Church services;
>
> b.  Meetings for groups such as Alcoholics Anonymous;
>
> c.  Art exhibitions;
>
> d.  Concerts, including concerts at the Waikīkī Shell; and
>
> e.  Photography for weddings, engagements, and other events.

11.     As indicated above, larger events – for which permits are required – are most typically held at Kapiʻolani Park and Ala Moana Regional Park. However, for other City parks, permits are not required for events of fewer than 50 people.  As such, participants may not – and need not – seek a permit from DPR to hold these smaller activities, though they are very common across DPR facilities.

**Conclusion**

12.     In sum, the use of DPR facilities by children, the use of DPR facilities for educational purposes, and the use of DPR facilities for First Amendment activities is extraordinarily common.

\\

\\

\\

-13-

**4-ER-0701**

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  Honolulu, Hawaiʻi, July 13, 2023.

LAURA H. THIELEN

4-ER-0702



GOV. MSG. NO. 1152

EXECUTIVE CHAMBERS
KE KEʻENA O KE KIAʻĀINA

JOSH GREEN, M.D.
GOVERNOR
KE KIAʻĀINA

June 2, 2023

The Honorable Ronald D. Kouchi
President of the Senate,
    and Members of the Senate
Thirty-Second State Legislature
State Capitol, Room 409
Honolulu, Hawaiʻi  96813

The Honorable Scott K. Saiki
Speaker, and Members of the
    House of Representatives
Thirty-Second State Legislature
State Capitol, Room 431
Honolulu, Hawaiʻi  96813

Dear President Kouchi, Speaker Saiki, and Members of the Legislature:

This is to inform you that on June 2, 2023, the following bill was signed into law:

SB1230 SD2 HD1 CD1          RELATING TO FIREARMS.
                            **ACT 052**

Sincerely,

*Josh Green*

Josh Green, M.D.
Governor, State of Hawaiʻi

# EXHIBIT 1 (McLean)

**4-ER-0703**

**Approved by the Governor**

on _____ JUN 2 2023 _____

**ACT 052**

THE SENATE
THIRTY-SECOND LEGISLATURE, 2023
STATE OF HAWAII

**S.B. NO.**

1230
S.D. 2
H.D. 1
C.D. 1

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1    SECTION 1.  The legislature finds that there are compelling

2  interests in protecting public health, safety, and welfare from

3  the serious hazards associated with firearms and gun violence.

4  Although the United States Supreme Court has held that the

5  Second Amendment provides for an individual right to keep and

6  bear arms for lawful purposes, the Second Amendment is not "a

7  regulatory straightjacket".  *New York State Rifle & Pistol*

8  *Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2133 (2022).  States

9  retain authority to enact "a 'variety' of gun regulations", *id.*

10  at 2162 (Kavanaugh, J., concurring), such as prohibitions

11  against the carrying of firearms in sensitive locations and laws

12  and regulations designed to ensure that those who carry firearms

13  are "'law-abiding, responsible citizens'", *id.* at 2131, 2156

14  (internal citation omitted).

15    The purpose of this Act is to clarify, revise, and update

16  Hawaii's firearms laws to mitigate the serious hazards to public

17  health, safety, and welfare associated with firearms and gun

18  violence, while respecting and protecting the lawful exercise of

2023-2744 SB1230 CD1 SMA-2.docx

1

4-ER-0704

Page 2

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    individual rights.  To accomplish this purpose, this Act amends

2    and enacts requirements and processes for obtaining a license to

3    carry a firearm, updates criteria governing when firearm

4    ownership, possession, or control is prohibited, defines

5    locations and premises within the State where carrying or

6    possessing a firearm is prohibited, prohibits leaving an

7    unsecured firearm in a vehicle unattended, and enacts, amends,

8    and clarifies other provisions relating to firearms.

9         In prohibiting carrying or possessing firearms in certain

10   locations and premises within the State, this Act is intended to

11   protect areas in which carrying or possessing dangerous weapons

12   has traditionally been restricted, such as schools and other

13   places frequented by children, government buildings, polling

14   places, and other analogous locations.

15        This Act also respects the right of private individuals and

16   entities to choose for themselves whether to allow or restrict

17   the carrying of firearms on their property by providing that

18   firearms shall not be carried on private property of another

19   person without the express authorization of the owner, lessee,

20   operator, or manager of the property.  Recognizing the risks to

21   public health, safety, and welfare associated with firearms and

2023-2744 SB1230 CD1 SMA-2.docx                                    2



Page 3

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1  gun violence, and based on the legislature's assessment of

2  public sentiment and broadly shared preferences within the

3  State, this Act establishes a default rule with respect to

4  carrying firearms on private property of another person that

5  provides for private entities to "opt-in" to authorize the

6  public carry of firearms on their property.

7      This Act also adjusts certain regulatory fees relating to

8  firearms.  These adjustments are warranted because prior fee

9  amounts were established by statute decades ago and have not

10 been adjusted to reflect inflation and increased costs

11 associated with background checks and investigations.

12     SECTION 2.  Chapter 134, Hawaii Revised Statutes, is

13 amended by adding seven new sections to part I to be

14 appropriately designated and to read as follows:

15     "§134-A  Carrying or possessing a firearm in certain

16 locations and premises prohibited; penalty.  (a)  A person with

17 a license issued under section 134-9, or authorized to carry a

18 firearm in accordance with title 18 United States Code section

19 926B or 926C, shall not intentionally, knowingly, or recklessly

20 carry or possess a loaded or unloaded firearm, whether the

21 firearm is operable or not, and whether the firearm is concealed

2023-2744 SB1230 CD1 SMA-2.docx

3

Page 4

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   or unconcealed, while in any of the following locations and

2   premises within the State:

3   (1)   Any building or office owned, leased, or used by the

4         State or a county, and adjacent grounds and parking

5         areas, including any portion of a building or office

6         used for court proceedings, legislative business,

7         contested case hearings, agency rulemaking, or other

8         activities of state or county government;

9   (2)   Any public or private hospital, mental health

10        facility, nursing home, clinic, medical office, urgent

11        care facility, or other place at which medical or

12        health services are customarily provided, including

13        adjacent parking areas;

14  (3)   Any adult or juvenile detention or correctional

15        facility, prison, or jail, including adjacent parking

16        areas;

17  (4)   Any bar or restaurant serving alcohol or intoxicating

18        liquor as defined in section 281-1 for consumption on

19        the premises, including adjacent parking areas;

20  (5)   Any stadium, movie theater, or concert hall, or any

21        place at which a professional, collegiate, high

Page 5

## S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    school, amateur, or student sporting event is being

2    held, including adjacent parking areas;

3    (6)  All public library property, including buildings,

4         facilities, meeting rooms, spaces used for community

5         programming, adjacent grounds, and parking areas;

6    (7)  The campus or premises of any public or private

7         community college, college, or university, and

8         adjacent parking areas, including buildings,

9         classrooms, laboratories, research facilities,

10        artistic venues, and athletic fields or venues;

11   (8)  The campus or premises of any public school, charter

12        school, private school, preschool, summer camp, or

13        child care facility as defined in section 346-151,

14        including adjacent parking areas, but not including:

15        (A)  A private residence at which education is

16             provided for children who are all related to one

17             another by blood, marriage, or adoption; or

18        (B)  A dwelling when not used as a child care

19             facility;

20   (9)  Any beach, playground, park, or adjacent parking area,

21        including any state park, state monument, county park,

2023-2744 SB1230 CD1 SMA-2.docx                                              5

4-ER-0708

Page 6

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    tennis court, golf course, swimming pool, or other

2    recreation area or facility under control,

3    maintenance, and management of the State or a county,

4    but not including an authorized target range or

5    shooting complex;

6    (10)  Any shelter, residential, or programmatic facility or

7    adjacent parking area operated by a government entity

8    or charitable organization serving unhoused persons,

9    victims of domestic violence, or children, including

10   children involved in the juvenile justice system;

11   (11)  Any voter service center as defined in section 11-1 or

12   other polling place, including adjacent parking areas;

13   (12)  The premises of any bank or financial institution as

14   defined in section 211D-1, including adjacent parking

15   areas;

16   (13)  Any place, facility, or vehicle used for public

17   transportation or public transit, and adjacent parking

18   areas, including buses, paratransit vans, bus shelters

19   and terminals (but not including bus stops located on

20   public sidewalks), trains, rail stations, and

21   airports;

4-ER-0709

Page 7

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (14)  Any amusement park, aquarium, carnival, circus, fair,

2          museum, water park, or zoo, including adjacent parking

3          areas; or

4     (15)  Any public gathering, public assembly, or special

5          event conducted on property open to the public,

6          including any demonstration, march, rally, vigil,

7          protest, picketing, or other public assembly, for

8          which a permit is obtained from the federal

9          government, the State, or a county, and the sidewalk

10         or street immediately adjacent to the public

11         gathering, public assembly, or special event; provided

12         that there are signs clearly and conspicuously posted

13         at visible places along the perimeter of the public

14         gathering, public assembly, or special event.

15    (b)  This section shall not apply to a person in an exempt

16 category identified in section 134-11(a).  It shall be an

17 affirmative defense to any prosecution under this section that a

18 person is:

19     (1)  Carrying or possessing an unloaded firearm in a police

20          station in accordance with section 134-23(a)(6), 134-

21          24(a)(6), or 134-25(a)(6);

4-ER-0710

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        (2) Carrying or possessing an unloaded firearm at an

2             organized, scheduled firearms show or exhibit;

3        (3) Lawfully carrying or possessing a firearm for hunting

4             in compliance with section 134-5;

5        (4) A private security officer expressly authorized to

6             carry or possess a weapon in a location or premises

7             listed in subsection (a) by the owner, lessee,

8             operator, or manager of the location or premises;

9             provided that the private security officer is acting

10            within the private security officer's scope of

11            employment;

12       (5) Carrying or possessing an unloaded firearm in a

13            courthouse for evidentiary purposes with the prior

14            express authorization of the court;

15       (6) Lawfully present within the person's own home, other

16            than a college or university dormitory or shelter or

17            residential facility serving unhoused persons or

18            victims of domestic violence;

19       (7) Carrying a firearm pursuant to a license issued under

20            section 134-9 or in accordance with title 18 United

21            States Code section 926B or 926C in the immediate area

2023-2744 SB1230 CD1 SMA-2.docx

8

Page 9

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      surrounding the person's vehicle within a parking area

2      for the limited purpose of storing or retrieving the

3      firearm;

4    (8)   Possessing a firearm in an airport or any place,

5      facility, or vehicle used for public transportation or

6      public transit; provided that the firearm is unloaded

7      and in a locked hard-sided container for the purpose

8      of transporting the firearm;

9    (9)   Walking through a public gathering, public assembly,

10      or special event if necessary to access the person's

11      residence, place of business, or vehicle; provided

12      that the person does not loiter or remain longer than

13      necessary to complete their travel or business; or

14   (10)   Carrying a concealed firearm in accordance with title

15      18 United States Code section 926B or 926C in a

16      location or premises within the State that is not a

17      State or county property, installation, building,

18      base, or park, and not a location or premises where a

19      private person or entity has prohibited or restricted

20      the possession of concealed firearms on their

21      property.

2023-2744 SB1230 CD1 SMA-2.docx

S.B. NO.     1230
             S.D. 2
             H.D. 1
             C.D. 1

1      (c)  The presence of a person in any location or premises

2  listed in subsection (a) shall be prima facie evidence that the

3  person knew it was a location or premises listed in subsection

4  (a).

5      (d)  Where only a portion of a building or office is owned,

6  leased, or used by the State or a county, this section shall not

7  apply to the portion of the building or office that is not

8  owned, leased, or used by the State or a county, unless carrying

9  or possessing a firearm within that portion is otherwise

10  prohibited by this section.

11      (e)  As used in this section, "private security officer"

12  means any person employed and duly licensed to engage in the

13  private detective or guard business pursuant to chapter 463.

14      (f)  Any person who violates this section shall be guilty

15  of a misdemeanor.

16      (g)  If any ordinance of any county of the State

17  establishing locations where the carrying of firearms is

18  prohibited is inconsistent with this section or with section

19  134-E, the ordinance shall be void to the extent of the

20  inconsistency.

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    §134-B  <u>Duty to maintain possession of license while</u>

2  <u>carrying a firearm; duty to disclose; penalty.</u>  (a)  A person

3  carrying a firearm pursuant to a license issued under section

4  134-9 or in accordance with title 18 United States Code section

5  926B or 926C shall have in the person's immediate possession:

6      (1)  The license issued under section 134-9 or

7          documentation regarding the person's qualifications

8          under title 18 United States Code section 926B or

9          926C;

10     (2)  Government-issued photo identification; and

11     (3)  Except with respect to firearms that are a part of the

12         official equipment of any federal agency as provided

13         under section 134-11(b), documentary evidence that the

14         firearm being carried is registered under this

15         chapter,

16  and shall, upon request from a law enforcement officer, present

17  government-issued photo identification and the license or

18  credentials and evidence of registration.

19     (b)  When a person carrying a firearm, including a person

20  carrying a firearm pursuant to a license issued under section

21  134-9 or in accordance with title 18 United States Code section

Page 12

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   926B or 926C, is stopped by a law enforcement officer or is a

2   driver or passenger in a vehicle stopped by a law enforcement

3   officer, the person carrying a firearm shall immediately

4   disclose to the law enforcement officer that the person is

5   carrying a firearm, and shall, upon request:

6        (1)   Identify the specific location of the firearm; and

7        (2)   Present to the law enforcement officer a license to

8              carry a firearm issued under section 134-9 or

9              documentation regarding the person's qualifications

10             under title 18 United States Code section 926B or

11             926C.

12       (c)   Any person who violates this section shall be guilty

13   of a petty misdemeanor.

14       §134-C  **Leaving unsecured firearm in vehicle unattended;**

15   **penalty.**   (a)   No person shall intentionally, knowingly, or

16   recklessly store or otherwise leave a loaded or unloaded firearm

17   out of the person's immediate possession or control inside a

18   vehicle without first securely locking the firearm in a safe

19   storage depository that is out of sight from outside of the

20   vehicle.

Page 13

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1    (b)  For purposes of this section, "safe storage

2   depository" means a safe or other secure impact- and

3   tamper-resistant container that, when locked, is incapable of

4   being opened without a key, keypad, combination, or other

5   unlocking mechanism and is capable of preventing an unauthorized

6   person from obtaining access to or possession of the firearm

7   contained therein.  A vehicle's trunk or glove box alone, even

8   if locked, is not a safe storage depository.

9       (c)  This section shall not apply to a person in an exempt

10  category identified in section 134-11(a).

11       (d)  Any person who violates subsection (a) shall be guilty

12  of a petty misdemeanor.

13     **§134-D  Unlawful conduct while carrying a firearm; penalty.**

14  (a)  A person carrying a firearm shall not:

15      (1)  Consume alcohol or intoxicating liquor;

16      (2)  Consume a controlled substance;

17      (3)  Be under the influence of alcohol or intoxicating

18           liquor; or

19      (4)  Be under the influence of a controlled substance.

20      (b)  As used in this section:

4-ER-0716

Page 14                                                    S.B. NO.    1230
                                                                       S.D. 2
                                                                       H.D. 1
                                                                       C.D. 1

1      "Alcohol" and "intoxicating liquor" shall have the same

2  meaning as in section 281-1.

3      "Controlled substance" means a drug, substance, or

4  immediate precursor in schedules I through III of part II of

5  chapter 329.

6      (c)  Any person who violates this section shall be guilty

7  of a misdemeanor; provided that any person who violates this

8  section by consuming or being under the influence of alcohol or

9  an intoxicating liquor shall be guilty of a petty misdemeanor.

10     §134-E  **Carrying or possessing a firearm on private**

11 **property of another person without authorization; penalty.**  (a)

12 A person carrying a firearm pursuant to a license issued under

13 section 134-9 shall not intentionally, knowingly, or recklessly

14 enter or remain on private property of another person while

15 carrying a loaded or unloaded firearm, whether the firearm is

16 operable or not, and whether the firearm is concealed or

17 unconcealed, unless the person has been given express

18 authorization to carry a firearm on the property by the owner,

19 lessee, operator, or manager of the property.

4-ER-0717

Page 15

S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    (b)  For purposes of this section, express authorization to

2  carry or possess a firearm on private property shall be

3  signified by:

4    (1)  Unambiguous written or verbal authorization; or

5    (2)  The posting of clear and conspicuous signage at the

6         entrance of the building or on the premises,

7  by the owner, lessee, operator, or manager of the property, or

8  agent thereof, indicating that carrying or possessing a firearm

9  is authorized.

10    (c)  For purposes of this section:

11    "Private entity" means any homeowners' association,

12  community association, planned community association,

13  condominium association, cooperative, or any other

14  nongovernmental entity with covenants, bylaws, or administrative

15  rules, regulations, or provisions governing the use of private

16  property.

17    "Private property" does not include property that is owned

18  or leased by any governmental entity.

19    "Private property of another person" means residential,

20  commercial, industrial, agricultural, institutional, or

21  undeveloped property that is privately owned or leased, unless

2023-2744 SB1230 CD1 SMA-2.docx                                        15



Page 16

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   the person carrying a firearm is an owner, lessee, operator, or

2   manager of the property, including an ownership interest in a

3   common element or limited common element of the property;

4   provided that nothing in this chapter shall be construed to

5   limit the enforceability of a provision in any private rental

6   agreement restricting a tenant's possession or use of firearms,

7   the enforceability of a restrictive covenant restricting the

8   possession or use of firearms, or the authority of any private

9   entity to restrict the possession or use of firearms on private

10  property.

11      (d)  This section shall not apply to a person in an exempt

12  category identified in section 134-11(a).

13      (e)  Any person who violates this section shall be guilty

14  of a misdemeanor."

15      §134-F  **Annual report on licenses to carry.**  (a)  No later

16  than April 1, 2024, and April 1 of each year thereafter, the

17  department of the attorney general shall publish a report on its

18  publicly available website that includes, if available:

19      (1)  The number of licenses to carry applied for, issued,

20          revoked, and denied, further categorized by the age,

4-ER-0719

Page 17

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

 1           gender, race, and county of residence of each

 2           applicant or licensee;

 3      (2)  The specific reasons for each revocation and denial;

 4      (3)  Analysis of denials based on applicants' failure to

 5           meet the standards of section 134-9(d), and

 6           recommendations to remedy any disparities in denial

 7           rates by age, gender, or race;

 8      (4)  The number of appeals and appeals granted; and

 9      (5)  The number of violations of section 134-A.

10      (b)  No later than February 1 of each year, the chief of

11 police of each county shall supply the department of the

12 attorney general with the data the department requires to

13 complete the report under subsection (a).

14      §134-G  Failure to conceal a firearm by a concealed carry

15 licensee; penalty.  (a)  A person commits the offense of failure

16 to conceal a firearm by a concealed carry licensee if a person

17 is carrying a firearm pursuant to a license issued under section

18 134-9(a) and intentionally, knowingly, or recklessly causes

19 alarm to another person by failing to conceal the firearm, even

20 briefly, whether the firearm was loaded or not, and whether

21 operable or not.


**4-ER-0720**

Page 18

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1    (b)  It shall be a defense to any prosecution under this

2  section if the person:

3    (1)  Was within the person's private residence; or

4    (2)  Caused the firearm to be unconcealed for the purpose

5         of self-defense in accordance with section 703-304 or

6         defense of another person in accordance with section

7         703-305.

8    (c)  Failure to conceal a firearm by a concealed carry

9  licensee shall be a petty misdemeanor."

10    SECTION 3.  Section 134-1, Hawaii Revised Statutes, is

11  amended as follows:

12    1.  By adding three new definitions to be appropriately

13  inserted and to read:

14    ""Concealed" means, in relation to a firearm, that the

15  firearm is entirely hidden from view of the public and not

16  discernible by ordinary observation, in a manner that a

17  reasonable person without law enforcement training would be

18  unable to detect the presence of the firearm.

19    "Criminal offense relating to firearms" means:

20    (1)  Any criminal offense under this chapter punishable as

21         a misdemeanor;

4-ER-0721

Page 19

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    (2)  Criminally negligent storage of a firearm under

2        section 707-714.5; and

3    (3)  Any other criminal offense punishable as a misdemeanor

4        under federal or state law or the law of another

5        state, a United States territory, or the District of

6        Columbia that has as an element of the offense the

7        use, attempted use, threatened use, or possession of a

8        firearm.

9    "Unconcealed" means not concealed."

10    2. By amending the definition of "crime of violence" to

11  read:

12    ""Crime of violence" means [any]:

13    (1)  Any offense[, as defined in title 37,] under federal

14        or state law or the law of another state, a United

15        States territory, or the District of Columbia that

16        [involves injury] has as an element of the offense

17        the:

18        (A)  Injury or threat of injury to the person of

19            another[, including sexual]; or

20        (B)  Use, attempted use, or threatened use of physical

21            force against the person or property of another

4-ER-0722

Page 20

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      or the creation of a substantial risk of causing

2      bodily injury;

3  (2)  Reckless endangering in the second degree under

4      section 707-714;

5  (3)  Terroristic threatening in the second degree under

6      section 707-717;

7  (4)  Sexual assault in the fourth degree under section 707-

8      733 [and harassment];

9  (5)  Endangering the welfare of a minor in the second

10      degree under section 709-904;

11  (6)  Endangering the welfare of an incompetent person under

12      section 709-905;

13  (7)  Harassment under section 711-1106(1)(a);

14  (8)  Harassment by stalking under section 711-1106.5[.];

15  (9)  Criminal solicitation under section 705-510; provided

16      that the solicitation was for a crime described or

17      listed in paragraphs (1) to (8);

18  (10)  Criminal conspiracy under section 705-520; provided

19      that the conspiracy was for a crime described or

20      listed in paragraphs (1) to (8); and

4-ER-0723

Page 21

S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1    (11)  Offenses under federal law, or the law of another

2          state, a United States territory, or the District of

3          Columbia, that are comparable to the offenses

4          described or listed in paragraphs (1) to (10)."

5    SECTION 4.  Section 134-2, Hawaii Revised Statutes, is

6    amended to read as follows:

7    "§134-2  **Permits to acquire.**  (a)  No person shall acquire

8    the ownership of a firearm, whether usable or unusable,

9    serviceable or unserviceable, modern or antique, registered

10   under prior law or by a prior owner or unregistered, either by

11   purchase, gift, inheritance, bequest, or in any other manner,

12   whether procured in the State or imported by mail, express,

13   freight, or otherwise, until the person has first procured from

14   the chief of police of the county of the person's place of

15   business or, if there is no place of business, the person's

16   residence or, if there is neither place of business nor

17   residence, the person's place of sojourn, a permit to acquire

18   the ownership of a firearm as prescribed in this section.  When

19   title to any firearm is acquired by inheritance or bequest, the

20   foregoing permit shall be obtained before taking possession of

21   [a] the firearm; provided that upon presentation of a copy of

Page 22

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  the death certificate of the owner making the bequest, any heir

2  or legatee may transfer the inherited or bequested firearm

3  directly to a dealer licensed under section 134-31 or licensed

4  by the United States Department of Justice without complying

5  with the requirements of this section.

6      (b)  The permit application form shall [include the]:

7      (1)  Include:

8          (A)  The applicant's name, address, [sex,] gender,

9              height, weight, date of birth, place of birth,

10            country of citizenship, social security number,

11            alien or admission number[, and information];

12          (B)  Information regarding the applicant's mental

13            health history;

14          (C)  Any aliases or other names previously used by the

15            applicant;

16          (D)  Information that is or may be relevant in

17            determining whether the applicant is disqualified

18            under section 134-7 from the ownership,

19            possession, or control of a firearm; and

20          (E)  Information that is or may be relevant in

21            determining whether the applicant lacks the

Page 23

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        essential character or temperament necessary to

2        be entrusted with a firearm as set forth in

3        subsection (e); and [shall require]

4    (2)  Require the fingerprinting and photographing of the

5        applicant by the police department of the county of

6        registration; provided that where fingerprints and a

7        photograph are already on file with the department,

8        these may be waived.

9    (c)  An applicant for a permit shall [sign]:

10   (1)  Sign a waiver at the time of application, allowing the

11       chief of police of the county issuing the permit or a

12       designee of the chief of police access to [any] all

13       records that have a bearing on the mental health of

14       the applicant[. The permit application form and the

15       waiver form shall be prescribed by the attorney

16       general and shall be uniform throughout the State.];

17       and

18   (2)  Identify any health care providers who possess or may

19       possess the records described in paragraph (1).

20   (d)  The chief of police of the respective counties [may]

21 shall issue permits to acquire firearms to [citizens]:

2023-2744 SB1230 CD1 SMA-2.docx        23



Page 24

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (1)   Citizens, nationals, or lawful permanent residents of

2           the United States of the age of twenty-one years or

3           more[, or duly];

4     (2)   Duly accredited official representatives of foreign

5           nations[, or duly];

6     (3)   Duly commissioned law enforcement officers of the

7           State who are aliens; provided that any law

8           enforcement officer who is the owner of a firearm and

9           who is an alien shall transfer ownership of the

10          firearm within forty-eight hours after termination of

11          employment from a law enforcement agency[.  The chief

12          of police of each county may issue permits to aliens];

13    (4)   Aliens of the age of eighteen years or more for use of

14          rifles and shotguns for a period not exceeding sixty

15          days, upon a showing that the alien has first procured

16          a hunting license under chapter 183D, part II[.  The

17          chief of police of each county may issue permits to

18          aliens]; and

19    (5)   Aliens of the age of twenty-one years or more for use

20          of firearms for a period not exceeding six months,

21          upon a showing that the alien is in training for a

2023-2744 SB1230 CD1 SMA-2.docx

4-ER-0727

Page 25

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    specific organized sport-shooting contest to be held

2    within the permit period.

3       The attorney general [shall] may adopt rules, pursuant to

4    chapter 91, as to what constitutes sufficient evidence that an

5    alien is in training for a sport-shooting contest.

6       Notwithstanding any law to the contrary and upon joint

7    application, the chief of police may, upon request, issue

8    permits to acquire firearms jointly to spouses who otherwise

9    qualify to obtain permits under this section.

10      (e)  The permit application form shall be signed by the

11   applicant and [by the] issuing authority.  One copy of the

12   permit shall be retained by the issuing authority as a permanent

13   official record.  Except for sales to dealers licensed under

14   section 134-31, [or] dealers licensed by the United States

15   Department of Justice, [or] law enforcement officers, [or where

16   a license is granted under section 134-9,] or where any firearm

17   is registered pursuant to section 134-3(a), no permit shall be

18   issued to an applicant earlier than fourteen calendar days after

19   the date of the application; provided that a permit shall be

20   issued or the application denied before the [twentieth] fortieth

21   day from the date of application.  Permits issued to acquire any

Page 26

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    pistol or revolver shall be void unless used within [ten] thirty

2    days after the date of issue.  Permits to acquire a pistol or

3    revolver shall require a separate application and permit for

4    each transaction.  Permits issued to acquire any rifle or

5    shotgun shall entitle the permittee to make subsequent purchases

6    of rifles or shotguns for a period of one year from the date of

7    issue without a separate application and permit for each

8    acquisition, subject to the disqualifications under section 134-

9    7 and [subject to] revocation under section 134-13; provided

10   that if a permittee is arrested for committing a felony [or

11   any], a crime of violence, a criminal offense relating to

12   firearms, or for the illegal sale or distribution of any drug,

13   the permit shall be impounded and [shall be] surrendered to the

14   issuing authority.  The issuing authority shall perform an

15   inquiry on an applicant by using the International Justice and

16   Public Safety Network, including the United States Immigration

17   and Customs Enforcement query, [the] National Crime Information

18   Center, and [the] National Instant Criminal Background Check

19   System, pursuant to section 846-2.7 before any determination to

20   issue a permit or to deny an application is made.  The issuing

21   authority shall not issue a permit to acquire the ownership of a

2023-2744 SB1230 CD1 SMA-2.docx                                    26



Page 27

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  firearm if an applicant is disqualified under section 134-7 from

2  the ownership, possession, or control of a firearm, or if the

3  issuing authority determines that issuance would not be in the

4  interest of public health, safety, or welfare because the person

5  lacks the essential character or temperament necessary to be

6  entrusted with a firearm.  In determining whether a person lacks

7  the essential character or temperament necessary to be entrusted

8  with a firearm, the issuing authority shall consider whether the

9  person poses a danger of causing a self-inflicted bodily injury

10 or unlawful injury to another person, as evidenced by:

11     (1)  Information from a health care provider indicating

12          that the person has had suicidal or homicidal thoughts

13          or tendencies within the preceding five years;

14     (2)  Statements or actions by the person indicating any

15          dangerous propensity or violent animus toward one or

16          more individuals or groups, including groups based on

17          race, color, national origin, ancestry, sex, gender

18          identity, gender expression, sexual orientation, age,

19          disability, religion, or any other characteristic, and

20          the propensity or animus is of a nature or to an

21          extent that would objectively indicate to a reasonable

4-ER-0730

Page 28

S.B. NO.  1230
S.D. 2
H.D. 1
C.D. 1

1      observer that it would not be in the interest of the

2      public health, safety, or welfare for the person to

3      own, possess, or control a firearm or ammunition; or

4    (3)   Other information that would lead a reasonable,

5      objective observer to conclude that the person

6      presents or would present a danger to the community as

7      a result of acquiring or possessing a firearm or

8      intends or is likely to use a firearm for an unlawful

9      purpose or in an unlawful manner.

10   (f)   In all cases where a pistol or revolver is acquired

11 from another person within the State, the permit shall be signed

12 in ink by the person to whom title to the pistol or revolver is

13 transferred and shall be delivered to the person who is

14 transferring title to the firearm, who shall verify that the

15 person to whom the firearm is to be transferred is the person

16 named in the permit and enter on the permit in the space

17 provided the following information:  name, address, and

18 telephone number of the person who transferred the firearm;

19 name, address, and telephone number of the person to whom the

20 title to the firearm was transferred;  names of the manufacturer

21 and importer; model; type of action; caliber or gauge; and

Page 29

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   serial number, as applicable.  The person who is transferring

2   title to the firearm shall sign the permit in ink and cause the

3   permit to be delivered or sent by registered mail to the issuing

4   authority within forty-eight hours after transferring the

5   firearm.

6        In all cases where receipt of a firearm is had by mail,

7   express, freight, or otherwise from sources [without] outside

8   the State, the person to whom the permit has been issued shall

9   make the prescribed entries on the permit, sign the permit in

10  ink, and cause the permit to be delivered or sent by registered

11  mail to the issuing authority within forty-eight hours after

12  taking possession of the firearm.

13       In all cases where a rifle or shotgun is acquired from

14  another person within the State, the person who is transferring

15  title to the rifle or shotgun shall submit, within forty-eight

16  hours after transferring the firearm, to the authority that

17  issued the permit to acquire, the following information, in

18  writing:  name, address, and telephone number of the person who

19  transferred the firearm[₮]; name, address, and telephone number

20  of the person to whom the title to the firearm was transferred;

Page 30

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   names of the manufacturer and importer; model; type of action;

2   caliber or gauge; and serial number, as applicable.

3        (g)   [Effective July 1, 1995, no] No person shall be issued

4   a permit under this section for the acquisition of a [pistol or

5   revolver] firearm unless the person, [at any time prior to]

6   within the four years before the issuance of the permit, has

7   completed:

8        (1)   An approved hunter education course as authorized

9              under section 183D-28[;], unless the applicant seeks

10             to acquire a pistol or revolver, in which case the

11             applicant shall complete a training satisfying the

12             requirements of paragraph (2), (3), or (4);

13       (2)   A firearms safety or training course or class

14             available to the general public offered by a law

15             enforcement agency of the State or of any county;

16       (3)   A firearms safety or training course offered to law

17             enforcement officers, security guards, investigators,

18             deputy sheriffs, or any division or subdivision of law

19             enforcement or security enforcement by a state or

20             county law enforcement agency; or



Page 31

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (4)   A firearms training or safety course or class

2           conducted by a [state certified or National Rifle

3           Association-certified-firearms instructor] firearms

4           instructor certified or verified by the chief of

5           police of the respective county or a designee of the

6           chief of police or certified by a nongovernmental

7           organization approved for such purposes by the chief

8           of police of the respective county or a designee of

9           the chief of police, or conducted by a certified

10          military firearms instructor; provided that the

11          firearms training or safety course or class provides,

12          at a minimum, a total of at least two hours of firing

13          training at a firing range and a total of at least

14          four hours of classroom instruction, which may include

15          a video, that focuses on:

16    (A)   The safe use, handling, and storage of firearms

17          and firearm safety in the home[,], as well as a

18          component on mental health, suicide prevention,

19          and domestic violence issues associated with

20          firearms and firearm violence; and

21    (B)   Education on the firearm laws of the State.

2023-2744 SB1230 CD1 SMA-2.docx                                    31

Page 32

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    An affidavit signed by the certified or verified

2    firearms instructor who conducted or taught the

3    course, providing the name, address, and phone number

4    of the instructor and attesting to the successful

5    completion of the course by the applicant shall

6    constitute evidence of certified successful completion

7    under this paragraph[.]; provided that an instructor

8    shall not submit an affidavit signed by the instructor

9    for the instructor's own permit application.

10   (h)  No person shall sell, give, lend, or deliver into the

11   possession of another any firearm except in accordance with this

12   chapter.

13   (i)  No fee shall be charged for permits, or applications

14   for permits, under this section, except for a single fee

15   chargeable by and payable to the issuing county[, for

16   individuals applying for their first permit,] in an amount equal

17   to the fee charged by the Hawaii criminal justice data center

18   pursuant to section 846-2.7.  In the case of a joint

19   application, the fee provided for in this section may be charged

20   to each person [to whom no previous permit has been issued].  If

21   an application under this section is denied, the chief of police

2023-2744 SB1230 CD1 SMA-2.docx                                    32



Page 33

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   or a designee of the chief of police shall notify the applicant

2   of the denial in writing, stating the ground or grounds for the

3   denial and informing the applicant of the right to seek review

4   of the denial through a hearing pursuant to subsection (k).

5        (j)  In all cases where a permit application under this

6   section is denied because an applicant is prohibited from

7   owning, possessing, receiving, or controlling firearms under

8   federal or state law, the chief of police of the applicable

9   county shall, within ten business days from the date of denial,

10  send written notice of the denial, including the identity of the

11  applicant and the reasons for the denial, to the:

12       (1)  Prosecuting attorney in the county where the permit

13            was denied;

14       (2)  Attorney general;

15       (3)  United States Attorney for the District of Hawaii; and

16       (4)  Director of public safety.

17       If the permit to acquire was denied because the applicant

18  is subject to an order described in section 134-7(f), the chief

19  of police shall, within three business days from the date of

20  denial, send written notice of the denial to the court that

21  issued the order.

2023-2744 SB1230 CD1 SMA-2.docx                                    33



S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   When the director of public safety receives notice that an

2 applicant has been denied a permit because of a prior criminal

3 conviction, the director of public safety shall determine

4 whether the applicant is currently serving a term of probation

5 or parole, and if the applicant is serving such a term, send

6 written notice of the denial to the applicant's probation or

7 parole officer.

8   (k)  If an application under this section is denied, a

9 person or entity aggrieved by the denial shall be entitled to a

10 hearing before the chief of police of the appropriate county or

11 a designee of the chief of police.  A person or entity aggrieved

12 by the denial shall submit a request for a hearing in writing to

13 the chief of police of the appropriate county no later than

14 thirty days following the date of the decision or determination

15 notice.  The hearing shall constitute a contested case hearing

16 for purposes of chapter 91.  Following the hearing and final

17 decision, an aggrieved party shall be entitled to a judicial

18 review proceeding in state circuit court in accordance with

19 section 91-14.

Page 35

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (1)  The permit application form and the waiver form

2  required under this section shall be prescribed by the issuing

3  authority."

4      SECTION 5.  Section 134-4, Hawaii Revised Statutes, is

5  amended by amending subsection (d) to read as follows:

6      "(d)  No person shall intentionally, knowingly, or

7  recklessly lend a firearm to any person who is prohibited from

8  ownership [or], possession, or control of a firearm under

9  section 134-7."

10     SECTION 6.  Section 134-7, Hawaii Revised Statutes, is

11  amended to read as follows:

12     "§134-7  Ownership [or], possession, or control prohibited,

13  when; penalty.  (a)  No person who is a fugitive from justice or

14  [is a person] prohibited from possessing [firearms] a firearm or

15  ammunition under title 18 United States Code section 922 or any

16  other provision of federal law shall own, possess, or control

17  any firearm or ammunition [therefor].

18     (b)  No person who [is under indictment for, or has waived

19  indictment for, or has been bound over to the circuit court

20  for,] is being prosecuted for one or more charges for a felony,

21  a crime of violence, a criminal offense relating to firearms, or

2023-2744 SB1230 CD1 SMA-2.docx                                  35



4-ER-0738

Page 36

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    an illegal sale or distribution of any drug in a court in this

2    State or elsewhere, or who has been convicted in this State or

3    elsewhere of having committed a felony, [or any] a crime of

4    violence, a criminal offense relating to firearms, or an illegal

5    sale or distribution of any drug shall own, possess, or control

6    any firearm or ammunition [therefor].

7         (c)  No person [who,] shall own, possess, or control any

8    firearm or ammunition if the person:

9         (1)  Is or has been under treatment or counseling for

10             addiction to, abuse of, or dependence upon any

11             dangerous, harmful, or detrimental drug, intoxicating

12             compound as defined in section 712-1240, or

13             intoxicating liquor;

14        (2)  Has been acquitted of a crime on the grounds of mental

15             disease, disorder, or defect pursuant to section 704-

16             411[,] or any similar provision under federal law, or

17             the law of another state, a United States territory,

18             or the District of Columbia;

19        (3)  Is or has been diagnosed [as having a significant

20             behavioral, emotional, or mental disorders as defined

21             by the most current diagnostic manual of the American

Page 37

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    ~~Psychiatric Association or for treatment for organic~~

2    ~~brain syndromes;~~] with or treated for a medical,

3    behavioral, psychological, emotional, or mental

4    condition or disorder that causes or is likely to

5    cause impairment in judgment, perception, or impulse

6    control to an extent that presents an unreasonable

7    risk to public health, safety, or welfare if the

8    person were in possession or control of a firearm; or

9    (4)  Has been adjudged to:

10       (A)  Meet the criteria for involuntary hospitalization

11            under section 334-60.2; or

12       (B)  Be an "incapacitated person", as defined in

13            section 560:5-102,

14   [~~shall own, possess, or control any firearm or ammunition~~

15   ~~therefor,~~] unless the person [~~has been medically documented to~~

16   ~~be~~] establishes, with appropriate medical documentation, that

17   the person is no longer adversely affected by [~~the addiction,~~

18   ~~abuse, dependence, mental disease, disorder, or defect.~~] the

19   criteria or statuses identified in this subsection.

20       (d)  No person who is less than twenty-five years old and

21   has been adjudicated by the family court to have committed a



Page 38

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  felony, [two or more crimes] a crime of violence, a criminal

2  offense relating to firearms, or an illegal sale or distribution

3  of any drug shall own, possess, or control any firearm or

4  ammunition [therefor].

5       (e)  No minor [who:] shall own, possess, or control any

6  firearm or ammunition if the minor:

7       (1)  Is or has been under treatment for addiction to any

8            dangerous, harmful, or detrimental drug, intoxicating

9            compound as defined in section 712-1240, or

10           intoxicating liquor;

11      (2)  Is a fugitive from justice; or

12      (3)  Has been determined not to have been responsible for a

13           criminal act or has been committed to any institution

14           on account of a mental disease, disorder, or

15           defect[.],

16  [shall own, possess, or control any firearm or ammunition

17  therefor,] unless the minor [has been medically documented to

18  be] establishes, with appropriate medical documentation, that

19  the minor is no longer adversely affected by the addiction,

20  mental disease, disorder, or defect.

2023-2744 SB1230 CD1 SMA-2.docx

38

4-ER-0741

Page 39

S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1    For the purposes of enforcing this section, and

2    notwithstanding section 571-84 or any other law to the contrary,

3    any agency within the State shall make its records relating to

4    family court adjudications available to law enforcement

5    officials.

6    (f)  No person who has been restrained pursuant to an order

7    of any court, including a gun violence protective order issued

8    pursuant to part IV, from contacting, threatening, or physically

9    abusing any person, shall possess, control, or transfer

10   ownership of any firearm or ammunition [~~therefor~~], so long as

11   the protective order, restraining order, or any extension is in

12   effect[~~, unless the order, for good cause shown, specifically~~

13   ~~permits the possession of a firearm and ammunition~~].  The

14   protective order or restraining order shall specifically include

15   a statement that possession, control, or transfer of ownership

16   of a firearm or ammunition by the person named in the order is

17   prohibited.  The person shall relinquish possession and control

18   of any firearm and ammunition owned by that person to the police

19   department of the appropriate county for safekeeping for the

20   duration of the order or extension thereof.  At the time of

21   service of a protective order or restraining order involving

Page 40

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1   firearms and ammunition issued by any court, a police officer

2   may take custody of any and all firearms and ammunition in plain

3   sight, those discovered pursuant to a consensual search, and

4   those firearms surrendered by the person restrained.  If the

5   person restrained is the registered owner of a firearm and knows

6   the location of the firearm, but refuses to surrender the

7   firearm or [~~refuses to~~] disclose the location of the firearm,

8   the person restrained shall be guilty of a misdemeanor.  In any

9   case, when a police officer is unable to locate the firearms and

10  ammunition either registered under this chapter or known to the

11  person granted protection by the court, the police officer shall

12  apply to the court for a search warrant pursuant to chapter 803

13  for the limited purpose of seizing the firearm and ammunition.

14      [~~For the purposes of this subsection, good cause shall not~~

15  ~~be based solely upon the consideration that the person subject~~

16  ~~to restraint pursuant to an order of any court is required to~~

17  ~~possess or carry firearms or ammunition during the course of the~~

18  ~~person's employment.  Good cause consideration may include but~~

19  ~~not be limited to the protection and safety of the person to~~

20  ~~whom a restraining order is granted.~~]

Page 41

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (g)  Any person disqualified from ownership, possession,

2  control, or the right to transfer ownership of firearms and

3  ammunition under this section shall surrender or dispose of all

4  firearms and ammunition in compliance with section 134-7.3.

5    (h)  Any person who otherwise would be prohibited under

6  subsection (b) from owning, possessing, or controlling a firearm

7  and ammunition solely as a result of a conviction for a crime

8  that is not a felony, and who is not prohibited from owning,

9  possessing, or controlling a firearm or ammunition for any

10  reason under any other provision of this chapter or under title

11  18 United States Code section 922 or another provision of

12  federal law, shall not be prohibited under this section from

13  owning, possessing, or controlling a firearm and ammunition if

14  twenty years have elapsed from the date of the conviction.

15    [(h)] (i)  Any person violating subsection (a) or (b) shall

16  be guilty of a class C felony; provided that any felon violating

17  subsection (b) shall be guilty of a class B felony.  Any person

18  violating subsection (c), (d), (e), (f), or (g) shall be guilty

19  of a misdemeanor."

20    SECTION 7.  Section 134-9, Hawaii Revised Statutes, is

21  amended to read as follows:



Page 42

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    "§134-9  Licenses to carry.  (a)  [~~In an exceptional case,~~

2    ~~when an applicant shows reason to fear injury to the applicant's~~

3    ~~person or property, the~~] The chief of police of [~~the~~

4    ~~appropriate~~] a county [~~may~~] shall grant a license to an

5    applicant [~~who is a citizen of the United States of the age of~~

6    ~~twenty-one years or more or to a duly accredited official~~

7    ~~representative of a foreign nation of the age of twenty-one~~

8    ~~years or more~~] to carry a pistol or revolver and ammunition

9    [~~therefor~~] concealed on the licensee's person within [~~the county~~

10   ~~where the license is granted.  Where the urgency or the need has~~

11   ~~been sufficiently indicated, the respective~~] the State, if the

12   applicant:

13       (1)   Satisfies each of the criteria established by or

14             pursuant to subsection (d);

15       (2)   Is not prohibited under section 134-7 from the

16             ownership, possession, or control of a firearm and

17             ammunition;

18       (3)   Is not found to be lacking the essential character or

19             temperament necessary to be entrusted with a firearm

20             as set forth in subsection (h);

Page 43

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1   (4)   Is a citizen, national, or lawful permanent resident

2         of the United States or a duly accredited official

3         representative of a foreign nation;

4   (5)   Is a resident of the State; and

5   (6)   Is of the age of twenty-one years or more.

6   (b)   The chief of police of a county may grant to an

7   applicant [of good moral character who is a citizen of the

8   United States of the age of twenty-one years or more, is engaged

9   in the protection of life and property, and is not prohibited

10  under section 134-7 from the ownership or possession of a

11  firearm,] a license to carry a pistol or revolver and ammunition

12  [therefor] unconcealed on the licensee's person within the

13  county where the license is granted[.], if the applicant:

14  (1)   Sufficiently establishes the urgency or need to carry

15        a firearm unconcealed;

16  (2)   Is engaged in the protection of life and property;

17  (3)   Satisfies each of the criteria established by or

18        pursuant to subsection (d);

19  (4)   Is not prohibited under section 134-7 from the

20        ownership, possession, or control of a firearm and

21        ammunition;

2023-2744 SB1230 CD1 SMA-2.docx



Page 44

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (5)  <u>Is not found to be lacking the essential character or</u>

2         <u>temperament necessary to be entrusted with a firearm</u>

3         <u>as set forth in subsection (h);</u>

4     (6)  <u>Is a citizen, national, or lawful permanent resident</u>

5         <u>of the United States; and</u>

6     (7)  <u>Is of the age of twenty-one years or more.</u>

7     <u>(c)</u>  The chief of police of the appropriate county, or [~~the~~

8  ~~chief's~~] <u>a</u> designated representative[~~,~~] <u>of the chief of police,</u>

9  shall perform an inquiry on an applicant by using the National

10  Instant Criminal Background Check System, to include a check of

11  the Immigration and Customs Enforcement databases [~~where~~] <u>if</u> the

12  applicant is not a citizen of the United States, before any

13  determination to grant a <u>concealed or unconcealed</u> license is

14  made.  [~~Unless renewed, the license shall expire one year from~~

15  ~~the date of issue.~~

16     ~~(b)  The chief of police of each county shall adopt~~

17  ~~procedures to require that any person granted a license to carry~~

18  ~~a concealed weapon on the person shall:~~]

19     <u>(d)</u>  <u>To be eligible to receive a license to carry a</u>

20  <u>concealed or unconcealed pistol or revolver on the licensee's</u>

21  <u>person, the applicant shall:</u>

2023-2744 SB1230 CD1 SMA-2.docx                44



Page 45

## S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   (1)   [Be qualified to use the firearm in a safe manner;]

2         Submit the appropriate carry license application, in

3         person, to the chief of police of the appropriate

4         county, with:

5         (A)   All fields on the application form completed and

6               all questions answered truthfully, under penalty

7               of law;

8         (B)   All required signatures present on the

9               application;

10        (C)   Any required documents attached to the

11              application; and

12        (D)   Payment of the nonrefundable license application

13              fee required under this section;

14  (2)   [Appear to be a suitable person to be so licensed;] Be

15        the registered owner of the firearm or firearms for

16        which the license to carry will be issued; provided

17        that this paragraph shall not apply to detectives,

18        private detectives, investigators, and guards with an

19        active license issued pursuant to chapter 463;

Page 46

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (3)  Not be prohibited under section 134-7 from the

2         ownership [or], possession, or control of a firearm;

3         [and]

4    (4)  [Not have been adjudged insane or not appear to be

5         mentally deranged.] Have completed a course of

6         training as described in subsection (e) and be

7         certified as qualified to use the firearm or firearms

8         for which the license to carry will be issued in a

9         safe manner; and

10   (5)  Sign an affidavit expressly acknowledging that:

11        (A)  The applicant has read and is responsible for

12             understanding and complying with the federal,

13             state, and county laws governing the permissible

14             use of firearms and associated requirements,

15             including:

16             (i)   The prohibition on carrying or possessing a

17                   firearm in certain locations and premises;

18             (ii)  The prohibition on carrying more than one

19                   firearm on the licensee's person at one

20                   time;

2023-2744 SB1230 CD1 SMA-2.docx                              46

4-ER-0749

Page 47

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        (iii)   The prohibition on carrying a firearm on

2              private property of another person without

3              the express authorization of the owner,

4              lessee, operator, or manager of the private

5              property;

6        (iv)   The requirement to maintain possession of

7              the license on the licensee's person while

8              carrying a firearm;

9        (v)   The requirement to disclose information

10              regarding the carrying of a firearm when

11              stopped by law enforcement;

12        (vi)   The provision for absolute liability for

13              injury or property damage proximately caused

14              by a legally unjustified discharge of a

15              firearm under section 663-9.5; and

16        (vii)   Laws regarding the use of deadly force for

17              self-defense or the defense of another;

18      (B)   A license to carry issued under this section

19            shall be void if a licensee becomes disqualified

20            from the ownership, possession, or control of a



Page 48

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    firearm pursuant to section 134-7(a), (b), (d),

2    or (f);

3    (C) The license shall be subject to revocation under

4        section 134-13 if a licensee for any other reason

5        becomes disqualified under section 134-7 from the

6        ownership, possession, or control of a firearm;

7        and

8    (D) A license that is revoked or that becomes void

9        shall be returned to the chief of police of the

10       appropriate county within forty-eight hours after

11       the license is revoked or becomes void.

12   [(e) No person shall carry concealed or unconcealed on the

13   person a pistol or revolver without being licensed to do so

14   under this section or in compliance with sections 134-5(e) or

15   134-25.

16   (d) A fee of $10 shall be charged for each license and

17   shall be deposited in the treasury of the county in which the

18   license is granted.]

19   (e)  The course of training for issuance of a license under

20   this section may be any course acceptable to the licensing

21   authority that meets all of the following criteria:



Page 49

<div style="text-align:right">

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

</div>

1     (1)   The course shall include in-person instruction on

2           firearm safety; firearm handling; shooting technique;

3           safe storage; legal methods to transport firearms and

4           secure firearms in vehicles; laws governing places in

5           which persons are prohibited from carrying a firearm;

6           firearm usage in low-light situations; situational

7           awareness and conflict management; and laws governing

8           firearms, including information regarding the

9           circumstances in which deadly force may be used for

10          self-defense or the defense of another;

11    (2)   The course shall include a component on mental health

12         and mental health resources;

13    (3)   Except for the component on mental health and mental

14         health resources, the course shall be conducted by one

15         or more firearms instructors certified or verified by

16         the chief of police of the respective county or a

17         designee of the chief of police or certified by a

18         nongovernmental organization approved for those

19         purposes by the chief of police of the respective

20         county or a designee of the chief of police, or

Page 50

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    conducted by one or more certified military firearms

2    instructors;

3   (4)  The course shall require participants to demonstrate

4    their understanding of the covered topics by achieving

5    a score of at least seventy per cent on a written

6    examination; and

7   (5)  The course shall include live-fire shooting exercises

8    on a firing range and shall include a demonstration by

9    the applicant of safe handling of, and shooting

10    proficiency with, each firearm that the applicant is

11    applying to be licensed to carry.

12   (f)  Upon passing the course of training identified in

13  subsection (e), the applicant shall obtain from the instructor,

14  and include as part of the applicant's application package, a

15  certification as to the following:

16   (1)  The applicant's name, as confirmed by reviewing the

17    applicant's government-issued photo identification;

18   (2)  The date and location of the firearm proficiency test;

19   (3)  The firearm or firearms that the applicant used in the

20    firearm proficiency test;



**4-ER-0753**

Page 51

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1      (4)  The applicant's score; provided that an indication

2           that the applicant passed or failed, without the score

3           itself, shall be insufficient information for the

4           purposes of the application; and

5      (5)  The instructor's qualifications to administer the

6           firearm proficiency test.

7  The certification of the above information, signed by the

8  firearms instructor who conducted or taught the course,

9  providing the name, address, and phone number of the instructor,

10  shall constitute evidence of successful completion of the

11  course; provided that the instructor shall not submit a

12  certification signed by the instructor for the instructor's own

13  license application.  The course of training for issuance of a

14  license under this section shall be undertaken at the licensee's

15  expense.

16      (g)  An applicant for a license under this section shall:

17      (1)  Sign a waiver at the time of application, allowing the

18           chief of police of the county issuing the license or a

19           designee of the chief of police access to any records

20           that have a bearing on the mental health of the

21           applicant; and



Page 52

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    (2)  Identify any health care providers who possess or may

2         possess the records described in paragraph (1).

3   (h)  In determining whether a person lacks the essential

4 character or temperament necessary to be entrusted with a

5 firearm, the licensing authority shall consider whether the

6 person poses a danger of causing a self-inflicted bodily injury

7 or unlawful injury to another person, as evidenced by:

8    (1)  Information from a health care provider indicating

9         that the person has had suicidal or homicidal thoughts

10         or tendencies within the preceding five years;

11   (2)  Statements or actions by the person indicating any

12         dangerous propensity or violent animus toward one or

13         more individuals or groups, including groups based on

14         race, color, national origin, ancestry, sex, gender

15         identity, gender expression, sexual orientation, age,

16         disability, religion, or any other characteristic, and

17         the propensity or animus is of a nature or to an

18         extent that would objectively indicate to a reasonable

19         observer that it would not be in the interest of the

20         public health, safety, or welfare for the person to

21         own, possess, or control a firearm or ammunition; or

2023-2744 SB1230 CD1 SMA-2.docx

Page 53

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (3)   Other information that would lead a reasonable,

2            objective observer to conclude that the person

3            presents or would present a danger to the community as

4            a result of carrying a firearm in public or intends or

5            is likely to use a firearm for an unlawful purpose or

6            in an unlawful manner.

7      (i)   A nonrefundable fee of $150 shall be charged for each

8   license application submitted under this section.  The fee shall

9   be chargeable by and payable to the appropriate county and shall

10  be used for expenses related to police services.  The issuing

11  authority shall waive the fee required by this subsection upon a

12  showing of financial hardship by the applicant.

13     (j)   If the applicant satisfies each of the requirements

14  for a concealed carry license, an application for a concealed

15  carry license submitted to the chief of police of the

16  appropriate county under this section shall be approved within a

17  reasonable time after receipt of all required application

18  materials.  If the applicant does not satisfy one or more of the

19  requirements for a concealed carry license, the license shall be

20  denied within a reasonable time after receipt of the application

21  materials.  If an application is denied, the chief of police or



Page 54

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   a designee of the chief of police shall notify the applicant of

2   the denial in writing, stating the ground or grounds for the

3   denial and informing the applicant of the right to seek review

4   of the denial through a hearing pursuant to subsection (k).  If

5   the chief of police does not grant or deny a submitted

6   application for a concealed carry license within one hundred

7   twenty days following the date of the application, the

8   application shall be deemed denied as of that date for purposes

9   of subsection (k).

10       (k)  If an application under this section is denied, a

11  person or entity aggrieved by the denial shall be entitled to a

12  hearing before the chief of police of the appropriate county or

13  a designee of the chief of police.  A person or entity aggrieved

14  by the denial shall submit a request for a hearing in writing to

15  the chief of police of the appropriate county no later than

16  thirty days following the date of the decision or determination

17  notice.  The hearing shall constitute a contested case hearing

18  for purposes of chapter 91.  Following the hearing and final

19  decision, an aggrieved party shall be entitled to a judicial

20  review proceeding in state circuit court in accordance with

21  section 91-14.

2023-2744 SB1230 CD1 SMA-2.docx                                        54



Page 55

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (1)  If an application pursuant to this section is
2  approved, the chief of police shall issue the applicant a
3  license that contains, at minimum:
4    (1)  The licensee's name;
5    (2)  The licensee's address;
6    (3)  A photograph of the licensee taken within ninety days
7         before issuance of the license;
8    (4)  The county of issuance;
9    (5)  A notation as to whether the license permits concealed
10        or unconcealed carry;
11   (6)  The serial number of each registered firearm that the
12        licensee may carry pursuant to the license; and
13   (7)  The license expiration date.
14  The license issued under this subsection shall not constitute a
15  government-issued photo identification document under federal or
16  state law.
17   (m)  Unless renewed, a concealed or unconcealed license
18  shall expire four years from the date of issue.
19   (n)  A license to carry issued under this section shall be
20  void if a licensee becomes disqualified from the ownership,
21  possession, or control of a firearm pursuant to section 134-



Page 56

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   7(a), (b), (d), or (f).  If a licensee for any other reason

2   becomes disqualified under section 134-7 from the ownership,

3   possession, or control of a firearm, the license shall be

4   subject to revocation under section 134-13.  A license that is

5   void or revoked shall be returned to the chief of police of the

6   appropriate county within forty-eight hours after the license

7   becomes void or is revoked.

8       (o)  The chief of police of each county shall adopt

9   procedures to implement this section.

10      (p)  The chief of police of each county shall establish

11  procedures and criteria for the renewal of licenses issued under

12  this section.  No license renewal shall be granted if an

13  applicant for a renewed license does not satisfy, or no longer

14  satisfies, the eligibility criteria for a new license set forth

15  in subsections (a) through (d).  As a precondition for the

16  renewal of licenses issued under this section, the chief of

17  police of each county may establish reasonable continuing

18  education, training, and certification requirements, including

19  requirements pertaining to the safe handling of firearms and

20  shooting proficiency.  A nonrefundable fee of $50 shall be

21  charged for each license renewal application submitted under



Page 57

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   this section.  The fee shall be chargeable by and payable to the

2   appropriate county and shall be used for expenses related to

3   police services.  The issuing authority shall waive the fee

4   required by this subsection upon a showing of financial hardship

5   by the applicant.

6        (q)  No person carrying a firearm pursuant to a license

7   issued under this section shall intentionally, knowingly, or

8   recklessly carry more than one firearm on the licensee's person

9   at one time.

10       (r)  A license issued by the chief of police of a county

11   within the State under subsection (a) to carry a pistol or

12   revolver and ammunition concealed on the licensee's person shall

13   be valid for use in each county within the State."

14       SECTION 8.  Section 134-13, Hawaii Revised Statutes, is

15   amended to read as follows:

16       "§134-13  Revocation of permits[.] and licenses.  (a)  All

17   permits and licenses provided for under this part [may] shall be

18   revoked[, for good cause,] by the issuing authority [or], and

19   may be revoked by [the judge of] any court[.], if the issuing

20   authority or court determines that the permit or license is

21   subject to revocation because the permit or license holder does

2023-2744 SB1230 CD1 SMA-2.docx                                    57



4-ER-0760

Page 58

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   not satisfy, or no longer satisfies, the applicable

2   qualifications or requirements associated with the permit or

3   license.

4        (b)  If the issuing authority determines that a permit or

5   license is subject to revocation, the issuing authority shall

6   notify the permit or license holder of the determination in

7   writing, stating the grounds for the determination and informing

8   the permit or license holder of the right to seek a hearing

9   before the issuing authority regarding the determination before

10  revocation.  Unless the permit or license holder submits a

11  request for a hearing in writing to the issuing authority no

12  later than thirty days following the date of the written notice

13  that the permit or license is subject to revocation, the permit

14  or license shall be immediately revoked by the issuing

15  authority.  Any hearing regarding a determination on whether a

16  permit or license is subject to revocation shall constitute a

17  contested case hearing for purposes of chapter 91.  A person or

18  entity aggrieved by a revocation under this section may apply

19  for judicial review in state circuit court in accordance with

20  section 91-14.



Page 59

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (c)  If a permit or license is revoked pursuant to this

2 section, the former permit or license holder shall return the

3 permit or license to the issuing authority within forty-eight

4 hours following receipt of the notice of revocation."

5    SECTION 9.  Section 134-17, Hawaii Revised Statutes, is

6 amended to read as follows:

7    "§134-17  Penalties.  (a)  If any person [gives false

8 information or offers false evidence of the person's identity in

9 complying with any of the requirements of this part, that person

10 shall be guilty of a misdemeanor, provided, however that if any

11 person intentionally gives false information or offers false

12 evidence concerning their] intentionally, knowingly, or

13 recklessly makes any materially false, fictitious, or fraudulent

14 statement or representation in connection with any of the

15 requirements of this part, that person shall be guilty of a

16 misdemeanor; provided that if any person intentionally,

17 knowingly, or recklessly makes any materially false, fictitious,

18 or fraudulent statement or representation regarding the person's

19 psychiatric or criminal history in [complying] connection with

20 any of the requirements of this part, that person shall be

21 guilty of a class C felony.

2023-2744 SB1230 CD1 SMA-2.docx              59



Page 60

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    [(b)  Any person who violates section 134-3(a) shall be

2    guilty of a petty misdemeanor.

3         (e)] (b)  Any person who violates [section]:

4         (1)  Section 134-2, 134-4, 134-10, [or] 134-13(c), or 134-

5              15 shall be guilty of a misdemeanor[.  Any person who

6              violates section];

7         (2)  Section 134-3(a) or 134-9(q) shall be guilty of a

8              petty misdemeanor; or

9         (3)  Section 134-3(b) shall be guilty of a petty

10             misdemeanor and the firearm shall be confiscated as

11             contraband and disposed of, if the firearm is not

12             registered within five days of the person receiving

13             notice of the violation."

14        SECTION 10.  Section 134-18, Hawaii Revised Statutes, is

15   amended to read as follows:

16        "§134-18  Qualified immunity for physicians, psychologists,

17   [or] psychiatrists, physician assistants, or advanced practice

18   registered nurses who provide information on permit or license

19   applicants.  There shall be no civil liability for any

20   physician, psychologist, [or] psychiatrist, physician assistant,

21   or advanced practice registered nurse who provides information



Page 61

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1  or renders an opinion in response to an inquiry made for

2  purposes of issuing a firearm permit under section 134-2,

3  issuing or renewing a license under section 134-9, or [for

4  purposes of] investigating the continuing mental health of the

5  holder of a valid firearm permit or license; provided that the

6  physician, psychologist, [or] psychiatrist, physician assistant,

7  or advanced practice registered nurse acted without malice."

8      SECTION 11.  Section 707-716, Hawaii Revised Statutes, is

9  amended by amending subsection (2) to read as follows:

10     "(2)  Terroristic threatening in the first degree is a

11  class C felony[.]; provided that terroristic threatening in the

12  first degree is a class B felony if committed with a firearm as

13  defined in section 134-1, whether the firearm was loaded or not,

14  and whether operable or not, or a simulated firearm, while in

15  one of the locations or premises listed in section 134-A(a)."

16     SECTION 12.  Section 846-2.7, Hawaii Revised Statutes, is

17  amended by amending subsection (b) to read as follows:

18     "(b)  Criminal history record checks may be conducted by:

19     (1)  The department of health or its designee on operators

20          of adult foster homes for individuals with

21          developmental disabilities or developmental

2023-2744 SB1230 CD1 SMA-2.docx



Page 62

S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1        disabilities domiciliary homes and their employees, as

2        provided by section 321-15.2;

3  (2)  The department of health or its designee on

4        prospective employees, persons seeking to serve as

5        providers, or subcontractors in positions that place

6        them in direct contact with clients when providing

7        non-witnessed direct mental health or health care

8        services as provided by section 321-171.5;

9  (3)  The department of health or its designee on all

10       applicants for licensure or certification for,

11       operators for, prospective employees, adult

12       volunteers, and all adults, except adults in care, at

13       healthcare facilities as defined in section 321-15.2;

14  (4)  The department of education on employees, prospective

15       employees, and teacher trainees in any public school

16       in positions that necessitate close proximity to

17       children as provided by section 302A-601.5;

18  (5)  The counties on employees and prospective employees

19       who may be in positions that place them in close

20       proximity to children in recreation or child care

21       programs and services;

2023-2744 SB1230 CD1 SMA-2.docx



Page 63

S.B. NO.  1230
          S.D. 2
          H.D. 1
          C.D. 1

1    (6)   The county liquor commissions on applicants for liquor

2          licenses as provided by section 281-53.5;

3    (7)   The county liquor commissions on employees and

4          prospective employees involved in liquor

5          administration, law enforcement, and liquor control

6          investigations;

7    (8)   The department of human services on operators and

8          employees of child caring institutions, child placing

9          organizations, and foster boarding homes as provided

10         by section 346-17;

11   (9)   The department of human services on prospective

12         adoptive parents as established under section

13         346-19.7;

14   (10)  The department of human services or its designee on

15         applicants to operate child care facilities, household

16         members of the applicant, prospective employees of the

17         applicant, and new employees and household members of

18         the provider after registration or licensure as

19         provided by section 346-154, and persons subject to

20         section 346-152.5;

Page 64

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    (11)  The department of human services on persons exempt

2          pursuant to section 346-152 to be eligible to provide

3          child care and receive child care subsidies as

4          provided by section 346-152.5;

5    (12)  The department of health on operators and employees of

6          home and community-based case management agencies and

7          operators and other adults, except for adults in care,

8          residing in community care foster family homes as

9          provided by section 321-15.2;

10   (13)  The department of human services on staff members of

11         the Hawaii youth correctional facility as provided by

12         section 352-5.5;

13   (14)  The department of human services on employees,

14         prospective employees, and volunteers of contracted

15         providers and subcontractors in positions that place

16         them in close proximity to youth when providing

17         services on behalf of the office or the Hawaii youth

18         correctional facility as provided by section 352D-4.3;

19   (15)  The judiciary on employees and applicants at detention

20         and shelter facilities as provided by section 571-34;

2023-2744 SB1230 CD1 SMA-2.docx                              64



S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (16)    The department of public safety on employees and

2          prospective employees who are directly involved with

3          the treatment and care of persons committed to a

4          correctional facility or who possess police powers

5          including the power of arrest as provided by section

6          353C-5;

7     (17)    The board of private detectives and guards on

8          applicants for private detective or private guard

9          licensure as provided by section 463-9;

10    (18)    Private schools and designated organizations on

11         employees and prospective employees who may be in

12         positions that necessitate close proximity to

13         children; provided that private schools and designated

14         organizations receive only indications of the states

15         from which the national criminal history record

16         information was provided pursuant to section 302C-1;

17    (19)    The public library system on employees and prospective

18         employees whose positions place them in close

19         proximity to children as provided by section

20         302A-601.5;

4-ER-0768

Page 66

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

 1    (20)   The State or any of its branches, political

 2           subdivisions, or agencies on applicants and employees

 3           holding a position that has the same type of contact

 4           with children, vulnerable adults, or persons committed

 5           to a correctional facility as other public employees

 6           who hold positions that are authorized by law to

 7           require criminal history record checks as a condition

 8           of employment as provided by section 78-2.7;

 9    (21)   The department of health on licensed adult day care

10           center operators, employees, new employees,

11           subcontracted service providers and their employees,

12           and adult volunteers as provided by section 321-15.2;

13    (22)   The department of human services on purchase of

14           service contracted and subcontracted service providers

15           and their employees serving clients of the adult

16           protective and community services branch, as provided

17           by section 346-97;

18    (23)   The department of human services on foster grandparent

19           program, senior companion program, and respite

20           companion program participants as provided by section

21           346-97;

Page 67

1230
S.D. 2
H.D. 1
C.D. 1

# S.B. NO.

1    (24)   The department of human services on contracted and

2          subcontracted service providers and their current and

3          prospective employees that provide home and community-

4          based services under section 1915(c) of the Social

5          Security Act, title 42 United States Code section

6          1396n(c), or under any other applicable section or

7          sections of the Social Security Act for the purposes

8          of providing home and community-based services, as

9          provided by section 346-97;

10   (25)   The department of commerce and consumer affairs on

11         proposed directors and executive officers of a bank,

12         savings bank, savings and loan association, trust

13         company, and depository financial services loan

14         company as provided by section 412:3-201;

15   (26)   The department of commerce and consumer affairs on

16         proposed directors and executive officers of a

17         nondepository financial services loan company as

18         provided by section 412:3-301;

19   (27)   The department of commerce and consumer affairs on the

20         original chartering applicants and proposed executive

4-ER-0770

Page 68

S.B. NO.   1230
           S.D. 2
           H.D. 1
           C.D. 1

1      officers of a credit union as provided by section

2      412:10-103;

3  (28) The department of commerce and consumer affairs on:

4      (A)  Each principal of every non-corporate applicant

5           for a money transmitter license;

6      (B)  Each person who upon approval of an application

7           by a corporate applicant for a money transmitter

8           license will be a principal of the licensee; and

9      (C)  Each person who upon approval of an application

10          requesting approval of a proposed change in

11          control of licensee will be a principal of the

12          licensee,

13     as provided by sections 489D-9 and 489D-15;

14 (29) The department of commerce and consumer affairs on

15     applicants for licensure and persons licensed under

16     title 24;

17 (30) The Hawaii health systems corporation on:

18     (A)  Employees;

19     (B)  Applicants seeking employment;

20     (C)  Current or prospective members of the corporation

21          board or regional system board; or



Page 69

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1                     (D)   Current or prospective volunteers, providers, or

2                           contractors,

3           in any of the corporation's health facilities as

4           provided by section 323F-5.5;

5     (31)   The department of commerce and consumer affairs on:

6                     (A)   An applicant for a mortgage loan originator

7                           license, or license renewal; and

8                     (B)   Each control person, executive officer, director,

9                           general partner, and managing member of an

10                           applicant for a mortgage loan originator company

11                           license or license renewal,

12           as provided by chapter 454F;

13     (32)   The state public charter school commission or public

14           charter schools on employees, teacher trainees,

15           prospective employees, and prospective teacher

16           trainees in any public charter school for any position

17           that places them in close proximity to children, as

18           provided in section 302D-33;

19     (33)   The counties on prospective employees who work with

20           children, vulnerable adults, or senior citizens in

21           community-based programs;



Page 70

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (34)  The counties on prospective employees for fire

2            department positions that involve contact with

3            children or vulnerable adults;

4    (35)  The counties on prospective employees for emergency

5            medical services positions that involve contact with

6            children or vulnerable adults;

7    (36)  The counties on prospective employees for emergency

8            management positions and community volunteers whose

9            responsibilities involve planning and executing

10           homeland security measures including viewing,

11           handling, and engaging in law enforcement or

12           classified meetings and assisting vulnerable citizens

13           during emergencies or crises;

14    (37)  The State and counties on employees, prospective

15           employees, volunteers, and contractors whose position

16           responsibilities require unescorted access to secured

17           areas and equipment related to a traffic management

18           center;

19    (38)  The State and counties on employees and prospective

20           employees whose positions involve the handling or use

21           of firearms for other than law enforcement purposes;

4-ER-0773

Page 71

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (39)  The State and counties on current and prospective

2            systems analysts and others involved in an agency's

3            information technology operation whose position

4            responsibilities provide them with access to

5            proprietary, confidential, or sensitive information;

6    (40)  The department of commerce and consumer affairs on:

7          (A)  Applicants for real estate appraiser licensure or

8               certification as provided by chapter 466K;

9          (B)  Each person who owns more than ten per cent of an

10              appraisal management company who is applying for

11              registration as an appraisal management company,

12              as provided by section 466L-7; and

13          (C)  Each of the controlling persons of an applicant

14              for registration as an appraisal management

15              company, as provided by section 466L-7;

16    (41)  The department of health or its designee on all

17            license applicants, licensees, employees, contractors,

18            and prospective employees of medical cannabis

19            dispensaries, and individuals permitted to enter and

20            remain in medical cannabis dispensary facilities as

4-ER-0774

Page 72

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    provided under sections 329D-15(a)(4) and

2    329D-16(a)(3);

3    (42)  The department of commerce and consumer affairs on

4    applicants for nurse licensure or license renewal,

5    reactivation, or restoration as provided by sections

6    457-7, 457-8, 457-8.5, and 457-9;

7    (43)  The county police departments on applicants for

8    permits to acquire firearms pursuant to section 134-2

9    [and], on individuals registering their firearms

10    pursuant to section 134-3[.], and on applicants for

11    new or renewed licenses to carry a pistol or revolver

12    and ammunition pursuant to section 134-9;

13    (44)  The department of commerce and consumer affairs on:

14    (A)  Each of the controlling persons of the applicant

15    for licensure as an escrow depository, and each

16    of the officers, directors, and principals who

17    will be in charge of the escrow depository's

18    activities upon licensure; and

19    (B)  Each of the controlling persons of an applicant

20    for proposed change in control of an escrow

21    depository licensee, and each of the officers,

4-ER-0775

Page 73

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1                 directors, and principals who will be in charge

2                 of the licensee's activities upon approval of the

3                 application,

4     as provided by chapter 449;

5     (45) The department of taxation on current or prospective

6                 employees or contractors who have access to federal

7                 tax information in order to comply with requirements

8                 of federal law, regulation, or procedure, as provided

9                 by section 231-1.6;

10    (46) The department of labor and industrial relations on

11                current or prospective employees or contractors who

12                have access to federal tax information in order to

13                comply with requirements of federal law, regulation,

14                or procedure, as provided by section 383-110;

15    (47) The department of human services on current or

16                prospective employees or contractors who have access

17                to federal tax information in order to comply with

18                requirements of federal law, regulation, or procedure,

19                as provided by section 346-2.5;

20    (48) The child support enforcement agency on current or

21                prospective employees, or contractors who have access

Page 74

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   to federal tax information in order to comply with

2   federal law, regulation, or procedure, as provided by

3   section 576D-11.5;

4   (49)  The department of the attorney general on current or

5   prospective employees or employees or agents of

6   contractors who have access to federal tax information

7   to comply with requirements of federal law,

8   regulation, or procedure, as provided by section 28-

9   17;

10  [(+)] (50) [(+)] The department of commerce and consumer affairs on

11  each control person, executive officer, director,

12  general partner, and managing member of an installment

13  loan licensee, or an applicant for an installment loan

14  license, as provided in chapter 480J;

15  [(+)] (51) [(+)] The University of Hawaii on current and prospective

16  employees and contractors whose duties include

17  ensuring the security of campus facilities and

18  persons; and

19  [(+)] (52) [(+)] Any other organization, entity, or the State, its

20  branches, political subdivisions, or agencies as may

21  be authorized by state law."

2023-2744 SB1230 CD1 SMA-2.docx                                    74



Page 75

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1    SECTION 13.  Act 30, Session Laws of Hawaii 2022, is

2  amended by amending section 5 to read as follows:

3      "SECTION 5.  This Act shall take effect upon its approval[~

4  provided that on June 30, 2025, section 2 of this Act shall be

5  repealed and section 134-3, Hawaii Revised Statutes, shall be

6  reenacted in the form in which it read on the day before the

7  effective date of this Act]."

8      SECTION 14.  Every provision in this Act and every

9  application of each provision in this Act is severable from each

10  other.  If any application of any provision in this Act to any

11  person or group of persons or circumstances is determined by any

12  court to be invalid, the remainder of this Act and the

13  application of the Act's provisions to all other persons and

14  circumstances shall not be affected.  All constitutionally valid

15  applications of this Act shall be severed from any applications

16  that a court determines to be invalid or unenforceable, leaving

17  the valid applications in force, because it is the legislature's

18  intent that all valid applications shall remain in force.

19      SECTION 15.  This Act shall be construed to be enforceable

20  up to but no further than the maximum possible extent consistent

21  with federal law and constitutional requirements.

2023-2744 SB1230 CD1 SMA-2.docx                                    75

4-ER-0778

Page 76

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   SECTION 16.  In codifying the new sections added by section

2   2 of this Act, the revisor of statutes shall substitute

3   appropriate section numbers for the letters used in designating

4   the new sections in this Act.

5       SECTION 17.  Statutory material to be repealed is bracketed

6   and stricken.  New statutory material is underscored.

7       SECTION 18.  This Act shall take effect on July 1, 2023;

8   provided that:

9       (1)   Sections 4 and 7 shall take effect on January 1, 2024;

10           and

11      (2)   The amendments made to section 846-2.7(b), Hawaii

12            Revised Statutes, by section 12 of this Act shall not

13            be repealed when section 28 of Act 278, Session Laws

14            of Hawaii 2022, takes effect on January 1, 2024.

APPROVED this   2nd   day of   June   , 2023

GOVERNOR OF THE STATE OF HAWAI'I

2023-2744 SB1230 CD1 SMA-2.docx                                    76

S.B. No. 1230, S.D. 2, H.D. 1, C.D. 1

# THE SENATE OF THE STATE OF HAWAI'I

Date:  May 2, 2023
Honolulu, Hawai'i  96813

We hereby certify that the foregoing Bill this day passed Final Reading in the Senate

of the Thirty-Second Legislature of the State of Hawai'i, Regular Session of 2023.

President of the Senate

Clerk of the Senate

128

**4-ER-0780**

SB No. 1230, SD 2, HD 1, CD 1

THE HOUSE OF REPRESENTATIVES OF THE STATE OF HAWAII

Date:  May 2, 2023
Honolulu, Hawaii

We hereby certify that the above-referenced Bill on this day passed Final Reading in the

House of Representatives of the Thirty-Second Legislature of the State of Hawaii, Regular

Session of 2023.

Scott K. Saiki
Speaker
House of Representatives

Brian L. Takeshita
Chief Clerk
House of Representatives

**4-ER-0781**

An Act paſſed by the General Aſſembly of the Province of *New-Jerſey* at *Trenton* in 1746, being the Nineteenth Year of His Majeſty's Reign.

## C H A P. LXXXIV.

*An ACT for better ſettling and regulating the Militia of this Colony of New-Jerſey, for the Repelling Invaſions and Suppreſſing Inſurrections and Rebellions.*

Sect. i. **WHEREAS** the Security of this Colony, and Preſervation of His Majeſty's Government over it, greatly depends upon the Militia being put into ſuch Methods as may make the ſame moſt uſeful for the Defence thereof, eſpecially at this

Preamble.

G 4                                    Time,

Digitized from Best Copy Available

EXHIBIT 2 (McLean)

4-ER-0782

302      The Nineteenth

Time, when His Majesty hath a juft War againft both *France* and *Spain* THEREFORE for the better Defence of this Colony, and the Honour of His Majefty.

BE IT ENACTED by the Governor, Council, and General Affembly, and by the Authority of the fame, That every Captain within this Colony, that already is, or hereafter fhall be appointed, fhall make a true and perfect Lift of all the Men that now do, or hereafter fhall dwell, within the Diftricts or Divifions of which they are or fhall be Captains, between the Age of Sixteen and Fifty Years (except the Gentlemen of His Majefty's Council, the Representatives of the General Affembly, Minifters of the Gofpel, the Civil Officers of the Government, and all Field Officers and Captains, that heretofore have, now do, or hereafter fhall bear fuch Commiffions, Phyficians, Schoolmafters, Millers, Ferrymen, bought white Servants, and Slaves) every one of which fo lifted, fhall be fufficiently armed with one good Musket or Fuzee well fixed, a Sword or Bayonet, a Cartouch-Box or Powder-Horn, three Charges of Powder, and three fizeable Bullets; who fhall appear in the Field fo armed twice a Year, *viz.* The firft *Monday* in *April*, and the fecond *Monday* in *October* (except the County of *Cape-May*, which fhall thus appear the third *Tuefday* in *April*, and the third *Tuefday* in *October*) at the Places appointed by their refpective Captains or fuperior Officers, and continue in Arms but one Day at each Time, befides at other fuch Times when they may be called together by an Order in Writing, under the Hand of the Captain-General, or Commander in Chief for the Time being, at fuch Places within each refpective County as fhall be by him appointed, to be taught the Ufe of their Arms. PROVIDED ALWAYS, That fuch Calling together in Writing, as aforefaid, fhall not exceed once in a Year, and faid Perfons to be kept in Arms but one Day at fuch Time, except in cafe of Alarms.

3. BE IT FURTHER ENACTED by the Authority aforefaid, That every Perfon fo lifted, that doth appear at the Times and Places abovefaid, fhall be, and are hereby fubjected to the Commands of their proper Officers; and upon Difobedience it fhall and may be lawful for the Captain or Commanding Officer to fine faid Offender or Offenders, any Sum not lefs than *One Shilling*, nor above *Ten Shillings*; and in Cafe of Delay or Refufal to

pay

Digitized from Best Copy Available

4-ER-0783

## Of GEORGE II.                    303

pay such Fine or Fines, then the said Captain, or Commanding-Officer, may make out his Warrant to one of his Serjeants or Corporals, commanding him to take to his Assistance one or more of the Soldiers under his Command, if Occasion should require, and take the Body of the said Offender or Offenders, and deliver him or them to the Gaoler of the said County, who is hereby required and commanded to take the said Offender or Offenders into his Custody, and keep him or them in close Gaol for such Time as shall be expressed in the Captain's Warrant, not exceeding three Days; and at the Expiration of said Time, or on Payment of the said Fine or Fines, then the said Offender or Offenders to be discharged, paying to the Gaoler *One Shilling* for his Fees, and no more.

4. AND BE IT FURTHER ENACTED by the Authority aforesaid, That no Officer shall beat or abuse any of the Soldiers whilst under Arms, on any such Days of Training as aforesaid: But if any Soldier shall during that Time use any reproachful or abusive Language towards any of his superior Officers, or shall quarrel himself, or promote any Quarrel amongst his Fellow-Soldiers, or appear in Arms disguised in Liquor, it shall and may be lawful for the Captain or Commanding Officer, to disarm such Soldier at the Head of his Company, and to set a Centinel over him during the Time of the Company's being in Arms, and no longer, or to fine him in Manner and Form aforesaid, as the said Captain or Commanding Officer in his Discretion shall think proper.

*Officers and Soldiers to behave well when under Arms.*

5. BE IT FURTHER ENACTED by the Authority aforesaid, That every of the Persons aforesaid, that appears at the Times and Places aforesaid, without the Arms and Ammunition aforesaid, shall forfeit and pay to their respective Captain, or Commanding Officer as followeth, *viz.* For want of a Musket or Fuzee, *Two Shillings*; if not well fixed *One Shilling*; for want of three Charges of Powder, and three sizeable Bullets, *One Shilling*; for want of a Sword or Bayonet, *One Shilling*: Which said Sums of Money, shall be applied by said Captain, to the Purchasing Drums and Colours for his Company.

*Penalties on appearing without Arms, &c.*

6. BE IT FURTHER ENACTED by the Authority aforesaid, That it shall and may be lawful for the Captain General, or Commander in Chief for the Time being, in Case of any Invasion, Insurrection, or Rebellion, to call so many of the Persons aforesaid together, for repelling the

*Power of the Captain General in Case of Invasion, &c.*

Digitized from Best Copy Available

304                    The Nineteenth

the Force of the said Enemy, or quelling the said Insur-
rection or Rebellion, or order such Detachments for the
common Defence as he shall think fit, to follow and pur-
sue the said Enemy into any of the neighbouring Govern-
ments for the Repelling or taking them Prisoners, and Pre-
servation of His Majesty's Subjects and Government.

*Power of Cap-*
*tains, &c. in*
*Case of Invasi-*
*ons, &c.*

7. AND BE IT FURTHER ENACTED by
the Authority aforesaid, That it shall and may be lawful,
and such Captains or other commanding Officers that have
near such Places where an Enemy may come, are hereby
required and commanded on any Descent or Invasion of an
Enemy, or on their Landing, or Danger thereof, to call all,
or so many of their respective Companies together as shall
be thought necessary to expel the said Enemy, and forth-
with attack them; or otherwise to do the best that lies in
their Power, to distress, stop, and hinder them in their in-
tended Invasion, or Plundering. And said Captains and
Commanding Officers are hereby further required and com-
manded, as soon as possible, to send Notice of such Descent
or Invasion, to the Governor or Commander in Chief for
the Time being.

*In Time of In-*
*vasion, &c. all*
*are subject to*
*Martial Law.*

8. AND BE IT FURTHER ENACTED
by the Authority aforesaid, That in Times of any Invasi-
on, Insurrection, Rebellion, or Alarm, as aforesaid, all the
Officers and Persons so enlisted, as aforesaid, that shall be
commanded to their Arms, by Order of the Captain Ge-
neral, or Commander in Chief, or other Officer or Officers,
during the Time or Times of such Invasion, Insurrection,
Rebellion, or Alarm, are hereby made Subject to the Pains
and Penalties of the Martial Law, so that the Punishment
do not extend to the taking of Life or Member.

*Governor may*
*appoint Mili-*
*tary Watches,*
*&c.*

9. AND BE IT FURTHER ENACTED
by the Authority aforesaid, That when the Governor, or
Commander in Chief for the Time being, in Time of Dan-
ger shall think fit to direct a Watch to be kept in any
Place or Places within this Colony, the Colonel, Lieute-
nant-Colonel, Major or other commanding Officer in each re-
spective County where such Watch shall be appointed to
be kept, to whom such Directions shall be signified, shall
issue out his Orders to the several Captains under his
Command, to appoint such and so many Men to appear
with their Arms, at such Times and Places as such Colonel,
or commanding Officer, shall appoint; which Watch so
appointed, shall be equally relieved by Order of the com-
                                                        manding

Digitized from Best Copy Available

## Of GEORGE II. 305

'manding Officer of said Company, and so equally through all the Companies of the said County. And every Person or Persons neglecting or refusing to appear himself, or to send 'a sufficient Man in his Room, to watch during the Time and at the Place appointed, shall forfeit the Sum of *Ten Shillings* for each Offence; and every Person that shall leave the said Watch until he is relieved by some other Person appointed to watch in his Room, shall forfeit *Forty Shillings*; which Forfeitures shall be recovered before any Justice of the Peace of the County where said Offence or Offences is or are committed, with Costs of Suit; one Half to the Informer who shall prosecute the same to Effect, the other Half to be paid to the Captain for the Uses hereafter mentioned, PROVIDED ALWAYS, That no Person or Persons shall be obliged to continue longer on the Watch than Twenty four Hours at one Time, any Thing in this Act to the contrary notwithstanding.

*Penalty on Persons neglecting to watch when appointed.*

*Time of continuing on the Watch, &c.*

10. AND such Watch, upon the Approach of an Enemy, or otherwise, shall make such Signals, and give such Alarms, as he shall be directed by the Officer appointing him; and every Officer or Soldier, upon hearing such Alarms, and seeing such Signals, shall obey such Orders for the repeating the same or calling together, or marching his Regiment, Troop, or Company, as he shall receive from his Officer, or Commanding Officer, in such Case.

*Watch to make Signals, &c.*

11. AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Person be appointed to be Serjeant, Corporal, or Drummer, and shall refuse said Office, or neglect or refuse to do any of the Duties required of them by this Act, he shall forfeit for each Offence the Sum of *Twenty Shillings*, to be recovered before any Justice of the Peace within the County where said Offence or Offences are committed, one Half to the Informer who shall prosecute the same to Effect, the other Half to be paid to the Captain for the Use hereafter mentioned. PROVIDED ALWAYS that none be appointed Serjeants, Corporals, or Drummers, but such as have or shall appear in Arms as aforesaid. PROVIDED ALSO, that no Person be fined but once for the Refusal of either of said Offices.

*Penalty on refusing to serve as Serjeants, Corporals, &c.*

12. AND BE IT FURTHER ENACTED by the Authority aforesaid, That every Person listed as aforesaid, within this Colony, and who hath, or shall appear

*Every Person entitled to be always provided with Arms, &c.*

H 4

306                    The    Nineteenth

pear in Arms as aforesaid, shall always be provided with one
good sufficient Musket or Fuzee, well fixed, a *Cartouch-Box
or Powder-Horn, one Pound of Powder, twenty-four sizeable
Bullets, three Flints, and a Sword or Bayonet in his House
or Place of Abode: And as often as any of the said Persons
shall be deficient in keeping the Arms and Stores afore-
said, he shall forfeit and pay to the Captain of the Com-
pany where such Offence is committed, the Sum of *Four
*Shillings* for the Use hereafter appointed. And each re-
spective Captain within this Colony, is hereby empower-
ed and required to order and appoint their Serjeants to ex-
amine the same once a Year.

*Penalty on De-
faulters.*

13.  A N D  B E  I T  F U R T H E R  E N A C T E D
by the Authority aforesaid, That every Person so listed
that shall not appear at the Times and Places aforesaid,
to be taught the Use of their Arms, shall forfeit and pay
the Sum of *Four Shillings* for each of the said Days Absence
to the Captain of the Company to which they belong, ex-
cept in Cases of Sickness or other reasonable Excuse, to be
allowed by the Captain, or Commanding Officer for the Time
being, of their respective Companies to which they belong.

*Penalty on Non
Appearance.*

14.  A N D  if any Person or Persons shall neglect or re-
fuse to pay each of their respective Forfeitures aforesaid,
the said Captain, or Commanding Officer, is hereby requi-
red and commanded, to issue out his Warrant to one of his
Serjeants or Corporals, to make Distress upon every such
Defaulter's Goods and Chattels, so neglecting or refusing
to pay as aforesaid;  P R O V I D E D  such Distress be
made in a reasonable Manner, and but once a Year for all
the Defaults committed that Year before the Time of such
Distress ; and shall expose the said Goods to sale by pub-
lick Vendue ; and after Sale thereof, pay the Forfeitures
to the Captains, as aforesaid, and return the Overplus, if
any be, to the Owner thereof, after deducting *One Shilling*
for his Trouble for each Distress, which he is hereby allowed
to take.  P R O V I D E D  A L W A Y S, That no such
Distress be made on the Arms and Ammunition the Persons
so listed are obliged to provide themselves with by this
Act.

*Forfeitures
how to be re-
covered.*

15.  A N D  B E  I T  E N A C T E D  by the Authority
aforesaid, That all the Fines and Forfeitures (except those a-
foresaid for purchasing Drums and Colours) shall be applied by
the Captain, or Commanding Officer of each respective Com-
pany,

*how to be ap-
plied.*

Digitized from Best Copy Available

**4-ER-0787**

## Of GEORGE II. 307

pany, for providing the Arms and Ammunition required by
this Act, for fuch Perfons fo lifted that fhall be adjudged
not to be able to provide themfelves with the Arms and Am-
munition aforefaid, in Manner hereafter mentioned. P R O-
VIDED ALWAYS, that it fhall and may be lawful
for the faid Captains or Commanding Officers, to retain in
their Hands *Fivs per Cent.* out of the Money fo levied and
applied.

16. AND BE IT FURTHER ENACTED
by the Authority aforefaid, That the Captain, Lieutenant,
and Enfign of each refpective Company, or any two of
them, fhall meet together at fuch Time and Place as faid
Captain, or the Commanding Officer for the Time being,
fhall appoint, within the Townfhip or Diftrict wherein he
is Captain or Commanding Officer, and then, and there,
adjudge which of faid Perfons fo lifted, are not able to
provide themfelves with the Arms and Ammunition afore-
faid. All which faid Perfons fhall be, and are hereby exempted
from the Fines and Forfeitures aforefaid, for not appear-
ing at the Times and Places aforefaid, until fuch Time
that they are provided for with Arms and Ammunition, or
until fuch Time that the faid Captain, Lieutenant, and
Enfign, or any two of them, fhall judge them able to pro-
vide Arms for themfelves.

*Perfons unable to provide Arms, exempted from Fines, &c.*

17. AND to prevent the faid Arms being fiezed by
an Enemy, or Perfons diffaffected to the Government, B E
IT ENACTED by the Authority aforefaid, That the
Arms and Ammunition aforefaid, that fhall be purchafed as
aforefaid, fhall be diftributed by each Captain, or Command-
ing Officer of each refpective Company, fo as there be lodg-
ed but two of fuch Muskets or Fuzees, and but one Pound
of fuch Powder, and twenty-four Bullets, in one Houfe,
in the Cuftody or Care of fome of the principal Free-
holders within faid Captain's Diftrict or Divifion. AND
upon Alarms or Muftering Days, the faid Arms fhall be
delivered to fuch Perfons to whom they were to be lent,
as aforefaid, with fuch a Quantity of Ammunition as is re-
quired of others to bring into the Field; and as foon as
the faid Alarm or Muftering Day is over, the Captain
fhall order the faid Arms to be returned to the Perfons
that had them in Keeping; with the Ammunition aforefaid,
only allowing fo much to be deducted as the faid Captain
fhall permit to be expended.

*Arms, &c. how to be diftribut-ed &c.*

18. AND

308        The Nineteenth

18. AND BE IT FURTHER ENACTED by the Authority aforesaid, That where young Men that dwell with their Parents or Masters, and listed as aforesaid, shall neglect or refuse to do the Duties required of them by this Act, then, and in that Case, their Fines and Forfeitures shall and may be levied out of their Parents or Masters Estate, any Law or Custom to the contrary in any wise notwithstanding: UNLESS the Captain, Lieutenant, and Ensign, or any two of them, as aforesaid, shall adjudge the said Parents or Masters not to be able to furnish the Son or Apprentice with the Arms and Ammunition required by this Act; then, and in that Case, the said young Men shall have such Arms and Ammunition lent them, as the Persons aforesaid have, and be also exempted from the Fines and Penalties for not appearing at the Times and Places aforesaid, until provided as before directed.

*Parents & Masters, to pay the Fines of Sons or Servants.*

19. AND WHEREAS several Persons have, or hereafter may list themselves as Volunties in unregimented Companies, and under pretence thereof, may say, that they are excused from doing the Duties required of them by this Act; which Practice, if admitted of, will much lessen the Number and Regulation of the Militia of this Colony, For Remedy whereof,

*Volunties in unregimented Companies not excused from Duty.*

BE IT ENACTED by the Authority aforesaid, That every Person or Persons that already hath, or hereafter shall list him or themselves into said unregimented Companies, shall be, and are hereby made Subject to the Commands of their proper Officers, and shall meet at the Times and Places appointed by this Act, to be taught the Use of their Arms, and provide themselves with such like Arms and Ammunition, as is required of others to provide, and do every other Matter, Duty, and Thing, required by this Act of others that serve in Regiments, under the same Pains and Penalties; any Law, Custom, or Usage to the contrary, in any wise notwithstanding.

20. BE IT FURTHER ENACTED by the Authority aforesaid, That if the Governor, or Commander in Chief for the Time being, shall think fit to grant Commissions for the Command of any Troops of Horse in this Colony, it shall and may be lawful for so many of the Persons inlisted by the several Captains aforesaid; to list themselves to serve in said Troop, or Troops of Horse, being able to provide themselves with the Troopers Accoutrements

*Foot Soldiers may list to serve in Troops of Horse.*

Digitized from Best Copy Available

## Of GEORGE II.    309

trements hereafter mentioned. And when the Commanding Officers of said Troop are ready, and shall exercise said Troop, then, and not before, the said Persons so listed in said Troop, shall be, and are hereby exempted from their Service in the Foot Companies.

21. BE IT FURTHER ENACTED by the Authority aforesaid, That said Troopers, being so inlisted, are hereby subjected to the Commands of their proper Officers, and, upon Disobedience, shall be under the same Fines and Penalties that the other Persons serving on Foot are: And also the said Troopers shall be under the same Fines, Penalties, Forfeitures, and Payments, for their not appearing at such Times and Places aforesaid, as the Foot-Men are by Virtue of this Act.

*Troopers under the same Penalties, &c. as Foot Soldiers.*

22. AND BE IT FURTHER ENACTED by the Authority aforesaid, That every Person so inlisted to serve in a Troop, shall be provided with a good Horse, a good Saddle and Bridle, Holsters and Case of Pistols, well fitted, Sword or Cutlass, Cartouch Box, and three Charges of Powder and Ball, and shall constantly appear so armed, at the Times and Places appointed for Muster and Exercise; and shall keep at his Place of Abode, besides the Arms and Ammunition abovesaid, a well fixed Carbine, with Bolt, Swivel, and Sling, half a Pound of Powder, and Twelve sizeable Bullets, and bring the same into the Field, when specially required, which the Captain, or Commanding Officer shall send one of his Serjeants to examine into once a Year.

*Troopers how to be provided.*

23. AND BE IT ENACTED by the Authority aforesaid, That each, and every of said Persons so listed in a Troop, that shall be deficient in Keeping the Arms and Stores aforesaid, at the Place of his Abode, shall forfeit and pay as follows, *viz.* For Want of a Carbine, *Two Shillings*; if not well fixed, *One Shilling*; for Want of a Bolt, Swivel, and Sling, *One Shilling*; for Want of Half a Pound of Powder, and Twelve sizeable Bullets, *One Shilling*. And every one of the said Troopers, that shall appear at the Places before appointed without the Arms and Accoutrements required, as aforesaid, he shall forfeit and pay as follows, *viz.* for Want of a good Horse, *Two Shillings*, for Want of a good Saddle and Bridle, *One Shilling*; for Want of a Case of Pistols, *One Shilling*; for Want of three Charges

*Penalties on Defaulters.*

I 4                                    of

Digitized from Best Copy Available

## 310                    The Nineteenth

of Powder, and three fizeable Bullets, *One Shilling*. All which Fines and Forfeitures fhall be paid to the Captain, as aforefaid, to be applied to purchafing Arms and Ammunition as aforefaid, for the Ufe aforefaid, and to be levied and accounted for in Manner aforefaid.

*Captains, &c.*
*to account for*
*the Fines they*
*receive.*
24. AND BE IT FURTHER ENACTED by the Authority aforefaid, That each Captain, or Commanding Officer of every Company in this Colony, fhall account for all fuch Fines and Forfeitures fo by him to be received, before any Juftice of the Peace, and the two Freeholders chofen in the faid Townfhip or Diftrict wherein he is Captain or Commanding Officer, by Virtue of an Act, entitled, *An Act for Raifing of Money, for Building and Repairing of Gaols and Court-Houfes*, at fuch Time and Place as the faid Juftice of the Peace fhall appoint. And if upon fuch Accounting it fhall appear, that any Captain or Commanding Officer fhall not have expended and laid out all fuch Fines and Forfeitures ( except thofe before excepted, for Drums and Colours ) in Purchafing Arms and Ammunition aforefaid ; then if faid Sum fhall appear to be *Five Pounds*, or under, it fhall, and may be lawful, (in cafe of Refufal or Neglect of the faid Captain or Commanding Officer, to pay the fame to the faid Juftice and Freeholders) for the faid Juftice of the Peace, and he is hereby required and commanded, to iffue his Warrant to any Conftable, commanding him to make Diftrefs upon the faid Captain's or Commanding Officers Goods and Chattels, and expofe the fame to Sale, by Publick Vendue ; and out of the Money arifing by fuch Sale, he fhall pay to the faid Juftice of the Peace and faid Two Freeholders, fo much Money as the faid Captain, or Commanding Officer, is found not to have laid out, returning the Overplus to the Owner, if any be, after deducting the lawful Fees, for the Warrant, Diftrefs, and Sale. AND if faid Sum exceed *Five Pounds*, then it fhall and may be lawful for the faid Juftice and Freeholders for the Time being, in their Names, to fue the faid Captain or Commanding Officer, in any Court where the fame is cognizable, by Action of Debt, to be recovered with Cofts of Suit, and applied by the faid Juftice and Freeholders, to the Purchafing the Arms and Ammunition aforefaid.

*Penalty on Re-*
*fufal or Ne-*
*glect.*
25. AND BE IT FURTHER ENACTED by the Authority aforefaid, That if any Captain or Commanding Officer, fhall refufe or neglect to Account as aforefaid,

Digitized from Best Copy Available

## Of GEORGE II.                                    311

faid, he fhall forfeit *Five Pounds* for every fuch Negleƈt or
Refufal, with full Cofts of Suit, to be recovered by Aƈtion
of Debt, by any Perfon that will fue for the fame, before
any Juftice of the Peace; the one Half to fuch Perfon or
Perfons that fhall profecute the fame to Effeƈt, the other
Half to be applied for Purchafing the Arms and Ammunition
aforefaid.

26. A N D  B E  I T  F U R T H E R  E N A C T E D
by the Authority aforefaid, That no Innholder, or any o-
ther Perfon or Perfons whatfoever, without Leave from
the Captain or Commanding Officer for the Time being,
fhall prefume to fell any ftrong Liquor, to any of the Per-
fons fo lifted, in fuch Days or Times that they are obliged
to appear in Arms, at the Place of Muftering or Training,
or within a Mile thereof, until after they are difmiffed for
that Day; and every Perfon or Perfons fo felling ftrong
Liquor, contrary to the Direƈtions of this Aƈt, fhall forfeit
the Sum of *Three Pounds*, to be recovered by any Perfon
that will fue for the fame, before any Juftice of the Peace;
the one Half to fuch Perfon as will profecute the fame to
Effeƈt, the other Half to be applied for Purchafing the Arms
and Ammunition aforefaid.

*No Perfon to fell ftrong Liquor near the Place of Muftering.*

*Penalty.*

27. A N D  B E  I T  F U R T H E R  E N A C T E D
by the Authority aforefaid, That no Summons, Warrant,
Writ, or other Procefs (unlefs at the Suit of the King) fhall
be ferved upon any Officer or Soldier on the Day or Days
of fuch Training and appearing in Arms as aforefaid, but
that all fuch Perfons fhall be free from Arreft, and have
Liberty and Privilege of going and returning to their re-
fpeƈtive Places of Abode, without Let, Suit, or Hind-
rance on thofe Days.

*No Writ, &c. to be ferved on Officers or Soldiers on the Day of Train- ing, &c.*

28. A N D  B E  I T  F U R T H E R  E N A C T E D
by the Authority aforefaid, That in Cafe there fhall be
Occafion for the faid Officers and Soldiers to pafs or repafs
any River, or Place where a Ferry or Ferrries are kept,
in going to, or returning from the Place of Training or
Appearing in Arms, as aforefaid, the Ferry-men, Owners,
or Keepers of all fuch Ferries, are to take and receive of
all fuch Officers and Soldiers only Half Ferriage, for fuch
carrying over and bringing back, all fuch Officers, Soldiers,
and their Horfes. A N D in Cafe any Ferry-man, Own-
er or Keeper of fuch Ferry or Ferries, fhall negleƈt to at-
tend, or refufe carrying or bringing back all fuch Officers or
                                                    Soldiers,

*Ferry-men to take but Half Ferriage of Soldiers on Muftering Days*

Digitized from Best Copy Available

**4-ER-0792**

## 312                    The Nineteenth

Penalty on Re-
fufal or Ne-
glect.

Soldiers, or their Horfes, as aforefaid, the faid Ferry-man,
Owner, or Keeper of fuch Ferry or Ferries, fhall forfeit
and pay the Sum of *Three Pounds* Proclamation Money, to
be recovered by the Captain or Commanding Officer of
fuch Company, in any Court in this Colony where the fame
is cognizable, and when recovered, to be applied to the
Purchafing of Arms and Ammunition, as aforefaid.

Limitation of
this Act.

29. AND BE IT FURTHER ENACTED
by the Authority aforefaid, That this Act fhall continue and
be in Force for one Year after the Publication hereof, and
from thence, to the End of the next Seffion of General
Affembly, and no longer.

N. B. *This Act is continued by feveral Acts of Affembly to
this Time.*

ACTS

Digitized from Best Copy Available

4-ER-0793

# BACKGROUNDS OF SELECTIVE SERVICE

# Military Obligation:

## THE AMERICAN TRADITION

*A Compilation of the Enactments of Compulsion*
*From the Earliest Settlements*
*of the Original Thirteen Colonies in 1607*
*Through the*
*Articles of Confederation 1789*

SPECIAL MONOGRAPH NO. 1
VOLUME II
PART 3. DELAWARE ENACTMENTS

THE SELECTIVE SERVICE SYSTEM

1947

EXHIBIT 3 (McLean)

## CLEARANCE COMMITTEE

Brig. Gen. Carlton S. Dargusch, *Chairman*

| | |
|---|---|
| Col. Victor J. O'Kelliher | Lt. Col. Arthur Boone |
| Col. Lewis F. Kosch | Lt. Col. Irving Hart |
| Col. William Hart | Mr. Kenneth H. McGill |

### PREPARED AND COMPILED BY

Lt. Col. Arthur Vollmer

GOVERNMENT PRINTING OFFICE

WASHINGTON : 1947

FOR SALE BY THE SUPERINTENDENT OF DOCUMENTS, U. S. GOVERNMENT
PRINTING OFFICE, WASHINGTON 25, D. C.

4-ER-0795

## ANNO VICESIMO NONO REGNI REGIS GEORGII SECUNDI

## AN ACT for establishing a Militia in this Government

WHEREAS the Subjects of the french King and their Savage Indian Allies have Contrary to the faith of the Most Solemn Treaties encroached upon and invaded his Majesty's Dominions on this Continent and have in the Most Cruel and Barbarous Manner Attacked and Murdered Great Numbers of his Majesty's Liege Subjects Inhabiting near the Fortiers of the Neighbouring Provinces and laid Waste a great Extent of Country. AND WHEREAS the Representatives of the free men of the Counties of Newcastle, Kent and Sussex on Delaware being Moved by a sense of Duty to his Most Excellent Majesty and being Concerned for the safety and security of their Constituents think themselves indispensably obliged—in this time of Danger to put—this Government into a Posture of Defence and make due Provision by Law that the Inhabitants may be trained and Exercised in the Art of War whereby they may not only be enabled to Assert the Just Rights and Vindicate the Honour of his Majestys Crown but also to defend themselves and their lives and Properties and Preserve the Many Invaluable Rights and Privileges that they enjoy under their Present Constitution and Government. They therefore pray that it may be enacted. And BE IT ENACTED by the Honourable ROBERT HUNTER MORRIS Esquire with his Majestys Royal Approbation Lieutenant Governor and Commander in Chief of the Counties of Newcastle kent and Sussex on Delaware and Province of Pennsylvania under the Honourable THOMAS PENN and RICHARD PENN Esquires true and Absolute Proprietaries of the Counties and Province Aforesaid by and with the Advice and Consent of the Representatives of the Freemen of the Said Counties in General Assembly met and by the Authority of the Same, *That every Male Person residing in this Government above Seventeen and under fifty years of Age* (Except bought Servants or Servants Adjudged to serve his Creditors) *shall* on or before the first day of May next *inlist himself or be inlisted* by his Parent or Master with the Captain or Officer that shall be appointed and Commissionated by the Governor and Commander in Chief for the time being in every Hundred or District within this Government where such Person shall live or sojourn *under the Penalty of five shillings and the further Penalty of Ten Shillings for every three Months he shall remain not Inlisted* in manner aforesaid and in Case any dispute Shall Arise about the age of any Person the same shall be determined by the Commanding Officer before whom such dispute shall happen by the oath or Affirmation of the Person whose age is in Question or the oath or Affirmation of his Parent or some other Credible Witness, which oath or Affirmation the said Officer is hereby Impowered to Administer and to determine Accordingly.

631 Del.—*Assembly, Pub. Archives Comm., Dover, Del.; Act 1756, typescript, pp. 1–6.*

10

2

AND BE IT FURTHER ENACTED by the Authority aforesaid, That *every such Male Person* (except such as in the Judgment of the Captain or other Commanding Officer of the Hundred or district in which he resides be Adjudged incapable by reason of his Poverty *shall* on or before the fifteenth day of May next *provide himself with one well fixed Musket* or fuzee with a Worm and priming wire one Cartouch Box with Nine Charges of Gun powder and Ball suitable therein and three good flints to be Approved of by the Commanding Officer of the respective Company to which he belongs, and shall keep such Arms and Ammunition by him, in good Order and fit for Service at all times during the Continuance of this Act under the Penalty of Twenty Shillings for want of a well fixed Musket or fuzee with a worm and priming wire and Two Shillings and Six Pence for the want of every Cartouch Box and two Shillings for the want of Nine Charges of Gun Powder and Ball and three flints or any of them.

AND BE IT FURTHER ENACTED by the Authority Aforesaid, That every such male person shall and are hereby Required to attend in their Proper Persons with the Arms, Amunition and Accoutrements aforesaid in Good Order and fit for Service at the respective Places of Meeting in each Hundred that shall be for that purpose Appointed by the Commanding Officer under whom they are inlisted Six times in every year That is to say on the last friday in the Months of May, July, September, October, March and April in the County of Newcastle and the Last Saturday in each of the said Months in the Counties of Kent and Sussex each day at the Hour of Twelve in Order to be taught and instructed in the Military Exercise and shall Continue under arms any time not exceeding Four Hours and Shall yeild due Obedience unto the Orders and Commands of their respective Officers, and every Person refuseing or neglecting to Appear on the Days and Times Aforesaid Armed in Manner aforesaid (unless he renders such a reasonable Excuse to the Said Commanding Officer as he shall allow and Approve of) or shall refuse or Neglect to Yield Obedience to the Orders and Commands of his Said Officers shall for every such default forfeit and Pay the Sum of five Shillings.

AND BE IT FURTHER ENACTED by the Authority Aforesaid That the Colonel of each respective Regiment within this Government or in Case of his Death or Absence the next Commanding Officer shall and May (if Occasion requires) once in every year direct the whole Regiment under his Command to meet at such Place as he shall appoint as Near the Center of each County as Conveniently may be in Order for a General Review of the Same and every Male Person in the said County under Fifty and above Seventeen Years of Age are hereby strictly required and enjoined to meet at the Place so Appointed with the Arms, Accoutrements and Ammunition above Mentioned in Good Order and then and there shall yield due obedience to the Orders of Such Colonel or Commanding Officer, and every Person refuseing or neglecting to Attend in Manner aforesaid (unless a reasonable Excuse shall be made to and allow'd of by such Officer) or shall refuse or neglect to yield Obedience to the Commands of such Officer Shall for every Such Default pay the sum of Seven Shillings and Six pence.

AND BE IT FURTHER ENACTED by the Authority Aforesaid that once in every year the Captains or in their Absence the next Commanding Officer of every Respective Company shall deliver to the Colonel or in his Absence to the next Commanding Officer of the Regiment for each County a muster Roll under his hand Containing the Names of all the Persons belonging to and enlisted in his Company under the Penalty of Three Pounds for Such Neglect And the said

11

3

Colonel or next Commanding Officer shall within Two Months next after the receipt of Such Roll send a Copy thereof under his hand to the Governor or Commander in Chief of this Government for the time being under the Penalty of Five Pounds.

AND BE IT FURTHER ENACTED by the Authority aforesaid That the Commander in Chief of this Government for the time being may and shall make and Establish Such Articles and Rules for the Regulating and Better Governing of the Militia of this Government while under Arms or in actual Service as he shall judge meet and expedient. PROVIDED ALWAYS that no Punishment to be inflicted by the said Articles or rules for the Breach thereof shall be otherwise than by fine not Exceeding Five Pounds or Imprisonment not Exceeding ten days and all Captains or other Commanding Officers are hereby required Publickly to read Such Rules and Articles so Made at the Head of his Company when and as often as they shall Meet to be Exercised in the Manner Above directed and every Persons inlisted shall yield due Obedience to and shall strictly Observe the Rules laid down in such articles under the Pain of incurring the Penalty's therein prescribed for the Breach thereof.

AND BE IT FURTHER ENACTED by the Authority aforesaid, That the fireing of four Muskets successively and distinctly and the Beating of a Drum or the fireing of Two Great Guns at four Minutes distance of Time and the Beating of a Drum shall be the Signals of and be deemed and taken to be an Alarm and the Commanding Officer of each Company who shall first have notice of an Alarm shall forthwith raise the Company under his Command and also send Immediate Notice and Intelligence thereof to the Commanding Officer of the next Hundred or District who shall in like Manner cause notice to be given to the next Commanding Officer and so on 'till general notice be given throughout the whole County and the Captains or other Commanding Officer of each respective Company shall march with his Company to such Place of Rendezvous as Shall be Appointed by the Colonel of his Regiment shall and are hereby impowered on such Occasions to impress Horses and Carriages as the service may require under the Penalty of Thirty Pounds for each and every such default or neglect and being degraded and thereafter rendered incapable of holding or exerciseing any Office Civil or Military within this Government; and every Lieutenant or Ensign upon such alarm neglecting or refuseing to join his respective Company and to do the duties of his Office shall forfeit and pay, the Lieutenant the sum of Twenty Pounds, and the Ensign the sum of ten Pounds and be also degraded and thereafter rendered incapable of Holding or exercising any Office Civil or Military within this Government.

AND BE IT FURTHER ENACTED by the Authority aforesaid that upon every such Alarm every person within this Government above the Age of Seventeen years and under the age of fifty and every Officer under the degree of a Captain shall and is hereby required Immediately to repair with the Arms and Accoutrements Aforesaid to the habitation of the Captain of the Hundred in which he resides or the Company in which he is inlisted unless some other place shall be appointed for that Purpose thereto Receive such Orders and March to such Place as he shall Appoint, and shall obey all such Commands as the said Captain or next Commanding Officer shall give and shall not depart from his Colours without leave of the said Officer first had and Obtained under the Penalty of five Pounds for each and every such Default and Offence.

AND BE IT FURTHER ENACTED by the authority aforesaid that if any field Officer of the respective Regiments in this Government in the time of an

12

4

alarm Invasion or Insurrection shall Neglect or refuse to do the duty of his Office such field Officer so Offending shall forfeit and pay for such offence, that is to say, a Colonel the sum of one Hundred Pounds, a Lieutenant Colonel the sum of Eighty Pounds and a Major the sum of Sixty Pounds and moreover shall be Cashiered and ever after rendered incapable of holding or exercising any Office Civil or Military within this Government and if any Person or persons except an Officer or some person by him impowered and directed shall Presume to make the signals of an alarm in Manner aforesaid within this Government he or they shall for such Offence forfeit and pay the sum of ten Pounds and for the Preventing any false alarms being made.

BE IT ENACTED by the authority aforesaid that from and after the first day of May next no person or persons shall presume to fire any small arms or guns from two Houres After Sun set until one Hour before sun rise unless in case of Invasion Desent or Insurrection or other Lawful Occasion under the Penalty of Twenty Shillings for every such Offence and that no Captain, Master or Commander of any Ship or other Vesel within any Port or harbour in this Government shall fire or suffer to be fired any Great Guns or small Arms on Board such Ship or other Vesel Within the times aforesaid under the like Penalty of Twenty Shillings.

AND BE IT FURTHER ENACTED by the authority aforesaid that if any person or Persons either Officers or Soldiers shall be wounded or disabled upon an Invasion or in any Military Service under this Act he or they shall be taken Care of Supported and Maintained according to his Rank and Dignity at the Publick Charge of the County to which he or they Belong during the time of his or their Disability.

AND BE IT FURTHER ENACTED by the Authority aforesaid that no person or Persons by this Act directed and required to meet and Muster at the Days and times aforesaid shall be liable to be arrested or taken by any sheriff, Constable or other Officer in any Civil Action.,—whatsoever on the day of such meeting or in any reasonable time either in going to Continuing at or returning from such place or places of Meeting but every such arrest shall be ipso facto Void and the officer making the same shall be liable to an Action of Trespass for false Imprisonment at the Suit of the Party so Arrested Contrary to the Directions of this Act and the Said Party shall be forthwith set at liberty and discharged from the Custody of such Officer by order of any two Justices of the Peace of the County where such Arrest is made and the arms, Ammunition and Accoutrements aforesaid of every person required by this Act to provide and keep the same for Military Service shall be and are hereby declared to be exempt and priviliged from all distress, Executions, Extents, Attachments or other Process whatsoever and any Civil Officer destraining siezing, Attaching, or taking the same in Execution shall forfeit and pay the sum of Twenty Shillings to the Partie Grieved and any Sale thereof by him shall be Null and Void.

AND BE IT FURTHER ENACTED by the authority Aforesaid that no Captain or other Officer shall Appoint any place of Meeting for his Company (town Companys only Excepted) within the Distance of half a mile of any Inn or Tavern under the Penalty of Forty Shillings for every such Offence and that no person or persons shall presume to keep a Booth or tent or expose to sale at or Bring on any Pretence whatsoever any strong Liquor to such place of Meeting under the Penalty or Forty shillings for every such offence.

AND BE IT FURTHER ENACTED by the Authority aforesaid that the Several Treasurers of the respective Counties in this Government shall at the

13

5

Public Expence provide for each Company in the said Counties not already furnished or provided therewith one good Drum a pair of Colours and two Halberts, which expence and Cost is hereby ordered to be raised and Levy'd by the Levy Courts of the Several Counties at the usual time of Laying the Levy's and raised in the manner as other County rates and Levys are.

AND BE IT ENACTED by the Authority aforesaid that each Captain shall nominate and appoint a proper and Capable person out of his Company to be his Drummer and in Consideration of such Service he shall be and is hereby declared to be exempted from providing himself with the arms and accoutrements required of every other person by this Act.

AND BE IT FURTHER ENACTED by the Authority aforesaid That all Supream Judges, all Justices of the Peace, Prothonitarys, Registers, Lawyers, Physicians, Surgeons all Persons who have Acted as Commissioned Officers under any former Militia Law of this Government, one Miller to every Grist Mill and every keeper of a Publick Goal within this Government Shall be and are hereby declared to be free and exempt from actual Military duty or service whatsoever except on a General alarm or in the time of Actual Invasion at which times they shall appear and do duty in the same manner as other persons are Directed and required by this Act under the Like Penalty's imposed herein on other Offenders.

PROVIDED ALWAYS that nothing herein Contained shall be deemed or Construed to exempt such persons from Providing and keeping at all times by them fit for service such Arms ammunition and Accoutrements as others are required to do under the Penalty for forfeiting and paying for every such offence the sums imposed on other Delinquents and all ministers of the Gospel as well Quakers as others are hereby exempted freed and discharged from all and every the Duties and services required of others by this Act.

AND BE IT FURTHER ENACTED by the authority Aforesaid That the several fines and forfeitures mentioned in this Act due from any Person under the Degree of a Commissioned Officer that do not exceed the Sum of Twenty Shillings shall be paid by the Person or persons offending to the Captain of the Company of the Hundred or District in which such person lives within ten days after the Commission of such offence and shall be applied by the said Captain towards the Purchasing Arms Ammunition and accoutrements for such persons in the said Company as shall not (in the Judgment of the said Captain) be of ability to purchase the same and in Case of nonpayment of the said fines and forfeitures within the time aforesaid the same shall be recovered by Distress and sale of the offenders Goods and Chattles by Warrant under the hand and Seal of any one Justice of the Peace of the County wherein such fine or forfieture arises and in Case no goods or Chattles can be found then by Imprisonment of the Body of the said Offender untill payment made of the said fine and the said Captain shall settle an Account once in every year with the Colonel of the Regiment to which he belongs shewing what fines he hath received and how he hath disposed of the Same and all such fines and forfeitures as exceeding the sum of Twenty Shillings that shall not be paid to the Captain within the time of aforesaid shall be recovered by Warrant under the hands and seals of any three Justices of the Peace of the County in which the offence is Comitted and be disposed of in the Manner above directed and all fines by this Act imposed on any Commissioned Officer under the degree of a Colonel for a Breach or neglect of his duty shall be paid within the time above mentioned to Colonel of the Regiment to which such Officer doth belong to be recovered

14

6

by the said Colonel in any Court of Record within this Government by Action of Debt, Bill plaint or Information wherein no Essoin, Protection or wager of Law shall be allow'd nor any more than one Imparlance and shall be applied by the said Colonel to the Purchasing of Arms, Ammunition and Accoutrements for such Company or Companies as may stand most in need of the Same and from the time of such Conviction Such Officer shall be and is hereby declared to be Incapable thence forth from holding, enjoying or exercising any office Civil or Military within this Government and each respective Colonel shall annually account with the Assembly of this Government for all fines by him recovered and applied in Manner Aforesaid and all fines by this Act Imposed on a Colonel for a Breach or Neglect of his Duty to be paid by him within the time aforesaid to the County Treasurer for the time being of the County in which he resides to be recovered in the manner and form last above Mentioned and applied by the Said Treasurer to the Purchasing of arms Ammunition and Accoutrements for such Company or Companys as the Lieutenant Colonel and Major of the said Regiment shall direct and appoint and the said Treasurer shall annually account with the Assembly of this Government for such fines so recovered and Applied.

AND BE IT FURTHER ENACTED by the Authority aforesaid that if any Justice or Justices of the Peace within this Government shall refuse or Neglect to issue Warrants in Manner aforesaid on Application to him or them for that [use] made by the Proper Officer or if any Colonel or Captain or other Commanding Officer shall thro' favour [or] partiality neglect or refuse to re-cover and receive the fines and forfeitures by this Act imposed on persons Offending against the same or any part thereof and shall be thereof Convicted by the Testimony of two Credible Witnesses or the Confession of the Partie Offending before the Justices of the Court of Quarter Sessions for the County where such offence shall be Committed who are hereby Impowered and required in a summary way to hear and Determine the same he or they so Offending shall forfiet and pay the sum of four pounds to be Levyed with Costs by Process Issuing out of the said Court and such forfieture shall be applied to the use of the Poor of the County respectively.

AND BE IT FURTHER ENACTED by the authority Aforesaid that if any suit or Action shall be brought against an Officer Civil or Military for doing the duty enjoined or required of him or them by this act he or they may plead the General issue and give this Act in Evidence an if the Plaintiff in such suit shall discontinue his Action be non suited or a Verdict shall Pass against him or Judgment be given against him on Demurrer, he shall pay to the Defend-ant Treble Costs.

AND BE IT ———— ENACTED by the Authority aforesaid that this Act shall continue and be in force for the Term of one Year and from thence to the end of the next Sessions of Assembly and No longer.

Sign'd by Order of the House

Newcastle March 24th 1756 I assent to this Bill enacting the same and order it to be enrolled

Rob<sup>t</sup> H. Morris

I DO hereby Certifie that the above and foregoing Seven Sheets is a true Copy Compared with the Original at Newcastle WITNESS my hand and Seal this Thirtieth day of March Annoq. Domini 1756.

Rich<sup>d</sup>. M; William.

15

733966 O - 47 - 2

**4-ER-0801**

BACKGROUNDS OF SELECTIVE SERVICE

# Military Obligation:

## THE AMERICAN TRADITION

*A Compilation of the Enactments of Compulsion*

*From the Earliest Settlements*

*of the Original Thirteen Colonies in 1607*

*Through the*

*Articles of Confederation 1789*

SPECIAL MONOGRAPH NO. 1

VOLUME II

PART 5.  MARYLAND ENACTMENTS

THE SELECTIVE SERVICE SYSTEM

1947

EXHIBIT 4 (McLean)

4-ER-0802

## CLEARANCE COMMITTEE

Brig. Gen. Carlton S. Dargusch, *Chairman*

| | |
|---|---|
| Col. Victor J. O'Kelliher | Lt. Col. Arthur Boone |
| Col. Lewis F. Kosch | Lt. Col. Irving Hart |
| Col. William Hart | Mr. Kenneth H. McGill |

## PREPARED AND COMPILED BY

Lt. Col. Arthur Vollmer

GOVERNMENT PRINTING OFFICE

WASHINGTON : 1947

FOR SALE BY THE SUPERINTENDENT OF DOCUMENTS, U. S. GOVERNMENT
PRINTING OFFICE, WASHINGTON 25, D. C.

4-ER-0803

450   *Assembly Proceedings, Feb. 23–May 22, 1756.*

<div style="float:left">L. H. J.<br>Liber No. 48<br>May 22<br><br>p. 298</div>

An Act for regulating the Militia of the Province of Maryland.

Whereas in this Time of Imminent Danger it is requisite for the Defence and Security of this Province that the Militia thereof be duly regulated and well Armed as well to repell the hostile Attempt of foreign Invaders as to quell and Suppress any intestine Commotions Rebellions or Insurrections which may happen.

Be it therefore Enacted by the Right honourable the Lord Proprietary by and with the Advice and Consent of his Lordships Governor and the Upper and Lower Houses of Assembly and the Authority of the Same that every Male Inhabitant of this Province (Papists, the Persons commonly called Neutralls, Servants, and Slaves excepted) who shall be from the Age of Sixteen Years to the Age of Sixty Years and able to bear Arms at the Expiration of Ten days after the Publication of this Act in the County wherein he shall reside shall inlist with the Captain or next Commanding Officer of the Troop of Horse or Company of Foot in the District or Place where such Person shall reside by writing his name or making his Mark (as he shall be able) in a Roll to be Entituled and kept for that Purpose within Ten Days from and after the Publication of this Act as aforesaid under the Penalty of forty Shillings Current Money and the Same Penalty for every Thirty days Neglect or Omission thereafter and all Captains within this Province are hereby directed and commanded to take due Care to Inlist accordingly all such Persons as aforesaid and in Case of dispute whether any Person ought to inlist in respect of his Age the Same Shall be determined by the Officer before whom Such Dispute Shall happen by the Oath of the Person whose Age shall be in Question or the Oath or Affirmation (if a Quaker) of his Parent or some other credible Witness which Oath or Affirmation the Said Officer is hereby authorized to Administer.

And Be it further Enacted by the Authority aforesaid that all and every Male Person and Persons (except as above excepted) who shall attain his or their Age of Sixteen Years or come into and Settle in this Province after the Expiration of the aforesaid Ten Days from and after the Publication of this Act and be of the Age aforesaid Shall within Ten days after his or their attaining their Said of Sixteen Years or Twenty Days after his or their Arrival within this Province inlist in the manner aforesaid under the Penalty of Forty Shilling Current Money and the Same Penalty for every Thirty days Neglect or Omission hereafter so to inlist as aforesaid.

And be it Enacted by the Authority aforesaid that the Colonels or Commanding Officers of all Regiments Troops and Company's shall in Ten days after the Publication of this Act in their respective Counties and once at least in every Two Months thereafter issue

367. Md.—*General Assembly (Lower House)*, Annapolis; Arch . . . *Vol. 52,* Pleasants, *1935; Act, May 22, 1756, pp. 450–474.*

*The Lower House.*                                   451

their Warrants to their inferiour Officers directing them to make    L. H. J.
diligent Inquiry in their respective Districts whether all Persons    Liber No. 48
have inlisted according to the Directions of this Act and to return    May 22
the Names of all Defaulters in that behalf to the end that they may
be punished according to this Act and the Colonel or Commanding
Officer Neglecting his Duty herein shall forfeit and pay the Sum of
Twenty Pounds Current Money for every Neglect and the inferiour
Officer charged with the Execution of such Warrant for every
Neglect of his Duty herein shall forfeit and pay the Sum of five
Pounds Current Money And be it Enacted by the Authority afore-
said that all and every Person and Persons to be inlisted according
to the Directions of this Act Shall take the following Oath to wit
" I do swear that I will be faithful and bear true Allegiance to his
Majesty King George the Second and him I will defend to the
utmost of my Power against all Treasons traiterous Conspiracies
and Attempts whatsoever and I will do my best Endeavour to dis-
close and make known to the Governor or Commander in Chief for
the Time being of the Province of Maryland whilst I shall reside    p. 299
in the Said Province all Treasons and traiterous Conspiracies which
I shall know to be against his Said Majesty or his Successors and
I do further swear that I will to the utmost of my Power defend
Support and Maintain his said Majesty's Dominion in and over the
Said Province and also defend Support and maintain the Peace of
the said Province against all Invasions Rebellions and Insurrections
whatsoever and all these things I do plainly and Sincerely Swear
according to these express words by me Spoken and according to
the plain and common Sense and understanding of the Same words
without any Equivocation mental Evasion or Secret Reservation
whatsoever so help me God " And shall also repeat and Subscribe
the Test before a Magistrate of his County which Said Oath any
Magistrate who shall be required by the Captain or Commanding
Officer of any Troop or Company) is hereby Obliged to Administer
to every Person who shall inlist as aforesaid under the Penalty of
One hundred Pounds Current Money in Case of neglect so to do And
if any Person inlisted as aforesaid being required to take the Oath
aforesaid and repeat and Subscribe the Test aforesaid shall refuse
or wilfully neglect to do the Same then and in Such Case the
Magistrate aforesaid is required to Committ Such Person so neglect-
ing or refusing to the County Goal by his Warrant to be directed
to the Sheriff of that County and the said Sheriff is hereby required
and directed to receive and take into his Custody and Strictly to
confine Such Person so as aforesaid To him committed untill Such
Person Shall take the Oath aforesaid and repeat and Subscribe the
Test aforesaid and pay his Fees or pay the Sum of One hundred
Pounds Current Money to Such Sheriff together with his Fees and
if any Person who shall be so committed and discharged out of

84

452    *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22

Custody upon Payment of the aforesaid Sum of One hundred Pounds Current Money and Fees aforesaid Shall Presume to have or keep in his Possession or in his House or upon his Plantation or elsewhere any Fire-Arms or Ammunition Such Person Shall forfeit and pay the further Sum of One hundred pounds Current Money

And be it Enacted by the authority aforesaid that in Ten days after the Publication of this Act the Colonel or Commanding Officer of every Regiment Troop or Company in the Militia of this Province shall issue his Warrant to his inferiour Officers directing them to make deligent Search and Enquiry in their respective District what Arms and Ammunition shall be therein and return what Number of Arms and what Quantitiy of Ammunition they Shall on such Search and Enquiry find or discover and the Condition and kind of such Arms and Ammunition and who shall be possessed thereof distinctly in Writing under the Penalty of Twenty Pounds Current Money upon the Colonel or Commanding Officer aforesaid neglecting his duty in this Behalf and the Penalty of Five Pounds Current Money on the Inferiour Officer charged with the Execution of Such Warrant who shall neglect within five days after receipt of such Warrant to comply with his Duty herein and all and every Person and Persons shall on Demand produce his or their Arms and Ammunition to the Said Officers charged with the Execution of Such Warrants under the Penalty of Five Pounds Current Money for his or their every wilfull neglect or refusal so to do And Whereas on many Occasions Arms Ammunition and military Accoutrements of different Kinds have been delivered out of the public Magazines of this Province and are now dispersed among the Inhabitants and have been Sold or Sent from one to another and it is represented that the Locks have been taken of from many of the Said Arms and put to private Use therefore for discovering the Said Arms Ammunition and Military Accoutrements and Locks and rendering of Service towards Arming the Militia of this Province in this Time of common Danger Be it Enacted by the Authority aforesaid

p. 300

that the Captain of every Troop or Company of Militia shall within Ten Days after the Publication of this Act issue his Warrant to his Several Corporals to make diligent Inquiry within their Limits for all Arms military Accoutrements and Locks belonging to the Public and the Said Corporals are hereby required as soon as may be after receit of such Warrant to repair to the Habitation of every Housekeeper within their respective Limits and demand of him Such Arms Ammunition Military Accoutrements and Locks as he hath in his Possession belonging to the Public and immediately on Such Demand Such Person shall deliver the Same to the Said Corporals And the Said Corporals shall give Receits for all Such Arms Ammunition military Accoutrements and Locks as Shall be delivered

85

**4-ER-0806**

*The Lower House.*                    453

to them and Shall bring them from Time to Time to the next Muster after the Receit thereof and deliver them to the Commanding Officer who shall be there present, who shall give the Said Corporal a a Receit for the Same and Shall forthwith deliver them to the Colonel or Commanding Officer of the County, who shall give the Said Officer a proper Receit for the Same and Such and so much of the Said Arms Ammunition and military Accoutrements as are fit for Service Shall by the Said Colonel or Commanding Officer of the County be delivered to Such Persons of the Militia as are by this Act deemed unable to provide the Same.  And Such Arms and Military Accoutrements so delivered to him as Shall be unfit for Use the Said Colonel or Commanding Officer of the County Shall have mended and made fit for Use as soon as Possible and delivered out as aforesaid and his reasonable Charge for the Same shall be allowed in next County Levy.

And be it further Enacted by the Authority aforesaid that every Person of whom any Arms Ammunition military Accoutrements or Locks belonging to the Publick Shall be demanded as aforesaid refusing to deliver the Same as before directed immediately on Such Demand Shall forfeit and pay treble the Value of Such Arms Ammunition military Accoutrements and Locks with Costs to be recovered in a Summary Way before any Magistrate of the County wherein Such Person Shall reside And in Case any Justice of the Peace Shall by any means be informed or Suspect that any Person hath in his or her Possession any arms Ammunition military Accoutrements or Locks belonging to the Publick after such demand made by the Corporal as aforesaid he shall issue his Warrant immediately to Such Corporal or his Successor to Seize and take Such Arms Ammunition military Accoutrements and Locks and bring them together with Such Person before him and in Case it Shall appear that the Same do belong to the Publick the Said Person Shall forfeit and pay Treble the Value thereof and moreover the Said Justice shall order the Said Corporal to keep Safe deliver them up as before directed and Shall give Judgment against Such person to pay Such Corporal two Shillings and Six pence Current Money And if any Dispute Shall arise at any Time whether any Arms Ammunition military Accoutrements or Locks do belong to the Publick or not the Onus probandi shall lie on the Person in whose Possession the Same Shall be

And be it further Enacted by the Authority aforesaid that every Colonel or Commanding Officer of the County and every other Officer above the Degree of a Captain who shall neglect his Duty by this Branch of this Act shall forfeit and pay the Sum of Twenty Pounds Current Money for every Such Neglect every Captain or Commission Officer under the Degree of a Captain the Sum of Five Pounds and every Corporal the Sum of two Pounds ten Shillings,

L. H. J.
Liber No. 48
May 22

p. 301

86

454     *Assembly Proceedings, Feb. 23–May 22,* 1756.

L. H. J.
Liber No. 48
May 22

And be it further Enacted that all Arms Gunpowder and Ammunition of what kind soever any Papist or reputed Papist within this Province hath or shall have in his House or Houses or elsewhere shall be taken from Such Papist or reputed Papist by Warrant under the hand of one Justice of the Peace for the County wherein such Papist or reputed Papist shall be Resident and that the said Arms and Ammunition so taken Shall be kept in Such Place as the Said Justice shall appoint.

And be it further Enacted that if any Such Papist or reputed Papist having or which Shall have any Armes Gunpowder and Ammunition or any of them shall refuse to declare or manifest the Same to the Said Justice of the Peace or to any other Person Authorized by the Warrant of the Said Justice to take and Seize the same then every Such Person so Offending shall forfeit and lose the Said Armour Gunpowder and Ammunition and Shall also be imprisoned by Warrant of or from the Said Justice for the Space of three Months without Bail or Mainprize.

And be it further Enacted by the Authority aforesaid that the Captain or Commanding Officer of every Troop or Company shall deliver to the Colonel or Commanding Officer of his County in Twenty days after the Publication of this Act a true and compleat Roll under his hand containing the Names of all the Persons belonging to and inlisted as aforesaid in his Troop or Company and their respective Ages distinguishing therein Such as shall be provided with Arms from such as Shall not under the Penalty of Ten Pounds in Case of Neglect or Omission thereof And the Said Colonel or Commanding Officer of the County Shall forthwith after the Receipt of Such Roll deliver or Send the Same (keeping a Copy thereof) to the Governor or Commander in Chief for the Time being under the Penalty of Twenty Pounds Current Money in Case of neglect or Omission thereof

And be it Enacted by the Authority aforesaid That the Captain or Commanding Officer of every Troop or Company shall besides the general Roll herein before mentioned make a particular Roll containing the Names of all Persons inlisted as aforesaid in the Troop or Company who Shall be from the Age of Eighteen to the Age of Thirty five Years and in Such Roll insert the Names of Such Persons in Such Order as shall be determined by Ballot or lott for that Purpose to be taken or drawn by the Said Persons in Twenty Days after the Publication of this Act and forthwith thereafter return a true Copy of such Roll to the Clerk of the County wherein he shall reside to be recorded by such Clerk who is hereby directed and required to record the Same without Fee or Reward under the Penalty of Twenty Pounds Current Money on the Captain or Commanding Officer aforesaid or Clerk of a County who shall neglect

87

*The Lower House.*   455

or omit to do the Same.  Provided always that in Case any of the
Persons aforesaid of the Militia from the Age of Eighteen to the
Age of thirty five Years Shall on covenient Notice for that Pur-
pose given either by a Personal Service of Such Notice or leaving
the Same in Writing at his usual Place of Habitation refuse or
neglect to take or draw Such Ballott or Lott as aforesaid then and
in Such Case the Names of Such persons so refusing or Neglecting
shall be inserted in such Roll before the name of Every Person who
shall take or draw Such Ballott or Lott as aforesaid in Such Manner
and order as the Said Captain or Commanding Officer shall think
Proper  And be it Enacted by the Authority aforesaid that after the
Colonels or Commanding Officers aforesaid shall have received any
Arms belonging to the Publick they shall distribute the same to
and among Such Persons under their Command as Shall need or
want the Same every Such Person giving a Receipt for such Arms
and Paying or Securing to be paid in Nine Months after the Delivery
of Such Arms the first Cost thereof to the  Said Colonels or Com-
manding Officers unless Such Person will Swear that his whole
Estate real and Personal is not of the Value of forty Pounds Sterling
in which Case a Receipt only shall be taken from such Person And
the Colonels or Commanding Officers aforesaid are hereby required
and directed to take all the Receipts aforesaid in a Book by them
for that Purpose to be kept to the End that it always may appear
who have been provided with Arms and how the Said Colonels and
Commanding Officers have distributed the Arms received by them
for the Purpose aforesaid

And be it Enacted by the authority aforesaid that after the Decease
of Such Person to whom Arms Shall be delivered on his Receipt only
as aforesaid or Incapacity from Age Infirmity or otherwise to Serve
in the Militia the Person into whose Possession the Arms of Such
Person as aforesaid Shall come or he Shall deliver the Said Arms
respectively to the Commanding Officer of Such deceased or in-
capapacitated Person under the Penalty of Five pounds Current
Money on Failure thereof for the Space of Twenty days after the
Incapacity or decease of Such Person.

And be it Enacted by the Authority aforesaid that every Colonel
or Commanding Officer to whom Arms shall be delivered as afore-
said shall again deliver the Same to Such Person or Persons under
his command as may want them and have not an Estate as afore-
said of the Value of forty pounds Sterling and shall once every
Three Months at least transmit an Account of the Same to the
Governor or Commander in Cheif for the Time being distinguishing
from whom and at what Time he received the Same and to whom
by him delivered again and the Colonel or Commanding Officer for
Default of his Duty by this Clause required Shall forfeit and pay

L. H. J.
Liber No. 48
May 22

p. 302

88

456    *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22

the Full Value of Such Arms and also the further Sum of Twenty Pounds Current Money And be it Enacted by the Authority aforesaid That no Arms whatsoever which shall be used by any Officer or private person of the Militia as the Proper Arms of Such Officer or private Person Shall be liable to the Satisfaction of any Debt whatsoever or be Seized or taken by or upon any manner of Distress writ of Execution or any Process whatsoever (except that of Attachment upon the Actual running away or absconding of Such Officer or private Person who shall find his Arms at his own proper Cost and Expence) and every Distress Seisure Execution or Process (except as aforesaid) made or Served upon Such Arms Shall be deemed to be void and the Person Serving or Executing the Same liable to the Suit of the Party Aggrieved wherein treble Damages and Costs shall be recovered and moreover Such Arms shall be Seized by the Order of the Commanding Officer of the Person to whom such Arms Shall belong for the Use of the Owner or Proprieter thereof.

And be it Enacted by the Authority aforesaid that it Shall and may be lawful for the Colonel or Commanding Officer aforesaid upon Notice or Information that any Person who shall receive Arms upon his Receipt only without paying or Securing to be paid as aforesaid the first Cost thereof hath Sold or otherwise disposed thereof to Seise or Order Such Arms to be Seised whether in or out of the County and the Person who shall receive Such Arms upon Such Sale or Disposition Shall forfeit and pay the Sum of Ten Pounds Current Money and the Person Selling or disposing thereof shall forfeit and pay the like Sum of Ten Pounds Current Money.

And be it also Enacted by the Authority aforesaid that if any Person to whom Arms Shall be delivered as aforesaid on his Receipt

p. 303

only without his paying or Securing to be paid the first Cost thereof as aforesaid Shall abscond and carry away his Said Arms Such Person shall forfeit and pay the Sum of Five Pounds Current Money. And be it Enacted by the Authority aforesaid that all and every the Officers and private Men (being inlisted as aforesaid) of the Militia of this Province Shall form into Regiments Troops or Companys as the Governor or Commander in Chief for the Time being shall order and appoint under the Penalty of Forty Shillings Current Money upon each Person who shall refuse or Neglect to do the Same in pursuance of Such Order or Appointment and the same Penalty for every Thirty days Neglect thereafter. Provided always that the Troops of Horse in Each County Shall not exceed the Number of two or consist of more than thirty Six Troopers each (excluding Officers) And that no person shall be compellable to enter into any Troop of Horse who hath not a visible Estate of Five hundred Pounds Current Money to be adjudged in Case of Dispute by a Majority of the ffield Officers of the County.

89

*The Lower House.*                                    457

And be it Enacted by the Authority aforesaid that as much Gun-
powder and lead as can conveniently be spared Shall be taken out
of the Publick Magazine and transmitted in due proportions and
as the Same may be needed first to the Colonels and Commanding
Officers of the Frontier Counties of this Province then to the
Colonels and Commanding Officers of the other Counties respectively
to be distributed by them in just and equal Proportions to and among
the Persons under their Command so as that no more than one pound
of Gun powder and three pounds of Lead be delivered to any one
Person and in Case that after such Distribution any Surplus shall
remain the Said Colonels or Commanding Officers are hereby re-
quired to retain and keep the Same in their Possession to be disposed
of as herein after directed  And be it further Enacted that if any
private Man of the Militia of this Province shall in the Course of
his Duty by the Command of his Superiour Officer expend any part
of the Quantity of Powder and Lead by this Act directed to be
brought by every Person to the Place of Muster it Shall and may be
lawful for such Superiour Officer and he is hereby required to deliver
to such Person a certificate of the Number of Charges so expended
directed to the Colonels and Commanding Officers of the County
in which Such Person resides and such Colonels and Commanding
Officers or any of them in whose hands any Surplus shall be as
aforesaid shall immediately on such Certificates being produced
deliver to Such Person the Quantity of Gunpowder and Lead therein
Mentioned.  Provided always that no Gunpowder shall at any Time
be expended in training unless by the Order and Direction of the
Colonel or Commanding Officer of the County.

And be it further Enacted by the Authority aforesaid that in Forty
days after the Publication of this Act the Several Companies in
each Regiment and the Troop of Horse shall meet at Such Place or
Places in their respective Counties as Shall be appointed by the
Colonels or Commanding Officers of the Said Counties to be then
and there formed into Regiments Troops or Companys in Such
Manner and under Such Officers as the Governor or Commander
in Chief for the Time being Shall Order appoint or direct and every
Troop and Company Shall thereafter be exercised and trained by
their respective Captains or Next Commanding Officer once in every
Thirty days or oftner if directed by the Colonel or Commanding
Officer of the County except between the fifth day of November and
the tenth of February during which Time they shall be exercised and
trained at such times only as the Said Colonel or Commanding Officer
shall appoint and direct and every Person of the Militia (inlisted
as aforesaid) who shall fail to attend at the Place to be appointed
as aforesaid for the Purpose aforesaid Shall forfeit and pay the
Sum of Five Pounds Current Money and shall nevertheless be
trained and exercised in the Company or Troop to which he shall

L. H. J.
Liber No. 48
May 22

458    *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22
p. 304 be nominated or appointed in the Same Manner and under the same Penalties as if he were personally present at such Nomination or appointment

And be it further Enacted by the Authority aforesaid that Once in Six Months from and after the Publication of this Act if command be given for that purpose by the Governor or Commander in Chief for the Time being and command be given by the Colonels or Commanding Officers of the Respective Counties the Several Companies in each Regiment and the Troops of Horse and foot Companies shall meet at such Place or Places in their respective Counties as shall be appointed to be there trained and exercised by the Field Officers of their respective Countys  And be it Enacted by the Authority aforesaid that every Person to be inlisted as aforesaid and provided with proper and Suitable Arms to be determined by his Commanding Officer and to whom his proportion of Gunpowder and Lead Shall be delivered as aforesaid shall appear at Muster when duly warned so to do with his Arms in good Order and nine Charges of Gun-powder and nine Sizeable Bulletts under the Penalty of Ten Shillings for every Neglect or Omission thereof  And be it also Enacted by the authority aforesaid that every Person inlisted as aforesaid and to whom Powder and Lead shall have been delivered as aforesaid Shall at all Times after Such Delivery have at his Habitation or place of abode one pound of good Gun-powder and three pound of Sizeable Bulletts or such Quantitys as were delivered to him under the Penalty of Twenty Shillings Current Money for Neglecting to have the Same and also the further Penalty of Five Shillings Current Money Week thereafter that Such Person shall neglect to have the Same and if any Such Person shall on demand at any Time between Sun Rise and Sun Sett neglect or wilfully refuse to show his Captain or other Person Sent by him his Arms and Ammunition aforesaid the Person so neglecting or refusing shall be deemed to be unprovided therewith and Shall forfeit accordingly.

And be it Enacted by the Authority aforesaid that every Trooper whilst on Duty Shall be provided with a good Serviceable Horse with a good Saddle a pair of good Pistols a good Sword or Hanger half a pound of Gun-powder and twelve Sizeable Bulletts and a Carbine well fixed with a good Belt Swivel and Buckett [sic] under the Penalty of fforty Shillings Current Money for his wilfull neglect thereof  And be it Enacted by the Authority aforesaid that the Colonel or Commanding Officer who shall fail or omit to order out and Muster the Militia as by this Act is directed shall forfeit the Sum of Twenty Pounds Current Money and every other Officer who shall fail or omit to do his duty at any training or Muster by this Act directed shall forfeit the Sum of Five Pounds Current Money

91

*The Lower House.*                                459

And be it further Enacted by the Authority aforesaid that the $\quad$ L. H. J.
Clerk or some other Officer of every Troop or Company shall by $\quad$ Liber No. 48
Order of the Captain or Commanding Officer of Such Company $\quad$ May 22
that Shall be present on every Muster day as soon as such Troop or
Company Shall be drawn up and before they proceed to exercise read
distinctly and with an audible Voice at the head of Such Troop or
Company the Several Clauses in this Act relative to the Duty of
every private Man of the Militia whilst under Arms or in exercise
or on the Days of training or in Actual Service under Penalty of the
Sum of Five Pounds Current Money to every Captain or Com-
manding Officer who shall not give Such Order And fforty Shillings
Current Money to the Clerk or other Officer who shall not imme-
diately obey the Same

And be it Enacted by the Authority aforesaid that no private
Person of the Militia inlisted as aforesaid being thereunto appointed
by his Captain shall refuse or neglect to Serve as a Serjeant or
Corporal under the Penalty of fforty Shillings Current Money and
in Case any Serjeant or Corporal shall refuse or neglect to warn $\quad$ p. 305
the People to Appear under Arms when Ordered so to do by his
proper Officer he shall forfeit for every Such Neglect or Refusal
the Sum of Forty Shillings Current Money. And be it Enacted by
the Authority aforesaid that no Commissioned or non Commissioned
Officer in the Foot or Horse Shall be Subject or liable to Serve in
the Office of Constable any Law usage or Custom to the Contrary
notwithstanding And be it Enacted by the Authority aforesaid that
no Person Officer or Private Man of the Militia Shall be Subject
to any arrest Either Mesne Process or on Execution or in any other
manner for any civil Matter in his Attendance at going to or return-
ing from Muster or whilst imployed in any Duty or Service by this
Act directed or required And be it Enacted by the Authority afore-
said that all Persons belonging to the Militia Shall at Muster and
whilst on Duty execute and perform all their proper Services and
Obey the just Orders of their Respective Officers on pain of for-
feiting not exceeding the Sum of Forty Shillings Current Money
for every Neglect or Omission or being put under arrest according
to the Quality of the Offender or nature of his Offence. And be it
further Enacted by the Authority aforesaid that if any Officer or
private Man of the Militia shall at any Time whilst under Arms or
upon Duty abuse or take Revenge or Endeavour to take revenge
for any Matter or thing done by his Commanding Officer in Pur-
suance of his Duty by Virtue of this Act such Officer Shall forfeit
and pay not exceednig five pounds Current Money and every private
Person shall forfeit and pay not exceeding the Sum of forty Shillings
Current Money and be compelled under pain of Three days Im-
prisonment to acknowledge his Offence at the Head of the Company
Troop or Regiment to which he Shall belong And be it Enacted

92

460    *Assembly Proceedings, Feb. 23–May 22,* 1756.

L. H. J.
Liber No. 48
May 22

by the Authority aforesaid that any Person of the Militia who shall get drunk on any Muster-day before or at Muster shall forfeit the Sum of Ten Shillings Current Money and any Person who shall presume to vend Sell or Dispose of any Strong Liquor at any Place of training or at any other Place within Five Miles of any Place of training to any Person belonging to the Militia on any Muster day except between the Time of Discharge from such Training for that day and the Sun sitting thereof Such Person so vending selling or disposing of Such Strong Liquors Shall forfeit and pay the Sum of Five Pounds Current Money And no Person other than a licenced Ordinary Keeper shall vend Sell or dispose of any Strong Liquors to any Person whatever at such Time and Place aforesaid even between the Hours aforesaid under the Penalty of Five Pounds Current Money for every Such Offence and it Shall and may be lawfull for the Commanding Officer of the Party at such Muster and he is hereby directed and required to order the Strong Liquors of the Person so offending to be Siezed and Destroyed Provided always that nothing herein contained shall be construed to extend to any Merchant or licenced Ordinary-Keeper who shall vend Sell or Dispose of any Strong Liquors in his or her House the same not being to any Person of the Militia or any for the Use of Such Person And Be it further Enacted by the Authority aforesaid That every Papist above the Age of fourteen Years or any other Person refusing to take the Oaths appointed by Law to be taken to the Government which the Commanding Officer present shall administer and repeat the Test and Subscribe the same and the Oath of abjuration who shall be found at any Place and of Training or within View thereof, during the Time of Exercise Shall forfeit and pay Fifty Shillings Current Money and Shall by any Commission Officer then present be ordered to Depart and in Case such Papist or other Person shall not immediately on such Order depart out of View of such Place or after departing shall return again that day he shall

p. 306

forfeit and pay the further Sum of Five Pounds Current Money and be committed by a Magistrate and in Case no Magistrate Shall be present by the Commanding Officer present to the Custody of the Sheriff there to remain untill he shall give Sufficient Security for his good Behaviour for three Months and that he shall not be found at or within View of any Place of Training in the Time of Exercise till the Expiration of the Time aforesaid and if any Negroe or Mullatto Slave, except the Necessary Attendants of any Person who Shall be there and except any Slave who shall be found working on his Masters Plantation or passing by upon Some lawful Occasion Shall be found at any Place and day of Training or within View thereof after the hour appointed for meeting the Commanding Officer present shall order such Negro or Mullatto Slave to be whipped on his or her bare Back untill the Blood Shall appear with

93

*The Lower House.*                    461

any Number of Stripes not exceeding thirty nine and if Such Slave   L. H. J.
Shall be again found at any time and Place of Training as aforesaid   Liber No. 48
he or she Shall be whipped as aforesaid every Such time by order of   May 22
the Commanding Officer who shall be present with any Number
of Stripes not exceeding Forty nine. And Be it further Enacted by
the Authority aforesaid That if any of the late Inhabitants of Nova
Scotia commonly called French Neutrals shall be found at any
day and Place of training or within View thereof they Shall be
Immediately Order by the Commanding Officer present to depart
and if they Shall not without delay comply with Such Order the
said Commanding Officer is hereby required to Order such person
to be put under Arrest and carried away and detained out of View
of the Said Place of Training untill Sun Set that day And Be it
further Enacted that every Commission Officer who Shall know of
any Papist or any other Person who hath refused to take the Oaths
afores.[d] and repeat the Test and Subscribe the Same and the Oath
of Abjuration as afores.[d] or any late Inhabitant of Nova Scotia
or French Neutral or Negro or Mullatto Slave being at any day
and place of training as aforesaid and Shall not behave to Order
and direct about them respectively as in and by the three last pre-
ceding Clauses of this Act is directed Such Commission Officer shall
forfeit and pay if above the Degree of a Captain Twenty Pounds
Current Money, and if a Captain or below that Degree Five Pounds
current money. And Be it further Enacted by the Authority afore-
said that all Doubts or Disputes of or concerning Precedence or
Rank shall be Settled and Determined by the Governor or Com-
mander in Chief for the Time being or his Order or Appointment
And be it Enacted by the Authority aforesaid that in Case of Alarm
every Person belonging to the Militia of this Province upon Notice
thereof in any Manner shall immediately repair with with his proper
Arms or the best he has and with Nine Charges of Gun-powder and
nine Sizeable Bulletts at the least to his Colours or Parade under the
Penalty of Five pounds Current Money upon every private Man
who shall Neglect the Same which Parade shall be understood to be
the Habitation of his Captain or Comanding Officer unless it Shall
be otherwise ordered or appointed

   And Be it further Enacted by the Authority aforesaid that in Case
of any Alarm Invasion Rebellion or Insurrection all Officers of the
Militia Shall have full Power and Authority in their respective
Stations and they are hereby enjoined required directed and Com-
manded forthwith to raise the Militia under their Command and
to dispatch immediate Intelligence to their Commanding Officers
informing them in what Manner they intend to Act or proceed and
the Said Commanding Officers are hereby required and Commanded   p. 307
to Send forward the Said Intelligence to the Commanding Officers

        32

94

462    *Assembly Proceedings, Feb. 23–May 22, 1756.*

<div style="float:left">L. H. J.<br/>Liber No. 48<br/>May 22</div>

of the Next adjacent Counties And the Officers aforesaid Shall in the mean time keep the Militia under their Command under Arms and every Commanding Officer of a County upon any Alarm or receiving Intelligence of any Insurrection Rebellion or Insurrection Shall forthwith Dispatch an Express to the Governor or Commander in Chief for the Time being with a full Account thereof and shall therewith Signify how and in what manner he intend to Act or proceed and the Commanding Officer of every County with the Consent and Approbation of the Governor or Commander in Chief for the time being hath hereby full Power and Authority in the Time of actual Invasion Insurrection or Rebellion to impress Boats and Hands Horses Arms and Ammunition as the Service may require and shall draw together the Militia of the County and March them in Such place and places within this Province, as he Shall judge most Convenient for opposing the Enemy, or quelling or Suppressing any Rebellion, or Insurrection, and to Such Place and Places, within this Province, as shall be appointed or directed by the Governor or Commander in Chief, for the Time being And, every Field Officer who shall wilfully Neglect or refuse to perform his Duty herein required in the Time of Actual Invasion, Insurrection, or Rebellion, Shall forfeit the Sum of Two hundred pounds Current Money; and every Captain and other Commissioned Officer, for his neglect or Refusal to perform his Duty at such Time as aforesaid, Shall forfeit the Sum of One Hundred pounds Current Money, and every non-commissioned Officer and private Man of the Militia for his Neglect or Refusal to perform his Duty at such time as aforesaid, Shall forfeit the Sum of Ten Pounds Current Money. And be it further Enacted by the Authority aforesaid, That the respective Captains, and in Default of them, the Next Commanding Officers of the several and respective Companies, within the Counties nearest to any Place invaded, or where any Rebellion or Insurrection Shall happen, shall call together and Assemble their Companies, and forthwith March them, and Use their utmost Endeavours to oppose and drive off the Enemy, or quell or Suppress Such Rebellion, or Insurrection, If they Shall judge their Force to be Sufficient for that Purpose; nevertheless, the Said Captains or Commanding Officers, as aforesaid, Shall dispatch Such Express as aforesaid.

And Be it Enacted by the Authority aforesaid, That within Twenty Days after the Publication of this Act, every Master or Owner of every Indian, Negro Mullatto or other Slave, above the Age of Sixteen Years shall deliver or cause to be delivered, to the Captains of the Companies in the respective Districts wherein they Shall reside, a true List of all Such Slaves belonging to them, on pain of forfeiting the Sum of Twenty Shillings Current Money for Neglect thereof; from which List every Captain shall make three compleat

4-ER-0816

*The Lower House.*                463

Lists of the whole Number of Slaves returned to him, distinguishing therein the Sexes, Names, and numbers of the Slaves, belonging to Each Person, and Shall forthwith transmit one List to the Governor or Commander in Chief, for the Time being, one other List to the Colonel or Commanding Officer of the County, and retain the other List in his own Possession, under the Penalty of Five pounds Current Money in Case of Neglect or Refusal: and in Case of any Alarm, Invasion, Rebellion, or Insurrection, shall (if necessary) unless it shall be otherwise provided by his Commanding Officer appoint and leave a Detachment from his Company, to keep Guard in and preserve the Peace of his District.

And be it Enacted by the Authority aforesaid, That if any Negro, Indian, Mullatto, or other Slave, above the Age of Sixteen Years, Shall in the Time of actual Invasion, Rebellion or Insurrection, be found at the Distance of Two Miles or more from his or her Habitation or the Plantation to which Such Slave Shall belong without the leave or licence of his or her Owner or Overseer Such Slave, Shall be adjudged to be punished by whipping with any any Number of Stripes not exceeding thirty nine; on the bare back, by any Magistrate before whom Such Slave shall be carried manner aforesaid to arrest and take up such Slave in Order to his or her Examination and in Case Such Slave shall oppose or endeavour to escape from the Person having Such power as aforesaid to arrest Such Slave as aforesaid it shall and may be lawfull for any Magistrate and he is hereby required to issue his warrant on Complaint to him made to apprehend such Slave and upon Such Slave being brought before him to cause Such Slave to be punished by whipping on the bare back with any Number of Stripes not exceeding thirty nine as by the Said Magistrate Shall be adjudged any Law Usage or Custom to the Contrary notwithstanding And be it Enacted by the Authority Aforesaid, that it shall and may be Lawfull for any Colonel or Commanding Officer of any Regiment, Troop, Company, or Detachment, in the Time of actual Service in the time of Invasion Insurrection or Rebellion by and with the Consent and Approbation of the Governor or Commander in Chief, for the Time being, to impress and take up, or by warrant under his Hand, to Order to be impressed and taken up, necessary Provision, Sloops, Boats, or other Vessels, for the Transportation of the Militia over Rivers or Creeks or the main Bay of Chesapeak, within this Province; together with the Rigging, Tackle, Furniture, and Apparel, belonging thereunto, and also Carts, Waggons, Draught-Horses, and Oxen, and other Conveniences for the Land-Carriage of Provision, Arms, and Ammunition, from Place to place, within this Province; and Likewise any manner of Tools, Utensils, or Instruments, which Shall or may be wanted, and also to impress or take up, or order to be impressed or taken as aforesaid, fit and able persons to go in Sloops,

L. H. J.
Liber No. 48
May 22

p. 308

96

464     *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22

Boats, and other Vessels, aforesaid; and also Labourers, pioneers, and Artificers, who shall be thought usefull in the Service. Provided always, that it Shall not be lawfull to take up or impress all or any of the Articles afores.d without giving a Receipt for the Same, expressing therein the use or Service for which the Same Shall be impressed, or taken up, and a Certificate for what use or Service Such Labourers, Pioneers, or Artificers, shall be impressed, on pain of being Liable to the Action of the Party Aggrieved.

And be it Enacted by the Authority aforesaid, that no Officer of the Militia of this Province, Shall Surrender or resign any Commission which hereafter may be Granted, unless his Surrender or Resignation on Account of Sickness, or other Incapacity, Shall be accepted by the Governor or Commander in Chief, for the Time being or shall refuse or neglect to Qualify himself to act under this Law, on pain of being inlisted as a Private Man, and as such liable to the like Services and Penalties; and all Commissions granted to any Persons, which do or shall not confine them to any Corps in the County or Place wherein they shall reside, Shall be and are hereby declared to be null and Void, and no Officer Shall hereafter presume to act as Such, unless he hath or shall, before any Act done by him, as an Officer, take the Oaths to the Government as before directed, and Subscribe the Oath of Abjuration and repeat and Subscribe the Test, on pain of forfeiting the Sum of One hundred Pounds Current Money.

And be it Enacted by the Authority aforesaid that all Officers and private Men of the Militia after they Shall be deemed to be provided with proper and Suitable Arms Shall as often as directed by the Colonel or Commanding Officer of the County in their Attendance at Devine Service at their Parish Churches or Chapels bring with them their proper Arms in good Order with the same Quantity of Ammunition as is required at Muster by this Act under the Penalty of Ten shillings Current Money for their failure or neglect thereof.

p. 309

And be it further Enacted by the Authority aforesaid, that in Case a Detachment only shall be Ordered by the Governor or Commander in Chief from the Militia of any County, to act within this Province, in Conjunction with a Detachment from the Militia of another County, Such Detachment shall consist of the Persons whose names shall be inserted in the Roll, to be returned as aforesaid to the Clerk of the County Court; and the Persons to serve on Such Detachment, shall Serve in the Order in which their Names shall be set down or inserted in Such Roll Successively, and be subject to the Command of Such Officer or Officers as Shall, on Such Service be appointed for that Purpose by the Governor or Commander in Chief for the Time being which Said Commanding Officer shall be of the Militia of this Province and the Colonel or Commanding Officer of the Regiment, Company, or Troop, to which the Persons liable to

97

**4-ER-0818**

*The Lower House.*                                                465

serve on such Detachment as aforesaid shall belong, are hereby
authorized and required to impress and take up, or order to be im-
presed and taken up, proper and Suitable Arms for the Use of the
Persons to Serve on Such Detachment; and all and every Person
and Persons liable to serve on such Detachment, to be ordered as
aforesaid, who shall neglect or refuse so to do, or to find an able
Sufficient and well Armed Man to Serve in his Place or stead shall
forfeit and pay the sum of Twenty pounds Current Money for
every Neglect or Refusal.

And Whereas upon certain Emergencies in time of Invasion
Insurrection or Rebellion it may be necessary to keep Military Watch
and Ward: Be it therefore Enacted by the Authority aforesaid that
upon the Order or Direction of the Governor or Commander in Chief
for the time being for the keeping of Military Watch and Ward
every Person of the Militia of this Province Inlisted as aforesaid who
shall be warned by his Commanding Officer, or by his Order under
his hand, upon Such Service, Shall Serve on Such Watch, or find
a Sufficient and well armed Man in his Room, under the Penalty of
Five Pounds Current Money for every Neglect or Refusal; and
Commissioned Officers who shall be directed by their Commanding
Officer, shall keep such Watch in Person under the Penalty of Ten
Pounds Current for every Default or Neglect thereof; but Captains
shall not be obliged to Serve in Such Military Watch, unless the
Said Watch Shall consist of a Captains Guard, and upon all Sudden
Emergencies in time of Invasion, Insurrection, or Rebellion, upon
which a Military Watch may be immediately necessary, the Same
may be appointed by each Captain, and the Captain appointing the
Same shall Send immediate Intilligence thereof to his Commanding
Officer and of the Reasons why he appointed Such Watch and the
Said Commanding Officer is hereby directed to dispatch immediate
Intelligence thereof to the Governor or Commander in Chief for the
time being unless upon Enquiry he shall think Such Watch to be
unnecessary in which Case Such Commanding Officer Shall and may
direct the Same to cease, And Defaulters in this Case Shall be liable
to the Same Penalties as in the Case of a Military Watch established
by Order of the Governor or Commander in Chief.

And Be it further Enacted by the Authority aforesaid that any
Centry upon Guard, who shall Challenge any Person or Persons
three times distinctly, and the Person or Persons so Challenged,
shall refuse to give an Account of him or themselves, may lawfully
fire upon Such Person or Persons so Challenged, without being
Impeached on Prosecuted for the Same any Law, Custom or Usage,
to the Contrary Notwithstanding.

And Be it Enacted by the Authority aforesaid That in Case any
Person, who Shall Serve upon Such Military Watch as aforesaid,

L. H. J.
Liber No. 48
May 22

98

466    *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22
p. 310

shall leave his Post or station, or shall demean himself in a Turbulent or disorderly manner, or shall not obey the just Orders of his Commanding Officer, it Shall and may be Lawful for the Officer Commanding on such Watch, to put Such Person under Arrest, over and above the Penalty abovementioned; for any time; not exceeding the Space of Three Days.

And Be it further Enacted by the Authority aforesaid, that during the time any Persons of the Militia Shall be in Actual Service, within this Province, or shall keep Military Watch as aforesaid, they shall be supported and Paid in Manner following, to wit, To every Major General Twenty Shillings per day, To every Chief Colonel of Foot Seventeen Shillings and Six pence per Day, To every Lieutenant Colonel of Foot fifteen Shillings per Day: To every Major of Foot fourteen Shillings per Day: To every Captain of Foot twelve Shillings and Six pence per Day: To every Lieutenant of Foot Six Shillings and eight pence per Day: To every Ensign five Shillings per Day. To every Serjeant two Shillings per Day: To every Corporal of Foot One Shilling and eight pence per Day: To every Drummer of Foot One Shilling and eight pence per Day: To each private Soldier one shilling and Six pence per Day: To a Surgeon Eight Shillings and Six Pence per Day, and Medicines to be found: To a press Master four Shillings per Day: To every Colonel of Horse nineteen Shillings per Day; every Lieutenant Colonel of Horse eighteen Shillings per Day: a Major of Horse Sixteen Shillings per Day: a Captain of Horse fourteen Shillings per Day: a Lieutenant of Horse Seven Shillings and Six Pence per Day a Cornet Six Shillings per Day: a Quarter Master five Shillings per Day: a Corporal two Shillings and Six Pence per Day: a Trumpeter two Shillings and Six Pence per Day: a private Trooper two Shillings per Day.

Provided, that if they shall be Discharged again in two days no Pay shall be Allowed.

And Be it Enacted by the Authority aforesaid that the Provisions and all and every the Matters, Articles, and things, which shall be taken up and Impressed by Virtue of this Act, and the Pay aforesaid of the Militia, shall be paid for, discharged and defrayed by the Money which Shall or may Arise, or Accrue in Virtue of or by the Execution of this Act; and in Case that after the Application of Such Monies to the Purposes aforesaid there shall happen or be any Deficiency, the Same shall be Provided for by the Consent of the Freemen of this Province by their representatives in general Assembly.

And Whereas in the time of Actual Service in the time of invasion Rebellion or Insurrection it is necessary that the Officers and Private Men of the Militia of this Province be held to a more Strict

99

*The Lower House.*                    467

Discipline than at other times might be Expedient. Be it there-   L. H. J.
fore Enacted by the Authority aforesaid That if any Officer or Pri-   Liber No. 48
vate Man of the Militia of this Province, in the Time of Actual   May 22
Service within this Province in the time of Invasion, Rebellion, or
Insurrection shall wittingly and willingly excite Cause or Join in
any Mutiny or Sedition in any Company Troop Regiment Party
Guard or Detachment of the Militia of this Province or shall shame-
fully leave desert or fly from his Station or Post without the Order
or Direction of his Proper Officer or other good Sufficient reasonable
Cause, or shall wittingly hold Correspondance with any Rebel or
Enemy or give any Rebel or Enemy Advice or Intelligence by
Letter, Message, Signs or Tokens in any manner or way whatsoever,
the Person or Persons so Offending being thereof Convicted in
due form of Law shall and are hereby declared felons and shall
Suffer Death as in Cases of felony without Bennefit of Clergy.

And Be it further Enacted that if any Person in the Time afore-
said Shall Strike or Use any Violence to his Superior Officer or   p. 311
shall wilfully refuse to obey his Just Order, Such Person So
Offending shall Suffer Such Punishment by fine or Imprisonment
(the Said fine not to exceed the Sum of five Pounds Current Money
and such Imprisonment not to exceed the Space of Seven Days) as
shall be Adjudged by a Court Martial for that purpose to be consti-
tuted and appointed by the Commission of the Governor or Com-
mander in Chief for the time being under the Seal of this Province
out of the County wherein the Offender shall reside not under the
Degree of a Captain, the Said Court Martial to consist of the Num-
ber of twelve and no more besides the President, and Such Court
shall have full Power and Authority to Administer an Oath to every
Witness to Discover the Truth in order to the Examination and
Tryal of any of the Offences determinable before such Court, and
the Sentance of the Majority of the Members of Such Court shall
be Immediately Executed, Provided always, that in all Tryals to be
had before any Court Martial to be appointed and held as aforesaid
in Virtue of this Act, every Judge before any Proceedings shall be
had, shall take the following Oath to wit, I do swear that I will
well and truly Try and Determine according to Evidence on the
Subject of my Present Enquiry to the best of my knowledge and
Judgment according to the Intent and Meaning of an Act of As-
sembly of the Province of Maryland Entituled an Act for Regulat-
ing the Militia of the Province of Maryland, without Partiality
Malice Favour or Affection and that I will not at any time, upon any
Account whatsoever disclose or discover [my] own Vote or Opinion
or the Vote or opinion of any Other member of this Court Martial
unless required to give Evidence thereof as a Witness by a Court of
Justice in a due Course of Law so help me God Provide also, that
no Officer or Private Person aforesaid being once Acquitted by a

468    *Assembly Proceedings, Feb. 23–May 22,* 1756.

L. H. J.
Liber No. 48
May 22

Court Martial for any Offence under this Act, Shall be liable to be Tried a Second time for the same Offence.

And Be it Enacted by the Authority aforesaid, That it shall and may be lawful for the Commanding Officer of any Person Guilty of the Offence aforesaid to Commit Such Person and have him Safe kept, so as that he may be brought to his Trial for any of the said Offences. And Be it Enacted by the Authority aforesaid, That if it shall happen that any Trooper's Horse shall be killed by an Enemy in Actual Service, then the Said Troper to be Paid for the Said Horse by the Publick. Provided always that nothing in this Act Contained, shall oblige or Compell any of the People Called Quakers or any of the Congregation called, Unitas Fratrum, or United Bretheren who from Religious or Conscientious Scruples are averse to the Bearing of Arms and Performing Military Service to Inlist or do Duty in the Militia of this Province; And provdied also and be it further Enacted that no thing in this Act contained shall be construed to extend to any Member of the Upper or Lower Houses of Assembly Except such as shall take Military Commissions under this Act to any Person in Holy Orders and Provided also, that any Number of the Upper or Lower House of Assembly Taking a Military Commission as aforesaid, the Clerks and other Officers of the Upper and Lower Houses of Assembly shall be Exempt from all Duties and Services during the Sitting of the Assembly.

And Provided also that nothing in this Act contained shall extend to the Justices of the Provincial or County Courts Attorneys at Law, Sheriffs or other Ministers and Officers belonging to any of the Said Court during the time that Such Courts shall Sit, And Provided also that nothing in this Act contained shall extend to Goalers, Ferrymen, Millers, Mariners, Watermen, usually employed in any Craft, Persons employed in Furnaces or Iron Works, Physicians, Surgeons, and Apothecaries, Except in time of actual Invasion, Rebellion, or Insurrection, when all and every the Said Persons in this Clause mentioned, being of the Militia, Goalers and Ferrymen Excepted, shall be liable to the Same Duty and Service as if this Proviso

p. 312

had not been herein inserted except Such Physicians, Surgeons, and Apothecaries, who in Ten Days after the Publication of this Act, Shall give in their Names in writing to the Colonel or Commanding Officers of the Counties, wherein they shall reside, and engage to attend in their Profession with Proper Medicines and Instruments, upon any part of the Militia whilst in actual Service as they shall be directed by the Said Colonels or Commanding Officers; and Such Physicians, Surgeons, and Apothecaries, who shall engage as aforesaid shall be and are hereby exempted from all Service in the Militia whatsoever, But in Case any Physician Surgeon, or Apothecary, shall engage as aforesaid, and upon receiving the direction of the Colonel or Commanding Officer aforesaid, shall wilfully refuse

101

*The Lower House.*    469

or neglect to do and perform his Duty, according to his Said Engagement, in Such Case Such Physician, Surgeon or Apothecaries, shall forfeit and pay the Sum of Twenty Pounds Current Money, and be liable thereafter to the Performance of all every Military Service and Duty whatsoever, any Law usage or Custom to the contrary notwithstanding.

L. H. J.
Liber No. 48
May 22

And Whereas all and every Person and Persons of the Militia of this Province are as aforesaid, not only liable to the Duties and Services required by this Act, but also if able to find, at their own proper Cost and Charge, Suitable Arms; and it would prove an unequal Tax if the Persons above exempted from the Services of the Militia, who are able Should be discharged also from the Burthen and Expence of finding Arms.

Be it therefore Enacted by the Authority aforesaid, that all and every the Persons, whose Real and Personal Estate is of the Value of forty Pounds Sterling, to be determined as aforesaid) before exempted from Services of the Militia, and all Men above the Age of Sixty Years of the Ability aforesaid, shall each of them find one good and Sufficient Firelock, with a Bayonet, and deliver the Same to the Colonel or Commanding Officer of the County wherein he shall reside, or pay to the Said Colonel or Commanding Officer the Sum of Three Pounds Current Money in lieu thereof, in Six Months after the Publication of this Act, on Pain that every Person aforesaid of such ability as aforesaid, who shall neglect or omit to find and deliver Such Arms as aforesaid, or pay Such Sum of Money as aforesaid in lieu thereof, Shall be Subject and liable to every Service and Duty of the Militia; any Proviso, Clause, or thing herein contained, or any Law, Custom, or Usage, to the Contrary, Notwithstanding.

And Be it further Enacted by the Authority aforesaid that the Arms which shall be delivered to the Colonels or Commanding Officers aforesaid in manner aforesaid shall be distributed among such Persons as shall need the Same, and not of the Ability aforesaid to Purchase his Arms. And be it Enacted by the Authority aforesaid that in Case the Several Fines, Penalties, and Forfeitures, in this Act mentioned and not triable or determinable before a Court Martial, as afores.[d] Shall not be paid upon the Demand or Order of the Commanding Officer of the Person incurring the Same into the Hands of the Sheriff of the County wherein the Offender shall reside; and in Case any other Person, not of the Militia, shall incur any Fine, penalty, or Forfeiture, under this Act, and on Demand or Order of the Colonel Commanding Officer of the County wherein Such Person Shall reside, Shall omit to pay the Same into the Hands of the Sheriff as aforesaid, the Same Shall be recovered, and all Offences under this Act shall be Adjudged and levied in the Manner following, to wit, all Such Fines, Penalties, Offences, and

102

470    *Assembly Proceedings, Feb. 23–May 22,* 1756.

L. H. J.
Liber No. 48
May 22

p. 313

Forfeitures, as shall be incurred or committed by any Person of the Militia, under the Degree of a Commissioned Officer, shall be Adjudged and determined by the Captain or Commanding Officer of the Company or Troop to which Such Person Shall belong and two other the most discreet Persons belonging to the Said Company or Troop, or the Majority of them, which said two Persons shall be elected and Chosen by the Majority of each Company or Troop at the Next day of Training after such Company or Troop shall be formed and in Case of Default of Such Election or Choice, the Commissioned Officers of each Troop or Company shall constitute a Court, to try, ajudge and determine the Matters aforesaid: and in Case of such Choice or Election as aforesaid, and Vacancy by Death or otherwise of Such Persons, or either of them, to be chosen or Elected as aforesaid, Such Vacancy Shall be filled up and Supplied by a new Choice or Election as aforesaid; and in Case that the said Persons, or either of them, to be elected as aforesaid, shall be charged with or accused of any Matter or Thing incurring a Fine, Penalty or Forfeiture under this Act, then and in Such Case the Place of Such person or persons pro hâc Vice shall be Supplied by one or Two Commissioned Officers of the Same Troop or Company, as the Case may require, The Said Commissioned Officers, to be appointed by the Captain of the Troop or Company, And in Case the Commissioned Officer, under the Rank of a Colonel or Commanding Officer of a County, Shall in any Matter, not triable before such Court Martial, to be appointed by the Governor or Commander in Chief for the time as aforesaid, offend against this Act, Such Officer shall be tried by the Appointment of the Colonel or Commanding Officer of the County wherein Such Offender shall reside, before a Court Martial to consist of five, or three at the least, of the Commissioned Officers of the Said County who shall determine by the Majority of the Voices of such Court, and in Case any Colonel or Commanding Officer of a county shall be Charged with or accused of any Offence against this Act, then and in Such Case the Colonel or Commanding Officer, and Two Field Officers of the Next Adjacent County or Counties to be appointed by the Governor or Commander in Chief, or the Major part of them, shall adjudge and Determine Such Offense.

And be it further Enacted by the Authority aforesaid, that no Person whatsoever shall behave in a disorderly or turbulent Manner, or use any Menacing Words, Signs or Gestures in the Presence of any Court, Appointed by this Act, during the Sitting of Such Court, or in any Manner disturb the Proceedings of any Such Court, on pain of Imprisonment, by Order or Sentence of Such Court, not exceeding Three days and if any Commissioned Officer shall be convicted of having behaved in any Manner unbecoming the Character of an Officer, tho his Offence be not Specified in this Act,

103

**4-ER-0824**

*The Lower House.*                471

Such Commissioned Officer may be degraded and compelled to Serve in the Militia as a Private Person.

L. H. J.
Liber No. 48
May 22

Provided always, that it Shall and may be lawfull for the Persons appointed by or in Pursuance of this Act, to adjudge or determine upon any Matter or thing whatsoever in this Act, to admit the reasonable Excuse of any person tryed before them, and thereupon to acquit Such Person by their Determination; any thing in this Act to the Contrary notwithstanding, and that before any Tryal, Adjudication or Determination of or upon any Matter or thing in this Act mentioned, all and every the Judges to be Appointed by or in Pursuance of this Act, Shall take the Oath above prescribed and directed to be taken by Such Persons as Shall be appointed to Constitute a Court Martial, in Virtue of a Commission for that Purpose from the Governor or Commander in Chief.

And be it Enacted by the Authority aforesaid that all Fines Penalties and Forfeitures aforesaid Shall be levied by the Sheriff of the County wherein the Offender shall dwell, upon the Warrant of the Persons appointed by, or in Pursuance of this Act, to Adjudge and Determine as aforesaid; and the Sheriff to whom such Warrant shall as aforesaid be directed, Shall make a Return of the Same to the Said Persons, by delivering them a Copy thereof, with an Indorsement Signed by the Sheriff, Signifying how and in what Manner he hath executed the Same: And the Said Sheriff is hereby directed to levy, by Distress and Sale of the Goods of the Offender, the Fine, Penalty or Forfeiture, mentioned in Such Warrant and also the Established by Law in Such Cases for Executing Such Warrant, and in Case no Goods of the Offender can be found, on which to levy the Fine, Penalty, a forfeiture aforesaid the Body of the Offender shall be taken and kept in Safe Custody, as in the Case of an Execution by Capias ad Satisfaciendum upon a Judgment in a Court of Law and in Case any Person not belonging to the Militia shall incur any Fine, Penalty, or Forfeiture under this Act then and in Such Case it shall and may be lawfull for any Single Magistrate in the County where the Offender shall reside upon Information or Complaint against such Offender to issue his Warrant to bring Such Offender before him and upon due Proof to give Judgment against Such Offender for the Penalty in this Act Mentioned and by Warrant to direct the Sheriff to levy the Same, in Manner aforesaid; and the said Sheriff in the execution of the Said Warrant Shall demean himself in the Same Manner as before is directed by this Act.

p. 314

And be it Enacted by the Authority aforesaid, that all and every the Sum and Sums of Money, which Shall be received, levied and raised in or by Virtue of this Act, shall be applied to the Support of the Militia of this Province, and the defraying the Charges and expences which the Services directed by this Act shall require and

4-ER-0825

472     *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22

the Sheriff of each County is hereby directed once in every Six Months or oftner if required to deliver an Account to the Governor or Commander in Chief for the Time being and another to the Treasurer of each respective Shore of this Province to whom the Said Sheriff shall pay all Such Sum and Sums of Money as he shall receive in Virtue of this Act and the Said Treasurers are hereby required and directed to pay to the Order of the Governor or Commander in Chief for the Purposes aforesaid from Time to Time Such Sum and Sums of Money as they shall receive as aforesaid and the Said Treasurers are hereby required and directed to lay an Account before the General Assembly of this Province every Session of the disposition of the said Money.

And be it Enacted by the Authority aforesaid, that all and every Sum and Sums of Money, which shall be received by any Officer of the Militia, in Virtue of this Act, Shall be forthwith paid Such Officer into the Hands of the Sheriff of the County wherein Such Offender shall reside; which Said Sheriff is herbey required and directed to render Accounts and Pay the Same to the Treasurers as before directed, which Said Treasurers are hereby required and directed to render Accounts and pay Such Money as before directed, and in Case any Officer who shall receive any Sum of Money as aforesaid shall depart this Life without Payment thereof into the Hands of the Sheriff as aforesaid the Executor or Administrator of Such Officer shall be liable to the Payment thereof before any other Debt whether on Judgment or otherwise any Law Usage or Custom notwithstanding. And every Officer who shall receive Money as aforesaid in Virtue of this Act, shall transmit an Account thereof, once in every Six Months, to the Governor or Commander in Chief for the Time being, and pay the Same as aforesaid, on pain of forfeiting double the Sum of Money by him Received on default of such Payment, and also of being degraded and compelled to Serve as a Private Man in the Militia of his County.

p. 315

And be it Enacted by the Authority aforesaid, that if any Sum or Sums of Money to be levied or raised in Virtue of this Act, shall be unapplied to the Uses and Purposes in this Act Mentioned and directed, Such Sum or Sums of Money so unapplied, shall be applied to such Uses and Purposes as shall be directed by the next General Assembly thereafter.

And be in Enacted by the Authority aforesaid; that the Office Bonds of all Sheriffs shall be deemed to be liable to make good all and every the Sum and Sums of Money, which they shall receive in Virtue of or by Direction of this Act. And be it Enacted by the authority aforesaid that if any Person or Persons, Shall be Sued or impleaded for any matter or thing lawfully done, or Commanded to be done, in the Execution or by Virtue of this Act, he or they shall or may plead the General Issue, and give this Act in Evidence

105

*The Lower House.*                                473

and if the Plaintiff shall discontinue his Action, or be non-suited, or a Verdict or Judgment shall pass against him he shall pay the Defendant Treble Costs, L. H. J. Liber No. 48 May 22

And be it Enacted, that if any Person shall be founded or disabled in any Military Service, in Virtue of this Act, so as to be incapable of Supporting himself, and shall produce a Certificate from his Commanding Officer of his good behaviour in Such Service to the Justices of the County Court, of the County where he last resided, he shall be Supported, during Such his disability at the Publick Charge of this Province.

And be it further Enacted by the Authority aforesaid that Jonas Green Printer to this Province shall and he is hereby Obliged and required within Twenty Days after the End of this present Session of Assembly to deliver to the Sheriff of Ann Arundel County to be by him conveyed in the Same Manner as Public Letters for his Lordships Service are Copies of this Act for the Sheriff and each representative and Field Officer within the several and respective Counties in this Province under the Penalty of Twenty Pounds Current Money to be recovered by Action of Debt Bill Plaint or Information wherein no Essoin Protection or Wager of Law or more than one Imparlance to be allowed one half of which Forfeiture to be paid to the Sheriff of the County where the Same Shall be incurred and by him paid to the Treasurer of the Wester Shore who shall pay the Same to the Order of Governor or Commander in Chief for the Purposes aforesaid the other half to the Informer or him her or them that will Sue for the Same. And be it also Enacted that the Several and respective Sheriffs within this Province shall within Five Days after their having respectively received the Copies of this Act, to them directed to be Sent by the Printer, deliver to every Delegate and Field Officer in their respective Counties one of the Said Copies of this Act, and one Copy thereof such Sheriffs respectively are to keep, and within Five Days the Same Act to Publish, in all the most Public Places in their Several and Respective Counties, to the End that the People in every County within this Province may be well informed thereof And in Case any Such Sheriff shall omit or neglect his Duty herein enjoined he shall forfeit and pay the Sum of Twenty Pounds Current Money one half thereof to the Informer or him her or them that will Sue for the Same the other Half to be paid to Coroners of the County where such Forfeiture shall happen by them to be paid to the Treasurer of the respective Shore where the Same Forfeitures Shall happen who shall pay the Same to the Order of the Governor or Commander in Chief for the Purposes aforesaid, To be recovered in any Court of Record within this Province by Action of Debt Bill Plaint or Information wherein no Essoin Protection or Wager of Law or more than one Imparlance to be allowed Provided Always

106

474    *Assembly Proceedings, Feb. 23–May 22, 1756.*

L. H. J.
Liber No. 48
May 22

and be it further Enacted by the Authority aforesaid that nothing herein contained shall extend or be construed to extend to take away or prejudice any Right or Claim which the People of this Prov-

p. 316

ince have or Ought to have to any Moneys heretofore or now levied by the Right Honourable the Lord Proprietary of this Province under Colour as they apprehend of an Act of Assembly made in the Year Seventeen hundred and four Entituled An Act for the Settlement of an Annual Revenue upon her Majesty's Governor within this Province.

And be it Enacted by the Authority aforesaid that all Laws heretofore made regulating or in any Manner relating to the Militia of this Province and every Matter Article or Clause in any Such Laws contained and all Military Commissions heretofore Granted under any former Law be and are hereby Utterly repealed and made Void.

And be it Enacted by the Authority aforesaid that this Act and all the Matters and Articles herein Contained shall continue in Force untill the Tenth February which Shall be in the Year of our Lord one Thousand Seven hundred and Fifty Seven and no Longer.

Richard Lee and William Goldsborough, Esquires, from the Upper House, acquaint M.ʳ Speaker, That the Governor requires the Members of the Lower House to attend him immediately in the Upper House.

M.ʳ Speaker left the Chair, and, with the other Members of the Lower House, went to the Upper House, and there presented to his Excellency the several Ingrossed Bills, viz.ᵗ

[The list of bills is printed in the Upper House Journal, pages 296-7.]

p. 317

All which his Excellency passed into Laws in the usual Manner; and made the following Speech:

Gentlemen of the Lower House of Assembly,

As you seemed to be persuaded at the Opening of this Session, that a well-armed and well-regulated Militia, would, at this Season, be our best Security, and were pleased to tell me, that a proper Law for that Purpose should be one great Object of your Deliberations, I confess I was a little surprized at your sending me such a Mes-sage as you did this Morning, before you have performed what you gave me such Room to hope and expect; however, as you have inti-mated, that by putting an End to this Session, I shall do a Thing not less agreeable to your Wishes, than I did in convening you, I will not press you to take that Affair into Consideration till your next Meeting, but shall content myself at present with recommend-ing it particularly to those Gentlemen of each House, that are Com-manders and Officers, to have the Militia in their respective Counties, duly Mustered and Exercised, agreeable to our present Laws, which

107

4-ER-0828

BACKGROUNDS OF SELECTIVE SERVICE

# Military Obligation:

## THE AMERICAN TRADITION

*A Compilation of the Enactments of Compulsion*
*From the Earliest Settlements*
*of the Original Thirteen Colonies in 1607*
*Through the*
*Articles of Confederation 1789*

SPECIAL MONOGRAPH NO. 1
VOLUME II
PART II. PENNSYLVANIA ENACTMENTS

THE SELECTIVE SERVICE SYSTEM

1947

EXHIBIT 5 (McLean)

## CLEARANCE COMMITTEE

Brig. Gen. Carlton S. Dargusch, *Chairman*

| | |
|---|---|
| Col. Victor J. O'Kelliher | Lt. Col. Arthur Boone |
| Col. Lewis F. Kosch | Lt. Col. Irving Hart |
| Col. William Hart | Mr. Kenneth H. McGill |

### PREPARED AND COMPILED BY

Lt. Col. Arthur Vollmer

### GOVERNMENT PRINTING OFFICE

WASHINGTON : 1947

FOR SALE BY THE SUPERINTENDENT OF DOCUMENTS, U. S. GOVERNMENT
PRINTING OFFICE, WASHINGTON 25, D. C.

4-ER-0830

144    See also original p. 146    *The Statutes at Large of Pennsylvania.*    [1780

therefrom arising shall be appropriated towards paying for the lands to be purchased and the new court house and prison to be built in the said place so as aforesaid to be provided.

[Section IV.] (Section V, P. L.) And be it further enacted by the authority aforesaid, That for the defraying the remainder of the expenses and charge of purchasing the land, building and erecting the said court house and prison, it shall and may be lawful for the commissioners and assessors of said county, or a majority of them, to assess and levy so much money as the said trustees, or any four of them, shall judge necessary for paying the remainder aforesaid, of purchasing the land and finishing the said court house and prison, and they are hereby required so to do.

> Passed March 20, 1780. See the Acts of Assembly passed March 22, 1784, Chapter 1081; March 30, 1785, Chapter 1152; March 18, 1786, Chapter 1215; September 25, 1786, Chapter 1247; September 26, 1789, Chapter 1443; March 12, 1800, Chapter 2125. Recorded L. B. No. 1, p. 373, &c.

------

## CHAPTER CMII.

AN ACT FOR THE REGULATION OF THE MILITIA OF THE COMMONWEALTH OF PENNSYLVANIA.

(Section I, P. L.) Whereas a militia law founded upon just and equitable principles hath been ever regarded as the best security of liberty, and the most effectual means of drawing forth and exerting the natural strength of a state:

(Section II, P. L.) And whereas a well regulated militia is the only safe and constitutional method of defending a free state, as the necessity of keeping up a standing army, especially in times of peace, is thereby superceded:

(Section III, P. L.) And whereas the militia law of this commonwealth enacted by the general assembly the seventeenth day of March, one thousand seven hundred and seventy-seven,

142. Pa.—*General Assembly, Philadelphia; Statutes, Mitchell and Flanders, Vol. X, 1904; Act, Mar. 20, 1780, pp. 144–173, Ch. CMII.*    75

4-ER-0831

1780]   *The Statutes at Large of Pennsylvania.*   145

from a change of circumstances and other causes, hath become insufficient to answer the purposes aforesaid, which renders it highly necessary that a new law should be enacted:

Therefore:

[Section I.] (Section IV, P. L.) Be it enacted and it is hereby enacted by the Representatives of the Freemen of the Commonwealth of Pennsylvania in General Assembly met, and by the authority of the same, That the president in council or, in his absence, the vice-president in council, of this commonwealth shall appoint and commissionate one reputable freeholder in the city of Philadelphia, and one in each county within this state to serve as lieutenants of the militia for the said city and counties respectively; and, also, any number of persons not exceeding two for the said city, and in the several counties any number not exceeding the number of battalions now or to be hereafter formed, to serve as sub-lieutenants in the said city and counties respectively, who, besides the powers which are given him and them by this act, shall have the title and rank which the president in council or, in his absence, the vice-president in council shall confer, which said lieutenant or, in his absence or incapacity, two or more sub-lieutenants shall have full power and authority to do and perform all and singular the duties required of the said lieutenants by this act.

[Section II.] (Section V, P. L.) And be it enacted by the authority aforesaid, That the lieutenants and sub-lieutenants, before they enter upon the execution of their offices, respectively, shall give bond to the treasurer of the county in which they severally reside, in the name of the president or commander-in-chief of the state, with one sufficient surety in the sum of twenty thousand pounds, conditioned for the faithful accounting for and paying all the moneys which shall come to their hands by virtue of this act when thereunto lawfully required. And that the public bonds given or to be given by the treasurer of the state or county treasurers for the due discharge of their respective offices shall be deemed to extend to the faithful performance of the trust hereby committed to them respectively.

[Section III.] (Section VI, P. L.) And be it further enacted

146         *The Statutes at Large of Pennsylvania.*    [1780

by the authority aforesaid, That the said lieutenant or sub-lieutenants (once in every year) shall issue his or their warrants to the captain or commanding officer for the time being of each company of the several battalions in the said city and counties respectively, or to some other suitable person, commanding him, in the name of the commonwealth, to deliver to him or them, the said lieutenant or sub-lieutenants, within ten days from and after the date of the said warrants (unless the lieutenant or sub-lieutenants shall judge a longer time to be necessary, which he or they are hereby empowered to grant) on oath or affirmation, which any of them is hereby empowered to administer, a true and exact list of the names and surnames of each and every male white person inhabiting or residing within his township, borough, ward or district, between the ages of eighteen and fifty-three (delegates in Congress, members of the supreme executive council, members of the general assembly, judges of the supreme court, attorney-general for the state, the judges of the admiralty, treasurer of the state, sheriffs, gaolers and keepers of workhouses, ministers of the gospel of every denomination, professors and teachers in the university, postmasters and postriders belonging to the general post-office, menial servants of ambassadors or ministers and consuls from foreign courts and of delegates in Congress from other states registered with the secretary of the supreme executive council of this state and servants purchased bona fide and for a valuable consideration only excepted).

[Section IV.] (Section VII, P. L.) And be it further enacted by the authority aforesaid, That the lieutenant and sub-lieutenants aforesaid shall, within five days after they shall receive the lists aforesaid, if they see cause, alter the present divisions of the city and counties respectively and divide them into new districts, each district to contain not less than four hundred and forty nor more than one thousand, officers and privates included, at the discretion of the said lieutenants and sub-lieutenants, and then sub-divide the said districts into eight parts as nearly equal as may be, paying due regard in each division to the convenience of the inhabitants: Provided always, That

4-ER-0833

Case: 23-16164, 10/05/2023, ID: 12805489, DktEntry: 7-5, Page 156 of 297

Case 1:23-cv-00265-LEK-WRP   Document 55-38   Filed 07/14/23   Page 6 of 32   PageID.946

two-thirds of the lieutenants met for the above purpose agree
to such division, and that each person be annexed to the nu-
merical class to which he formerly belonged.

[Section V.] (Section VIII, P. L.) And be it further enacted
by the authority aforesaid, That the militia of the Northern
Liberties of the city of Philadelphia, the district of Southwark
and the township of Moyamensing and Passyunk be and they
hereby are united to the city of Philadelphia, to act in conjunc-
tion with the militia of the said city, and distinct from the rest
of the county of Philadelphia, that they draw lots for rank in
battalion and be joined in brigade and act in every other matter
that respects the militia law as if they were inhabitants of the
said city, and to be under the direction of the lieutenant and
sub-lieutenants of the city.

[Section VI.] (Section IX, P. L.) And be it further enacted
by the authority aforesaid, That the lieutenant and sub-lieu-
tenants of the city of Philadelphia and districts annexed, shall,
out of the several battalions of the said city and districts an-
nexed, take such a number as will compose eight companies
to form one battalion of artillery, to be officered and arrayed
as follows, that is to say, one lieutenant-colonel, one major,
eight captains, eight captain lieutenants, eight first lieuten-
ants, sixteen second lieutenants, the senior to bear the stand-
ard and the junior to do the duty of conductor; paymaster,
adjutant and quartermaster to be taken from the line; one
surgeon, one sergeant major, fife major, drum major, eight
clerks, thirty-two sergeants, forty-eight bombadiers, forty-
eight gunners, eight drummers, eight fifers and four hundred
matrosses, and both the officers and privates of the said bat-
talion shall be subject to the same fines and penalties for any
omission of duty as the infantry:  Provided, nevertheless, That
the persons composing the artillery heretofore formed may be
permitted to continue as a part of the said battalion of artil-
lery and the officers shall be elected in the same manner as is
directed by this act for the election of officers of the infantry.

[Section VII.] (Section X, P. L.) And be it further enacted
by the authority aforesaid, That the several captains of the
artillery battalion shall determine their rank by lot, and be

78

4-ER-0834

**148**          *The Statutes at Large of Pennsylvania.*          [1780

numbered from one to eight in numerical order, and be subject to be drawn forth into actual service in rotation by companies, according to their number in rank, number one in rank with the first class of the militia and so on, until all shall take their tour, or otherwise as the commander-in-chief of the militia shall direct.

(Section XI, P. L.) And whereas it is expedient to embody such a number of light horse as will be useful when the militia is called into actual service:

Therefore:

[Section VIII.] (Section XII, P. L.) Be it further enacted by the authority aforesaid, That each of the lieutenants of the several counties of this state may form a corps of light horse not to exceed six privates for each battalion of infantry in each county, to be taken distributively out of each, in case volunteers offer; otherwise, at large throughout the county. And the light horse shall be officered as light horse usually are, and shall be subject to appear upon muster days, and shall turn out in classes as other militia; and in case any person who shall be admitted into the said light horse shall fail of providing himself with a suitable horse, weapons and furniture, such person shall be liable to be called out and serve in the foot militia.

[Section IX.] (Section XIII, P. L.) And be it further enacted by the authority aforesaid, That the troop of light horse in the city of Philadelphia shall be limited to the number of fifty, exclusive of officers, the vacancies thereof to be filled in the manner heretofore practiced; and the said troops shall be liable to appear on muster days, and to be called out into service as other militia, and the light horse of this state, when in actual service, shall be subject to the same rules and regulations as the foot militia and to like fines and penalties for neglect of meeting on muster days or turning out on their tour when thereunto called, such fines and penalties to be appropriated as the fines and penalties for like offenses in other cases.

[Section X.] (Section XIV, P. L.) And be it further enacted by the authority aforesaid, That if any light horseman shall be elected or appointed a commissioned officer in any battalion

733972 O - 47 - 6

1780]   *The Statutes at Large of Pennsylvania.*   149

of infantry of his proper city or county, and on notice given
him in writing by the lieutenant shall accept thereof, his place
in the said light horse shall be vacated and any light horseman
who shall be absent more than four months from his city or
county shall vacate his place in the troop to which he belonged.

[Section XI.] (Section XV, P. L.) And be it further enacted
by the authority aforesaid, That the lieutenant or sub-lieuten-
ant shall appraise the horse of each person serving as a light
horseman, immediately before every time of going into actual
service, and enter the same in a book, and in case such horse
shall be killed or die in actual service or be taken by the
enemy, otherwise than by neglect he shall be paid the value of
such appraisement by an order to be drawn by the lieutenant
or any two sub-lieutenants on the militia fund in the hands
of the treasurer for that purpose.

[Section XII.] (Section XVI, P. L.) And be it further en-
acted by the authority aforesaid, That the said lieutenants
shall give public notice by advertisements at ten or more of
the most public places in the said districts respectively, of the
said divisions being made, and appointing a certain day for
each district, not less that [sic] [than] ten days after the said
notice, and requiring the male white inhabitants between the
ages aforesaid residing in the said divisions respectively to
meet at a certain place as near the centre of the said division
as may be, and then and there, between the hours of ten in
the morning and six in the afternoon of the said day, to elect,
by ballot, two field officers, That is to say, one lieutenant,
colonel and one major, and the inhabitants of the said sub-
divisions respectively shall elect by ballot, as aforesaid, on
the same or some other day as soon as convenient, one captain,
one lieutenant and one ensign, previous to which said election
the said inhabitants shall elect two freeholders to preside as
judges thereof, and all and each of these officers respectively
shall be such persons as have taken the oath of allegiance and
abjuration agreeable to the laws of this state; and each cap-
tain shall appoint a suitable person for clerk in his company;
and the said lieutenant or sub-lieutenant shall attend and
superintend each and every of the said battalion elections, and

80

150          *The Statutes at Large of Pennsylvania.*          [1780

shall cause the lieutenant-colonels so elected in the city and counties respectively to meet together as soon as may be, and cast lots for rank of the battalions and the rank of the officers in each battalion shall be determined by the lot drawn by their respective lieutenant-colonels, and the captains so elected in the sub-divisions shall meet and cast lots for their rank in the battalion to which they belong, and the rank of the sub-altern officers in each company shall be determined by the lot drawn by their respective captains.  And the said lieutenants shall, within ten days, or as soon as may be, having regard to their local situation, transmit proper certificates to the president of the supreme executive council of the names of the persons so as aforesaid elected, and their rank, both of battalion and companies in the several battalions, in order that commissions may be forthwith granted to them agreeable to the said certificates, and elections for officers in the light horse shall be made in like manner as elections for officers in the infantry.

[Section XIII.] (Section XVII, P. L.) And be it further enacted by the authority aforesaid, That if any battalion, troop or company shall neglect or refuse to elect their officers as aforesaid, then, in such case, it shall and may be lawful for the lieutenant, with the advice and consent of two or more of the sub-lieutenants of the city of Philadelphia, and of such county where such neglect or refusal shall be, to nominate one reputable person to the supreme executive council in the room of each officer so neglected to be chosen, and the said council, approving thereof, shall commission the said person, which shall be as effectual to all intents and purposes as if the said officers had been elected as before directed, and the said lieutenant shall, as soon as may be, acquaint the parties so neglecting or refusing with the appointments so as aforesaid made. And the said several and respective officers elected or appointed as aforesaid shall serve respectively as officers of the militia for the space of three years, at the end of which time the lieutenant of the city and counties respectively, in the manner hereinbefore directed, shall cause a new election to be held in

4-ER-0837

1780]      *The Statutes at Large of Pennsylvania.*                    **151**

the said city and counties respectively, but nothing herein con-
tained shall be construed to render any of the former officers
incapable of being re-elected.

[Section XIV.] (Section XVIII, P. L.) And be it further en-
acted by the authority aforesaid, That the commissioned offi-
cers of each company shall appoint three sergeants, three cor-
porals, one drummer and fifer for their respective companies,
and all persons who have heretofore been officers in the militia
under the late law, if not re-elected, shall deliver up their
arms, accoutrements, drums, fifes and colors if paid for by the
public, to the lieutenant or sub-lieutenant of the city or county
aforesaid; and the lieutenant of the city of Philadelphia and
the lieutenant of the counties respectively are hereby author-
ized to purchase such drums, fifes and colors as may be after-
wards wanted to supply the companies in the city and counties
respectively.

[Section XV.] (Section XIX, P. L.) And be it further en-
acted by the authority aforesaid, That the field officers of each
battalion in this state shall constitute and appoint, in their
respective battalion, one chaplain, one quartermaster, one sur-
geon, one adjutant, one quartermaster sergeant, one sergeant
major, one drum and fife major; and the lieutenants and
sub-lieutenants of the city and counties respectively shall, at
their discretion, furnish and procure proper carriages for the
battalion or drafts of the militia when it shall be necessary.

[Section XVI.] (Section XX, P. L.) And be it further en-
acted by the authority aforesaid, That the lieutenant or sub-
lieutenants of the city and counties respectively shall pay such
wages as shall be necessary to one adjutant, one quartermaster
sergeant and one drummer and fifer for every day that the ser-
vice may require them, out of the moneys arising from fires,
on the said adjutant, quartermaster sergeant, drummer and
fifer producing a certificate of the service so performed from
the commanding officer of the said battalion or company.

(Section XXI, P. L.) And whereas the sums allowed by the
late militia law for a drummer and fifer have been insufficient
and many officers have been obliged to pay considerably more:

[Section XVII.] (Section XXII, P. L.) Be it therefore en-

82

152            *The Statutes at Large of Pennsylvania.*            [1780

acted by the authority aforesaid, That the lieutenants shall and
hereby are required to pay unto such captains or commanding
officers of companies such reasonable sums as they have ex-
pended for drummers and fifers on their producing an account
of such costs properly certified.

[Section XVIII.] (Section XXIII, P. L.) And be it further
enacted by the authority aforesaid, That the commissioned
officers of each company of militia shall nominate and appoint
one discreet person who shall be called the almoner, residing
in the district or sub-division out of which their company is
formed, provided such almoner is above the age of fifty-three
years, to take proper care of the families of such poor militia-
men, within their respective districts, as are in actual service
in their own turn and to grant them such support as their ne-
cessities may require, provided such support do not exceed
half the price of daily labor as the same shall be ascertained
as hereinafter is directed, and the said officers of the company,
or any two of them, shall make out a certificate of their nomina-
tion and appointment, directed to the lieutenant of the city or
lieutenant or sub-lieutenants of the county to which the com-
pany belongeth; which certificates shall enable the said
almoner thereby appointed to draw from time to time on the
said lieutenant or sub-lieutenant for such sum or sums of money
as shall be necessary for the purpose aforesaid, and he shall
render an account of the moneys by him drawn to the said
lieutenants.

[Section XIX.] (Section XXIV, P. L.) And be it further en-
acted by the authority aforesaid, That every sub-lieutenant
of the said city and several counties shall, once in every three
months, render an account to his proper lieutenant of all
moneys received by him and of his expenditures by virtue of
this act, and settle and pay to him the balance of the same,
and the lieutenant of the said city and each county respec-
tively shall make out complete accounts of all the moneys
received by him and of his expenditures and return the same
to the supreme executive council once in every six months,
and each lieutenant and sub-lieutenant is hereby empowered
to employ one clerk the better to complete the same, and on

83

1780]    *The Statutes at Large of Pennsylvania.*    153

failure of accounting as aforesaid each lieutenant and sub-lieutenant shall forfeit and pay for every such neglect the sum of ten thousand pounds, to be applied as other fines are directed to be applied by this act.

[Section XX.] (Section XXV, P. L.) And be it further enacted by the authority aforesaid, That the precedence of the officers of the city of Philadelphia and of the several counties in this commonwealth shall be determined as follows, That is to say, when the commissions are of equal rank and date the officers of the city of Philadelphia and districts annexed shall take rank or precedence of all other officers of equal rank in this state and next to them the officers of the county of Philadelphia and so on, according to the seniority of the counties respectively.

[Section XXI.] (Section XXVI, P. L.) And be it further enacted by the authority aforesaid, That the whole of the militia so enrolled as aforesaid shall be subject to be exercised in companies under their respective officers as followeth, That is to say, in the city of Philadelphia and districts annexed in companies on the two last Mondays in the month of April and in battalion on the two first Mondays in the month of May; and the first battalion shall muster in battalion on the third Monday in May, the second battalion on the Tuesday following, the third battalion on the Wednesday, and so on till the whole number of battalions shall have mustered according to their numerical rank on any or every day of the week (Saturday and Sunday excepted) until the whole number of battalions shall have mustered in the aforesaid manner; and on the day following, should it not happen to be Saturday or Sunday, the whole number of battalions belonging to the city of Philadelphia and districts annexed shall meet in brigade and the militia of the city of Philadelphia and districts annexed shall meet to exercise in companies the two last Mondays in the month of August and in battalion on the two first Mondays in the month of September, and the first battalion on the second Monday in the month of October, the second battalion on the Tuesday following, and the third battalion on the Wednesday and so on until the whole number of battalions according to their

154            *The Statutes at Large of Pennsylvania.*            [1780

rank have mustered, except as before excepted.  And then, on
the day following (with the foregoing exceptions) the whole
battalions shall meet in brigade.  And in each and every
county in the following manner, That is to say, in companies
the two last Mondays in the month of April, and the two first
Mondays in the month of May, and shall begin their muster-
ing in battalion in the following manner to wit, the first bat-
talion shall meet in battalion on the third Monday of the said
month, the second battalion on the Tuesday following, the third
battalion on the Wednesday, and so on according to the rank
of battalions in the aforesaid manner mustering each day
in the week (Saturday and Sunday excepted) and until
the whole number of battalions belonging to each county shall
have mustered in this manner; and in companies the two first
Mondays in the month of October, and the two first Mondays
in the month of November; and the first battalion in battalion
on the third Monday in the month of November, the second
battalion on the Tuesday following, the third battalion on the
Wednesday and in this manner until the whole number of bat-
talions belonging to each county according to their ranks sev-
erally shall have mustered on any day it may happen (except
on a Saturday or Sunday as before excepted).  And on each
of the said days every militiaman so enrolled shall duly attend
with his arms and accoutrements in good order; and a sergeant,
or the clerk of each company, shall, at the end of one hour after
the time appointed for the meeting of the company or battalion,
call over the muster roll of the company, noting those who
are absent and on that day shall make return in writing to the
captain or commanding officer then present of such absentees,
and all persons so absent at the time of calling over the roll
or who shall depart from the parade before duly discharged
shall be liable to the fines hereafter mentioned.

[Section XXII.] (Section XXVII, P. L.) And be it further
enacted by the authority aforesaid, That if any commissioned
officer shall neglect or refuse to attend on any of the days ap-
pointed for exercise in companies as aforesaid (unless pre-
vented by sickness or some other unavoidable accident) such
commissioned officer shall forfeit and pay the price of three

85

1780]     *The Statutes at Large of Pennsylvania.*                 155

days' labor; and any non-commissioned officer or private and
all enrolled persons so refusing or neglecting (except as before
excepted) shall forfeit and pay the price of one and a half days'
labor, and on a brigade or battalion day a field officer shall
forfeit and pay the price of six days' labor, and a commissioned
officer under that rank the price of four days' labor, and a
non-commissioned officer or private and all enrolled persons
refusing to meet and exercise the price of two days' labor (ex-
cepting as before excepted), the said prices to be ascertained
as hereafter directed.  The names and surnames of all which
person so incurring the said fines and penalties (except such
as may have paid the same into the hands of the captain or
commanding officer of the company) shall be duly returned by
the captain or commanding officer of each company under his
hand, together with such fines as he has received to the lieuten-
ant-colonels or commanding officers of the battalions resp'-
tively on each field day, which said lieutenant-colonel or com-
manding officer of battalion shall, on receipt of such fines and
returns, forthwith transmit the same to the lieutenant or one
of the sub-lieutenants of the county; and also a duplicate
thereof to the treasurer of the county, and the said lieutenant
or sub-lieutenant shall immediately after the said returns are
respectively made to him cause the same to be recovered by
issuing his warrant to the sheriff, constable or other fit person
that he can procure to levy the aforesaid fines by distress and
sale of the offender's goods and chattels, together with five
per centum for collecting where no distress is necessary to be
made, and seven and a half per centum in case of distress and
sale, in full for his trouble for levying, selling and collecting
(unless the offender show cause of absence by sickness or
otherwise, and can produce a certificate from the captain or
commanding officer of the company, who may give such cer-
tificate if he verily believes the offender ought to be excused
from paying the said fines), but if no such goods and chattels
can be found, then to seize and take the body of such offender,
and commit him to the common gaol or some other place of
close confinement for the space of ten days for each fine, unless
he sooner pay the same.  And the lieutenant shall twice in

86

156          *The Statutes at Large of Pennsylvania.*          [1780

each year transmit the said fines, when collected, into the
hands of the county treasurer, who shall pay the same into the
hands of the state treasurer, to be kept as a fund, subject to
such drafts as may be made upon him from time to time by the
lieutenant or at least two sub-lieutenants for the use of the
militia of that county.  But if the funds of any county, by the
generality of their turning out, should be insufficient to answer
the drafts for the support of persons serving or suffering in the
militia, in that case the executive council shall be empowered
to draw on the funds of such other counties whose surplus may
be most enabled to bear it.

[Section XXIII.] (Section XXVIII, P. L.) And be it further
enacted by the authority aforesaid, That the treasurer of each
county and the state treasurer shall keep all the moneys arising
from fines by the militia law separate from all other moneys,
and keep separate books to enter the same for the purposes here-
inafter mentioned.

[Section XXIV.] (Section XXIX, P. L.) And be it en-
acted by the authority aforesaid, That whenever it may be
necessary to call into actual service any part of the militia,
in case of a rebellion or invasion of this or any of the adjoining
states, then it shall and may be lawful for the president or vice-
president in council to order into actual service such part of the
militia, by classes, of the city of Philadelphia or any of the
county or counties as the exigency may require:  Provided,
That the part so called doth not exceed four classes of the
militia of the county or counties so called out:  And provided
also, That such counties shall not be again called upon to fur-
nish any more militia until an equal number of classes of the
militia of the other counties respectively be first called, unless
the danger of an invasion from Indians or others should make
it necessary to keep in reserve the militia of such county or
counties for their own immediate defense.

(Section XXX, P. L.) And to the end that the militia, when
called by classes, shall be properly officered, the following order
is hereby directed and enjoined, That is to say:

For the first draft, the captain of the first company, the lieu-
tenant of the second and the ensign of the fourth.

4-ER-0843

Second draft, the captain of the second company, the lieutenant of the first and the ensign of the third.

Third draft, the captain of the third company, the lieutenant of the fourth and the ensign of the second.

Fourth draft, the fourth captain, the lieutenant of the third company and the ensign of the first.

Fifth draft, the fifth captain, the lieutenant of the sixth company and the ensign of the eighth.

Sixth draft, the sixth captain, the lieutenant of the fifth company and the ensign of the seventh.

Seventh draft, the captain of the seventh company, the lieutenant of the eighth and the ensign of the sixth.

Eighth draft, the captain of the eighth company, the lieutenant of the seventh and the ensign of the fifth.

Non-commissioned officers to take tour of duty with the commissioned officers.

And the field officers of battalions in the city of Philadelphia and in each county of this state shall be divided in like manner, and each class to be considered as a detachment from different corps liable to serve two months and no longer, and to be relieved by the class next in numerical order, the relief to arrive at least two days before the expiration of the term of the class to be relieved, but nothing herein contained shall prevent the supreme executive council from employing or calling out part of any class or any company or companies, battalion or battalions without respect to this rule whenever the exigency is too sudden to allow the assembling of the scattered militia which compose the particular classes and the service of the persons so called out, shall be accounted as part of their tour of duty and the militia in actual service shall receive the same pay and rations as continental troops, their pay to commence two days before marching, and receive pay and rations at the rate of fifteen miles per day on their return home.

(Section XXXI, P. L.) And whereas the militia, when called into actual service, are not entitled to any bounty, such as clothing at the public expense and, therefore, their reward is not equal to that of the regular troops:

[Section XXV.] (Section XXXII, P. L.) Be it therefore en-

88

158          *The Statutes at Large of Pennsylvania.*          [1780

acted by the authority aforesaid, That when the militia, or
any detachment thereof, are called out on duty each non-com-
missioned officer and private shall receive such a sum as, in-
cluding the continental pay, will amount to the price of com-
mon labor for the time of service given, to be drawn from the
treasury by the paymasters of the militia from time to time
appointed; and the officers, whose duty it may be are hereby re-
quired to make out separate pay rolls of the said bounty and
that all commissioned officers shall, over and above the pay
established from time [to time] by the honorable Congress,
receive the same bounty which a private shall receive.

[Section XXVI.] (Section XXXIII, P. L.) And be it further
enacted by the authority aforesaid, That at each quarter ses-
sions of the peace of the city and in the several counties
throughout the state the price of common labor then current
in the said city and counties respectively shall be inquired
into and ascertained, and the justices, or a majority of them, at-
tending the said courts are hereby required to fix and determine
what is the average price of common labor at that time by the
day, which price so determined by the said justices shall be
considered as a rate by which all fines shall be determined for
neglects or omissions of militia duty during and from that time
to the end of the next quarter sessions of the peace, and the
said justices are hereby required to make out a certificate of
the price so determined for the lieutenants of the said city and
counties respectively under their hands and seals.

[Section XXVII.] (Section XXXIV, P. L.) And be it fur-
ther enacted by the authority aforesaid, That when any class
or classes of the militia shall be called to perform any tour of
duty, the lieutenant or sub-lieutenants shall cause each and
every person so called to be notified of such call at least three
days before the time of assembling the said militia by a written
or printed notice being delivered to him personally or left at his
house or usual place of abode by some officer or other fit person
employed for that purpose by the commanding officer of said
company, and any person refusing or neglecting to perform
such tour of duty shall pay, for each and every day he shall
so neglect or refuse the price of one day's labor, and in case

4-ER-0845

1780]     *The Statutes at Large of Pennsylvania.*     159

he shall be possessed of such estate as is hereinafter mentioned, shall pay such additional sum as by this act is further directed.

[Section XXVIII.] (Section XXXV, P. L.) And be it further enacted by the authority aforesaid, That the master or mistress of any apprentice and the father or mother of any minor liable to serve in the militia who shall refuse or neglect to attend as aforesaid, such minor being in the service of his father or mother, master or mistress, they shall be respectively accountable for the fine or fines so incurred by such minor or apprentice.

[Section XXIX.] (Section XXXVI, P. L.) And be it further enacted by the authority aforesaid, That no mariner or seaman shall be subject to the fines and penalties of this act for not performing militia duties if such mariner or seaman is in actual employ by being shipped for a voyage or absent at sea.

[Section XXX.] (Section XXXVII, P. L.) And be it further enacted by the authority aforesaid, That the militia of this state whilst in the actual service of the United States shall be subject to the same rules and regulations as the federal army: Provided, That upon any transgression or offense of a militiaman, whether officer or private, against the rules and regulations of the federal army the cause shall be tried and determined by a court martial of the militia of this state, and that it shall be in the power of the president of the supreme executive council, or in case of his absence, of the commanding officer of the militia to mitigate, suspend or pardon any punishment to which any militiaman may be sentenced by a general court-martial.

[Section XXXI.] (Section XXXVIII, P. L.) And be it further enacted by the authority aforesaid, That if any delinquent shall neglect or refuse to pay the fine for an omission of performing his tour of militia duty, within five days after the appeal [hereinafter mentioned] it shall and may be lawful for the lieutenant or any sub-lieutenant to issue his warrant to the sheriff, or any constable or other fit person that he can procure, to levy the said fine, by distress and sale of the offender's goods and chattels, lands and tenements, together with

90

160          *The Statutes at Large of Pennsylvania.*          [1780

seven and a half per centum and the charges of keeping the
distress, in full for his trouble for levying, selling and collect-
ting; which said distress and sale shall be made according to
the directions of the law for levying and selling goods and
chattels distrained for rent; but if no such goods and chattels,
lands and tenements can be found, then to seize and take
the body of such offender and commit him to the common gaol
or some other place of close confinement for the space of four
months, unless he sooner pays the said fine, and no process
shall issue to stay the execution of such warrant unless in
case of the seizure of real estates.

(Section XXXIX, P. L.) Provided always, That if any person
shall think himself aggrieved in the seizure of his lands and
tenements he may enter an appeal before the justices to the
next court of common pleas for said county, and on the party
giving sufficient security within six days next after any lands
and tenements shall be seized or distrained as aforesaid to
prosecute such appeal with effect, the justices shall receive the
same and stay further process, and the said justices shall re-
turn every such appeal on the first day of the next term, and
the court shall direct a trial by a jury of the country as in
cases of debt, whose verdict shall be final and conclusive; and,
except in extraordinary cases, of which the court shall judge,
all such appeals shall be tried at the term to which such returns
shall be made.

(Section XL, P. L.) Provided also, That in case real estate
be sold as aforesaid, such sale shall be made by the sheriff of
the county, who shall make a sufficient deed for the same and
put the purchaser into possession thereof.

[Section XXXII.] (Section XLI, P. L.) And be it further
enacted by the authority aforesaid, That no militiaman shall
withdraw himself from the company to which he belongs under
the penalty of the value of twenty days' labor, to be sued for
and recovered by the commanding officer of the company from
which he shall so withdraw himself before any justice of the
peace by action of debt:  Provided nevertheless, That persons
removing out of the bounds of one battalion or company to
another, shall apply to the commanding officer of the company

1780]    *The Statutes at Large of Pennsylvania.*                    161

to which he did belong who shall give him a discharge, certifying the class to which he belongs, and whether he hath served
his tour of duty or not, which certificate the said militiaman
shall produce to the captain or commanding officer of the company in whose bounds he next settles within ten days after his
settlement under penalty of the value of thirty days' labor to
be recovered and applied as aforesaid; and the captain or commanding officer is hereby required to enroll him in the class
specified in the said certificate.

[Section XXXIII.] (Section XLII, P. L.) And be it enacted
by the authority aforesaid, That in all cases of doubt respecting
the age of any person enrolled or intended to be enrolled in the
militia, the party questioned shall prove his age to the satisfaction of the officers of the company within the bounds of
which he may reside, or a majority of them.

(Section XLIII, P. L.) And whereas it is just and reasonable
that those who have considerable property should pay for the
protection of that property when they do not give their service
in facing danger in the field or bearing any of the necessary
fatigues attending a military life; and to compel all persons
to give their personal service or some equivalent therefore in
some proportion to such property:

[Section XXXIV.] (Section XLIV, P. L.) Be it therefore
enacted by the authority aforesaid, That all and every person
and persons who are in and by this act required to perform a
tour of duty, and have an estate shall pay for neglecting to
perform the said tour of duty, in addition to the fine of the price
of one day's labor as aforesaid the sum of fifteen shillings in
every hundred pounds on all his rateable property and occupation in the manner directed to be ascertained by an act of assembly passed the third day of April, one thousand seven hundred and seventy-nine, entitled "An act to raise the supplies for
the year one thousand seven hundred and seventy-nine,"[1] and
as may be directed to be taken by every yearly or other state tax
in future.

(Section XLV, P. L.) And in order that the lieutenant of each
county may have the amount of the whole estate of each person

---

[1] Chapter 840.

92

**162**          *The Statutes at Large of Pennsylvania.*          **[1780**

residing in said county, although the said estate or estates may be situate in some other county or counties, that he, the said lieutenant, may be able, where the case requires it, to levy for the interest on the whole wheresoever lying within this state:

[Section XXXV.] (Section XLVI, P. L.) Be it further enacted by the authority aforesaid, That the assessors of each and every county finding any kind of taxable estate within said county belonging to persons resident in some other county within the state shall and are hereby required to make out a list of the amount of the valuation of such estate or estates, placing the same opposite the name of such proprietor, and once in every year send such lists to the lieutenant of the county where the owner of such estate may reside.

[Section XXXVI.] (Section XLVII, P. L.) And be it further enacted by the authority aforesaid, That the lieutenant of the city of Philadelphia and of the several counties of this state shall have and receive the value of one and an half bushels of wheat per day, and the sub-lieutenants for the said city and counties shall have and receive the value of one and a quarter bushels of wheat per day each, as the same shall be declared from time to time by the general assembly, for their trouble, and for every day in which they shall be employed in doing and performing the respective duties required by this act, which said sum or sums shall be respectively paid unto them out of the fines incurred by this act.

[Section XXXVII.] (Section XLVIII, P. L.) And be it further enacted by the authority aforesaid, That it shall and may be lawful for any person called to do a tour of militia duty to find a sufficient substitute, having been previously classed at least six months in the company or battalion to which the person belongs who hires such substitute: Provided always, That persons serving by substitute as aforesaid, if said substitute shall be called in his own turn into actual service before the term expires which he was to serve for his employer, that then the person procuring such substitute shall march in the said substitute's turn or be liable to pay his fine for neglect, which fine is to be recovered as other fines for neglect of serving are by this act directed to be recovered and that sons who

93

1780]     *The Statutes at Large of Pennsylvania.*                 163

are not subject to the militia law may be admitted as substi-
tutes for their fathers, and that each substitute be approved of
by the lieutenant or sub-lieutenant.

[Section XXXVIII.] (Section XLIX, P. L.) And be it fur-
ther enacted by the authority aforesaid, That the lieutenant or
one of the sub-lieutenants shall, within ten and not less than
five days after the marching of any part of the militia, call to his
assistance two freeholders, one of whom shall be a justice of
the peace, to sit at the most convenient place for the inhabit-
ants of their respective districts (notice having been given of
such place in the written or printed summons of every militia-
man), and shall there hear and determine all appeals that may
be made by the persons thinking themselves aggrieved by any-
thing done in pursuance of this act, and they are hereby au-
thorized and required to grant such relief to such appellant
as to them shall appear just and reasonable in consideration of
such inability of body as in the opinion of the court renders
him incapable of performing military duty, and each of the
said freeholders, before they shall sit on the said appeal, shall
take the following oath or affirmation, viz.: "That he will hear
and impartially determine on the cases of appeal that may
be laid before him agreeable to law and according to the best
of his knowledge," which oath or affirmation the said justice,
lieutenant or sub-lieutenant is hereby empowered and required
to administer, and the said justice and freeholder shall have
and receive from the said lieutenant the value of one bushel of
wheat each for every day they sit on the said appeals, and
the said lieutenant and justice of the peace shall each keep a
separate record of the proceedings of such court of appeals.

[Section XXXIX.] (Section L, P. L.) And be it further en-
acted by the authority aforesaid, That if any person or persons
shall knowingly sell, buy, take or exchange, conceal or other-
wise receive any arms, accoutrements, colors or drums belong-
ing to this state or the United States on any account or pretense
whatsoever, the person so offending, being convicted thereof
before one or more justice or justices of the peace of the city
or county where such offense shall be committed, shall forfeit
and pay for every such offense treble the value of such arms

94

164                  *The Statutes at Large of Pennsylvania.*                  [1780

or accoutrements, to be ascertained by the said justice or jus-
tices and levied by distress and sale of the offender's goods
and chattels by the justice or justices before whom such of-
fender shall be convicted, returning the overplus, if any, on
demand, to such offender, and for want of such distress shall
commit such offender to the common gaol of the county, there
to remain without bail or mainprise for any term not exceeding
three months, unless such money shall be sooner paid; and in
every case the proof of the property shall be made by the
possessor of such arms or accoutrements.

[Section XL.] (Section LI, P. L.) And be it further enacted
by the authority aforesaid, That no person, not being a subject
of this state or any of the United States, who already has de-
serted or shall hereafter desert from the enemy in the course
of the present war, shall be enrolled in any company of militia
of this state during the present contest or be subject to any
fine or penalty for not serving as by this act is required of
others.

[Section XLI.] (Section LII, P. L.) And be it enacted by
the authority aforesaid, That no civil process shall be served
on any commissioned, non-commissioned officer or private at
any regimental review or training of any company, or while
going to or returning from the place of such review or training.

[Section XLII.] (Section LIII, P. L.) And be it enacted by
the authority aforesaid, That all moneys passing into the
treasury by virtue of the directions of this act shall be appro-
priated as a fund for the benefit and relief of such officers
and privates of the militia of this state as are or shall be
wounded and disabled in service, and of the widows and child-
ren of such as have or shall fall in battle or otherwise loose
their lives in the service of the state, and shall not be con-
sidered as a revenue for any other purpose than that of sup-
porting the necessary officers for carrying this law into effect,
equipping and furnishing the militia with every necessary ap-
paratus for the defense and security of the state, the surplus,
if any, to be appropriated in such manner and to such uses as
the assembly shall from time to time direct and appoint.

[Section XLIII.] (Section LIV, P. L.) And be it further en-

733072 O - 47 - 7

4-ER-0851

1780]    *The Statutes at Large of Pennsylvania.*    165

acted by the authority aforesaid, That if any commissioned officer, non-commissioned officer or private militiaman of this state who has lost or may hereafter lose a limb in any engagement in the service of the state, or in the service of the United States of America, or be so disabled as to render him incapable of getting a livelihood, he shall receive during life or the continuance of such disability a pension adequate to the necessity of such disabled officer or private militiaman by the judgment of the orphans' court of the county where such disabled officer or private militiaman shall dwell or reside.  And every officer or private disabled as aforesaid shall, before he be legally entitled to the pension above mentioned, produce a certificate, upon oath, from the commanding officer who was in the same engagement in which he was wounded, or from the officer next in command, or the surgeon that attended him, and upon such disabled officer, non-commissioned officer or private militiaman's producing such certificate as aforesaid to the orphans' court of the county where such disabled officer, non-commissioned officer or private militiaman shall dwell or reside, the said court is hereby enjoined and required, if they are satisfied of the truth thereof, to give every such officer or private an order on the lieutenant of the said city or county for such sums of money from time to time as to them shall appear just and necessary, provided such sums of money do not exceed the half pay and rations of such officer or private.  And the said lieutenant is hereby enjoined and required to accept and pay the said order to such officer or private.  And the said lieutenant shall draw on the state treasurer as often as he shall have occasion for such sum or sums of money as he shall make appear to the president and council to be necessary for carrying this proviso into execution.

[Section XLIV.] (Section LV, P. L.) And be it enacted by the authority aforesaid, That if any officer, non-commissioned officer or private militiaman residing in this state, having a family, has been killed, shall be killed or shall die of his wounds received in the service of this or the United States, a certificate from the commanding or other officer next in rank who was in the same engagement in which he was killed or wounded and

166            *The Statutes at Large of Pennsylvania.*            [1780

died of his wounds, being produced to the orphans' court, and also a certificate from the overseers of the poor and two other reputable freeholders of the township, borough, ward or district where the family of such deceased officer or private militiaman shall dwell or reside at that time, setting forth the particular circumstances of such family, the age or ages of the child or children and the necessity of granting them some support, the said orphans' court, when possessed of the certificates aforesaid, is hereby authorized to give orders upon the lieutenant of the city or county for such sum of money as they may think just and necessary for the support of such family from time to time.

(Section LVI, P. L.) Provided always, That the sum of money aforesaid does not exceed the half pay and rations that such officer, non-commissioned officer or private was entitled to at the time of his death.

[Section XLV.] (Section LVII, P. L.) And be it further enacted by the authority aforesaid, That if any field or other commissioned officer, at any regimental review or on any other occasion when the battalion or company to which he may belong, or in which he holds a command is paraded in arms, shall appear, misbehave or demean himself in an unofficerlike manner, he shall, for such offense, be cashiered or punished by fine at he discretion of a general court martial as the case may require in any sum not exceeding the price of six days' labor; and if any non-commissioned officer or private shall, on any occasion of parading the company to which he belongs, appear with his arms and accoutrements in an unfit condition, or be found drunk or shall disobey orders or use any reproachful or abusive language to his officers, or any of them, or shall quarrel himself or promote any quarrel among his fellow soldiers he shall be disarmed and put under guard by order of the commanding officer present until the company is dismissed, and shall be fined in any sum not exceeding the price of ten days' labor nor less than one day's labor.

[Section XLVI.] (Section LVIII, P. L.) And be it further enacted by the authority aforesaid, That if the lieutenant-colonel or commanding officer of any battalion shall neglect

97

**1780]**    *The Statutes at Large of Pennsylvania.*    **167**

or refuse to give orders for assembling his battalion at the times appointed by this law or at the direction of the lieutenant or sub-lieutenant of the city or any county when the said lieutenant or sub-lieutenant is thereto commanded by the president or vice-president in council, or in case of an invasion of the city or county to which such battalion belongs, he shall be cashiered and punished by fine at the discretion of a general court-maritial; and if a commissioned officer of any company shall, on any occasion neglect or refuse to give orders for assembling the company to which he belongs, or any part thereof, at the direction of the lieutenant-colonel or commanding officer of the battalion to which such company belongs he shall be cashiered and punished by fine at the discretion of a regimental court-martial and a non-commissioned officer offending in such case shall be fined in any sum not exceeding the price of ten days' labor.

[Section XLVII.] (Section LIX, P. L.) And be it further enacted by the authority aforesaid, That if any captain or commanding officer of a company shall refuse or neglect to make out a list of the persons noticed to perform any tour of duty and send or convey the same to the lieutenant-colonel or commanding officer of the battalion to which such company may belong for such neglect or refusal he shall be cashiered or fined at the discretion of a regimental court-martial.

[Section XLVIII.] (Section LX, P. L.) And be it further enacted by the authority aforesaid, That the following rules and regulations shall be those by which the militia shall be governed.

1st. Every general court-martial shall consist of thirteen members, all of whom shall be commissioned officers and of such rank as the case may require, and these thirteen shall choose a president out of their number, who shall be a field officer.

2d. Every regimental court-martial shall be composed of five members, all commissioned officers, who are to choose one of their members as president not under the rank of a captain.

3d. In any court-martial not less than two-thirds of the members must agree in every sentence for inflicting any punishment, otherwise the person charged shall be acquitted.

98

168          *The Statutes at Large of Pennsylvania.*          [1780

4th. The president of each and every court-martial, whether general or regimental, shall require all witnesses in order to the trial of offenders to declare on oath or affirmation that the evidence they shall give is the truth, the whole truth and nothing but the truth, and the members of all such courts shall take an oath or affirmation, which the president is required to administer to the other members and the next in rank is required to administer to him that they will give judgment with impartiality.

5th. All members of any militia called as witnesses in any case before a court-martial who shall refuse to attend and give evidence shall be censured or fined at the discretion of the court.

6th. No officer or private man being charged with transgressing these rules shall be suffered to do duty in the battalion, company or troop to which he belongs until he has had his trial by a court-martial, and every person so charged shall be tried as soon as a court-martial can be conveniently assembled.

7th. If any officer or private man shall think himself injured by his lieutenant-colonel or the commanding officer of the battalion and shall, upon due application made to him, be refused redress, he may complain to the lieutenant of the county, who shall summon a general court-martial that justice may [be] done.

8th. If an inferior officer or private man shall think himself injured by his captain or other superior officer in the battalion, troop or company to which he belongs, he may complain to the commanding officer of the battalion who shall summon a regimental court-martial for the doing justice according to the nature of the case.

9th. No penalty shall be inflicted at the discretion of the court-martial other than degrading, cashiering or fining.

10th. The commanding officer of the militia for the time being shall have full power of pardoning or mitigating any censures or penalties ordered to be inflicted on any private or non-commissioned officer for the breach of any of these articles by a general court-martial, and every offender convicted as

99

4-ER-0855

1780]    *The Statutes at Large of Pennsylvania.*    169

aforesaid by any regimental court-martial, may be pardoned, or have the penalty mitigated by the lieutenant-colonel or commanding officer of the battalion, excepting only where such censures or penalties are directed as satisfaction for injuries received by one officer or private man from another, but in case of officers such sentence to be approved by the commander-in-chief or the nearest general officer of the militia, who are respectively empowered to pardon or mitigate such sentence or disapprove the same.

11th. The militia, on the days of exercise, may be detained under arms on duty in the field any time not exceeding six hours, provided they are not kept above three hours under arms at any one time without allowing them a proper time to refresh themselves.

12th. No company or battalion shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged; and any person who shall bring any kind of spiritous liquor to such place of training shall forfeit such liquors so brought for the use of the poor belonging to the township where such offender lives.

13th. All fines that shall be incurred by any breach of these rules shall be paid into the hands of the clerk of the company to which the offenders belong, but if a field officer, to the clerk of that company whose captain has the first rank in the battalion, within three weeks after they become due; but in case of neglect or refusal to pay any of the said fines, then in such case, upon application made by the clerk to whom such fine or fines ought to have been paid, it shall and may be lawful for any one justice of the peace of the county, if the fine does not exceed fifty pounds, or two justices if above that sum, by warrant under his or their hands and seals to levy such fine or fines respectively on the offender's goods and chattels, and otherwise proceed in recovering the same as is by law directed, and when recovered the said justice or justices are required to pay such fines into the hands of the clerk who applied for recovery and shall be applied as other fines before directed.

[Section XLIX.] (Section LXI, P. L.) And be it further enacted by the authority aforesaid, That in any case wherein any

100

170          *The Statutes at Large of Pennsylvania.*          [1780

person is by this act called to do or perform anything in
execution thereof, or otherwise, and no special recompense is
herein provided for such service, such person shall be satisfied
for the same at the discretion of the lieutenant, taking to his
assistance two sub-lieutenants of the city or county respec-
tively.

[Section L.] (Section LXII, P. L.) And be it further enacted
by the authority aforesaid, That in any case wherein the person
who shall be authorized to collect any fine due by virtue of this
act shall need assistance in levying the same, such collector,
on application to any captain or inferior officer of the militia
of the place where such fine shall be due, shall be assisted
therein by a sufficient party of militia of the neighborhood
ordered on such duty by such captain or other officer, and if
such captain or other officer or any of the party by such cap-
tain or other officer ordered on such duty refuse or neglect
to perform the said duty, such captain or other officer shall
forfeit and pay the sum of fifty pounds, and if any non-com-
missioned officer or private be delinquent therein he shall for-
feit and pay the sum of twenty-five pounds, to be recovered with
costs of suit as demands for fifty pounds are by law recoverable,
to be applied as other fines levied by virtue of this act.

[Section LI.] (Section LXIII, P. L.) And be it further en-
acted by the authority aforesaid, That in case any militiaman
shall desert when he is out on a tour of duty the commanding
officer of the battalion or detachment from which he deserts
shall, as soon as possible, give notice thereof to the lieutenant
of the city or county or sub-lieutenant of the district from which
he came who, if he does not see proper to send him back shall
subject him to the payment of such fine as he would have paid
if he had not gone out on such tour.

[Section LII.] (Section LXIV, P. L.) And be it further en-
acted by the authority aforesaid, That if any suit or suits shall
be brought or commenced against any person or persons for
anything done in pursuance of this act, the action shall be laid
in the county where the causes of such action did arise and
not elsewhere, and the defendant or defendants in such action
or actions to be brought may plead the general issue, and

1780]   *The Statutes at Large of Pennsylvania.*                171

give this act and the special matter in evidence; and if the
jury shall find for the defendants in such action or actions,
or if the plaintiff or plaintiffs shall be non-suited or discontinue
his or their action or actions after the defendant or defendants
shall have appeared, or if upon demurrer judgment shall be
given against the plaintiff or plaintiffs the defendant or defend-
ants shall have treble costs and have the like remedy for the
same as any defendant or defendants had or have in other cases
to recover costs by law.

[Section LIII.] (Section LXV, P. L.) And be it further en-
acted by the authority aforesaid, That all and every the fines
and forfeitures by this act made payable and the mode of
recovery not hereinbefore particularly pointed out shall be
recovered by the lieutenant of each county and of the city
of Philadelphia by summons or warrant and execution from
under the hand and seal of a justice of the peace in the neigh-
borhood where the person charged resides, directed to any
constable of the city or county, requiring him to levy the
same on the goods and chattels of the delinquent, and the
same cause to be appraised by two freeholders, and after
being publicly advertised seven days make sale thereof, and
after payment of the fine or forfeiture to the lieutenant, to-
gether with costs and charges, pay the overplus, if any, to the
owner, and if goods and chattels sufficient to discharge the
same cannot be found, that then the justice granting such
precept shall certify the proceedings had thereon to the pro-
thonotary of the county court of common pleas, who is there-
upon required to issue a fieri facias directed to the sheriff of
said county for levying the fines and forfeitures aforesaid, to-
gether with the costs on the lands or tenements of such delin-
quent.

[Section LIV.] (Section LXVI, P. L.) Provided always, and
be it enacted by the authority aforesaid, That if any person or
persons shall think him or themselves aggrieved by the judg-
ment of the justice aforesaid in any suit of fifty pounds or
upwards, he or they may appeal before the justice aforesaid,
and on the party's giving security within six days next after
any such judgment to prosecute such appeal in the court of

4-ER-0858

172          *The Statutes at Large of Pennsylvania.*     [1780

common pleas of the county with effect, the justice shall receive the same and stay further process, and the said justice shall return every such appeal on the first day of the next term, and the court shall direct a trial by jury, as in other cases of debt, whose verdict shall be final and conclusive; and all such appeals shall be tried at the term to which such returns shall be made, any law, custom or usage to the contrary notwithstanding.

[Section LV.] (Section LXVII, P. L.) And be it further enacted and declared, That the act entitled "An act to regulate the militia of the commonwealth of Pennsylvania," [1] passed on the seventeenth day of March, Anno Domini one thousand seven hundred and seventy-seven; also, the supplement to the said act passed the nineteenth day of June, Anno Domini one thousand seven hundred and seventy-seven; [2] also, a further supplement to the said act passed on the thirtieth day of December, Anno Domini one thousand seven hundred and seventy-three; [3] also, a further supplement to the said act passed on the fifth day of April, Anno Domini one thousand seven hundred and seventy-nine; [4] also, such parts of an act, entitled "An act to empower the supreme executive council and justices of the supreme court to apprehend suspected persons and to increase the fine to which persons are liable for neglecting to do their tour of militia duty," [5] as relates to the fining the militia for not performing a tour of duty and the pay of the lieutenants are hereby repealed and made void.

[Section LVI.] (Section LXVIII, P. L.) Provided always, That nothing in this act contained shall be deemed to repeal, alter or dispense with the powers, authorities or duties of the present lieutenants and sub-lieutenants of the city and counties aforesaid, or of any other officer or person under the militia laws that have been in force in this state immediately before the passing of this act until their respective offices are supplied and filled by new appointments in virtue of this act which

---

[1] Chapter 750.
[2] Chapter 760.
[3] Chapter 781.
[4] Chapter 843.
[5] Chapter 865.

1780]    *The Statutes at Large of Pennsylvania.*    173

said present lieutenants and sub-lieutenants or other proper officers are hereby authorized required and enjoined to collect or cause to be collected all [such] fines and forfeitures as have been or shall be incurred during the continuance of their respective commissions and pay in the same agreeable to this law, or the late laws aforesaid on or before the first day of July next. But in case the president or vice-president and council shall approve of the discontinuing to act or resignation of the said present lieutenants and sub-lieutenants or any of them and not otherwise it shall be lawful for such officer and he is hereby required to deliver to his successor in office an account on oath of all the moneys uncollected and outstanding on account of fines and forfeitures aforesaid, who is in such case empowered and required to collect the same.

Passed March 20, 1780.  See the Acts of Assembly passed May 26, 1780, Chapter 908; September 22, 1780, Chapter 916; March 21, 1783, Chapter 1022; September 22, 1783, Chapter 1038; December 9, 1783, Chapter 1061; September 29, 1787, Chapter 1319; March 22, 1788, Chapter 1339; November 19, 1788, Chapter 1383; March 27, 1789; Chapter 1416; March 3, 1790, Chapter 1483; March 27, 1790, Chapter 1493; April 5, 1790, Chapter 1513 (repealed by the Act of Assembly passed) April 11, 1793, Chapter 1696.  Recorded L. B. No. 1, p. 374, &c.

---

## CHAPTER CMIII.

---

AN ACT TO DISCONTINUE A ROAD CALLED PALMER'S LANE IN THE TOWNSHIP OF THE NORTHERN LIBERTIES IN THE COUNTY OF PHILADELPHIA AND NEAR TO THE LOWER FALLS OF SCHUYLKILL.

(Section I, P. L.) Whereas it has been represented to us on the petition of John Redman of the city of Philadelphia, practitioner in physic, and Nathaniel Falconer, of the same place, mariner, that in the year one thousand seven hundred and twenty-three, four, a road was laid out from the market place in Germantown, in the county of Philadelphia, to Robert Roberts' ferry, on the river Schuylkill, which entered the lands then owned by William Palmer, and since by the said John Redman and Nathaniel Falconer, at the northwest end of the same, and

104

THE

# ACTS AND RESOLVES

PASSED BY

## The General Assembly

OF THE

# STATE OF VERMONT,

AT THE

## OCTOBER SESSION,

## 1852.



PUBLISHED BY AUTHORITY.

MONTPELIER:
E. P. Walton & Son, Printers.
1852.

EXHIBIT 6 (McLean)

1852.]     PUBLIC ACTS.     19

No. 24.—AN ACT TO PREVENT TRAFFIC IN INTOXICATING LIQUORS FOR THE PURPOSE OF DRINKING.

SECTION

1. Manufacture, sale, &c., of intoxicating liquor prohibited, except as provided in this act.
2. A county commissioner to be chosen annually; compensation fixed.
3. Commissioner to appoint an agent of the several towns, to purchase and sell, for the town of which he is agent, intoxicating liquor for certain purposes, under certain regulations.
4. Agent to execute a bond for the faithful performance of his trust.
5. Penalties for selling, &c. intoxicating liquors in violation of this act.
6. Justices of the peace and county courts to have concurrent jurisdiction of offences. Prosecutions, how to be made.
7. No appeal allowed from decision of justices of the peace, unless certain securities are given.
8. Commissioner empowered to revoke license of agent, and to prosecute him for violations of this act.
9. No person to be manufacturer or common seller unless appointed agent as aforesaid. Penalties prescribed. Proviso, in relation to cider, and manufacture for private use.
10. Persons engaged unlawfully in such traffic disqualified to sit upon any jury in cases arising under this act.
11. Prosecutions under this act to take precedence of other cases, except certain criminal cases, and not to be discontinued or con-

SECTION

tinued unless required by purposes of justice.
12. Provisions for search and destruction of liquor in certain case.
13. Provisions in case the owner of any liquor is unknown, and in case it belongs to any town.
14. Appeal from judgment of justice allowed and regulated. Liquors may be kept by manufacturers &c. for use.
15. Provisions for seizing liquor in shanties, &c. on ground of any public show or occasion.
16. In cases appealed when judgment is affirmed, liquors to be destroyed.
17. Witnesses to be bound over for appearance at county court.
18. Forms of complaints given. Defects may be amended. Fine to be imposed for each act of selling proved.
19. Fees regulated.
20. Powers of city authorities under this act.
21. Payments for liquors sold in violation of this law to be treated as against law. In suits, buyer and seller may be a witness. No action to lie for recovery of liquor, or its value, unless the same sold or purchased agreeably to this act.
22. Persons intoxicated and disturbing the public peace may be apprehended, and compelled to disclose where they obtained such liquor.
23. Penalty for neglect of duty by public officer.
24. Grand jury to make presentments.

**20**                    PUBLIC ACTS.                    **[A. D.**

<table>
<tr><td>

Fine to be received and paid by the state treasury.

25. Penalty on state's attorney for settling with offenders.

26. Former acts repealed.

27. Act when to take effect.

28. Provisions for obtaining an expression of the choice of the freemen.

</td><td>

29. Canvass of votes, when to be made.

30. This act not to affect prosecutions under the present law: and not to interfere with licenses now granted.

31. Provisions for first election of county commissioners in case the people vote in favor of this act.

</td></tr>
</table>

*It is hereby enacted by the General Assembly of the State of Vermont, as follows :*

SEC. 1.   No person shall be allowed, at any time or place within this state, except as hereinafter provided, to manufacture, sell, furnish or give away, by himself, his clerk, servant or agent, any spirituous or intoxicating liquor, or mixed liquor, of which a part is spirituous or intoxicating, all which is intended by the phrase intoxicating liquor wherever it occurs in this act : *Provided*, that nothing in this act shall be construed to prevent the manufacture, sale and use of the fruit of the vine for the commemoration of the Lord's supper.

SEC. 2.   There shall be chosen by ballot at each annual March meeting in this state, by the legal voters in such meeting, a county commissioner for each county—each to be chosen by the legal voters of the several towns in their respective counties, a notice of which election shall be by the selectmen inserted in the warning for town meetings, and a certificate of the votes given for such commissioner shall be forwarded, by the town clerks of the several towns, to the clerk of the county in which such towns are situated, on or before the second Tuesday in April next after such election ; and the clerk aforesaid shall, on the second Tuesday in April, canvass the votes so returned, and the person having the greatest number of votes so returned shall be declared elected commissioner, and the clerk aforesaid shall issue, to the person so elected, a proper certificate of his election, and make suitable proclamation of such election in one or more newspapers printed in such county, or if there be no such paper printed in such county, then in one or more papers printed in an adjoining county.   And such commissioners shall hold their respective offices for the term of one year, and until others are chosen in their stead, and shall have full power to perform all the duties required of them by this act, and shall receive as compensation, for services rendered as required by this act, six cents per mile for all necessary travel, and two dollars per day for time actually spent in the performance of duties herein required, to be paid from the treasuries of the respective counties.

1852.]                    PUBLIC ACTS.                    21

Sec. 3.   The commissioner of any county, on the first Monday in May, annually, or as soon after as may be convenient, may appoint some suitable person as the agent of any town or city in the county, to purchase, at the expense of the town or city, for which such agent is appointed, and to sell at some central or convenient place therein, intoxicating liquor, to be used for medicinal, chemical, and mechanical purposes only; and the money received for such sales shall be paid into the treasuries of their respective towns or cities; and such agent shall receive such compensation for his services as the selectmen of the town, or mayor and aldermen of the city, shall prescribe; and shall, in the sale of such liquor, conform to such rules and regulations as said commissioner shall prescribe; and shall hold his situation for one year, unless sooner removed by said commissioner, or his successor in office.   And in case such appointment becomes vacant by removal or otherwise, said commisioner may appoint some other person to the situation for the remainder of the year: *Provided*, that no innkeeper, or keeper of a house of public entertainment, shall be appointed such agent in any town or city in the state.

Sec. 4.   Such agent shall receive a certificate from the commissioner appointing him, authorizing him, as the agent of the town, to sell intoxicating liquor for medicinal, chemical, and mechanical purposes only; but such certificate shall not be delivered unto him, or take effect, until he shall, if required by the commissioner, have executed and delivered a bond, with two good and sufficient sureties, to said commissioner, in the sum of six hundred dollars, in substance, as follows:

" Know all men that we ———— as principal, and ———— as sureties, are holden to the county of ————, in the sum of six hundred dollars, for the payment of which, to said county, we bind ourselves, our heirs, executors and administrators firmly by these presents.

" Witness our own hands and seals hereto affixed, this ———— day of ———— A. D. ————.

" Provided, that if the said ———— shall, so long as he is agent of the town of ———— for selling intoxicating liquor, conform to the provisions of the law relating to the traffic in such liquor, and to such rules and regulations respecting the same as have been or may be prescribed by the commissioner of said county, not inconsistent with the provisions of this act, then this obligation shall be void; otherwise of force."

Sec. 5.   If any person, by himself, clerk, servant or agent, shall sell, furnish or give away, any intoxicating liquor in violation of this act, he shall forfeit and pay to the treasurer of the town where such offence is committed, upon the first conviction, ten dollars and costs of prosecution; on the second con-

4-ER-0864

22          PUBLIC ACTS.          [A. D.

viction he shall forfeit and pay as aforesaid twenty dollars and the costs of prosecution ; and on the third conviction, he shall forfeit and pay as aforesaid twenty dollars and the costs, and be imprisoned in the county jail not less than three months, nor more than six months.

Sec. 6.   Justices of the peace shall have concurrent jurisdiction in their several counties with the county court, to hear and determine all offences against the above section, though inhabitants of the town where the offence is committed ; and the same may be tried upon the complaint of the grand juror of such town, or of the state's attorney, before any justice, or upon the information of the state's attorney, before the county court for such county.   And such forfeiture may also be recovered in an action of debt in the name of such town ; and it shall be the duty of the selectmen of such town to institute such action, on being informed of any such offence and furnished with evidence thereof.

Sec. 7.   No person shall be allowed an appeal from the judgment rendered against him by any justice on the trial of such action or complaint, until he recognize, with good and sufficient sureties, in the sum of not less than one hundred dollars, to prosecute his appeal to effect, and to pay all costs, fines and forfeitures, and undergo all penalties that may be awarded against him upon the final disposition of such action or complaint ; nor until he give a bond, with other good and sufficient sureties, to the town or city where such offence was committed, in the sum of two hundred dollars, conditioned that he will not, during the pendency of such appeal, violate any of the provisions of this act.

Sec. 8.   Whenever complaint shall be made to the commissioner of any county, that any agent, appointed by him or his predecessor under this act, has violated the terms of his license, or has broken the condition of his bond, he shall notify him thereof ; and if, on hearing, it shall appear that such terms have been violated, or that such condition has been broken, he shall revoke and make void his appointment.   And whenever any breach of the condition of such bond shall come to the knowledge of such commissioner, he shall cause the same to be prosecuted.

Sec. 9.   No person shall be a manufacturer or common seller of intoxicating liquor within this state, without being appointed agent as herein before provided ; and every person convicted thereof the first time shall forfeit and pay the sum of one hundred dollars and costs of prosecution ; the second, and every subsequent time, two hundred dollars ; and on being convicted thereof the third, or any subsequent time, he shall be imprisoned in the county jail not less than four nor more than

1852.]                    PUBLIC ACTS.                    23

twelve months ; such forfeiture and payment to be recovered, and such penalty to be inflicted, upon complaint, information or indictment ; but if not so prosecuted within one year after the offence is committed, such forfeiture and payment may be recovered by an action of debt, in the name and for the benefit of the town or city where the offence was committed ; and it shall be the duty of the selectmen of such town, or the mayor or aldermen of any city, to commence such action, upon being informed of any such offence and furnished with the evidence thereof : *Provided,* that nothing in this act contained shall be construed to prevent the manufacture and sale of cider in quantities of not less than five gallons for medicinal, chemical, mechanical and culinary purposes only, nor the manufacture, by any one for his own consumption and use, of any fermented liquor.

SEC. 10. No person engaged in unlawful traffic in intoxicating liquor shall be competent to sit upon any jury, in any case arising under this act ; and when information shall be communicated to the court that any member empannelled upon such jury is believed to be engaged in such traffic, the court shall inquire of him as to the truth thereof ; and no answer that he shall make shall be used against him in any case arising under this act ; but he may decline to answer, and in that case he shall be discharged from such panel ; and if he answer falsely, he shall be incapable of serving upon any jury thereafter : *Provided,* that no verdict against any respondent in such a case shall be vitiated or impeached, in consequence of such a person having been upon the jury by which it was rendered.

SEC. 11. All cases arising under this act shall take precedence of all other trials in the court in which they are pending, except those in criminal cases where the respondents are under arrest ; and neither the court nor prosecuting officer shall have authority to enter a nolle prosequi, or to grant a continuance, in any case arising under this act, either before or after the verdict, except where the purposes of justice require it.

SEC. 12. If any three persons, voters in any town, shall make complaint, under oath or affirmation, before any justice of the peace in the county, that they have reason to believe, and do believe, that intoxicating liquor is kept or deposited in any dwellinghouse, store, shop, steamboat, or water-craft of any kind, depot, railroad car, or land carriage of any kind, warehouse or other building or place in said town, and intended for sale, by any person not authorized to sell the same, said justice of the peace shall issue a warrant, to any sheriff or constable of the state, to search the premises described in such complaint ; and if any intoxicating liquor is found therein under circumstances warranting the belief that it is intended for sale contrary to the

4-ER-0866

24                     PUBLIC ACTS.                    [A. D.

provisions of this act, such officer shall seize the same and con-
vey it to some proper place of security, and keep the same un-
til final action is had thereon ; and the owner or keeper of the
liquor so seized, if he be known to the officer seizing the same,
shall be summoned by him to appear forthwith before the
justice issuing the warrant ; and if he fail to appear, or to show
by satisfactory evidence that said liquor is not intended for sale
contrary to the provisions of this act, or is of foreign produc-
tion, that the same has been imported under the laws of the
United States, and in accordance therewith, that it is contained
in the original packages in which it was imported, in quantities
not less than the laws of the United States prescribe, such
liquor shall be adjudged forfeited, and shall be destroyed under
a written order of said justice, and in his presence, or in the
presence of some person appointed by him, and named in said
order for that purpose, who shall join with the officer executing
such order in certifying, upon the back thereof, the execution
of the same ; and the owner or keeper of such liquor shall pay
to said town a fine of twenty dollars and costs, if, in the opin-
ion of said justice, said liquor was kept or deposited for the
purpose of sale, contrary to the provisions of this act. And
the custom house certificate of importation, and proof of marks
on the casks or packages, in which such liquor is contained,
corresponding thereto, shall not be received as evidence that
the liquor contained in such packages is that actually imported
therein.

SEC. 13.  If the owner, keeper or possessor of any liquor
so seized shall be unknown to the officer seizing the same, it
shall, before being destroyed, be advertised, with the number
and description of the casks or packages, by posting up in some
public place, for two weeks, a written notice of the proceeding.
And if it shall be made to appear, within the space of two
weeks as aforesaid, that said liquor is actually the property of
any town in this state, and was so when seized, and had been
purchased for sale by the agent of such town, for medicinal,
chemical and mechanical purposes only, the officer having the
custody of such liquor shall, upon the order of such justice,
deliver said liquor to the agent of the town whose property it
is, taking his receipt for the same, upon the back of said order,
which he shall thereupon return to said justice ; and if not so
made to appear, such liquor shall be proceeded with as provided
in the last preceding section.

SEC. 14.  Any person claiming such liquor may appeal from
the judgment of said justice ; but his appeal shall not be allow-
ed until he give, with good and sufficient sureties, a bond in
the sum of two hundred dollars, conditioned that he prosecute
his appeal to effect, and pay all fines, forfeitures, and costs

1852.]                    PUBLIC ACTS.                    25

which may be finally awarded against him; and if the final
decision be against him, and the liquor seized as aforesaid ex-
ceed in quantity five gallons, he shall be adjudged by the court
a common seller of intoxicating liquor, and shall be subject to
the penalties provided in section nine of this act, and said
liquor shall be destroyed, as provided in section twelve.  No-
thing in this act contained shall be so construed as to prevent
any chemist, artist or manufacturer, in whose art or trade it may
be necessary, from keeping, at his place of business, such reas-
onable and proper quantity of distilled liquor as he may have
occasion to use in his art or trade, but not for sale.

SEC. 15.  It shall be the duty of any sheriff, sheriff's deputy,
constable, selectman, or grand juror, if he shall have informa-
tion that any intoxicating liquor is kept or sold in any tent,
shanty, hut or place of any kind for selling refreshments in any
public place, except dwelling houses, on or near the ground of
any cattle show, agricultural exhibition, military muster or
public occasion of any kind, to search such suspected place
without warrant, and if such officer shall find upon the prem-
ises any intoxicating liquor, he shall seize and apprehend the
keeper or keepers of such place, and take them, with the liquor
so found and seized, forthwith, or as soon as conveniently may
be, before some justice of the peace of the town in which the
same was found; and thereupon such officer shall make a writ-
ten complaint under oath, and subscribed by him, to such jus-
tice; and upon proof that such liquor is intoxicating, that the
same was found in the possession of the accused, in a tent,
shanty, or other place as aforesaid, he or they shall be sentenced
to imprisonment, in the county jail of the county where such
offence was committed, for thirty days, and the liquor so seized
shall be destroyed by order of said justice, as provided in the
twelfth section of this act; and if any person, apprehended un-
der this section and sentenced as aforesaid, shall claim an ap-
peal, before his appeal is allowed, he shall recognize, with good
and sufficient sureties, in the sum of one hundred dollars,
that he will prosecute his said appeal to effect, and pay all fines
and costs, and suffer such penalty as may be awarded against
him.  And if he is convicted upon such appeal, he shall, in ad-
dition to the penalty imposed by such justice, pay a fine of ten
dollars to the town where said liquor was seized as aforesaid.
And any person resisting an officer in the execution of his duties
under this or any other section of this act, shall be liable to the
same penalties as are provided by law for resisting a sheriff in
the execution of legal process.

SEC. 16.  Whenever the appellant, in any case arising under
this act, shall fail to enter and prosecute his appeal, or shall be
convicted, the county court, or court in which such appeal is

26                    PUBLIC ACTS.                    [A. D.

finally decided, shall order all liquor seized upon the original complaint, or complaint and warrant, to be destroyed forthwith, under the order of such court, as in case of liquor destroyed under an order of a justice of the peace, as herein before provided.

SEC. 17.  It shall be the duty of the justice of the peace or county court, before whom any case arising under this act is tried, if requested by either party, to take the recognizance of the necessary witnesses, who shall have testified in the case, for their appearance at the county court, in the same sum in which the respondent is ordered to find bonds.  And in case any such witness shall refuse to enter into the bond of recognizance ordered, he may be committed to jail on the warrant of the justice or court making such order.

SEC. 18.  Complaints for any offence against the fifth section of this act shall be substantially in the following form, to wit:

"STATE OF VERMONT, }
—— County, ss.  } To A. B., justice of the peace for the county of —— comes C.D., grand juror of the town of —— in said county, and complains that E. F., of —— on the —— day of —— A. D. —— at —— did at divers times sell, furnish, or give away, (as the case may be,) intoxicating liquor, without authority, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state.  C. D., *grand juror.*"  And the justice, to whom such complaint is made, shall certify thereon, substantially as follows:—"This complaint, exhibited to me this —— day of —— A. D. ——.  A. B., *justice of the peace.*"  And for all offences against the ninth section of this act, the complaint shall be, in substantially the same form, inserting the words "became a manufacturer of" or "common seller of" (as the case may be) in lieu of the words "did at divers times sell, furnish, or give away."  And in cases arising under the twelfth section of this act, the complaint shall commence, substantially, in the same manner, and proceed in substance as follows:—"Come C. D., E. F. and G. H., legal voters in the town of —— in said county, and complain that they have reason to believe and do believe that intoxicating liquor is kept or deposited in (describing the place where,) and intended for sale, contrary to the form," &c., following the form above mentioned; and the justice, to whom the same is made, shall certify thereon in substance as follows, viz:—"The above named C. D., E. F. and G. H. exhibited this complaint to me, and made oath to the truth thereof, this —— day of —— A. D. ——, before me, A. B., *justice of the peace.*"  And in cases arising under the fifteenth section of this act, the complaint shall follow the

1852.]                    PUBLIC ACTS.                    27

same form, substantially, as far as the word "complains," and
then proceed, in substance, as follows : " That E. F., of ———
on the ——— day of ——— A. D. ——— kept or sold (as the
case may be) in (describing the place) near (describing the
public occasion) in said county, the intoxicating liquor seized
by me, and here produced, namely (describing the same briefly)
contrary to the form," &c., following the said form first men-
tioned ; and all informations, indictments and declarations in
actions of debt founded on this statute, may be substantially in
the same form, so far as the case will admit ;  nor shall it be
necessary to set forth more particularly the kind or quantity
of intoxicating liquor, nor the nature, date or place of the of-
fence ; nor to make any averment of a former conviction for a
like offence, but upon proof of one or more former convictions
of the same offence, the respondent shall be sentenced to for-
feit, pay and suffer the several fines, forfeitures and penalties
herein provided in such cases.   And any defects in such com-
plaint, information, indictment or declaration, either of form or
substance, may be amended by the court before which the
same is pending, whether by original entry, appeal or otherwise.
And, under the first of the foregoing complaints, every distinct
act of selling, furnishing or giving away may be proved, and
the court shall impose a fine for each offence, or if the number
exceed five, the respondent may be adjudged a common seller,
and be subjected to the penalties provided in section nine of
this act.

     SEC. 19.   In addition to the fees now allowed by law, thirty-
four cents shall be allowed to the justice for taking any bond
required by this act, thirty-four cents for an order for the de-
struction of liquor, fifty cents for attending such destruction ;
to any officer serving any warrant or process for seizing intoxi-
cating liquor, or seizing the same under the fifteenth section of
this act, and apprehending the keeper, one dollar ; for removing
such liquor and keeping the same, his actual expenses ; for de-
stroying liquor under the order of any court, and making his
return of such order, one dollar ; for posting up the notices
required in the thirteenth section of this act, one dollar ; and to
every prosecuting officer in case of conviction before a justice
of the peace, two dollars ; all which are to be taxed as so allow-
ed in the bill of costs against the respondent.

     SEC. 20.   The mayor and aldermen of the city of Vergennes,
or of any other city hereafter incorporated, shall have the
same authority and power, and be subject to the same duty and
liability in case of any offence, committed within said city or
cities against this act, as the selectmen or grand juror of any
town, in case of like offences committed in such town, and
may require like securities of their agent or agents, and deter-

28                    PUBLIC ACTS.                    [A. D.

mine the amount of their compensation ; and the said city or
cities shall have the same right to all fines and forfeitures im-
posed in case of such offence in said city or cities, and the same
remedy to recover them, as any town would have if such of-
fence were committed therein.

SEC. 21.   All payments or compensations for liquor sold in
violation of law, whether in money, labor or personal property,
shall be held and considered to have been received in viola-
tion of law, without consideration, and against law, equity,
and good conscience, and in any action, either at law or equi-
ty, touching such money, labor, or personal property, the pur-
chaser, and also the seller, of such liquor may be a witness for
either party.   And no action of any kind shall be had or main-
tained, in any court in this state, for the recovery or possession
of intoxicating liquor, or the value thereof, except such as are
sold or purchased in accordance with the provisions of this act.

SEC. 22.   Whenever any person within this state shall be
found in such a state of intoxication as to disturb the public or
domestic tranquility, any sheriff, deputy sheriff, high bailiff, or
justice of the peace for the county, or any constable, grand
juror, or selectman of the town in which such person is so
found, may, without warrant, and it is hereby made their duty
to, apprehend such person so intoxicated, and take and retain
him in custody, at the expense of the town in which he is so
found, in any place within the county, in the discretion of the
officer so arresting, until, in the opinion of such officer, the per-
son so detained shall be capable of testifying properly in a
court of justice, and as soon as may be thereafter, bring him
before some justice of the county, and such person, so found
intoxicated, shall, on oath before such justice, disclose the place
where, and the person of whom, the liquor so producing intox-
ication was obtained, and all the circumstances attending it ;
and, on the refusal or neglect of such person so to disclose, he
may, by such justice, be committed to the common jail of the
county, at the expense of the town in which he was so found,
until he shall so disclose, or by said justice be discharged.
And in case said justice shall adjudge from the evidence that
the sale, furnishing or giving away of said liquor was an of-
fence against this act, he shall forthwith issue his warrant, and
cause the person so selling, furnishing or giving away said
liquor, to be brought forthwith before him, and such proceed-
ings shall be had in the case, in all respects, as would have
been had if the person so offending had been regularly prose-
cuted before such justice, for such offence, in the manner pre-
scribed in this act.   And any person resisting the arrest or de-
tention of such person so found intoxicated, by any of the
officers aforesaid, shall be liable to the same penalties as are

1852.]                    PUBLIC ACTS.                    29

provided by law for resisting a sheriff in the execution of a legal process.

SEC. 23.   Whenever any justice of the peace, grand juror, constable, selectman, county commissioner, sheriff, sheriff's deputy, state's attorney, or other officer, whose duties are to enforce any of the provisions of this act, shall, on the proper application being made to them, or either of them, refuse or neglect to do and perform faithfully their respective duties, as provided in this act, every such officer, so refusing or neglecting, shall be subject to indictment or information by the grand jury, or state's attorney, for the county in which such officer or officers aforesaid refused or neglected to perform his or their respective duties ; and on conviction of either of them, the person or officer so convicted shall be fined a sum not exceeding five hundred dollars, nor less than three hundred dollars, in the discretion of the court.

SEC. 24.   It shall be the duty of the grand jurors, empannelled before the several county courts, to inquire into, and present all violations of this act, not otherwise prosecuted, as is herein before provided ; and in all cases so commenced before the county court, the fines imposed and the costs incurred shall be received and paid by the treasury of the state.

SEC. 25.   If any state's attorney, having charge of any case for violations of this act, shall settle with, or in any manner release, any such offender, whose case is in process of adjudication, before the court shall hear and determine the same, such attorney shall be subject to indictment and fine, not exceeding five hundred dollars, nor less than three hundred dollars, in the discretion of the court.

SEC. 26.   All acts, and parts of acts, inconsistent with the foregoing provisions of this act, are hereby repealed.

SEC. 27.   The foregoing provisions of this act shall take effect on the second Tuesday of March next : *Provided,* that if a majority of the ballots to be cast as hereinafter provided shall be " *no,*" then this act shall take effect on the first Monday of December, A. D. 1853.

SEC. 28.   A meeting shall be warned and holden on the second Tuesday of February next, at the usual place of holding the annual March town meetings in the several towns in this state, agreeably to the provisions of chapter fifteen of the compiled statutes, at which the freemen of this state may express their judgment and choice in regard to this act, by depositing their ballots, in a box to be provided for that purpose by the presiding officers of such meetings respectively, with the word " yes" or " no" written or printed thereon.   And the returns of the votes on this question shall be made by the town clerks of the several towns respectively, to the county clerks of

30                    PUBLIC ACTS.                    [A. D.

their respective counties, within one week from said second Tuesday in February. And the several county clerks shall, within two days next after the third Tuesday in February next, at their respective offices, canvass the votes so returned, and as soon as said votes are so canvassed, they shall certify and return to the secretary of state a statement of such canvass of the votes so returned to them.

Sec. 29.  On the fourth Thursday in February next the secretary of state shall canvass the returns so made to him by the county clerks, and within five days thereafter shall issue his proclamation certifying the result of such vote, and declaring the time when the first twenty-six sections of this act are to take effect, according to the provisions of the twenty-seventh section thereof.

Sec. 30.  No prosecution or other legal proceeding, which has been, or shall hereafter be, commenced for any violation of the provisions of chapter eighty-seven of the compiled statutes, shall be prejudiced or affected by this act ; and all licenses granted under said chapter, while the same continues in force, shall have effect until they expire by their own limitation.

Sec. 31.  In case the first twenty-six sections of this act shall take effect on the second Tuesday of March next by the provisions of this act, the first election of a county commissioner for each county, as provided by the second section, shall be made on the second Tuesday of March next, at meetings to be held on that day in the several towns, which election shall be made and conducted as is provided in said second section ; and the returns therein provided to be made by the town clerks shall be returned to the county clerks within one week after such election ; and the county clerks shall on the third Tuesday of March next make the canvass and proceed in all things as provided in said second section ; and the county commissioners thus elected shall hold their office until others are elected in their stead.

Approved, November 23, 1852.

———

No. 25.—AN ACT IN ADDITION TO CHAPTER EIGHTY-SEVEN OF THE COMPILED STATUTES, RELATING TO INN-KEEPERS AND GROCERS, AND THE TRAFFIC IN INTOXICATING DRINKS.

*It is hereby enacted by the General Assembly of the State of Vermont, as follows :*

# ACTS AND RESOLVES

#### OF THE

# GENERAL ASSEMBLY

#### OF THE

## State of Rhode Island and Providence Plantations,

###### PASSED

### JANUARY, A. D., 1853,

##### BEING THE ADJOURNMENT OF THE OCTOBER SESSION;

WITH THE ROLL OF MEMBERS, AND THE REPORTS ORDERED TO BE PUBLISHED.



#### State of Rhode Island, &c.

OFFICE OF THE SECRETARY OF STATE, MARCH, 1853.

---

### PROVIDENCE:
SAYLES, MILLER & SIMONS, PRINTERS TO THE STATE.
### 1853.

## EXHIBIT 7 (McLean)

4-ER-0874

☞ The General Assembly convened in Providence, agreeably to adjournment, on the second Monday of January, 1853, and adjourned on Friday, the 25th of February, following.

232                    JANUARY, 1853.

or pistol, within eighty rods of any baiting place not
his own property, and actually used, in the proper sea-
son therefor, for the baiting and netting of wild pi-
geons, shall be fined not exceeding twenty dollars nor
less than five dollars.

SEC. 2.  Every person who shall be convicted of
strewing or placing any powder or brimstone or other
sulphurous substance upon any baiting place not his
own property, or of burning thereon any of said sub-
stances saturated with tar or turpentine, shall be fined
not less than five nor more than twenty dollars.

SEC. 3.  All fines and penalties under the preceding
sections of this Act shall be recovered by like process-
es as is prescribed in the Act to which this is in addi-
tion.

————

AN ACT for the more effectual suppression of Drink-
ing Houses and Tippling Shops.

*It is enacted by the General Assembly as follows :*

Act for the
more effect-
ual suppres-
sion of
Drinking
Houses and
Tippling
Shops.

SECTION 1.  No person shall be allowed, at any time,
to manufacture or sell or suffer to be manufactured or
sold by any person, or keep or suffer to be kept on his
premises or possessions, or under his charge, for the
purposes of sale, any ale, wine, rum or other strong or
malt liquors, or any mixed liquors, a part of which is
ale, wine, rum or other strong or malt liquors, except
as hereinafter provided.

SEC. 2.  The town council of any town may, and
the mayor and aldermen of any city shall, annually
on the Monday next following the annual election of
town officers in any town, or as soon thereafter as may
be convenient, appoint some suitable person or per-
sons, as the agent or agents of said town, to sell at
some central or convenient place within said town, ale,
wine, rum or other strong or malt liquors, to be used
for medicinal and mechanical purposes only : and said
agent shall receive such compensation for his services,
and shall in the sale of such liquors, conform to such
rules and regulations, as the town council as aforesaid
shall prescribe.  Any such agent, appointed as afore-
said, shall hold his situation for one year, unless soon-
er removed by the board from which he received his
appointment, as he may be at any time, at the plea-

4-ER-0876

## JANUARY, 1853.                    233

sure of said board: and in case of a vacancy in said appointment, by such removal or otherwise, said board may appoint some other person to such agency for the remainder of the year.

SEC. 3.   Every such agent shall receive a certificate from the board by whom he has been appointed, authorizing him, as the agent of such town, to sell ale, wine, rum or other strong or malt liquors, for medicinal and mechanical purposes only: but such certificate shall not be delivered to the person so appointed, until he shall have executed and delivered to said board, a bond with good and sufficient sureties, in the sum of six hundred dollars, in substance as follows:

Know all men, that we        as principal, and
as sureties, are holden and stand firmly bound to the town of      (or city of)      (as the case may be,) in the sum of six hundred dollars, to be paid said town: to which payment we bind ourselves, our heirs, executors and administrators, firmly by these presents.— Sealed with our seals, and dated this      day of A. D.      The condition of this obligation is such, that whereas the above bounden      has been duly appointed an agent for the town (or city) of      to sell within and for and on account of said town (or city,) ale, wine, rum, or other strong or malt liquors, for medicinal and mechanical purposes only, until the      day of      A. D.      , unless sooner removed from said agency. Now if the said      shall in all respects, conform to the provisions of the law, relating to the business for which he is appointed, and to such rules and regulations, as now are, or shall be from time to time established by the board making the appointment, then this obligation shall be void, otherwise it shall remain in full force.

SEC. 4.   If any person shall at any time, sell, or suffer to be sold by any person, any ale, wine, rum or other strong or malt liquors, or any mixed liquors, as aforesaid, in violation of the provisions of this act, he shall be sentenced on the first conviction, to pay the sum of twenty dollars and all costs of prosecution and conviction, and to be imprisoned in the county jail for ten days, and on the second conviction he shall be sentenced to pay the sum of twenty dollars and all costs of prosecution and conviction, and be imprisoned in

234                    JANUARY, 1853.

the county jail three calender months; and on the third and every subsequent conviction he shall be sentenced to pay the sum of twenty dollars and all costs of prosecution and conviction, and be imprisoned in the county jail not less than three nor more than six calendar months; and in each case to stand committed until sentence be performed in all its parts. And if any person shall keep or suffer to be kept on his premises or possessions, or under his charge, for the purposes of sale, in violation of the provisions of this act, any ale, wine, rum or other strong or malt liquors, or any mixed liquors as aforesaid, he shall on conviction thereof be sentenced to pay the sum of twenty dollars and all costs of prosecution and conviction, or to be imprisoned in the county jail for thirty days.— And all such liquors so kept by any person for the purposes of sale in violation of the provisions of this act, shall be liable to be seized, together with the casks or other vessels containing them, and adjudged forfeited, upon complaint made, and trial had, as hereinafter provided.

SEC. 5. All prosecutions for offences under the fourth section of this act, shall be by complaint and warrant in the name of the State, before any justice of the peace, or any court exercising the jurisdiction of a justice of the peace, in the town where the offence was committed: one half of said fine to and for the use of the complainant, and the other half thereof to and for the use of the State: and the prosecutor and complainant by waving in favor of the State his portion of the fine, may be admitted as a witness in the trial; and no judgment rendered upon a subsequent complaint for the same offence shall be a bar, or prevent judgment upon the merits being rendered on any prior complaint, and the pendency of the former complaint may be pleaded in bar of the second complaint.

SEC. 6. Any person convicted before a justice of the peace, or a court exercising the jurisdiction of a justice of the peace, of any offence under the fourth section of this act, may appeal from the sentence of the justice or court, to the Court of Common Pleas, next to be holden in the same county, after ten days; *provided*, such appeal be prayed at the time of passing sentence; and upon such prayer the appellant

### JANUARY, 1853.      235

shall be required to give recognizance, in the sum of one hundred dollars, with good and sufficient sureties, in every case so appealed, conditioned, that he will file his reasons of appeal, together with a copy of the whole case in the court appealed to, on or before the second day of the term thereof, as aforesaid, that he will appear before said court, and there prosecute his appeal with effect, and abide or perform the order or sentence of said court, in said case, and that he will not during the pendency of such appeal violate any of the provisions of this act, which recognizance such justice or court shall forthwith certify to said Court of Common Pleas; and upon the neglect of said appellant, to give such recognizance, he shall forthwith be committed to the jail in the same county, there to remain until he give such recognizance, or be discharged by order of law.   And the said appeal shall be in said Court of Common Pleas heard and tried, and the judgment or sentence therein shall be final.

SEC. 7.   The town council of any town, whenever complaint shall be made to them in writing, that a breach of the conditions of the bond given by any agent appointed by them has been committed, shall notify the person complained of, and if upon a hearing of the parties it shall appear that any breach has been committed, they shall revoke and make void his appointment: and the town treasurer shall, at the expense and for the use of said town, cause the bond to be put in suit, in any court of competent jurisdiction, unless otherwise directed by the town council.

SEC. 8.   No person shall be allowed to manufacture any ale, wine, rum, or other strong or malt liquors, or to be a common seller thereof, without being duly appointed as aforesaid, on pain of forfeiting on the first conviction, the sum of one hundred dollars and costs of prosecution, and in default of the payment thereof, the person so convicted shall be imprisoned sixty days in the county jail of the same county in which the offence was committed: and on the second and on every subsequent conviction, the person so convicted shall forfeit and pay the sum of two hundred dollars and costs of prosecution and conviction, and shall be imprisoned four months in said county jail: said penalties to be recovered before any court of competent ju-

4-ER-0879

236                      JANUARY, 1853.

risdiction, by indictment in the county where incurred, one half of said forfeiture to and for the use of the town in which the offence shall have been committed, and the other half thereof to and for the use of the State.  And three several sales of ale, wine, rum, or other strong or malt liquors, or mixed liquors as aforesaid, either to different persons or the same person, shall be sufficient to constitute one a common seller within the meaning of this act.  But nothing in this act contained, shall be construed to prohibit the manufacture of cider or the sale thereof in quantities not less than one gallon, or the manufacture of wine or malt liquors for domestic use, or of alcohol for exportation, or to be sold to or through, and only to or through the agents appointed under the second section of this act.

SEC. 9.  Any justice of the peace, within the town in which he resides, and any court exercising the jurisdiction of a justice of the peace, within the town in which such court is established, may issue a search warrant for the purpose of searching for any ale, wine, rum, or other strong or malt liquors, or any mixed liquors, as aforesaid, held for sale contrary to law, such warrant to be served during the day time, complaint being first made in writing, on oath, as is required before issuing of search warrants in other cases, which complaint shall be made by three legal voters and distinctly set forth that the liquors described in the warrant are believed to be held for sale contrary to the provisions of this act, in some house or place within the town in which the complaint is made, or in some vessel or craft in any of the waters of Narragansett Bay ; and all such liquors together with the casks or other vessels in which the same are contained, and which shall be found by any officer in executing any such search warrant, shall be safely kept so long as shall be necessary for the purposes of evidence in any case arising under this act ; and upon final conviction of the person or persons in whose possession the said liquors and the vessels containing them shall be by the justice or court adjudged forfeited, the said liquors be ordered to be destroyed, and the said casks or other vessels to be delivered to the sheriff of the county, or his deputy, and the officer to whom such casks shall

JANUARY, 1853.                    237

be delivered as aforesaid, shall advertise and sell the same, in the same manner in which like personal property is liable to be sold on execution, and the proceeds of such sale after deducting therefrom his lawful fees and charges, he shall pay over to the justice or clerk of the court, to and for the use of the State. But in the event of the acquittal of the person charged with the unlawful keeping or possessing of the liquors so seized, the same together with the vessels containing them, shall be returned to the place from which they were taken, by the officer in whose custody they may be: *Provided* that no warrant to search for liquors shall issue, until a warrant shall have been issued for the supposed owner thereof, or the person having said liquors in charge, on complaint for keeping or suffering to be kept on his premises or possessions, or under his charge, liquors of the kind aforesaid, contrary to the provisions of this act. And any person convicted upon any such complaint may appeal from the sentence, judgment and order of the justice or court thereon, to the court of Common Pleas next to be holden in the same county after ten days; in the same manner, and upon the same terms and conditions and with the like effect, as prescribed in section 6th of this act. *Provided however*, that any appeal from any sentence, judgment and order of the Court of Magistrates of the City of Providence, prior to the 15th day of March, 1853, shall be to the Supreme Court at its March term, 1853, in the county of Providence, wherein such appeals shall be heard and tried, and the decision therein shall be final. And the recognizance required on such appeals shall be varied by the said Court of Magistrates conformably with this proviso. And in case of such appeal, if the final decision shall be against the appellant, sentence shall be passed by said appellate court, and such liquors seized be adjudged forfeited and ordered to be destroyed as herein provided; and all reasonable charges incidental to the keeping and storage of such liquors, from and after the date of its seizure, shall be taxed in the costs against the defendant. But nothing in this act contained shall be construed to prevent any person from keeping on his premises or possessions, any liquors which are of foreign production, and which have been

238                    JANUARY, 1853.

imported under the laws of the United States and in
accordance therewith, and which are contained in the
original packages in which they were imported, but
the custom house certificates of importation and proof
of marks on the casks or packages corresponding
thereto, shall not be received by any court in this
State as conclusive evidence that the liquors contained
in those packages are those actually imported therein.

SEC. 10.  It shall be the duty of any mayor, alder-
man, city marshal, city or town sergeant, constable or
police officer, of any city or town, if he shall have in-
formation that any ale, wine, rum, or other strong or
malt liquors, or any mixed liquors as aforesaid, are
kept for sale or sold in any tent, shanty, hut or place
of any kind for selling refreshments in any public
place, on or near the ground of any cattle show, agri-
cultural exhibition, military muster or public occasion
of any kind, to search such suspected place, and if
such officer shall find upon the premises any ale, wine,
rum, or other strong or malt liquors, or any mixed
liquors as aforesaid, he shall seize them and apprehend
the keeper or keepers of such place, and take them
with the liquors and the vessels containing them, so
found and seized, forthwith or as soon as may be con-
venient, before some justice of the peace, or court ex-
ercising the jurisdiction of a justice of the peace, of
the town where found, and thereupon such officer
shall make a written complaint under oath, and sub-
scribed by him, to such justice or court, that ale, wine,
rum, or other strong or malt liquors, or mixed liquors,
a part of which is ale, wine, rum, or other strong or
malt liquors, was found in the possession of such
keeper or keepers, in a tent, shanty, hut, or place
for selling refreshments, and upon proof that said
liquors are either ale, wine, rum, or other strong or
malt liquors, or mixed liquors as aforesaid, that
they were found in the possession of the accused,
in a tent, shanty or other place as aforesaid, for sale,
he or they shall be sentenced to imprisonment in the
county jail of the same county for twenty days, and
the liquor and vessels so seized shall be dealt with, by
order of such justice or court, as provided in the
ninth section of this act.  But from the sentence and
order of said justice or court as aforesaid, the defend-

JANUARY, 1853.                                           239

ant may appeal to the Court of Common Pleas next to be holden in the same county after ten days; in the same manner, and upon the same terms and conditions and with the like effect, as prescribed in section 6th of this act. And in case of such appeal, if the final decision shall be against the appellant, sentence as aforesaid shall be passed upon him by the appellate court, and the liquor and vessels seized as aforesaid shall be dealt with as aforesaid.

SEC. 11. In all cases of appeal under this act, in which the appellant shall fail to enter and prosecute his appeal in the appellate court according to law, said court in addition to defaulting his recognizance, shall order all liquors and vessels in the custody of the officer, under the provisions of the 9th section of this act, to be dealt with as in that section provided: and whenever a default shall be had of any recognizance taken in pursuance of this act, suit shall be forthwith commenced in a court having competent jurisdiction.

SEC. 12. Whenever a justice of the peace or any court exercising the jurisdiction of a justice of the peace, shall convict any person of a violation of the provisions of this act, and the person convicted shall claim an appeal, it shall be the duty of such justice or court, upon motion of the complainant or the defendant, to require any witness sworn, to enter into recognizance in the sum of fifty dollars, conditioned that he will appear at the appellate court to testify in the trial whenever such appeal shall be called for trial.

SEC. 13. No person or persons, who shall make any complaint for the violation of any of the provisions of this act, except the provisions of the fourth section thereof, shall be required, at the time of making such complaint, to enter into recognizance, or in any way to become liable for the costs that may accrue thereon. Complainants appointed by the town where the offence is committed, and the complaint made, the city marshal, city sergeant, and city watchmen of the city of Providence, the sheriffs and deputy sheriffs of the several counties, and the town sergeants and constables of any town, and such persons as shall waive in writing, on the complaint, at the time of making the same, in favor of the State, the complainant's por-

240 . JANUARY, 1853.

tion of the penalty, shall not be required, upon making any complaint for the violation of any of the provisions of the fourth section of this act, to enter into recognizance or give surety. All other persons upon making any complaint for a violation of any of the provisions of the fourth section of this act, shall enter into recognizance with surety in manner and with like conditions, as is required by the 135th section of the act entitled " an act concerning crimes and punishments."

Sec. 14. In any action, complaint and warrant, indictment or other proceedings, against any person for a violation of any of the provisions of this act, it shall not be necessary to set forth the kind or quantity of ale, wine, rum, or other strong or malt liquors, or mixed liquors, as aforesaid, or the time of the sale or manufacture thereof; but proof of the violation of any of the provisions of this act, the substance of which is briefly set forth therein, within the times mentioned therein, by the person complained of, shall be sufficient to convict such person; nor shall it be requisite in any such action, complaint and warrant, indictment or other proceeding, to set forth a record of a former conviction, or any allegation of any such conviction, but any such conviction, may be proved, in the same manner, and with the same effect as if an allegation thereof had been made; nor shall it be necessary to particularly describe the packages or kinds of liquor to be searched for. And any defects in any such complaint and warrant, indictment, or other proceeding, either of form or substance, may be amended either by the justice, or court exercising the jurisdiction of a justice or other court before whom the action, complaint and warrant, indictment or other proceeding is originally brought. All cases of appeal under this act from the judgment or sentence of a justice of the peace, or court exercising the jurisdiction of a justice of the peace, shall in the appellate court, be conducted and argued by the Attorney General in behalf of the State; and in every case in such court in which the appellant shall be required to pay the costs, the sum of six dollars shall be taxed in the bill for the services of the Attorney General; for which sum, the clerk of said court or other officer to whom such

JANUARY, 1863.                    241

costs may be paid, shall account with the General Treasurer: and no costs in any such case shall be remitted or reduced.

SEC. 15.  Any justice of the peace within the town in which he resides, and any court exercising the jurisdiction of a justice of the peace, within the town in which such court is established, shall have jurisdiction and cognizance of all offences done or committed in the town in which the justice trying the cause shall reside, in violation of any of the provisions of the fourth, ninth and tenth sections of this act, with power to proceed to trial, render judgment, pass sentence, and award a warrant for execution thereof: and complaints for the violation of any of the provisions of the act, may be made to either of the justices of any court exercising the jurisdiction of a justice of the peace, and the warrants issued thereon may be signed by either of the justices thereof.  And whenever a court exercising the jurisdiction of a justice of the peace, is or shall be established in any town, such court shall have exclusively, in such town, the jurisdiction, cognizance and powers conferred by this act. And any violation of any of the provisions of the eighth section of this act, upon any of the waters of Narragansett Bay, or other public waters of this State, may be prosecuted, by indictment, in any county in this State; and any violation of any other of the provisions of this act, upon any of the waters of Narragansett Bay, or other public waters of this State, may be prosecuted by complaint and warrant, before any justice of the peace of any town, or any court exercising the jurisdiction of a justice of the peace, in any town in this State.

SEC. 16.  In addition to the fees now allowed by law, the justice of the peace, or court exercising the jurisdiction of a justice of the peace, shall be entitled to receive for taking any bond under this act, the sum of fifty cents; and the officer who shall make service of any warrant or process for the seizure of any liquors under the ninth or tenth sections of this act, shall be allowed for the same the sum of one dollar: for the removing of any liquors so seized, to a place of safety, all expenses by him incurred in the removal, care and custody of said liquors, the sum of one dol-

242                    JANUARY, 1853.

lar: said fees to be included in the bill of costs and taxed by the justice or court against the defendant.

SEC. 17.  All payments or compensations for liquors sold in violation of law, whether in money, labor, or personal property, shall be held and considered, as between the parties to such sale, to have been received in violation of law, without consideration, and against law, equity and good conscience: and in any action either at law or equity touching such money, labor, or personal estate, the purchaser and also the seller of such liquors may be a witness for either party.  And no action of any kind shall be had or maintained in any court in this State, for the recovery or possession of intoxicating liquors, or the value thereof, except such as are sold, purchased or held, in accordance with the provisions of this act.

SEC. 18.  Nothing herein contained shall be construed to affect any prosecutions commenced or proceedings pending on the 18th day of July, 1852, for the violation of any of the provisions of an act entitled "An Act enabling town Councils to grant Licences for retailing strong liquors and for other purposes," passed at the January session, A. D., 1844, or of any act or acts in amendment of or in addition to the same, or to affect any prosecutions commenced or proceedings pending, or which may hereafter be commenced before this act shall go into effect, for the violation of "An Act for the suppression of Drinking Houses and Tippling Shops," passed at the May session, A. D. 1852, or of any act or acts in amendment of or in addition to the same; or in any way to affect any right, title, interest, duty, obligation, penalty, forfeiture, claim or demand, which shall have vested, accrued, or become forfeited by virtue of the acts aforesaid, but said prosecutions may be commenced, proceeded with, tried, determined, and sentence thereon passed and executed, in the same manner and with the same effect, as if this act had not been passed.  And any and all appointments of agents for sale, and of complainants, made by any town council, or board of Aldermen, or by any town, and all bonds, obligations or engagements, given, assumed, or taken under the provisions of the said act of May, 1852, shall be deemed as valid and effectual to all intents, as if made, giv-

4-ER-0886

JANUARY, 1863.                                      248

on, assumed, or taken, after this act shall have taken effect, and in virtue of this act.

Sec. 19.   The legal voters in the several towns may, at the annual election in April next, vote upon the question of repealing this act.   And the Secretary of State is hereby directed to furnish printed ballots to the town clerks of each town equal to six times the number of persons who voted in such town at the last election, upon one side of which ballots shall be printed the question—"shall the act for the more effectual suppression of drinking houses and tippling shops be repealed," and on the reverse, upon one half of said ballots the word "Yes," and upon one half the word "No."   And any voter wishing to vote upon said question, shall enclose one of such ballots in the envelope containing his ballot for general officers, or in case he does not vote for general officers, then in one of the envelopes provided by law for that purpose.   Said ballots shall be sealed up and deposited with the Secretary of State and be counted by the General Assembly at the next May session, and in the event of a majority of such ballots being cast in favor of the repeal of this act, the same shall be limited in its operations, and have no effect after the tenth day from and after the rising of the General Assembly at said May session.   *Provided,* however, that in case the vote of the people shall be for repeal, such repeal shall not in any way affect any prosecutions commenced, or proceedings pending, under this act, on or before the day of its repeal.

Sec. 20.   All acts and parts of acts in any way inconsistent with the provisions of this act are hereby repealed.

————

An Act in relation to appeals in criminal causes within the jurisdiction of Justices of the Peace.

*It is enacted by the General Assembly as follows ;*

Section 1.   When any person convicted before any justice of the peace or any court in this State, exercising the jurisdiction of a justice of the peace, of any offence within the jurisdiction of such court or justice to try and determine and sentenced to pay a

Act in relation to appeals in criminal causes.

# PUBLIC ACTS,

## PASSED BY THE GENERAL ASSEMBLY

OF THE

## State of Connecticut,

**MAY SESSION, 1859.**



STATE OF CONNECTICUT,

OFFICE OF THE SECRETARY OF STATE, JUNE, 1859.

HARTFORD:

DAY & CLARK, STATE PRINTERS.

1859.

EXHIBIT 8 (McLean)

---

MILITARY FORCE.                                      61

---

shall be forever precluded from claiming and showing that said taxes have not been paid, but it shall be taken as conclusively proved that said taxes have been paid. *Provided, however,* that in all cases where the select- men of any town in this state have heretofore returned to the town clerk a list of the names of persons whose state or town taxes have been by them abated, and have neglected to subscribe their names thereto, the same shall not, by reason of such neglect, be thereby invalidated, and may be proved by any other proper evidence. <span style="font-size:small">Omission of sig- natures of select- men not to inval- idate lists of abatements heretofore made.</span>

SEC. 4. Any collector of taxes knowingly and de- signedly making a false certificate, and any selectman of any town knowingly and designedly making a false list of persons whose taxes shall be abated under this act, shall pay a fine not exceeding two hundred dollars ; said offence to be a crime, and to be prosecuted and pro- ceeded with like other criminal offences. <span style="font-size:small">Penalty for mak- ing false certifi- cate or list.</span>

SEC. 5. The fifth section of the act to which this is an addition, and all acts and parts of acts inconsistent herewith, are hereby repealed.

Approved, June 24th, 1859.

---

### CHAPTER LXXXII.

An Act in addition to and in alteration of "An Act for forming and conducting the Military Force."

*Be it enacted by the Senate and House of Representa- tives in General Assembly convened:*

SEC. 1. There shall be one parade annually, some- time in the month of May, for one day only, by company ; also one parade annually, for one day only, by regiment or brigade, in the month of August or September, as the commanding officer of the division shall direct, with the approval of the commander-in-chief. <span style="font-size:small">Parades.</span>

SEC. 2. Chaplains, surgeons, paymasters, engineers and sergeant-majors, may appear on horseback only on days of general review ; on all other occasions, they shall appear on foot. <span style="font-size:small">What officers may appear on horseback, on days of general review, only.</span>

SEC. 3. Every company that shall comply with the provisions of the military laws, shall be allowed, out of <span style="font-size:small">Allowance for rent of armory and drill-room.</span>

62                              MILITARY.

the state treasury, the sum of seventy-five dollars per annum, as rent for armory and drill-room, upon a certificate from the adjutant-general that such company is justly entitled to receive the same.

**Allowance to governor's guards.** SEC. 4. Any company of governor's guards which shall do duty in accordance with the provisions of law, shall be allowed seventy-five dollars per annum for armory rent.

**Temporary erections for sale of liquors or gambling, near parade ground, may be abated as nuisances.** SEC. 5. If any booth, shed, tent, or other temporary erection, within one mile of any military parade-ground, muster-field or encampment, shall be used and occupied for the sale of spirituous or intoxicating liquor, or for the purpose of gambling, the officer commanding said parade-ground, muster-field or encampment, the sheriff or deputy-sheriff of the county, or any justice of the peace, selectman, or constable of the town in which such booth, shed, tent, or other temporary erection is situated, upon having notice or knowledge that the same is so used or occupied, shall notify the owner or occupant thereof to vacate and close the same immediately; and, if said owner or occupant shall refuse or neglect so to do, said commanding officer, sheriff, deputy-sheriff, justice of the peace, selectman or constable, may forthwith abate such booth, shed, tent, or other such temporary erection, as a nuisance, and may pull down or otherwise destroy the same, with the assistance of any force, civil or military.

**Board of officers may be appointed to prepare system of regulations.** SEC. 6. The commander-in-chief is hereby authorized to appoint a board of officers to prepare a system of general regulations for the government of the militia, for which services no compensation shall be claimed or allowed.

**Quarter-master-general to inspect armories, gun houses, &c., annually.** SEC. 7. It shall be the duty of the quarter-master-general, annually, to inspect the armories and gun-houses of the several companies, and also the rooms occupied by the regimental bands; and, on or before the first day of November, to make to the adjutant-general a full report of the condition of the same, and what companies are entitled to the allowance for armory rent; for **Compensation.** which services he shall be allowed the sum of nine cents for every mile of necessary travel.

**Companies may adopt and enforce regulations, and by laws.** SEC. 8. Each company may adopt, by a vote of two-thirds of its members, rules, regulations and by-laws for the government of its members, not inconsistent with the militia laws; and such rules, regulations and by-laws

COMMUNITIES AND CORPORATIONS.                    63

shall be binding, and may be enforced by process of law; and any member who shall violate any such rule, regulation or by-law, may be expelled from his company by a major vote of the same, provided that such vote is approved by the commander of the regiment.

SEC. 9.   Assessors of persons liable to pay the commutation tax, as provided in section nine of the act approved June 28, 1856, shall be allowed the sum of one cent for each person so assessed; and each collector of commutation taxes shall be allowed the sum of two cents for each tax actually collected and paid into the town treasury by him; and, if any assessor or collector shall refuse or neglect to perform the duty required by said act, he shall forfeit to the state not less than fifty nor more than one hundred dollars. *Compensation of assessors and collectors of commutation tax. Penalty for neglect.*

SEC. 10.   Second lieutenants of companies are hereby required to attend the officers' drill, established by act approved June 29, 1855, and to comply with all laws relative thereto. *Second lieutenants required to attend officers' drill.*

SEC. 11.   This act shall take effect from and after its passage; and section twenty-eight, of the act approved July 1, 1854,—section one, of the act approved June 28, 1856,—section one, section nine, of the act approved June 25, 1857,—and all other acts or parts of acts, inconsistent herewith, are hereby repealed.   Section three, of the act approved June 29th, 1855, is hereby re-enacted. *To take effect from passage. Repeal. Re-enactment of provision of 1855, for officers' drill.*

Approved, June 24th, 1859.

———

CHAPTER LXXXIII.

An Act concerning Communities and Corporations.

*Be it enacted by the Senate and House of Representatives in General Assembly convened:*

The secretaries or clerks of all stock fire and fire and marine insurance companies who are by law required to make returns to the comptroller, in the month of January of each year, shall, at the time of making said return, pay the expense of making the record of the same. *Insurance companies to pay expense of recording returns to comptroller.*

Approved, June 24th, 1859.

# LAWS

OF THE

## Commonwealth of Massachusetts

### PASSED BY THE GENERAL COURT,

AT THEIR SESSION, WHICH COMMENCED ON WEDNESDAY, THE FOURTH OF JANU-
ARY, AND ENDED ON THURSDAY, THE TWENTIETH OF APRIL, ONE
THOUSAND EIGHT HUNDRED AND THIRTY-SEVEN.

Published agreeably to a Resolve of the sixteenth January, 1812.



### Boston:
DUTTON AND WENTWORTH, PRINTERS TO THE STATE.

1837.

## EXHIBIT 9 (McLean)

MILITIA.                    *April* 20, 1837.        273

## CHAP. CCXL.

### An Act concerning the Militia.

BE *it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, as follows :*

SEC. 1. Every able bodied white male citizen resident within this Commonwealth, who is, or shall be, of the age of eighteen, and under the age of forty-five years, excepting idiots, lunatics, common drunkards, vagabonds, paupers and persons convicted of any infamous crime, shall be enrolled in the militia, and be included in the military returns : *provided*, that nothing herein contained shall be so construed as to render any of the exempts mentioned in the first, second and third sections of the twelfth chapter of the Revised Statutes, liable to do military duty otherwise than is therein provided.

All persons between 18 and 45 to be enrolled, except, &c.

SEC. 2. Division inspectors and division quartermasters shall hereafter be appointed by the respective major generals, and approved by the commander in chief.

Division inspectors and quartermasters, how appointed.

SEC. 3. The commissions of all staff officers, appointed by any commanding officer, shall expire after the commanding officer shall be discharged or vacate his commission, as soon as his successor is commissioned.

Staff commissions ; when they expire.

SEC. 4. The adjutant general shall annually in the month of February, lay before the governor and council, for adjustment, an account of all expenditures of money made by him, as adjutant general

Acting quartermaster general's expenditures ; how examined and settled.

35

274        MILITIA.                    April 20, 1837.

and acting quartermaster general, with vouchers to support the same; and such accounts shall be settled by the governor and council.

**Military returns, how made.**  SEC. 5. The military returns shall continue to be made, as provided in the thirty-first and thirty-second sections of the twelfth chapter of the Revised Statutes, excepting, that every commanding officer of a brigade shall make and transmit returns of the state of his brigade, to the commanding officer of the division to which he belongs, in the month of July annually; and every commanding officer of such division shall make and transmit returns of the state of his division, to the adjutant general in the **Penalty for neg-lecting to make returns.**  month of August annually. And the penalty for neglecting to make the returns as provided for in the thirty-first and thirty-second sections of the twelfth chapter of the Revised Statutes, and in this section, shall be as follows:—

**Penalty of com-manders of com-panies.**  Every captain or commanding officer of a company, who shall neglect to make returns, for each instance of such neglect, ten dollars.

**—of command-ers of regiments and battalions.**  Every commanding officer of a regiment or separate battalion, who shall neglect to make returns, for each instance of such neglect, twenty five dollars.

**—of command-ers of brigades.**  Every commanding officer of a brigade, who shall neglect to make returns, for each instance of such neglect, fifty dollars.

**—of command-ers of divisions.**  Every commanding officer of a division, who shall neglect to make returns, for each instance of such neglect, seventy-five dollars.

**—of brigade ma-jors.**  Every brigade major and inspector who shall neglect to make returns, for each instance of such neglect, fifty dollars.

**Fines and forfeit-ures; how prose-cuted for, and how disposed of.**  The above fines and forfeitures to be prosecuted for by the officer to whom the respective returns

4-ER-0894

MILITIA.                          *April 20, 1837.*          275

should be made, in any court of competent jurisdiction, and paid into the treasury of the Commonwealth.

Sec. 6.   So much of the one hundred and fourteenth section of the twelfth chapter of the Revised Statutes as requires clerks of companies to make annual returns to the brigade majors, and the brigade majors to the commander in chief; and so much of the fifty-eighth section of the twelfth chapter of the Revised Statutes as requires a majority of the qualified voters of the company to be present, at an election of officers, is hereby repealed, and a majority of the legal voters present at any company election, duly notified, may elect company officers. *(margin: Certain provisions of R. S. repealed. Majority of legal voters may elect, &c.)*

Sec. 7.   No non-commissioned officer or private of any company raised at large, shall be required to perform military duty in the standing company within whose limits he resides : *provided*, that when notified of his enrolment in such standing company, or otherwise requested, he shall produce within ten days, to the commanding officer of such standing company a certificate from the commanding officer of his own company, that he is a member thereof; and if any such non-commissioned officer or private remove out of the limits within which his company is raised, he shall continue to be a member thereof. *(margin: Members of volunteer companies to produce a certificate, when, &c.)*

Sec. 8.   The division inspector of each division shall constantly keep a correct roster of the division to which he belongs, and an orderly book, in which he shall record all orders received and issued; and he shall receive annually the same compensation which is now by law allowed to the oldest aid-de-camp of each major general; and so much of the twenty-seventh section of the twelfth chapter of the Revised Statutes, as provides that the oldest aid-de- *(margin: Division inspectors to keep roster and orderly book; how compensated.)*

276     MILITIA.       ,       *April* 20, 1837.

camp of each major general shall keep such roster and orderly book, is hereby repealed.

*Fines of members of volunteer companies; how collected and disposed of.*

SEC. 9.   All fines and forfeitures incurred by the members of volunteer companies, may be collected by such persons and disposed of in such manner, for the benefit of said companies, as a majority of the members thereof may determine.

*Towns to provide powder, &c. when required by commander in chief.*

SEC. 10.   Whenever, in the opinion of the commander in chief it shall be necessary, he shall issue his proclamation, requiring all towns to provide and deposit in some suitable and convenient place therein, sixty-four pounds of good powder; one hundred pounds of musket balls, each of the eighteenth part of a pound; one hundred and twenty-eight flints suitable for muskets; three copper, iron or tin camp-kettles, for every sixty-four soldiers enrolled in said town; and the same proportion of the aforesaid articles for a greater or less number, and so to keep the same, until he shall by proclamation declare the same no longer necessary.

*Fines for towns neglecting to provide, &c.*

Any town which shall neglect to provide and keep deposited all or any of the aforesaid articles as above required, shall forfeit the sum provided in the one hundred and sixth section of the twelfth chapter of the Revised Statutes.

*The 46th and 47th sections, &c. repealed.*

SEC. 11.   The forty-sixth and forty-seventh sections of the twelfth chapter, and all other provisions of the Revised Statutes, which are inconsistent with this act, are hereby repealed.

[Approved by the Governor, April 20, 1837.]

# PUBLIC ACTS

OF THE

# STATE OF MAINE,

PASSED BY THE

# SEVENTEENTH LEGISLATURE,

JANUARY SESSION, 1837.

PUBLISHED AGREEABLY TO THE RESOLVE OF JUNE 28, 1820.

AUGUSTA:
SMITH & ROBINSON, PRINTERS TO THE STATE.
1837.

EXHIBIT 10 (McLean)

4-ER-0897

MILITIA.                                    421

why the same should not be organized—the County
Commissioners may organize said inhabitants within
such territorial limits as they shall deem proper and
said County Commissioners shall grant a warrant
to some one of the petitioners authorizing him to
call the first meeting of said inhabitants—and the
inhabitants so assembled may choose all necessary
Plantation Officers and transact such other business
as plantations in this State are allowed to do—and
plantations so organized shall be vested with all the
powers and privileges and be subject to all the liabili-
ties of other plantations now organized in this State.

[*Approved by the Governor March* 25, 1837.]

## Chapter 276.

AN ACT additional to an Act to organize, govern and discipline the Militia
of this State.

SECTION 1.  *Be it enacted by the Senate and
House of Representatives, in Legislature assem-
bled,* That when it shall appear to the command-
ing Officer of a Regiment that any Company within
his command, is without a commissioned Officer,
he shall issue his orders to the Clerk of such Com-
pany, to enrol all persons liable to do duty therein,
and to return the roll thereof to him forthwith; and
if there be no Clerk of such Company, then such
commanding Officer shall require in writing, the
Assessors of cities, towns or plantations in which
such Company is situated, or some other person or
persons, to make out and return to him, within ten
days, a list of the names of all the persons, liable
by law to do military duty in such Company; and
if any such Clerk, Assessors or other persons, shall
fail to comply, they shall forfeit and pay not less
than twenty nor more than one hundred dollars.

*Commanding officer of Regiment to require Clerks of Companies which have no commissioned officers to return a roll of all persons liable to do duty therein—or if there be no Clerk then the Assessors of towns to make such return.*

*Penalty for neglect.*

6

422                                    MILITIA.

Officers of the
Staff to be detail-
ed to drill Compa-
nies which shall
have been three
months without
any command-
ing Officer until
&c.

SECT. 2. *Be it further enacted,* That when-
ever any Company shall have remained without any
commissioned Officer for the term of three months,
the commanding Officer of the Regiment to which
said Company belongs, shall detail some suitable
Officer of the Staff, or of the line, not above the
rank of Lieutenant, to train and discipline said
Company, until some Officer shall be elected, or
appointed by the Commander-in-Chief, as provided
in the second section of the seventh article of the
Constitution, and commissioned; and such Officer
so detailed, shall have the same power and authority,
and be subject to the same liabilities, as if he were
Captain of such Company; and he shall keep the

—to keep records
of the Company,
—to prosecute for
fines.

records of the Company, and prosecute for all fines
and forfeitures, in like manner as Clerks of Com-
panies are authorized and required to do. When-
ever the Officer so detailed to command such Com-
pany, or, where no Officer shall have been detailed,
the commanding Officer, of the Regiment to which
such Company belongs, shall, in writing, order any
non-commissioned Officer or private to notify the

Non-commis-
sioned officer or
private refusing
to notify Compa-
ny to forfeit not
less than 20 nor
more than 100
dollars.

persons liable to do duty in such Company, to
appear for any duty required by law, any non-
commissioned Officer or private who shall neglect
or refuse to notify such persons to meet at the time
and place and for purposes mentioned in such order
as aforesaid, shall forfeit and pay not less than
twenty nor more than one hundred dollars.

When no person
will accept the
office of Clerk the
commanding Of-
ficer may require
any   non-com-
missioned Officer
or private to per-
form the duty,
except to keep the
records.

SECT. 3. *Be it further enacted,* That when-
ever the office of Clerk in any Company shall be-
come vacant, and it shall appear to the command-
ing Officer of said Company that there is satisfactory
evidence that no person will accept the same, he
may issue his order in writing to any non-commis-
sioned Officer or private in said Company, requir-
ing him to perform all the duties of Clerk of said
Company, except keeping the records, for a term
not exceeding three months, and if any non-com-

MILITIA.                                                        423

missioned Officer or private so appointed, shall
refuse or neglect to perform all or any of the duties
of said office during said term, (except keeping the
records,) he shall forfeit and pay not less than ten *Penalty for their refusing to perform said duty.*
nor more than twenty dollars.   And in case of the
absence, sickness, or other inability of the Clerk of
any Company, the commanding Officer thereof
may appoint a Clerk pro tempore; or upon satis-
factory evidence that no member of the Company
will accept the office pro tempore, he may order any *—Clerk pro tem. may be appointed in case of absence or sickness of Clerk.*
non-commissioned Officer or private in like man-
ner to perform all the duties of the office of Clerk
(except keeping the records,) until the Clerk shall
be able to perform the same, or some other person
be appointed, not exceeding the term of three
months; and any person so ordered, refusing or *Penalty for refusing to perform said duty.*
neglecting to perform all the duties of said office
(except keeping the records,) shall forfeit and pay
not less than ten nor more than twenty dollars.   In
all such cases the records of the Company shall be *Records to be kept by commanding Officer, and to be competent evidence.*
kept by the commanding Officer as long as such
vacancy, absence, sickness or other inability shall
continue: and the records so kept shall be compe-
tent evidence of such orders and temporary appoint-
ments, as well as of all other matters of which such
records would be evidence if kept by the Clerk.

SECT. 4.   *Be it further enacted,* That all fines
and forfeitures incurred in neglecting military duty, *How fines are to be collected and how to be disposed of.*
by members of any Company without Officers,
(except forfeitures for refusing to give notice when
ordered by the Officer detailed to command such
Company, as provided in the second section of this
Act or by the commanding Officer of the Regiment;
and except forfeitures incurred by Clerks in neglect-
ing to return the roll as required by the first section
of this Act,) shall be prosecuted and collected by
the Officer detailed to command said Company as
provided in the second section of this Act, substan-
tially in the manner that Clerks of Companies are

424                          MILITIA.

authorized and required to do by "An Act to organize, govern and discipline the Militia of this State," passed March 8, A. D. 1834, to which this is additional; one half of the amount recovered to be to the use of the Regiment, and the other half to the use of the Officer; and the Officer so prosecuting shall be a competent witness in the case. All fines and forfeitures incurred under the first, second and third sections of this Act, shall be recovered by indictment, or by action on the case, by any person whatever, one half of the sum recovered to be to the use of the State, and the other half to the use of the prosecutor.

SECT. 5. *Be it further enacted,* That no idiot, lunatic, common drunkard, vagabond, pauper, nor any person convicted of any infamous crime, nor any other than white, able-bodied, male citizens, shall be eligible to any office in the Militia; and whenever it shall appear to the Commander-in-Chief, that any person thus ineligible has received a majority of votes cast at any election of Officers, he shall not commission him, but, with the advice and consent of the Council, shall declare said election null and void, and appoint some person to fill the vacancy.

*No idiot, lunatic, common drunkard, vagabond, pauper, or person convicted of any infamous crime to be eligible for office,—nor unless able bodied, &c., &c.*

*Persons ineligible not to be commissioned.*

*—vacancy to be filled.*

SECT. 6. *Be it further enacted,* That all students attending any of the several colleges, academies or seminaries of this State, shall be holden and compelled to do military duty as other persons, in the town where said colleges, academies or seminaries are established.

*Students in Colleges made liable to do military duty.*

SECT. 7. *Be it further enacted,* That whenever any Company shall be paraded, the commanding Officer thereof is hereby authorized verbally to notify the men so paraded, to appear on some future day not exceeding thirty days from the time of such notification, for any military duty required by law, and such notification shall be legal as it respects the men present.

*Verbal notice to appear on a future day may be given on parade.*

MILITIA.                                              425

SECT. 8. *Be it further enacted,* That all com-  Officers and Clerks of Companies made witnesses.
manding officers, subaltern Officers, and all Clerks
of Companies be and they hereby are made com-
petent witnesses in law, to testify to all or any facts
within their knowledge, in any suit commenced by
said Clerk or commanding Officer, for the collec-
tion of any fine or forfeiture named in this Act, or
in the several Acts to which this is additional.

SECT. 9. *Be it further enacted,* That when-  In case of death of Clerk, commanding Officer, to continue prosecution for fines to final judgment —and to commence them where there is no Clerk.
ever any action shall have been commenced, for any
fine or forfeiture, by any Clerk of any Company,
and said Clerk shall die, resign or refuse, or in any
other way be disqualified to prosecute said suit so
commenced, it shall be lawful and is hereby made
the duty of the commanding Officer of the Com-
pany, to assume and prosecute said suit to final
judgment and execution; and whenever any fine or
forfeiture shall have been incurred by any private or
non-commissioned Officer of any Company, and
there shall be no Clerk, or the Clerk shall resign or
die, or be disqualified, it shall be lawful for any
Clerk appointed after said fine or forfeiture has been
incurred, to sue for and recover the same; *Pro-
vided* said action shall be commenced within the
time prescribed by law.

SECT. 10. *Be it further enacted,* That a  Copy of records of Courts Martial made evidence in cases.
copy of the record of any Court Martial, certified by
the President of such Court, together with a duly
authenticated copy of the order convening said Court,
shall be conclusive and sufficient evidence to sustain
in any Court, any action commenced for the recov-
ery of any fine and costs, or part costs, or either,
agreeably to the provisions of an Act to which this
is additional.

SECT. 11. *Be it further enacted,* That if any  Fine imposed on commanding Officers who neglect to make returns of the May Inspection.
Captain or commanding Officer shall neglect or
refuse to make, or cause to be made, a return of
the state of his Company as it existed on the day
of the annual inspection in May, to the command-

426                              MILITIA.

ing Officer of the Regiment, on or before the first day of June annually, and shall so continue to neglect for fifteen days thereafter, being notified by the Adjutant of the Regiment to which such Company belongs, that said return has not been received, he shall forfeit and pay a fine of ten dollars, one half thereof to the use of the State, and the remainder to the Adjutant of said Regiment, who shall be required to collect said fine by an action of debt in any court proper to try the same.

*Action may be brought before any Justice of the Peace living in the town where Defendant resides.*

SECT. 12.  *Be it further enacted,* That any action or complaint, for any fine or forfeiture provided for by this Act, or by that to which this additional, may be brought before any Justice of the Peace, where the Officer, non-commissioned Officer, or private, parent, master, or guardian, who may be liable therefor, may reside, any law to the contrary notwithstanding.

*How Courts Martial are to be detailed for the trial of Captains and subalterns.*

SECT. 13.  *Be it further enacted,* That all Courts Martial for the trial of Officers of and below the rank of Captain, including the Regimental Staff Officers, shall be ordered and detailed by the respective Major Generals of Divisions, from the Division to which the Officer to be tried belongs : And the Court so constituted, shall have and possess all the powers, and be subject to all the duties defined and prescribed in and by the Act to which this is additional; *Provided however,* That the judgment or sentence of said Court shall, as soon as may be, be certified by the President thereof, under the seal of the Court, to the Major General by whom said Court was detailed, instead of the Commander-in-Chief as in said Act is provided.

*Judgment of the Court to be certified to the Major General.*

*Complaints and charges against Captains and Subalterns to be transmitted by Division Advocate to Major General.*

SECT. 14.  *Be it further enacted,* That all the duties required to be performed by the Division Advocate in the respective Divisions, in and by the Act to which this is additional, shall be done and performed in the manner therein provided; excepting and providing that all complaints, charges and

MILITIA.                                              427

specifications against the Officers of the rank mentioned in the foregoing section, shall be by him transmitted to the Major General of the Division, to which the officer against whom such complaint is made, belongs, for his consideration.

SECT. 15. *Be it further enacted,* That the compensation of the members of the Court detailed in pursuance of this Act, of the Division Advocate and other Officers, and of witnesses attending the same, shall be the same as is allowed in and by the Act to which this Act is additional, and shall be made up, certified and filed, in the manner therein described.

*Compensation of members of Courts Martial and witnesses.*

SECT. 16. *Be it further enacted,* That the Major Generals in their respective Divisions, shall have power to appoint an Officer to make a summary inquiry into the truth and circumstances of any matter, contained in any complaint or allegation against any Officer not above the rank of Captain, whose duty it shall be to report the result of such inquiry and investigation to the respective Major Generals, as soon as may be after he shall have completed such investigation, and file his account for such services in the Adjutant General's office, to be presented to the Legislature for allowance and payment.

*Major Generals may appoint officer to make summary enquiries into truth of any complaint, who shall report to him their doings.*

*—to be compensated by Legislature.*

SECT. 17. *Be it further enacted,* That all Acts and parts of Acts, inconsistent with the provisions of this Act, be, and the same are hereby repealed.

*Acts and parts of Acts inconsistent repealed.*

[*Approved by the Governor March 28, 1837.*]

# JANUARY, 1840.

At the General Assembly of the State of
Rhode Island and Providence Planta-
tions, begun and holden by adjournment
at Providence, within and for said State,
on the first Monday of January, in the
year of our Lord one thousand eight
hundred and forty, and of Independence
the sixty-fourth.

## PRESENT:

| | |
|---|---|
| SAMUEL W. KING, | |
| HEZEKIAH BOSWORTH, | |
| JONATHAN REYNOLDS, | |
| EZEKIEL FOWLER, | *SENATORS.* |
| WILLIAM T. BROWNING, | |
| OLNEY WHIPPLE, | |
| HENRY ALDRICH, | |

*The Secretary.*

# EXHIBIT 11 (McLean)

# JANUARY, 1840.

## REPRESENTATIVES FROM THE SEVERAL TOWNS.

*Newport.*
Asher Robbins
Benjamin Hazard
Henry Y. Cranston
Richard K. Randolph
George G. King
George Bowen.

*Providence.*
John H. Clarke
Thomas J. Stead
John Whipple
Charles Jackson.

*Portsmouth.*
John Manchester
Clarke Chace
William Almy
Simeon Coggeshall.

*Warwick.*
Gideon Spencer
Thomas R. Holden
Bennet Low
William Rhodes.

*Westerly.*
Daniel Babcock, Jr.
Welcome A. Hoxie.

*New Shoreham.*
George G. Sheffield
Archibald Milliken.

*North Kingstown.*
George T. Nichols.
Joseph Spink

*South Kingstown.*
Isaac P. Hazard
Elisha R. Potter

*East Greenwich.*
J. Shippee.
Jeremiah S. Slocum.

*Jamestown.*
John J. Watson
Robert H. Weeden.

*Smithfield.*
Sessions Mowry
Samuel Clarke.

*Scituate.*
Elisha Mathewson
Wilmarth N. Aldrich.

*Glocester.*
Charles A. Slocum
Robert Steere

*Charlestown.*
Joseph Gavitt
George A. Stanton.

*West Greenwich.*
Thomas T. Hazard.
Benjamin R. Hoxie

*Coventry.*
Elisha Harris
Jeremiah McGregor.

*Exeter.*
Robert Gardner
Isaac Greene.

*Middletown.*
Benjamin Weaver
William Taggart.

*Bristol.*
Joseph M. Blake
Benjamin Hall.

*Tiverton.*
Joseph S. Bliven.
George W. Humphreys.

*Little Compton.*
Nathaniel Church
Christopher Brown.

*Warren.*
Simmons Cole
Alfred Bosworth.

*Cumberland.*
Jeremiah Whipple
Waldo Earl.

*Richmond.*
David Clarke
George S. James.

*Cranston.*
Amasa Sprague.
Seneca Stone

*Hopkinton.*
Henry M. Wells.
Edward Barber

*Johnston.*
James F. Simmons
Abraham C. Atwood.

*North Providence.*
Stephen Randall, Jr.
Edward S. Wilkinson

*Barrington.*
Jeremiah S. Drown
James Bowen.

*Foster.*
Gideon Burgess, Jr.

*Burrillville.*
Amasa Ballou
Jonathan Lackey.

The Hon. Henry Y. Cranston, Speaker; George Rivers and Edward H. Hazard, Esq'rs Clerks.

JANUARY, 1840.                    3

*State of Rhode Island and Providence Plantations.  In General Assembly, January session, A. D. 1840.*

### AN ACT to regulate the Militia.

*Be it enacted by the General Assembly as follows :—*
Section 1. The whole militia of this state shall be arranged in one division ; the militia in the counties of Newport and Bristol shall form the first brigade ; the militia in the county of Providence shall form the second brigade ; the militia in the county of Washington shall form the third brigade ; and the militia in the county of Kent shall form the fourth brigade.  The brigade in the counties of Newport and Bristol shall consist of three regiments ; the brigade in the county of Providence, of seven regiments ; the brigade in the county of Washington, of three regiments ; and the brigade in the county of Kent, of two regiments.

Sec. 2. The regiments aforesaid shall be constituted as follows ; to wit : the towns of Newport, Portsmouth, Jamestown, and Middletown, shall constitute the first regiment ; the towns of Providence and North Providence, the second regiment ; the towns of Westerly, Charlestown, and Hopkinton, the third regiment ; the towns of Bristol, Warren, and Barrington, the fourth regiment ; the towns of Warwick and East Greenwich, the fifth regiment ; the town of Smithfield, the sixth regiment ; the town of Scituate, the seventh regiment ; the towns of North Kingstown and Exeter, the eighth regiment ; the towns of West Greenwich and Coventry, the ninth regiment ; the towns of Tiverton and Little Compton, the tenth regiment ; the towns of South Kingstown and Richmond, the eleventh regiment ; the towns of Glocester and Burrillville, the twelfth regiment ; the town of Foster, the thirteenth regiment ; the towns of Cranston and Johnston, the fourteenth regiment ; and the town of Cumberland, the fifteenth regiment.

Sec. 3. There shall be four companies of militia in the town of Newport ; six companies in the city of Providence ; three companies in the town of Portsmouth ; four companies in the town of Warwick ; two companies in the town of Westerly ; three companies in the town

*Act to regulate the militia.*

**4**                                       JANUARY, 1840.

of North Kingstown; four companies in the town of
South Kingstown; two companies in the town of East
Greenwich; one company in the town of Jamestown;
five companies in the town of Smithfield; four compa-
nies in the town of Scituate; three companies in the
town of Glocester; two companies in the town of Charles-
town; three companies in the town of West Greenwich;
five companies in the town of Coventry; three compa-
nies in the town of Exeter; two companies in the town
of Middletown; two companies in the town of Bristol;
three companies in the town of Tiverton; one company
in the town of Little Compton; one company in the
town of Warren; four companies in the town of Cum-
berland; two companies in the town of Richmond;
three companies in the town of Cranston; three compa-
nies in the town of Hopkinton; two companies in the
town of Johnston; two companies in the town of North
Providence; one company in the town of Barrington;
four companies in the town of Foster; and three com-
panies in the town of Burrillville; and the aforesaid di-
vision, brigades, regiments, and companies, shall be of-
ficered agreeably to the several acts of Congress, and
the provisions of this act, and said officers shall be en-
gaged as herein hereafter provided.   And the division
of companies as now existing in the several towns and
in the city of Providence, shall be continued, subject
however, to such alterations as their present number or
future increase or diminution may, in the opinion of the
field officers of the regiments respectively, or any two
of them, from time to time render expedient: and the
officers aforesaid are hereby authorized to augment or
reduce the number of companies in their several regi-
ments accordingly: giving written notice thereof to the
secretary of state, within five days thereafter.

Sec. 4. In addition to the persons exempted from the
performance of military duty by the act of Congress,
there shall also be exempted from the performance of
such duty, the following persons, to wit: all persons
who have holden the office of governor, or lieutenant
governor; all persons who, after the last day of Febru-
ary, A. D. 1796, shall have holden any military com-
mission or commissions, or staff office, with the rank of
an officer of the line, for the space of five years succes-

**JANUARY, 1840**                                          5

sively, and who have been engaged thereon according
to law, and been honorably discharged; also every per-
son who shall have holden any such military commis-
sion or commissions, or staff office aforesaid, for a less
term of time than five years, and who have been superse-
ded without their consent: *Provided however*, that any
person who shall claim an exemption on account of his
having holden any commission or commissions or staff of-
fice as aforesaid, shall exhibit to the commanding officer
of the company within the bounds of which he shall reside,
if required by such commanding officer, his original com-
mission, or evidence of his appointment to such staff of-
fice as aforesaid, by virtue of which he shall claim such
exemption; and the original certificate of his having
been engaged thereon; and shall also, if required, leave
a copy of each of them with said commanding officer,
and which copies said commanding officer shall deliver
to his successor in office.

Sec. 5. Persons of the following descriptions, as long
as they shall remain of said descriptions, shall be ex-
empted from the performance of military duty, to wit:
the members of the senate; the justices and clerks of
the supreme judicial court; the justices and clerks of
the courts of common pleas; the secretary of state; the
attorney general; the general treasurer; the sheriff of
each county; one ferryman at each stated ferry, who
usually navigates the boat; the keepers of light-houses
within this state; all settled or ordained ministers of the
gospel; the president, professors, tutors, students, and
steward of Brown university; town and city treasurers;
town and city clerks; practising physicians; practising
surgeons; not including pupils of either; preceptors and
ushers of academies and schools; and engine men; and
provided that no engine shall have more than twenty
men, unless otherwise provided by special enactment;
the members of firehook and ladder companies; every
member of a chartered independent company, who shall
deliver, once for all, a certificate from the commanding
officer of said company, that he is a member thereof,
and completely equipped according to law and the rules
and regulations of said company; and all persons be-
longing to the society of friends commonly called qua-
kers: *Provided however*, that each member of such so-

6                           JANUARY, 1840.

ciety, who would otherwise be liable to do military du-
ty, shall annually procure a certificate from the clerk
of any monthly meeting or any two overseers of said
society that he is a member thereof; which certificate
he shall exhibit to the commanding officer of the com-
pany within whose bounds he shall reside, whenever
thereto required, not oftener than once in each year;
and every person who shall be conscientiously scrupu-
lous against bearing arms: *Provided however*, that
such person shall make oath or affirmation before a jus-
tice of some court in this state, that he is conscientiously
scrupulous against bearing arms, and obtain the certifi-
cate of said justice that he has taken such oath or af-
firmation; and said certificate shall be presented, in the
month of April, to the commanding officer of the com-
pany, within whose bounds such conscientiously scru-
pulous person shall reside: and no friend or quaker,
and no conscientiously scrupulous person aforesaid, who
shall fail to comply with these provisions, respectively,
shall avail himself of the privileges of this section.

Sec. 6. Whenever any member of a chartered inde-
pendent company shall cease, otherwise than by death
or removal out of the state, to be a member thereof, it
shall be the duty of the commanding officer of such
chartered independent company to give notice thereof
forthwith to the commanding officer of the militia com-
pany, within whose bounds such member shall reside.

Sec. 7. The officers and non-commissioned officers of
the militia shall be as follows, to wit: the governor, for
the time being, shall be captain-general and comman-
der-in-chief; and he shall command, except when the
militia shall be called into the service of the United
States; and he shall be entitled to appoint his own
aids, not exceeding four, with the rank of colonel. There
shall be one major-general; two aids with the rank of
major; one division inspector with the rank of lieuten-
ant-colonel; one adjutant-general with the rank of col-
onel; one quarter-master-general with the rank of col-
onel. To each bridage there shall be one brigadier-
general; one aid with the rank of captain; one brigade
inspector, who is also to serve as brigade-major, with
the rank of major; one brigade quarter-master, with
the rank of captain; and one judge-advocate. To each

## JANUARY, 1840. 7

regiment there shall be one colonel; one lieutenant-colonel; one major; one adjutant; one quarter-master; one paymaster; the adjutant, quarter-master, and paymaster, each with the rank of lieutenant; one surgeon; one surgeon's mate; one chaplain; one sergeant-major; one sergeant-quarter-master; one drum-major; and one fife-major. To each company of infantry, light infantry, and riflemen, there shall be one captain; one lieutenant; one ensign; four sergeants; four corporals; one or more drummers; and one or more fifers; or buglers.— To each company of artillery there shall be one captain; two lieutenants; four sergeants; four corporals; one or more drummers; one or more fifers, or buglers; and three drivers. To each company of cavalry there shall be one captain; two lieutenants; one cornet; four sergeants; four corporals; one saddler; one farrier; and one or more trumpeters: *Provided nevertheless*, that all chartered companies organized before the first day of January, one thousand eight hundred and forty, shall continue to be officered as before that time.

Sec. 8. Whenever the office of major-general, brigadier-general, colonel, lieutenant-colonel, major-commandant, or captain, shall be vacant, or such officer be sick or absent, the officer next in rank shall command the division, brigade, regiment, battalion, or company, as the case may be, until the vacancy be supplied; and whenever the office of quarter-master-general shall be vacant, the duties thereof shall be performed by the adjutant-general.

Sec. 9. Whenever a company shall have neither commissioned nor non-commissioned officers, the commanding officer of the regiment to which such company belongs, shall appoint suitable persons of said company, to be non-commissioned officers of the same; and the senior non-commissioned officer of a company without officers shall command the same, except upon parade, and except as provided in the following section.

Sec. 10. Whenever any company shall be first enrolled, or shall, from any cause, be without officers, and when an election of officers shall be ordered for said company, and such company shall neglect or refuse to elect any officer, or when no person elected shall accept, the commanding officer of the regiment to which such

8                         JANUARY, 1840.

company belongs, shall detail some officer of the staff,
or of the line of the regiment, to train and discipline
said company, until some officer shall be elected, or ap-
pointed by the commander-in-chief as provided in the
nineteenth section; and such officer, so detailed, shall
have the same power and authority, and be subject to
the same liabilities, as if he were captain of said compa-
ny; and he shall keep the records of the company; and
all meetings of said company shall be notified as is pro-
vided in the fifty-third section.

### Manner of Elections and Appointments to Office.

Sec. 11. The officers of the line, of the militia, shall
be elected as follows, to wit: the major-general, briga-
dier-generals, field officers of regiments, the adjutant-
general, division inspectors, brigade inspectors, and
brigade quarter-masters, shall be elected by the general
assembly; captains and subalterns of companies, by the
written or printed votes of the non-commissioned officers
and privates of their respective companies; and all who
are liable to be enrolled, shall be legal voters in their
respective companies; aids to the commander-in-chief,
shall be appointed by the commander-in-chief; aids to
the major-general, by the major-general; judge-advo-
cates, by the major-general, with the approval of the
commander-in-chief; aids to the brigadier-generals, by
the respective brigadier-generals; adjutants, paymas-
ters, quarter-masters, chaplains, surgeons, and surgeon's-
mates, of regiments, by the respective colonels.

### Appointment of Non-commissioned Officers.

Sec. 12. Non-commissioned officers shall be appoint-
ed as follows: sergeant-majors, sergeant-quarter-mas-
ters, drum-majors, and fife-majors, of regiments, by the
commanding officers of their respective regiments; non-
commissioned officers of companies, by the captains of
their respective companies; who shall forthwith return
the names of the same in writing to the commanding of-
ficer of the regiment.

Sec. 13. All commissions for officers shall be signed
and issued by the commander-in-chief; warrants for

## JANUARY, 1840.                                    9

non-commissioned officers shall be signed and issued by the colonels of the regiments, respectively.

Sec. 14. No idiot, lunatic, common drunkard, vagabond, pauper, nor person convicted of any infamous crime, nor any other than able bodied white male citizens, shall be eligible to any military office; and whenever it shall appear to the commander-in-chief, that any person thus declared ineligible has been elected as commanding or subaltern officer in any company, he shall not commission such person, and shall declare such election null and void, and shall order a new election, or appoint some person to fill the vacancy, as he may judge expedient; and no person shall be eligible to the office of major-general, unless it be one of the acting brigadier-generals; or, if neither of them will accept, then some one who has filled the office of brigadier-general, and been honorably discharged.

Sec. 15. All commissioned officers of the same grade, shall take rank according to the respective dates of their commissions; and when two, or more, of the same grade bear an equal date, their rank shall be determined by lot, to be drawn by them before the commanding officer of the division, brigade, regiment, company or detachment, or the president of a court martial; as the case may be. The day of election or appointment of any officer shall be the date of his commission; and whenever he shall be transferred to another corps or station, of the same grade, the date of his original commission or appointment shall be the date of his commission.

Sec. 16. Whenever any officer shall lose his commission, he shall be entitled to a duplicate commission of the same grade and date, on his affidavit made before a justice of any court in this state, on application to the commander-in-chief.

Sec. 17. Any person elected major-general, shall be forthwith notified of his election by the secretary of state; and shall, within twenty days after such notice, signify to the secretary his acceptance of said office, or shall be considered as having declined.

Sec. 18. Each company shall meet on the first Monday in April in each year, to elect the captain and subaltern officers of said company; and in case of a va-

2

10                          JANUARY, 1840.

cancy in either office, it shall be the duty of the colonel or commanding officer of the regiment to which said company belongs, to order a meeting of said company at an early day, to fill said vacancy; and any person elected to either of said offices, shall signify his acceptance of the office to the commanding officer of the regiment, within twenty days of his said election; or he shall be deemed to have refused the appointment. The order of the commanding officer of the regiment for a meeting of the company to fill any vacancy, shall be directed to the highest commissioned or non-commissioned officer in said company; and in case there shall be no commissioned or non-commissioned officer in said company, said order shall be directed to any member of said company, whose power to warn said company shall be valid and lawful; and he shall preside at the election.

Sec. 19. In case any company shall neglect or refuse to elect some person to fill a vacant office, the commander-in-chief shall appoint some suitable person to fill the same, upon being notified by the colonel or commanding officer of the regiment, of such neglect or refusal to elect.

Sec. 20. When a company has been newly enrolled, or, from any cause, is without commissioned officers, the commanding officer of the regiment may order an election of officers for the same.

Sec. 21. All commissions shall be delivered to the major-general, and by him to be delivered, through the proper officers, to the persons for whom they are intended.

Sec. 22. All brigade or field officers to whom commissions shall be sent or delivered, by the major-general, shall signfy to him their acceptance or refusal of such office, within thirty days after the receipt of the commission: and in case of refusal, the same shall be communicated to the secretary of state, by the major-general.

Sec. 23. No candidate for election to office in the militia shall treat the electors with ardent spirits, either pending, during, or after said election.

Sec. 24. No officer, non-commissioned officer, or private, shall be arrested on any civil process, while going

JANUARY, 1840.                                11

to, returning from, or remaining at any place at which
he shall have been ordered to attend, for the election of
any military officer, or the performance of any military
duty.

### Officers, how Qualified.

Sec. 25. Each commissioned officer, before he shall
enter on the discharge of the duties of his office, shall
take and subscribe the following oath and declarations,
before some justice of the peace, or other magistrate, or
town clerk: on the back of each commission the follow-
ing form of the oath shall be printed, to wit: "I,
do solemnly swear (or affirm) that I will bear true faith
and allegiance to the state of Rhode Island and Provi-
dence Plantations; that I will support the constitution
and laws thereof, and the constitution and laws of the
United States; and that I will faithfully and impartial-
ly discharge all the duties incumbent upon me as
according to my abilities and understanding, according
to the laws of this state, and of the United States; so
help me God." (Or, " this I promise on the pains and
penalties of perjury.") On the back of each commis-
sion, the following form of certificate shall be printed,
and signed by the person before whom such officer shall
be qualified, to wit: "This may certify, that          com-
missioned within named, appeared before me this
day of          , A. D.          , and took and subscribed
the oath and declarations prescribed by the laws of this
state, and of the United States, before me." Sign-
ed, &c.

### Officers, how Discharged.

Sec. 26. Any officer who shall have holden any com-
mission or commissions in the militia of this state during
the term of five years in succession, and faithfully per-
formed the duties of the same, shall be honorably dis-
charged, on his application to the commander-in-chief,
and shall, forever after, be exempt from the perform-
ance of military duty; and no officer shall be discharg-
ed, unless on his own application, or unless in cases
hereinafter provided; and any officer who has held a

**12**                              JANUARY, 1840.

commission or commissions, as aforesaid, for a less term
of time than five years, and who shall be superseded by
the election or appointment of another person over him,
shall, on application as aforesaid, be honorably dis-
charged, and forever after be exempt from military
duty.

Sec. 27. All resignations shall be in writing; and
shall be approved of and certified as follows: the re-
signation of the major-general, shall be made to and
approved of by the commander-in-chief: the resigna-
tion of a brigadier-general, shall be approved of by the
major-general; the resignation of a field officer, shall be
approved of by the brigadier-general of the brigade to
which such field officer belongs; and the resignation of
a captain or subaltern officer, shall be approved of by
the commanding officer of the regiment to which such
captain or subaltern shall belong. And the major-
general, brigadier-general or commanding officer of a
regiment who shall approve of any resignation as afore-
said, shall certify the same to the commander-in-chief,
who shall have the power to allow or disallow thereof
at his discretion. And no officer shall be considered as
having resigned his commission, unless the same shall
have been approved of and certified as aforesaid, and
allowed by the commander-in-chief.

*Discipline, Inspection, Training and Review.*

Sec. 28. The system of discipline and field exercise,
from time to time ordered for the army of the United
States, shall be the system of discipline and field exer-
cise for the militia of this state.

Sec. 29. Each commanding officer of a company
shall order out his company on the third Monday of
April annually, at one o'clock in the afternoon, for in-
spection; and shall inspect, examine, and take an ex-
act account of the equipments of his men, note all de-
linquencies of appearance, and deficiencies of equip-
ments, and correct his company roll, in order that a
thorough inspection may be made, of all the militia in
the state; and every commanding officer of a company,
shall train and discipline his company on said day, as
well as inspect them. All persons now holding commis-

### JANUARY, 1840.                                      13

sions as captains or subaltern officers in the militia, shall exercise the duties of their said office, at the company trainings herein ordered on the third Monday of April next: and at the said company training, after the exercise and drill, the company shall proceed to the election of officers; and return of said election shall be made as herein required. And the same proceedings for the election of officers shall be had on the said third Monday of April in each succeeding year.

Sec. 30. The militia of this state shall in the year one thousand eight hundred and forty, and in every second year thereafter, in the month of September, meet by regiment or battalion, for the purpose of training, disciplining and improving them in martial exercise: the places of regimental and battalion rendezvous shall be appointed by the commandants of the regiments respectively: and the days of the regimental or battalion rendezvous, by the respective brigadiers. In the year one thousand eight hundred and forty-one, and in every second year thereafter, in the month of September, the commissioned officers belonging to each brigade shall be called together for the purpose of disciplining and improving them in martial exercise: the time for calling out said officers shall be designated by the major-general; and the place of meeting shall be designated by the brigadier-general of each brigade; and the officers of said brigade shall be under the immediate command of the brigadier-general when so assembled: *Provided*, that the militia in the town of Jamestown, and that portion of the militia of the town of Portsmouth residing on the island of Prudence, may muster with the regiment to which they belong, or by company in their respective towns, on the same day with their regiment; and in the latter case, the commanding officers of said companies respectively, shall inspect and review their companies, and make return to the commander of the regiment: *Provided also*, that the inhabitants of the town of New Shoreham shall be exempt from all military duty.

Sec. 31. Each brigade and regiment, when in the field, shall take rank according to its number, as in the first and second sections of this act, beginning at the lowest number as highest in rank; and the companies

14                        JANUARY, 1840.

in each regiment shall form according to the rank of the officers present commanding them; and when distinct corps shall parade, join or do duty together, the senior officer present shall command, without regard to corps.

Sec. 32. Whenever any company destitute of commissioned officers, shall parade with other troops, the commanding officer present shall detail some officer of the regiment to discipline and command them, unless the officer be present, detailed for that purpose, according to the provision of the tenth section.

Sec. 33. Every commanding officer, when on duty, is hereby authorized to ascertain and fix necessary bounds and limits to his parade, not including any road on which people travel, so as to obstruct the same, or prevent their passing, within which, no spectator shall have a right to pass or enter, without leave from such commanding officer; and the commanding officer of any battalion or company may put under guard any spectator or bystander who shall abuse, molest or strike any one when on parade, or under arms; and every person who shall encroach on the parade ground.

Sec. 34. Brigade-majors and brigade-inspectors shall attend the inspections and reviews of their respective brigades, whether the same be by brigade or regiments; and if by regiments, shall inspect their arms, ammunition, and equipments, superintend their exercises and evolutions, and introduce and enforce the system of discipline required by law and by the orders of the commander-in-chief; and shall make return as provided in the forty-first section.

Sec. 35. No non-commissioned officer or private shall, unnecessarily, or without orders from his superior officer, come on to any place of parade, with his musket, rifle, or pistol, loaded with ball, slugs, or shot, or shall so load the same while on parade, under the penalty provided in such cases in the seventy-second section.

Sec. 36. The ball cartridges required by this act shall be inspected at such place as the commanding officer may appoint.

Sec. 37. No officer, non-commissioned officer, or private, shall be compelled to do military duty on any day appointed for town, city, or ward meetings, or for the election of any civil officer, in the town or city in which

4-ER-0918

JANUARY, 1840.                                    15

he shall reside, except on the third Monday in April, unless it be in case of invasion, insurrection, riot, or tumult threatened; and no doings of any town, city, or ward meeting, and no election of civil officers, holden on the third Monday in April, shall be valid, or of any legal force.

Sec. 38. Nothing herein contained shall prevent any company from meeting at any time for drill, funeral, or any other voluntary duty, nor to impair the corporate privileges of any chartered company, nor any lawful articles of agreement adopted by any company so far as relates to those who have voluntarily signed the same.

*Rolls, Rosters, and Returns.*

Sec. 39. A fair and correct roll of each company shall be kept by the commanding officer, with the state of the arms and equipments belonging to each man; and said officer shall keep an orderly book for all orders received or issued, and all accounts of all fines, from whom received and when and for what cause.

Sec. 40. All general orders shall be distributed by the adjutant general; all division orders, by one of the aids of the major-general; all brigade orders, by the brigade-major; all regimental orders, by the adjutant; and company orders, by any non-commissioned officer or private, when required by the commanding officer.

Sec. 41. Each commanding officer of a company, shall make a correct return of the state of his company, with the names of all the men belonging to it, together with the true statement of their arms, ammunition, and equipments, to the commanding officer of his regiment, annually, in the month of May. Each commanding officer of a regiment shall make a like return to the commanding officer of his brigade, of the state of his regiment, annually, in the month of September. The brigade-majors and inspectors shall make a like return of the state of their respective brigades, to the adjutant-general, annually, in the month of October. And the adjutant-general shall make duplicate abstracts of the state of the militia; one to be delivered to the commander-in-chief, who shall present the same to the general assembly; and the other shall be transmitted, in the

16                    JANUARY, 1840.

month of December, to the president of the United
States.

Sec. 42. The adjutant-general shall furnish blank
forms of rolls and of the various returns that may be re-
quired, at the expense of the state; and explain the
principles on which they are to be made out; and the
roll shall be kept as prescribed.

Sec. 43. The commanding officers of companies rais-
ed at large, except independent companies chartered
before the first day of January, A. D. 1840, shall, in the
month of April, annually, make out a list or lists of the
men belonging to their respective companies, and de-
liver the same to the commanding officers of the regi-
ments, within whose bounds any such men shall reside.

*Enrollment.*

Sec. 44. Every able bodied white male citizen, in
this state, who is, or who shall be, of the age of eigh-
teen years, and not exceeding the age of forty-five years,
excepting persons absolutely exempted by the provis-
ions of this act, and idiots, lunatics, common drunkards,
paupers, vagabonds, and persons convicted of any infa-
mous crime, shall be enrolled in the militia, in the com-
panies within whose bounds they shall respectively re-
side, by the commanding officers of companies. Such
enrollments shall be made from time to time, as each
citizen shall arrive at the age of eighteen years, or
shall come to reside within said bounds; or who, with-
out being exempted, shall cease to be holden to do mil-
itary duty elsewhere; and the commanding officer of
any such company, who shall enroll any such citizen,
shall cause such citizen to be notified of his enrollment
without delay, by a proper non-commissioned officer of
said company, by whom such notice may be proved;
and any legal notice or warning by a non-commis-
sioned officer, to attend any training, inspection, or re-
view, or election of officers of said company, shall be a
legal notice of enrollment. All non-commissioned offi-
cers and privates, discharged from any company raised
at large, or members of any such company which shall
be disbanded, except in cases otherwise provided by law,
shall be enrolled as privates in the standing companies of

JANUARY, 1840.                    17

militia, within whose bounds they shall respectively reside; and in all cases of doubt as to age or liability, the person enrolled shall be required to furnish proof: *Provided, however,* that all persons between the ages of thirty years and forty-five years, not otherwise exempted by this act, shall be exempt from the performance of military duty, except in case of invasion, insurrection, riot, or tumult, by keeping themselves constantly armed and equipped according to law, by carrying or sending their arms and equipments, annually on the third Monday in April, to the place of parade of their respective companies for inspection.

Sec. 45. Every keeper of a tavern or boarding house, and every master and mistress of a family, or dwelling-house, shall, upon application of the commanding officer of the company within whose bounds such tavern or house is situated, or on application of any person acting under the direction and authority of such commanding officer, give information of the names of all persons residing in such tavern or house, liable to enrollment, or to do military duty; and if any such keeper, master, or mistress, on such application, shall refuse to give information, or shall give false information, or if any person liable to do military duty shall, on such application, either refuse to give information of his age and name, or shall give false information, he, she, or they, shall be liable to the penalty provided in the seventy-fourth section of this act.

Sec. 46. If any non-commissioned officer or private shall become a pauper, vagabond, or common drunkard, or be convicted of any infamous crime, he shall be forthwith disenrolled from the militia.

Sec. 47. No soldier shall be compelled to do military duty within six months after notice given him of his first enrollment; but he shall be entitled from the time of his enrollment to vote at elections in the company in which he is enrolled.

*Equipments.*

Sec. 48. Every citizen, when first enrolled in the militia and legally notified thereof, or within six months thereafter, shall provide himself with a good musket

3

**18**                              JANUARY, 1840.

with a bore sufficient for balls of the eighteenth part of a pound, a sufficient bayonet and belt, two spare flints, a priming wire and brush, and a cartridge box to contain twenty-four cartridges, suited to the bore of his musket, and twelve blank cartridges ; or with a good rifle, shot pouch, and powder horn ; except when otherwise ordered by the commander-in-chief. The commissioned officers shall be severally provided with a sword or hanger ; and all soldiers, after six months from having been notified of their enrollment, shall be constantly provided with the arms, and equipments, as provided by law ; and which shall be annually inspected at such company, regimental or brigade inspections as are herein directed to be holden.

Sec. 49. Any person unable to equip himself, may represent to the town council of the town, or board of aldermen of the city, in which he resides such inability; and said council or board of aldermen upon being satisfied of his inability, shall give him a certificate to that effect ; which certificate shall exempt him from any fine for want of said equipments ; and any poor parent, master, or guardian, may avail himself of the privileges of this section.

Sec. 50. Every parent, master, or guardian, shall arm and equip all minors under his, her, or their care, respectively, except as provided in the forty-ninth section, liable to do military duty ; and every parent, master, or guardian, who shall fail to do so, shall be liable to the penalties provided in the seventy-first section for deficiency in arms and equipments.

Sec. 51. Every officer, non-commissioned officer, and private, shall hold his uniform, arms, ammunition, and equipments, free from all suits, distresses, executions, or sales for debt or taxes.

Sec. 52. Every officer of the line, and every staff officer, shall provide himself with an uniform complete, which shall be such as the commander-in-chief shall prescribe, and subject to such limitations, restrictions, and limits, and alterations as he may order; and every such officer who shall be deficient therein, shall be liable to the penalty provided in the seventy-first section.

*Notifications.*

Sec. 53. Whenever any commanding officer of a com-

JANUARY, 1840.                        19

pany shall order out his company for inspection of arms,
company training, or inspection and review, he shall
issue his orders to some one or more of the non-commis-
sioned officers or privates of his company, to notify the
men enrolled in said company to meet at the time and
place appointed ; and such non-commissioned officers
or privates shall notify all the persons enrolled in said
company to meet at the time and place appointed, and
for the purpose specified in the orders aforesaid ; under
the penalty for neglecting to warn, provided in the sev-
enty-second section.

Sec. 54. No notice shall be legal, except given ver-
bally or by written or printed warrant to the person to
be notified, or by a printed or written warrant left at his
usual place of abode, by the person authorized to notify
by the commanding officer, and signed by the warning
officer ; and no such notice shall be legal, if for a com-
pany training, inspection and review, unless given at
least four days previous to the time appointed for the
same ; nor for an election of officers, unless given at least
ten days before the day of such election : *Provided*, that,
in case of invasion, insurrection, riot, or tumult, or any
unforeseen and sudden occasion, any verbal, written, or
printed notice, from a proper officer or person authorized
to notify, shall be legal, however short.

Sec. 55. The adjutant-general shall furnish comman-
ding officers of companies with blank forms of orders to
non-commissioned officers and privates to notify, and
blank notifications to be left with the men.

Sec. 56. The commanding officer of each company
shall record, in the orderly book, all company orders
and notifications ; but the record shall not be necessary
to the recovery of any penalty.

*Calling out the Militia in case of Invasion, Insurrection,*
*Riot, or Tumult.*

Sec. 57. Whenever any invasion of the state, or any
insurrection, riot, or tumult shall be made in any part
of the state, the commander-in-chief shall call out the
militia, or any part thereof, as he may deem expedient
or necessary, to suppress or repel the same ; and he may
order out the division or any brigade, brigades, regi-

20                        JANUARY, 1840.

ments, regiment, companies, or company, or any portions of the same, or cause any number of men to be detached or drafted from them, and cause officers to be detailed which, with those attached to the troops, shall be sufficient to organize the forces; and if such invasion or insurrection, or any imminent danger thereof, be so sudden in any part of the state, that the commander-in-chief cannot be informed, and his orders received and executed in season to suppress or repel the same, the major-general may order out the division, or any part thereof, as the commander-in-chief might do; and when any troops are in the field for such purposes, the senior officer of said troops, present, shall command, until the commander-in-chief, or some officer detailed by him, shall appear to take the command.

Sec. 58. Whenever any draft from the militia shall be ordered, the non-commissioned officers and privates, except so many as shall voluntarily offer to serve, shall be drafted by lot, from the company; and the officers detailed from the roster.

Sec. 59. If any company without officers be ordered to march, or any draft or detachment therefrom ordered, the commanding officer of the regiment to which such company belongs, shall detail some officer to command them, who shall have the same authority to command them to appear, and to command them in the field, and to make any draft or detachment therefrom, as though he were captain of said company, and shall have the same responsibility.

Sec. 60. Every officer who, when ordered to march to the place of rendezvous, shall unnecessarily neglect to do so, or who shall otherwise disobey any lawful order, shall be punished as is provided in the seventy-third section; and every soldier ordered out, drafted, or detached, who shall not appear at the time and place appointed, armed and equipped as the law directs, or who shall not have some able-bodied substitute, so armed and equipped, at such time and place, or shall not pay to the captain of his company, within twenty-four hours from such time, the sum of one hundred dollars for the benefit of the company, shall be fined not exceeding one hundred dollars; and each non-commission-

JANUARY, 1840.                         21

ed officer and private shall take with him provisions for
at least three days, when so ordered.

Sec. 61. When, in any county in this state, there
shall be any tumult, riot, mob, or any body of men act-
ing together, with intent to commit felony, to offer vio-
lence to persons or property, or in any other way to re-
sist the laws of the state by force and arms, or by vio-
lence, or when any of said acts shall be threatened, and
the fact be made to appear to the commander-in-chief,
or to the sheriff of said county, or to either of the jus-
tices of the court of common pleas in such county, or, if
in the city of Providence, to the mayor of said city in
the first instance, or in his absence, to the board of al-
dermen, the commander-in-chief shall issue his order, or
such justice, sheriff, mayor, or board of aldermen shall
issue his or their precept, properly signed, directing the
commanding officer of the division, brigade, regiment, or
company, as the case may be, to order out his command,
or any part of the same, to suppress such riot, tumult,
or mob, and to prevent the perpetration of any such fel-
ony, or act of unlawful violence.

Sec. 62. The officer to whom any such order or pre-
cept shall be directed, as named in the foregoing sec-
tion, shall forthwith order out the troops therein requir-
ed, to parade at the time and place appointed; and if
he shall refuse to obey such order or precept, or if any
officer under his command shall refuse to obey an order
issued under such order or precept, he shall be cash-
iered, and farther punishable by fine, as provided in the
seventy-third section, and be liable to imprisonment, on
the sentence of a court martial approved by the com-
mander-in-chief, for a term not exceeding six months.—
And any non-commissioned officer or private, who shall
neglect or refuse to appear at the time and place of pa-
rade, or to obey any lawful order issued in such case,
shall suffer the penalty provided in the sixtieth section.

*Excuses.*

Sec. 63. Any excuse for non-appearance of a non-
commissioned officer or private, shall be made to the
commanding officer of his company, within twenty days
after the training or other military duty, for the non-

22            JANUARY, 1840.

performance of which he shall claim to be excused, and if the delinquent shall produce satisfactory evidence to the commanding officer, that he was unable to appear at the time and place appointed, the commanding officer may excuse him; but no commanding officer shall receive any excuse for non-appearance after the expiration of said twenty days; and any commanding officer who shall violate this provision, shall be liable to be tried by court-martial.

Sec. 64. Any officer detailed to train and discipline a company without officers, shall have the power, as commanding officer, to excuse absences as aforesaid, and to impose fines.

### Disorderly Conduct.

Sec. 65. Any non-commissioned officer or private who who shall, while under arms or on duty, behave himself with contempt to an officer, or who shall conduct in a disorderly manner, join in, or excite any riot or tumult, or appear in any fantastical dress, or with other arms and accoutrements than what the law requires, or who shall be guilty of any other unsoldier-like conduct, shall be put under guard by the officer commanding the field, or by his order, for a time not exceeding the time the troops shall be under arms; and shall be fined, as provided in the seventy-second section.

### Surgeons and Surgeon's Mates.

Sec. 66. No surgeon, or surgeon's mate, nor any physician, shall take any gratuity whatsoever from any person, for a certificate for inability to perform military duty on account of bodily infirmity; and it shall be the duty of such to examine critically the cases of all applicants for such certificates, and not to grant any certificate for bodily infirmity or inability, unless such infirmity or inability be, beyond all doubt, such as to render the applicant unable to perform military duty; and any surgeon, surgeon's mate, or physician who shall violate the provisions of this section, shall be liable to the penalty of fifty dollars; to be sued for and recovered by the colonel or commanding officer of the regiment to which

## JANUARY, 1840.                    23

such surgeon or surgeon's mate shall belong, and within whose bounds such physician shall reside; and said penalty shall be to the use of the regiment, and said certificate shall be of no avail.

Sec. 67. Whenever any regiment may be without a surgeon or surgeon's mate, or when any person may claim to be exempt from military duty by reason of bodily infirmity or disability, and shall not reside within ten miles of the surgeon, or surgeon's mate of the regiment, within the bounds of which he shall reside, any respectable physician within said distance, may grant him a certificate, subject to the restrictions contained in the preceding section; and the commanding officer of any company is authorized to exempt any person from military duty, who shall reside within the bounds of his company, on the presentation of such certificate from the surgeon, or surgeon's mate, or a physician as aforesaid, either for a longer or shorter period, not exceeding one year, as, in the judgment of the commanding officer, the case may demand.

### Volunteer Companies.

Sec. 68. If any company raised at large after the first day of January, A. D. 1840, shall, at any time, be destitute of commissioned officers, and shall, after having been twice ordered, refuse or neglect to fill vacancies, or if the number of privates in any such company be reduced to less than twenty-four, and continue thus reduced for more than one year, said company may be disbanded by the commander-in-chief, and the non-commissioned officers and soldiers thereof be enrolled in the militia: *Provided however*, that no person who has served seven years in any chartered volunteer company in this state, shall ever afterwards be liable to do military duty except in case of invasion, insurrection, or riot.

Sec. 69. Officers of disbanded companies shall not be reduced to the ranks; but may be honorably discharged by the commander-in-chief, or detailed as occasion may demand, for the discharge of any duty correspondent with their rank.

24                          JANUARY, 1840.

*Fines and Penalties.*

Sec. 70. Every non-commissioned officer and private, holden to do duty in the militia in this state and refusing or neglecting to appear for the performance of duty when legally warned and notified, shall forfeit and pay as follows, to wit: for unnecessarily neglecting to appear at any inspection and review, seven dollars. For unnecessarily neglecting to appear at any company training, five dollars. For unnecessarily neglecting to appear when ordered, or disobeying any lawful order, in case of riot, mob, or tumult, one hundred dollars.

Sec. 71. Every non-commissioned officer and private, who shall appear at any inspection, training, or review, whose equipments are deficient, or of bad quality, shall forfeit and pay, for a musket, a bayonet or belt, and an iron or steel ramrod, all or either, one dollar. A cartridge box with twelve blank cartridges, two spare flints, and a priming wire and brush, all or either, one dollar. The officers of every grade, for a deficiency of uniform, or uniform of bad quality, five dollars. A deficiency of a sword or hanger, or belt, of good quality, both, or either, two dollars.

Sec. 72. Any non-commissioned officer or private, guilty of contempt of any officer, or of disorderly conduct, or other offence described in the sixty-fifth section, not less than fifty, nor more than one hundred dollars. For quitting his guard, section, or platoon, without leave, ten dollars. For discharging his musket, rifle, or pistol, when going to, remaining on, or returning from parade, not less than five, nor more than ten dollars. For refusing or neglecting to warn, when ordered in a company without officers, two hundred dollars.— For refusing or neglecting to give notice or warning in a company without officers, as provided in the fifty-third section, two hundred dollars. For loading arms on parade, with balls, slugs, or shot, not less than five dollars, nor more than twenty dollars.

Sec. 73. Officers shall be liable to the following penalties, to wit: For exercising any power or authority in the militia, after having accepted an appointment in the army of the United States, not more than three hundred dollars. For disobeying any order or precept

JANUARY, 1846.                                    25

in time of riot, mob, or tumult, not less than one hundred dollars, nor more than five hundred, and to be cashiered and liable to imprisonment.  The manner in which fines shall be inflicted on officers, as well as other penalties, shall be by courts-martial, according to law.

Sec. 74.  When information is required by persons ordered to enrollment, every person liable to do duty, refusing to give information of his name or age, or giving false information, shall forfeit and pay twenty dollars.  Every keeper of a tavern, or boarding-house, and every parent, master, or mistress of a family, refusing to give information, or giving false information, twenty dollars.  Persons intruding on the bounds and limits of parades, ten dollars.

*Prosecutions for Fines.*

Sec. 75.  For all penalties incurred under the provisions of the seventieth and seventy-first sections, the commanding officer, within ten days after any inspection, training, review, election, or duty, at which the delinquent failed to appear, or appeared deficient in arms and equipments, or with arms and equipments of bad quality, the commanding officer of the company to which said delinquent belongs shall cause him to be notified, in writing, of the penalties incurred by him ; and if such delinquent shall fail to excuse himself to the satisfaction of the commanding officer, within ten days after such notice given, then the commanding officer may issue his warrant for said penalty or penalties, and put the same into the hands of the sheriff, his deputy, or any town sergeant or constable in the town or county in which such delinquent resides, who are hereby required to execute the same.

Sec. 76.  Whenever the commanding officer of a company shall impose a fine, the person so fined, if he claims to be exempt from military duty at the time for which he is fined, may, within ten days after notice given him, appeal to the commanding officer of the regiment; and in all cases of appeal, it shall be the duty of the officer to whom the appeal is made, to cause written notice to be given to the officer imposing the fine, who shall thereupon stay proceedings for the collection thereof, until

4

26                          JANUARY, 1840.

the appeal be determined. And the officer to whom
the appeal is made, may, on hearing the parties, abate
the fine; and if such fine be not abated, the officer im-
posing the same, shall proceed to the collection thereof.
And the person fined, may be heard by himself or his
counsel, both on the original action, and on the appeal.
And all appeals shall be made in writing, and notice
thereof given to the officer imposing the fine, within
twenty days after such appeal is made; and no action
shall be sustained against any officer for imposing a
fine under the provisions of the seventy-first section.

Sec. 77. All warrants granted for the collection of
fines according to the provisions of the preceding sec-
tions, shall be directed to the sheriff, his deputy,
or any town sergeant or constable of the county or
town in which the delinquent dwells; which warrant
may be levied on the goods or chattels of said delin-
quent, if of the age of twenty-one years, and for want of
such goods and chattels, on the body of said delinquent;
and if such delinquent be under the age of twenty-one
years, then on the goods and chattels of his parent,
master or guardian, and for want of such goods or
chattels, on the body of the same; and him commit, till
such fine be paid, with lawful fees for warrant and ser-
vice, as in execution for debt.

Sec. 78. All fines collected from non-commissioned
officers and privates, shall be appropriated to the ben-
efit of the company to which the delinquent or delin-
quents shall belong, for the purpose of procuring music,
and defraying other necessary expenses: *Provided how-
ever*, that any person may sue for and recover a fine for
firing a musket, rifle, or pistol, either going to, or re-
turning from parade, one half said fine to the prose-
cutor, and the other half to the company aforesaid.

Sec. 79. All military fines whatever, except those
named in the preceding section, and those imposed by
court martial, may be sued for and recovered in an ac-
tion of debt in any court in this state competent to try
the same; and when collected shall be paid to the gen-
eral treasurer.

*Courts Martial.*

Sec. 80. General, field, commission, and staff officers,

### JANUARY, 1840.         27

shall be subject to trial by court martial, according to the usage and practice of war, for disobedience of orders, unofficer-like conduct while on duty, or during any day appropriated to military exercise, inspection or review, and for neglect of any duty imposed upon them, by law, as officers of the militia; which court martial shall consist of not less than nine, nor more than thirteen members; and the senior officer, who shall always be of a rank superior to that of the officer on trial, shall preside. The court martial for the trial of an officer under the grade of a field officer, shall be appointed by the commanding officer of the brigade to which he belongs; for the trial of an officer of the grade of field officer, by the commanding officer of the division; and for the trial of a general officer, by the commander-in-chief. In every court martial there shall be a judge-advocate, who shall discharge the duties of that office according to the usage and practice of courts-martial; and no other person shall be admitted to prosecute or defend an arrested officer. Whenever a court martial shall be ordered, the order shall designate the time and place of holding the same, the name of the officer to preside, and the names and ranks of the other officers, of which the court is to be composed. If the court shall be ordered by the commander-in-chief, the orders shall be as follows, to wit:

*State of Rhode Island, ss.*

GENERAL ORDERS.

"A general court-martial is ordered to assemble at    on the    day of    A. D.    for the trial of such persons as may be brought before them, to consist of    members, to be taken from the division, to wit: the major-general,    brigadier generals,    colonels,    lieutenant colonels. Major-general    will preside. The adjutant of the regiment will furnish an orderly sergeant, to attend and execute the orders of the court." [To be signed by the commander-in-chief, or by the adjutant-general by his order.] If a court-martial be ordered by the major-general, the orders shall be as follows, to wit:

28                          JANUARY, 1840.

*State of Rhode Island, ss.*
DIVISION ORDERS.

A general court-martial of the division will assemble
at        on the        day of        A. D.        for the
trial of such persons as may be brought before them, to
consist of        members, to wit :        brigadier-gen-
erals,        colonels,        lieutenant colonels,
        majors. Brigadier-general        will preside.
The adjutant of the        regiment will furnish an or-
derly sergeant to attend and execute the orders of the
court. [To be signed by the major-general, or by the
division inspector, by his order.] If the court be or-
dered by a brigadier-general, the orders shall be as fol-
lows, to wit :

*State of Rhode Island, ss.*
BRIGADE ORDERS FOR THE BRIGADE OF RHODE ISLAND
MILITIA.

A general court martial for the        brigade will
assemble at        on the        day of        A. D.
        for the trial of such persons as shall be brought
before them, to consist of        members, to wit :
colonels,        lieutenant-colonels,        majors,
captains,        subalterns. Colonel        will preside.
The adjutant of        regiment will furnish an orderly
sergeant to attend and execute the orders of the court.
[To be signed by the brigadier-general, or by the brig-
ade-major, by his order.] For a general court martial,
the adjutant-general shall detail and notify all general
officers, and apportion the other officers required, to the
several brigades they are to be taken from ; and give
notice thereof to the division-inspector, or brigade-ma-
jors, who shall detail and notify said officers, and make
return thereof to the adjutant-general. In a division
court-martial, the division-inspector, or an aid-de-camp
under the direction of the major-general, shall detail
and notify the general officers, and apportion the other
officers to each brigade, and give notice thereof to the
respective brigade-majors, who shall detail and notify
the field officers required of their brigades, and make
return thereof to the major-general.
For a brigade court martial, the brigade-major shall

## JANUARY, 1840.                    29

detail and notify the field officers required to serve on said court martial, and apportion the number of captains and subalterns of each regiment, and notify the respective adjutants; and the adjutant of each regiment shall notify them, and make return thereof to the brigade-major; and if the officer to be tried be a general officer, he shall be furnished with a copy of the order for said court, and a copy of the charges in arrest, by the adjutant-general, or by the division inspector, or by a brigade inspector, as the commander-in-chief shall direct, thirty days before the sitting of said court, who shall make return thereof, with the names of the officers composing said court; and the officer to be tried, if under the rank of a field officer, shall be furnished with like copies, twenty days before the sitting of the said court, by a brigade-major, or inspector, or by the adjutant of the regiment to which he belongs, as the officer ordering the court martial shall direct; who shall return the same, and the names of the officers composing the court, to the judge-advocate of the court; and it shall be the duty of the said judge advocate to summon, or cause to be summoned, such witnesses on the part of the state, as may be necessary by subpoena signed by the officer ordering the court, or by the president thereof, or by said judge-advocate; and the accused shall be entitled to like process, to procure the attendance of his witnesses; which process shall be served by the judge-advocate, or by any disinterested person deputed by him. The members to compose the court, shall be detailed according to seniority, in a regular rotation of duty; and all charges in arrest shall be made out in due form, by way of complaint, and signed by the party complaining, and addressed to the officer whose duty it is to order the court, specifying the act or neglect of which the accused is supposed to be guilty, and praying due process, before said officer shall order a court-martial for the trial of the officer accused. The members of the court, before they enter on the trial of any person accused, shall take the following oath, to wit: "You swear [or affirm] that you will truly try and determine, according to the evidence given in court, the matters depending between this state, and the officer [or officers] now to be tried;

30                           JANUARY, 1840.

that you will not divulge the sentence of the court, un-
til the same has been approved or disapproved pursuant
to law; and that you will not at any time, disclose the
vote or opinion of any member of this court, unless re-
quired to do so in due course of law. So help you God."
[Or this you affirm, &c.]  And the foregoing oath shall
be administered by the judge-advocate; but all other
oaths which it may be necessary to administer, during
the continuance of the court, may be administered
either by him, or any general or field officer.

Sec. 81.  There shall be appointed and commissioned
by the commander-in-chief, one judge-advocate for each
brigade, who shall perform all the duties of that office,
in all courts-martial assembled in their respective brig-
ades, who shall take the following oath, to wit:—"You
swear [or affirm] that you will not, at any time what-
ever, disclose the vote or opinion of any member of any
court-martial in which you may be called to act, unless
required by due course of law, nor divulge the sentence
of any such court, till the same has been approved or
disapproved according to law; and that you will faith-
fully and impartially discharge the duty of judge-advo-
cate, according to the best of your abilities, so help
you God."  And said oath may be administered by a
judge of any court in the state, or any justice of the
peace in the state; and a certificate thereof shall be
made on the commission of the judge-advocate, by the
person administering the oath; and the judge-advocate
as aforesaid, shall hold his office only during the plea-
sure of the commander-in-chief.  Whenever any judge-
advocate, by reason of interest, relationship to any of-
ficer to be tried, sickness, or any other cause, cannot
act in any court-martial to be assembled, the officer
ordering the court, may designate the judge-advocate
of any other brigade, and order his attendance at said
court, to officiate as judge-advocate.

Sec. 82.  If, on trial, the accused shall object to any
one, or more members of the court, he shall state the
ground of his objections, and if it appear to the court
sufficient, the member or members objected to, shall
leave their seats; and if the number remaining be less
than nine, the court shall be adjourned for a reasonable
time, that the officer ordering the court may detail oth-

JANUARY, 1840.                                                    31

ers to supply the place or places vacated by such mem-
ber or members. And no court martial shall order any
other punishment than a fine not exceeding five hun-
dred dollars, or a reprimand, either or both ; or a fine
not exceeding two hundred dollars, or imprisonment
not exceeding six months, or cashiering, either, or all
three ; and no sentence, as aforesaid, shall be carried
into effect, unless passed by the concurrent votes of
two-thirds of the court, and approved by the command-
er-in-chief.   And in case an officer under arrest, shall
refuse or neglect to attend a court martial, according
to orders and notice given him, he shall, by said court,
be sentenced to pay a fine not exceeding two hundred
dollars, and be cashiered, with disability of ever after
holding any military office in this state ; unless he be
prevented from attending such court martial by reason
of sickness, or some other reasonable cause ; in which
case the court shall have power to adjourn ; and notice
thereof shall be given to the arrested officer, by the
judge-advocate, at least ten days before the day to
which the court shall have been adjourned.   And the
fines imposed by said courts martial shall be to and for
the use of the state, and shall be collected by warrant,
under the hand and seal of the president of the court,
directed to the sheriff of the county in which the con-
victed officer shall reside ; and the fine, when collected,
shall be paid to the general treasurer by the sheriff.—
And in all cases in which a fine or costs shall be award-
ed by a court martial, and the sentence of such court
shall be approved by the commander-in-chief, and the
president of such court shall die, be discharged, or pro-
moted, without having issued such warrant, for such
fine and costs, it shall be the duty of the member of said
court next in rank to said president, to issue said war-
rant.

    Sec. 83. If any witness duly summoned shall refuse
to obey such summons, he shall be committed to the
jail in the county in which he resides, by a warrant from
the president of the court, directed to the sheriff, or a
deputy-sheriff, of said county, there to be held at his
own expense, until he will conform, and give evidence
in the case, or until discharged by due course of law.—
And all witnesses summoned on the part of the State,

**32**                         **JANUARY, 1840.**

and the judge-advocate, for summoning them shall, for travel and attendance, have the same fees that are allowed in civil causes, to be taxed by the president of the court; expenses shall be paid to the judge-advocate by the state, and when received by him, be paid over to the persons, to whom they are due. And if the sentence of the court be against the accused, and the same shall be approved by the commander-in-chief, the said expenses shall, by warrant under the hand and seal of the president of the court, directed in manner aforesaid, be collected of the delinquent, and paid into the general treasury. And the members of said court shall be allowed nine cents per mile travel to and from the place of holding said court, and one dollar for each day during its sitting; and there shall be allowed to the person in whose house said court shall be held, not exceeding two dollars per day, in full of all expenses for room rent, fuel and lights; and which shall be paid from the state treasury. And the judge-advocate shall be allowed twenty-five cents for each legal page of the copy of the proceedings and records of the court martial, to be taxed and paid in the same manner.

The commander-in-chief shall have power to approve or disapprove all sentences passed by courts-martial, and mitigate or remit any punishment or punishments awarded by them, or any part thereof; and the record of all proceedings and sentences of courts-martial, and of the approval, mitigation or remission, by the commander-in-chief, shall be deposited by the respective judge-advocates, in the office of the secretary of state.

Sec. 84. All acts heretofore passed in relation to the militia of this state, which are inconsistent with the provisions of this act, be and the same are hereby repealed.

# THE

# REVISED CHARTER

AND

# ORDINANCES

OF THE

# CITY OF CHICAGO:

TO WHICH ARE ADDED THE CONSTITUTIONS OF THE
UNITED STATES AND STATE OF ILLINOIS.

ARRANGED, REVISED AND PUBLISHED UNDER THE SUPERVISION AND
DIRECTION OF THE COMMON COUNCIL, 1851,

BY

GEORGE MANIERRE, *Counsellor at Law.*

CHICAGO:
PRINTED AT THE DAILY DEMOCRAT OFFICE, 45 LA SALLE STREET.
Steam Presses.

1851.

EXHIBIT 12 (McLean)

4-ER-0937

GUN POWDER AND GUN COTTON.                    123

## CHAPTER XVI.

*Regulating the keeping and conveying Gun Powder and Gun Cotton.*

§ 1. Gun powder not to be sold without permit.

2. Applications for, how made; not more than four in any block to be granted; clerk to register permits; not more than fifty pounds to be kept; when not to be weighed unless sealed; sign to be kept on the door.

3. Gun powder not to be conveyed through the streets unless secured.

4. No vessel laden with to make fast at dock or lie in the river; penalty for.

5. Mayor may cause vessel to be removed when; penalty for resisting or refusing to obey order.

6. Permits to expire on 19th of June; to whom permits shall not be granted.

7. Duty of certain officers to execute this ordinance.

8. Penalties to be distributed; one half to fire department; the other to firemen's fund.

9. Individuals may keep one pound.

*Be it ordained by the common council of the city of Chicago,*

I.   That no person shall keep, sell, or give away gun powder or gun cotton in any quantity without permission of the common council or mayor in writing, signed by the mayor and clerk and sealed with the corporate seal, under a penalty of twenty-five dollars for every offence.

II.   All applications for permits shall be addressed to the common council or mayor in writing, signed by the applicant. Not exceeding four permits shall be granted in any block. When the number of applications in any block shall at any time exceed the number to be granted, the requisite number shall be chosen by ballot.   When issued the clerk shall make an entry thereof in a register to be provided for the purpose, which entry shall state the name and place of business and date of permit.   Persons to whom permits may be issued shall not have or keep at their place of business or elsewhere within the city, a greater quantity of gun powder or gun cotton than fifty pounds at one time, and the same shall be kept in tin canisters or cases containing not to exceed thirteen pounds each, and in a situation remote from fires or lighted lamps, candles or gas, from which they may be easily removed in case of fire.   Nor shall any person sell or weigh any gun powder or gun cotton after the lighting of lamps in the evening, unless in sealed canisters or cases.   It shall be the duty of every person to whom a permit shall be given to keep a sign at the front door of his place of business with the words " gun powder and gun cotton" painted or

**4-ER-0938**

124                              ORDINANCES.

printed thereon in large letters.  A violation of any clause of
this section shall subject the offender to a fine of not less than
ten dollars nor exceeding one hundred dollars.

III.  No person shall convey or carry any gun powder or
gun cotton, (exceeding one pound in quantity), through any
street or alley in the city, in any cart, carriage, wagon, dray,
wheelbarrow, or otherwise, unless the said gun powder or gun
cotton be secured in tight cases or kegs, well headed and hoop-
ed, and put into and entirely covered with a leather bag or case,
sufficient to prevent such gun powder or gun cotton from being
spilled or scattered, under a penalty of one hundred dollars.

IV.  No vessel, laden in whole or in part with gun powder
or gun cotton, shall land at, or make fast to, any dock or wharf
upon the Chicago river, or either branch thereof, between the
south line of the school section and Chicago avenue, or to dis-
charge such gun powder or gun cotton within said limits.  If
any master, or owner of any vessel, or other person shall vio-
late any provision of this section, he shall be subject to a fine of
not less than twenty-five dollars and not exceeding one hundred
dollars.

V.  The mayor shall have power to cause any vessel to be
removed from the limits mentioned in the previous section, to
any place beyond the same, by a written order, which shall be
executed by the marshal or some other member of the police.
If any person shall neglect or refuse to obey such order, or shall
resist any officer in the execution of the same, he shall be subject
to a penalty of one hundred dollars.

VI.  All permissions granted under this ordinance shall ex-
pire on the tenth day of June in each year.  And no permit
shall be granted to any retailer of intoxicating liquors or to any
intemperate person.  The clerk shall be entitled to a fee of one
dollar for every permit which may be issued.

VII.  It shall be the duty of the officers of the police depart-
ment, fire wardens, and firemen, to report all violations of this
ordinance which may come to their knowledge to the city attor-
ney for prosecution.

VIII.  One half of the moneys collected for fines or penal-
ties under the provisions of this ordinance shall be paid to the
treasurer of the firemen's relief fund, and constitute a part of

GROCERIES.                                    125

said fund, and the remaining half shall be expended by the chief engineer of the fire department, in the embellishment or improvement of the instruments of that department.

IX.   This ordinance shall not be so construed as to prevent individuals from keeping gun powder or gun cotton in quantities not exceeding one pound for their own use.

Passed July 23, 1851.

---

# CHAPTER XVII.

### *Regulating the sale of Intoxicating Liquors.*

| | |
|---|---|
| § 1. No person to keep liquors for sale in quantities less than one gallon without license; exception. | § 4. Intoxicating liquors not sold to any Indian, child or apprentice without consent. |
| 2. Applications for to be made to mayor in writing; if granted fifty dollars to be paid; bond with sureties to be given; how executed; clerk to issue license; fee for. | 5. Penalties for violating provisions of ordinance. |
| 3. Licenses shall continue one year; not to be transferred without permission; clerk to register; when license to be dated; duty of clerk. | 6. Persons prosecuting to conviction to have ten dollars of judgment if collected; duty of police to execute. |
| | 7. When license may be revoked; manner of proceeding; no appeal. |
| | 8. Ordinances repealed; reservation of rights of action. |

*Be it ordained by the common council of the city of Chicago,*

I.   That no person or persons shall hereafter have or keep any tavern, grocery, ordinary, victualing or other house or place within the city, for the selling or giving away wines or other liquors, whether ardent, vinous or fermented, in quantities less than one gallon; or directly or indirectly sell, barter, give away or deliver, any ardent, vinous or fermented liquors in quantities less than one gallon, without a license for that purpose duly obtained by him or them in conformity with the provisions of this ordinance : *Provided,* That druggists or persons whose chief and regular business it is to sell drugs and medicines, shall not be deemed to be within the provisions hereof in selling such liquors in quantities less than as aforesaid, for purposes purely medical, mechanical or sacramental.

II.   All applications for license under this ordinance shall be made to the mayor in writing.   They shall be signed by the applicant and contain a particular description of the proposed place of business.   If the mayor shall grant the application it shall then be the duty of the applicant to pay the sum of fifty

17

4-ER-0940

Source Citation
Manierre, George. The Revised Charter and Ordinances of the City of Chicago: To Which are Added the Constitutions of the United States and State of Illinois. Printed at the Daily Democrat Office, 1851. The Making of Modern Law: Primary Sources, link.gale.com/apps/doc/DT0103399529/MMLP?u=gtown_law&sid=bookmark-MMLP&pg=133. Accessed 5 July 2023.

**Gale Document Number:**GALE|DT0103399529

# THE

# CHARTER AND ORDINANCES

### OF THE

# CITY OF SAINT PAUL,

### (TO AUGUST 1st, 1863, INCLUSIVE,)

#### TOGETHER WITH

# LEGISLATIVE ACTS

## RELATING TO THE CITY.

--------------------

### COMPILED BY ORDER OF THE COMMON COUNCIL.

SAINT PAUL:
DAILY PIONEER OFFICIAL PRINT.
1863.

EXHIBIT 13 (McLean)

4-ER-0942

166                         GUNPOWDER.

which he has the control, shall be punished by a fine not exceeding one hundred, nor less than twenty-five dollars.

Sec. 5.  This ordinance shall take effect from and after its publication.

Approved, June twenty-nine, eighteen hundred and fifty-eight.

Published, July 12, 1858.

———————

# GUNPOWDER.

## CHAPTER XXI.

Section.
1. Gunpowder, &c., not to be disposed of without permission.  Proviso.
2. Permit, how obtained.  Regulations of sale of gunpowder, &c.  Penalty.
3. Regulations of carriage of gunpowder, &c.  Penalty.
4. Expiration of permit.

AN ORDINANCE TO REGULATE THE SALE OF GUNPOWDER.

The Common Council of the City of Saint Paul do ordain as follows :

**Gunpowder not to be disposed of without permit.**  Sec. 1.  That section one (1) of an ordinance to regulate the sale of gunpowder, be and the same is hereby amended so as to read as follows : " Sec. 1. No person shall keep, sell, or give away gunpowder or guncotton in any quantity without first having paid into the City Treasurer the sum of five dollars, and obtain from the Common Council a permission in writing, signed by the Mayor and Clerk, and sealed with the corporate seal, under a penalty not exceeding fifty dollars, for every offence, provided any person may keep for his own use not exceeding one pound of powder or one pound of gun cotton, at one and the same time."

**Permit how obtained.**  Sec. 2.  All applications for permits shall be addressed to the Common Council, in writing, signed by the applicant. Not exceeding four permits shall be granted in any one block ; when the number of applications in any block shall

GUNPOWDER.                                    167

at any time exceed the numbers to be granted, the requisite
number shall be chosen by ballot.  When issued, the Clerk
shall make an entry thereof in a register to be provided for
the purpose, which entry shall state the name and place of
business, and date of permits.  Persons to whom permits
may be issued, shall not have or keep at their place of busi- *Regulations for sale of gunpowder, &c*
ness, or elsewhere within the city, a greater quantity of gun-
powder or guncotton than fifty pounds at one time, and the
same shall be kept in tin canisters or cans, or kegs securely
hooped and headed, containing not to exceed twenty-five
pounds each, and in a situation remote from fires or lighted
lamps, candles or gas, from which they may be easily re-
moved in case of fire.  Nor shall any person sell or weigh
any gunpowder or guncotton, after the lighting of lamps in
the evening, unless in sealed canisters or cans.  It shall be
the duty of every person to whom a permit shall be given, to
keep a sign at the front door of his place of business, with
the word " gunpowder " painted or printed thereon in large
letters.  Any person violating any clause of this section, *Penalty.*
shall, upon conviction thereof, be punished by a fine of not
not less than ten, nor more than one hundred dollars.

SEC. 3.  No person shall convey or carry any gunpowder *Carriage of gunpowder, &c.*
or guncotton, exceeding (one pound in quantity,) through
any street or alley in the city, in any cart, carriage, wagon,
dray, wheelbarrow, or otherwise, unless the said gunpowder
or guncotton be secured in tight cans or kegs, well headed
and hooped, sufficient to prevent such gunpowder or gun-
cotton from being spilled or scattered, under a penalty of *Penalty.*
fifty dollars.

SEC. 4.  All permissions granted under this ordinance *Expiration of permit.*
shall expire on the second Tuesday of May in each year ;
and no permit shall be granted to any retailer of intoxicat-
ing liquors, or to any intemperate person.  The Clerk shall
be entitled to a fee of one dollar for every permit which may
be issued.

SEC. 5.  This ordinance shall take effect from and after its
publication.

Approved, June twenty-ninth, eighteen hundred and fifty-
eight.

Published, July 16, 1858.

4-ER-0944

Source Citation
Compiled by Order of the Common Council. The Charter and Ordinances of the City of St. Paul, (To August 1st, 1863, Inclusive,) Together with Legislative Acts Relating to the City. Daily Pioneer Official Print, 1863. The Making of Modern Law: Primary Sources, link.gale.com/apps/doc/DT0106149361/MMLP?u=gtown_law&sid=bookmark-MMLP&pg=167. Accessed 5 July 2023.

**Gale Document Number:**GALE|DT0106149361

Ch. 12.]        ARMS, PREVENT CARRYING OF.                25

## CHAPTER XII.

### ARMS.—PREVENT CARRYING OF.

AN ACT to prevent the carrying of Deadly Weapons.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1.   Any person who is not engaged in any legitimate business, any person under the influence of intoxicating drink, and any person who has ever borne arms against the Government of the United States, who shall be found within the limits of this State, carrying on his person a pistol, bowie-knife, dirk or other deadly weapon, shall be subject to arrest upon charge of misdemeanor; and upon conviction shall be fined in a sum not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months, or both, at the discretion of the court. *[Conviction for carrying deadly weapons.]*

SEC. 2.   Justices of the Peace shall have original jurisdiction of all cases arising under this Act, and on complaint being made, shall proceed to hear and determine the same in a summary manner, and shall have full authority to enforce both fine and imprisonment as provided in this Act, *Provided,* that nothing in this Act shall conflict with the ordinance of any incorporated city of the State. *[Complaint made before Justice of the Peace.]*

SEC. 3.   In all cases arising under this Act, the accused shall be entitled to a jury of six men, possessing the qualifications of electors, who, if they find the defendant guilty, shall assess the fine to be paid by him, and fix the term of his imprisonment; and if convicted, may appeal to the District Court of the proper county as in other cases provided by law. *[Fine to be assessed.]*

SEC. 4.   This Act to take effect and be in force from and after its publication.

Approved, February 23d, 1867.

S. J. CRAWFORD,
*Governor.*

## EXHIBIT 14 (McLean)
Digitized from Best Copy Available

# LAWS OF MISSOURI,

PASSED AT THE SESSION OF THE

## THIRTY-SECOND GENERAL ASSEMBLY,

BEGUN AND HELD AT THE CITY OF JEFFERSON,

## WEDNESDAY, JANUARY 3, 1883.

(REGULAR SESSION.)

*BY AUTHORITY.*



JEFFERSON CITY:
STATE JOURNAL COMPANY, STATE PRINTERS.
1883.

EXHIBIT 15 (McLean)

4-ER-0947

76                CRIMES AND CRIMINAL PROCEDURE.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

SECTION 1.  Any person or persons doing a commission business in this state who shall receive cattle, hogs, sheep, grain, cotton or other commodities consigned or shipped to him or them for sale on commission, and who shall wilfully make a false return to his or their consignor or shipper, in an account of sale or sales of any such cattle, hogs, sheep, grain, cotton or other commodities made and rendered by such person or persons for and to such consignor or shipper, either as to weights or prices, shall be guilty of a misdemeanor and shall, on conviction, be punished by imprisonment in the county jail not exceeding one year, or by a fine not exceeding five hundred dollars nor less than two hundred dollars, or by fine not less than one hundred dollars and imprisonment in the county jail not less than three months.

Approved April 2, 1883.

---

## CRIMES AND CRIMINAL PROCEDURE: Concealed Weapons.

AN ACT to amend section 1274, article 2, chapter 24 of the Revised Statutes of Missouri, entitled "Of Crimes and Criminal Procedure."

SECTION 1.  Carrying concealed weapon, etc., penalty for increased.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

SECTION 1.  That section 1274 of the Revised Statutes of Missouri be and the same is hereby amended by inserting the word "twenty" before the word "five" in the sixteenth line of said section, and by striking out the word "one" in the same line and inserting in lieu thereof the word "two," and by striking out the word "three" in the seventeenth line of said section and inserting in lieu thereof the word "six," so that said section, as amended, shall read as follows:  Section 1274.  If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung-shot or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

Approved March 5, 1883.

THE

# LAWS OF WISCONSIN,

EXCEPT CITY CHARTERS AND THEIR AMENDMENTS,

PASSED AT THE

BIENNIAL SESSION OF THE LEGISLATURE OF 1883,

TOGETHER WITH

JOINT RESOLUTIONS AND MEMORIALS.

VOLUME I.

*PUBLISHED BY AUTHORITY.*

MADISON, WIS.,
DEMOCRAT PRINTING CO., STATE PRINTERS.
1883.

EXHIBIT 16 (McLean)
Digitized from Best Copy Available

290                    LAWS OF WISCONSIN.—Ch. 329-330.

[No. 5, S.]                    [Published April 7, 1883.]

CHAPTER 329.

AN ACT to prohibit the use and sale of pistols and revolvers.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

Relating to the sale of pistols.

SECTION 1.   It shall be unlawful for any minor, within this state, to go armed with any pistol or revolver, and it shall be the duty of all sheriffs, constables, or other public police officers, to take from any minor, any pistol or revolver, found in his possession.

SECTION 2.   It shall be unlawful for any dealer in pistols or revolvers, or any other person, to sell, loan, or give any pistol or revolver to any minor in this state.

SECTION 3.   It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver.   Any person violating the provisions of this act, shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding one hundred dollars ($100).

SECTION 4.   This act shall take effect and be in force from and after its passage and publication.

Approved April 3, 1883.

———————

[No. 38, S.]                    [Published April 13, 1883.]

CHAPTER 330.

AN ACT to provide for the punishment of attempts to commit felonies or other crimes, and amendatory of section 4385, revised statutes.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

Relating to punishment for attempt to commit felonies and other crimes.

SECTION 1.   Section 4385 of the revised statutes, is hereby amended so as to read as follows;   Section 4385.   Any person who shall assault another with intent to commit any burglary, robbery, rape or mayhem, or who shall advise or attempt to commit any arson, or any other felony, that shall fail in being committed, the punishment for which such assault, advice or attempt is not herein prescribed, shall be punished by imprisonment in the state prison not more than three years nor less than one year, or by fine, not exceeding one

Digitized from Best Copy Available

4-ER-0950

# THE

# STATUTES OF OKLAHOMA

## 1890.

Compiled under the supervision and direction of Robert Martin,
Secretary of the Territory,

—BY—

### WILL T. LITTLE,  L. G. PITMAN and R. J. BARKER,

—FROM—

The Laws Passed by the First Legislative Assembly of the Territory.

GUTHRIE, OKLAHOMA:
THE STATE CAPITAL PRINTING CO.,
PUBLISHERS.
1891.

EXHIBIT 17 (McLean)

COPYRIGHTED BY
THE STATE CAPITAL PRINTING CO.
GUTHRIE, OKLAHOMA.
1891.

# AUTHENTICATION.

OFFICE OF THE SECRETARY.

UNITED STATES OF AMERICA, |
    TERRITORY OF OKLAHOMA. |

I, ROBERT MARTIN, Secretary of the Territory of Oklahoma, hereby certify that the following embrace all the laws of said Territory as the same were passed by the first session of the Legislative Assembly, commencing on the 27th day of August, A. D., 1890, and ending on the 24th day of December, A. D., 1890, as the same appears from the enrolled bills now on file in my office.

ROBERT MARTIN,
Secretary of the Territory.

4-ER-0953

CRIMES AND PUNISHMENT.                                    495

(2430) § **6**. Every person who, with intent to extort any | **Chap. 25.** money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

*Sending threatening letter.*

(2431) § **7**. Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor.

*Attempting to export money.*

ARTICLE 47.—CONCEALED WEAPONS.

| SECTION. | | SECTION. | |
|---|---|---|---|
| 1. | Prohibited weapons enumerated. | 6. | Degree of punishment. |
| 2. | Same. | 7. | Public buildings and gatherings. |
| 3. | Minors. | 8. | Intent of persons carrying weapons, |
| 4. | Public officials, when privileged. | 9. | Pointing weapon at another. |
| 5. | Arms, when lawful to carry. | 10. | Violation of certain sections. |

(2432) § **1**. It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

*Prohibited weapons enumerated.*

(2433) § **2**. It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

*Same.*

(2434) § **3**. It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

*Minors.*

(2435) § **4**. Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: *Provided, however,* That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

*Public officials, when privileged.*

(2436) § **5**. Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

*Arms, when lawful to carry.*

(2437) § **6**. Any person violating the provisions of any one of the foregoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court. On the second and every subsequent con-

*Degree of punishment.*

496                                CRIMES AND PUNISHMENT.

Chap. 25.    viction, the party offending shall on conviction be fined not less
than fifty dollars nor more than two hundred and fifty dollars or
be imprisoned in the county jail not less than thirty days nor
more than three months or both, at the discretion of the court.

Public build-    (2438) § **7.**   It shall be unlawful for any person, except a peace
ings and gather-  officer, to carry into any church or religious assembly, any school
ings.         room or other place where persons are assembled for public wor-
ship, for amusement, or for educational or scientific purposes, or
into any circus, show or public exhibition of any kind, or into any
ball room, or to any social party or social gathering, or to any elec-
tion, or to any place where intoxicating liquors are sold, or to any
political convention, or to any other public assembly, any of the
weapons designated in sections one and two of this article.

Intent of per-   (2439) § **8.**   It shall be unlawful for any person in this Terri-
sons carrying    tory to carry or wear any deadly  weapons or dangerous in-
weapons.      strument whatsoever, openly or secretly, with the intent or for the
avowed purpose of injuring his fellow man.

Pointing    (2440) § **9.**   It shall be unlawful for any person to point any
weapons at an-  pistol or any other deadly weapon whether loaded or not, at
other.        any other person or persons either in anger or otherwise.

Violation of   (2441) § **10.**   Any person violating the provisions of section
section seven.  seven, eight or nine of this article; shall on conviction, be punish-
ed by a fine of not less than fifty dollars, nor more than five hun-
dred and shall be imprisoned in the county jail for not less than
three nor more than twelve months.

ARTICLE 48.—FALSE PERSONATION AND CHEATS.

| SECTION. | | SECTION. | |
|---|---|---|---|
| 1. | False impersonation, punishment for. | 7. | False representation of charitable pur- |
| 2. | False impersonation and receiving money. | | poses. |
| | | 8. | Falsely representing banking cor- |
| 3. | Personating officers and others. | | porations. |
| 4. | Unlawful wearing of grand army badge. | 9. | Using false check. |
| 5. | Fines, how paid. | 10. | Holding mock auction. |
| 6. | Obtaining property under false pre- tenses. | | |

Punishment    (2442) § **1.**   Every person who falsely personates another, and
for false imper- in such assumed character, either:
sonation.
First.   Marries or pretends to marry, or to sustain the mar-
riage relation toward another, with or without the connivance of
such other person; or,

Second.   Becomes bail or surety for any party, in any proceed-
ing whatever, before any court or officer authorized to take such
bail or surety; or,

Third.   Subscribes, verifies, publishes, acknowledges or proves,
in the name of another person, any written instrument, with in-
tent that the same may be delivered or used as true; or,

Fourth.   Does any other act whereby, if it were done by the
person falsely personated, he might in any event become liable to
any suit or prosecution, or to pay any sum of money, or to incur
any charge, forfeiture or penalty, or whereby any benefit might
accrue to the party personating, or to any other person.

# L A W S.

### OF THE

# STATE OF MISSISSIPPI,

### PASSED AT A REGULAR SESSION

### OF THE

# MISSISSIPPI LEGISLATURE,

### HELD IN THE

## CITY OF JACKSON,

Commencing Jan. 8th, 1878, and Ending March 5th, 1878.

### PRINTED BY AUTHORITY.

JACKSON, MISS.:
POWER & BARKSDALE, STATE PRINTERS.
1878.

# EXHIBIT 18 (McLean)

STATE OF MISSISSIPPI.                175

## CHAPTER XLVI.

AN ACT to prevent the carrying of concealed weapons,
and for other purposes.

SECTION 1. *Be it enacted by the Legislature
of the State of Mississippi,* That any person,
not being threatened with, or having good and
sufficient reason to apprehend an attack, or
traveling (not being a tramp) or setting out
on a journey, or peace officers, or deputies in
discharge of their duties, who carries concealed.
in whole or in part, any bowie knife, pistol.
brass knuckles, slung shot or other deadly
weapon of like kind or description, shall be
deemed guilty of a misdemeanor, and on con-
viction, shall be, punished for the first offence
by a fine of not less than five dollars nor more
than one hundred dollars, and in the event the
fine and cost are not paid shall be required to
work at hard labor under the direction of the
board of supervisors or of the court, not
exceeding two months, and for the second or
any subsequent offence, shall, on conviction,
be fined not less than fifty nor more than two
hundred dollars, and if the fine and costs are
not paid, be condemned to hard labor not
exceeding six months under the direction of
the board of supervisors, or of the court.
That in any proceeding under this section, it
shall not be necessary for the State to allege
or prove any of the exceptions herein contain-
ed, but the burden of proving such exception
shall be on the accused.

SEC. 2. *Be it further enacted,* That it shall
not be lawful for any person to sell to any
minor or person intoxicated, knowing him to
be a minor or in a state of intoxication, any
weapon of the kind or description in the first
section of this Act described, or any pistol
cartridge, and on conviction shall be punished
by a fine not exceeding two hundred dollars,
and if the fine and costs are not paid, be con-
demned to hard labor under the direction of
the board of supervisors or of the court, not
exceeding six months.

*[marginal notes:]* When concealed weapons may be carried.
Penalty for carrying weapons.
Burden of proof on accused.
Minors, or persons intoxicated.

176                        LAWS OF THE

SEC. 3. *Be it further enacted,* That any father, who shall knowingly suffer or permit any minor son under the age of sixteen years to carry concealed, in whole or in part, any weapon of the kind or description in the first section of this Act described, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor under the direction of the board of supervisors or of the court.

*Minor under 16 years.*

SEC. 4. *Be it further enacted,* That any student of any university, college or school, who shall carry concealed, in whole or in part, any weapon of the kind or description in the first section of this Act described, or any teacher, instructor, or professor who shall, knowingly, suffer or permit any such weapon to be carried by any student or pupil, shall be deemed guilty of a misdemeanor, and, on conviction, be fined not exceeding three hundred dollars, and if the fine and costs are not paid, condemned to hard labor under the direction of the board of supervisors or of the court.

*Students.*

SEC. 5. *Be it further enacted,* That each justice of the peace before whom a conviction is had, shall, in addition to the costs now allowed by law, be entitled to a tax fee of two dollars and a half.

*Tax fee of justice.*

SEC. 6. *Be it further enacted,* That immediately after the passage of this Act, the Secretary of State shall transmit a copy to each circuit judge in the State, who shall cause the same to be read in open court on the day for the calling of the State docket of the court.

*Act to be read in courts*

SEC. 7. *Be it further enacted,* That this Act take effect from and after its passage.

APPROVED, February 28, 1878.

# LAWS

OF THE

## TERRITORY OF NEW MEXICO,

PASSED BY THE SECOND

# LEGISLATIVE ASSEMBLY

IN THE CITY OF SANTA FÉ,

AT A SESSION BEGUN ON THE SIXTH DAY OF DECEMBER,
1852.

———————

SANTA FÉ:

JAMES L. COLLINS & CO., PRINTERS.

MDCCCLIII.

EXHIBIT 19 (McLean)

Digitized from Best Copy Available

4-ER-0959

# LEYES

DEL

TERRITORIO DE NUEVO MEJICO,

PASADAS POR LA SEGUNDA

# ASAMBLEA LEGISLATIVA

EN LA CIUDAD DE SANTA FÉ,

EN UN PERIODO PRINCIPIADO EL DIA SESTO DE DICIEMBRE
DE 1852.

SANTA FÉ:
PUBLICADO EN LA OFICINA DE LA GACETA,
MDCCCLIII.

Digitized from Best Copy Available

4-ER-0960

OFICINA DE LA GACETA :
J. L. COLLINS Y W. G. SEPHART, IMPRESORES.
1858.

Digitized from Best Copy Available

4-ER-0961

# LAWS.

## SECOND LEGISLATIVE ASSEMBLY.

Digitized from Best Copy Available

LAWS OF THE THIRD SESSION.                67

the Justices of the Peace or Court in which the suit may be brought, with imprisonment for a time demanded by the gravity of the offence.

SEC. 4.   All acts and parts of acts repugnant to this act shall be and are by these presents repealed.

SEC. 5.   This act shall take effect, from and after its approval.

Translation.

---

## AN ACT

*Prohibiting the carrying a certain class of Arms, within the Settlements and in Balls.*

Sec. 1.   Kind of arms prohibited.
Sec. 2.   Duties of sheriffs and constables.
Sec. 3.   Licenses for dances, obligations required from judge of probate.
Sec. 4.   Punishment for violation of this law.
Sec. 5.   Disposition of fines.

*Be it enacted by the Legislative Assembly of the Territory of New Mexico:*

SEC. 1.   That each and every person is prohibited from carrying short arms, such as pistols, daggers, knives, and other deadly weapons, about their persons concealed, within the settlements, and any person who violates the provisions of this act, shall be fined in a sum not exceeding ten dollars, nor less than two dollars, or shall be imprisoned for a term not exceeding fifteen days nor less than five days.

SEC. 2.   That the Sheriffs of the different counties, and Constables of the different precincts, are hereby required to enforce the observance and compliance of the provisions of the preceding section, having power to take with them, two or more armed persons, when they are on patrol at night, in order to make themselves respected while on such duty, and it is hereby made the duty of the Probate Judges and Justices of the Peace to aid and assist said officers in the prompt discharge of their duties.

SEC. 3.   Any person desiring to give a Ball or Fandango, they shall apply to the Probate Judge or a Justice of the Peace

Digitized from Best Copy Available

LAWS OF THE THIRD SESSION.                    69

for a License for the same—who, after having granted such license, shall inform the applicant, that he must maintain good order, and for this purpose he shall swear him to faithfully discharge his duties as police officer and perform said duties during such Ball or Fandango, possessing the powers of a Sheriff, and that he will not permit any person to enter said Ball or room adjoining said ball where Liquors are sold, or to remain in said balls or Fandangos with fire arms or other deadly weapons, whether they be shown or concealed upon their persons and if any person or persons shall enter said Balls or Fandangos or ante-chamber, with deadly weapons upon their person, upon conviction for such offence before any Probate Judge or Justice of the Peace, they shall suffer the punishment prescribed in the first section of this Law.

*Provided*, that, in case any person desires a license for a ball or fandango, who shall not be competent, the Probate Judge or Justice of the Peace as the case may be, shall require him to present a competent person, who shall discharge the duties of a Police Officer, and shall swear him as prescribed in the foregoing section.

SEC. 4.   That any person or persons giving Balls or Fandangos shall be liable to the punishments prescribed in the foregoing sections of this Law—if they permit any person or persons armed to remain in said Balls or Fandangos, they shall also be subject to the same penalties of the Police Officers who fail to discharge their duties or violate the provisions of this Law.

SEC. 5.   That all fines collected by the provisions of this Law shall be applied to the use of the respective counties.

Translation.

# AN ACT

*Providing for the payment of the Salaries of Territorial Officers, not otherwise provided for by Law.*

Sec. 1.   Payment of officers under the Kearney code.
Sec. 2.   How audited and paid.

Digitized from Best Copy Available

# JEWELL'S DIGEST

OF THE

## CITY ORDINANCES,

TOGETHER WITH THE

CONSTITUTIONAL PROVISIONS, ACTS OF THE GENERAL ASSEMBLY
AND DECISIONS OF THE COURTS RELATIVE TO
THE GOVERNMENT

OF THE

## CITY OF NEW ORLEANS.



BY AUTHORITY OF THE CITY COUNCIL.

COMPILED AND PUBLISHED BY EDWIN L. JEWELL,
ATTORNEY AT LAW.

NEW ORLEANS.
1882.

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

EXHIBIT 20 (McLean)



THE NEW YORK
PUBLIC LIBRARY
622057
ASTOR, LENOX AND
TILDEN FOUNDATIONS
R        19 4



Entered according to Act of Congress in the year 1881, by

EDWIN  L.  JEWELL,

In the Office of the Librarian of Congress at Washington.



Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

4-ER-0966

I TITLE—AMUSEMENTS.                    1

# LAWS AND ORDINANCES

### OF THE

# CITY OF NEW ORLEANS.

## I TITLE.

## AMUSEMENTS.

### CHAPTER FIRST.

### GENERAL ORDINANCES.

**ARTICLE 1.** That hereafter it shall not be lawful for any person to carry a dangerous weapon, concealed or otherwise, into any theatre, public hall, tavern, pic-nic ground, place for shows or exhibitions, house or other place of public entertainment or amusement.

*Concealed weapons or otherwise in balls or theatres.*
*May, 1879.*
*A. S. 5045,*

**ART. 2.** That any person violating the provisions of the first section of this ordinance, by carrying a dangerous weapon, not concealed, into any of the places designated in said section, shall be subject to the payment of a fine not exceeding twenty-five dollars, or to imprisonment in the parish prison not to exceed twenty days, to be imposed by the Recorder within whose jurisdiction the offense is committed.

*Penalty.*
*Ibid.*

**ART. 3.** That any person violating the provisions of the first section of this ordinance by carrying a dangerous weapon concealed about his person, in any of the places designated in said section, shall be arrested and prosecuted for violation of the law relative to the carrying of dangerous weapons concealed about the person.

*Penalty.*
*Ibid.*

**ART. 4.** That the Chief of Police and the members of the police force of the city of New Orleans be charged with the enforcement of this ordinance, and to that end they are authorized and required to examine all persons entering any of the places specified in section one of this ordinance, and to arrest and prefer the proper charge against all persons violating this ordinance.

*Police to enforce ordinance.*
*Ibid.*

**ART. 5.** That the provisions of this ordinance shall not apply to the officers and members of military organizations, when acting as such, nor to the carrying of arms or weapons intended to be used in any show, exhibition or other entertainment.

*Military organizations excepted.*

Generated on 2023-07-06 17:08 GMT / https://hdl.handle.net/2027/nyp.33433014823970
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY



4-ER-0967

2                          I TITLE—AMUSEMENTS.

Copy of this
ordinance to be
posted.
Dec. 1856.
O. S. 3131.

**ART. 6.** That a printed copy of the ordinances concerning public balls, theatres and public exhibitions, be placed in a conspicuous position within the enclosure of said balls, theatres and public exhibitions, for the purpose of reference; and, that in case of neglect or refusal of the managers or owners of such places to comply with the provisions of this section, they shall be liable to a fine of fifty dollars for said offence, recoverable before any court of competent jurisdiction; and the police officers on duty shall compel the owners of the balls, theatres, etc., to close for that night.

## CHAPTER SECOND.
### BALLS.

Permission to
be obtained for
balls.
May, 1859.
O. S. 4532.

**ART. 7.** It shall not be lawful for any person or persons to give, within the limits of the city, any public balls, of whatsoever description, under the penalty of fifty dollars fine for each and every contravention, unless permission, in writing, be previously obtained from the Mayor to give said ball or balls, and after payment of license tax.

Mayor to close
balls.
Ibid.

**ART. 8.** Whenever the foregoing provision shall be violated, it shall be the duty of the mayor to cause the said ball or balls to be closed immediately by the police.

Duration of
the ball. Ibid.

**ART. 9.** Every person giving a public ball, who shall prolong the duration of the same beyond the hour fixed by the Mayor's permit, shall pay a fine of twenty-five dollars for each and every such offence.

License for
public balls.
Ibid.

**ART. 10** That the Mayor of the city of New Orleans be, and he is hereby requested not to issue in future any license to parties asking for them, to give public balls, when such balls are knowingly derogatory to public morals and decency, or in anywise considered a public nuisance.

## CHAPTER THIRD.
### THEATRES.

Permission
and tax.
May, 1859.
O. S. 4582.

**ART. 11.** No person shall exhibit or cause to be exhibited any dramatic composition, ballet, pantomime or other performance of that kind, in any theatre in the city where all persons are admitted for their money, nor shall any person entertain the public with any display of fire-works, without having obtained from the Mayor permission for that purpose, and paid the tax thereon, under a penalty of a fine of twenty-five dollars for every such offence; and the said permission shall express the object and the length of time for which it is granted.

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Generated on 2023-07-06 17:09 GMT  /  http://hdl.handle.net/2027/nyp.33430148229T0
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

# MINUTES OF PROCEEDINGS

OF THE

# BOARD OF COMMISSIONERS

OF THE

# CENTRAL PARK,

FOR THE

## YEAR ENDING APRIL 30, 1858.

NEW YORK:

WM. C. BRYANT & CO., PRINTERS, 41 NASSAU ST., COR. LIBERTY.

1858.

EXHIBIT 21 (McLean)

## TUESDAY, MARCH 16, 1858.

### REGULAR MEETING—3 P. M.

#### PRESENT:

| | |
|---|---|
| Commissioner Gray, | Commissioner Fields, |
| "          Dillon, | "          Green, |
| "          Russell, | "          Strong, |
| "          Butterworth, | "          Hogg. |
| "          Hutchins, | |

On motion, the reading of the minutes of the previous meeting was dispensed with.

On motion of Mr. BUTTERWORTH, it was

*Resolved*, That the Annual Report of this Board to the Common Council, dated January 30, 1858, be printed as one of the documents of this Board.

As follows :

*Ayes*—Messrs Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

On motion of Mr. DILLON, the ordinances recommended by the Superintendent were adopted, as follows :

"Be it ordained by the Commissioners of the Central Park :
All persons are forbidden

To enter or leave the Park except by the gateways.

To climb or walk upon the wall.

To turn cattle, horses, goats or swine into the Park.

To carry fire-arms or to throw stones or other  missiles within it.

To cut, break, or in any way injure or deface the trees, shrubs, plants, turf, or any of the  buildings, fences, bridges, or other constructions upon the Park ;

Or to converse with, or in any way hinder those engaged in its construction.

Digitized by Google

167

All persons offending against these ordinances shall be deemed guilty of misdemeanor, and be punished, on conviction before the Mayor, Recorder, or any magistrate of the city of New York, by a fine not exceeding fifty dollars; and, in default of payment, by imprisonment not exceeding thirty days."

Visitors may obtain all necessary information and directions from the police.

The business offices and the police station of the Park are on Fifth avenue at Seventy-ninth street."

Mr. DILLON also moved the adoption of the following:

*Ordered*, That the Superintendent cause these ordinances to be posted on the Park, in such number and manner as he may deem advisable.

*Ordered*, That it be published for ten days in the Daily Times, Tribune, Sun, and Staats Zeitung.

Which was carried, as follows:

*Ayes*—Messrs. Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

A communication from the Chief Engineer, submitting a report on "A Comprehensive Plan of Drainage" of the Park, accompanied by a map of the same, was received.

Mr. DILLON moved that the report be printed and referred to the Committee on Draining and Sewerage.

Which was carried, as follows:

*Ayes*—Messrs. Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

A report from the Chief Engineer, announcing the completion of the sectional and drainage maps of the Park, and the discharge of all persons directly employed by him, was referred to the Executive Committee.

A communication from the same, as to a plan for receiving within the limits of the Park the waste water from the present and new reservoirs, was also referred to the Executive Committee.

A communication from Thomas F. Webb, as to furnishing blasting powder for the Park, was also referred to the same committee.

Digitized by Google

168

The following communication was received from A. W. Craven, Esq., of the Croton Aqueduct Board, and on motion of Mr. Dillon ordered to be engrossed in the minutes of the Board :

CROTON AQUEDUCT DEPARTMENT,

Engineer's Office, March 2d, 1858.

Gentlemen,—I beg leave to acknowledge the receipt of a note from your Board, through Mr. Hart, dated February 16th, and to apologise for not replying to it more promptly.

The questions asked, and the answers thereto, are as follows :

" 1st.  What is the height of the Reservoir on the line of Fifth avenue at 41st street, excluding the railing ?"

The top of the wall, exclusive of the railing, and also exclusive of the projections at the corners and over the gateway, is 119 feet above mean tide and 39 feet above the curb of Forty-first street. The height of water when the Reservoir is full is four feet below this level, or 115 feet above mean tide.

" 2d.  Will the top of the wall of the new Reservoir be on a level with the top of that now built in Seventy-ninth street ? "

These heights are intended to be precisely the same.

" 3d.  Could not the height of the wall be reduced in the Reservoir now built and in the new one, and if so, how much, and yet answer all the purposes of the Reservoir ? "

The height of water in these Reservoirs could not be reduced without greatly impairing the efficiency of our water distribution throughout the city, and the height of the wall could not be reduced with safety without a corresponding reduction in the high-water level.

I have the honor to be, very respectfully,

Your obedient servant,

A. W. CRAVEN,

Chief Engineer.

To the Commissioners of the Central Park, New York.

The monthly report of the Superintendent was read and ordered on file.

A petition of Norman Ewen, late Surveyor and Engineer of the third division Central Park Survey, to be allowed his pay,

Digitized by Google

169

at the rate of $1500 per annum, from May 1st to November 13th, 1857, was read and referred to the Auditing Committee.

Mr. FIELDS moved to take up the special order, being the election to fill the vacancy caused by the resignation of Mr. Cooley, in pursuance of the notice given by Mr. Strong, at the meeting of February 16, 1858.

The ayes and nays being called for upon the motion, it was carried, as follows :

*Ayes*—Messrs. Dillon, Russell, Gray, Hutchins, Fields, Green, Strong, Hogg—8.

*Nay*—Mr. Butterworth—1.

Mr. RUSSELL offered the following :

*Resolved*, That it is inexpedient at the present meeting to go into an election, to fill the vacancy in the Board occasioned by the resignation of Mr. Cooley.

Lost.

Mr. FIELDS moved that the Board now go into ballot.

Carried, as follows :

*Ayes*—Messrs. Dillon, Gray, Hutchins, Fields, Green, Strong, Hogg—7.

*Nays*—Messrs. Russell, Butterworth—2.

The Chair appointed as tellers Messrs. Green and Butterworth.

The Board then proceeded to ballot, with the following result :

<pre>
        For August Belmont................... 7
          "  George Bancroft..... ............ 1
             Blank ............................ 1
</pre>

On motion of Mr. RUSSELL, the election of Mr. Belmont was declared unanimous.

On motion of Mr. HUTCHINS, the Vice-President was requested to communicate to Mr. Belmont his election to the Board.

MR. STRONG moved that when the Board adjourn it be to Tuesday next at 1 o'clock.—Carried.

On motion of Mr. RUSSELL, the Clerk was directed to prepare a calendar of unfinished business for the use of the Board, at each stated meeting.

The Board then adjourned.

Digitized by Google

# ANNUAL REPORTS

OF THE

## BROOKLYN

# PARK COMMISSIONERS.

### 1861—1873.

—— • ——

REPRINTED
BY ORDER OF THE BOARD,
WITH SUCH ACTS OF THE LEGISLATURE
IN THEIR AMENDED FORM,
AS RELATE TO THE
BROOKLYN PARKS, AND THEIR MANAGEMENT.

—— • ——

JANUARY,
1873.

## EXHIBIT 22 (McLean)

Generated on 2023-07-07 18:02 GMT / https://hdl.handle.net/2027/uc1.c070473596
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by 

Original from
UNIVERSITY OF CALIFORNIA

**4-ER-0974**

# PARK ORDINANCE, No. 1.

The Commissioners of Prospect Park, in the city of Brooklyn, do ordain as follows:

ARTICLE I.—All persons are forbidden,

1. To take or carry away any sod, clay, turf, stone, sand, gravel, leaves, muck, peat, wood, or anything whatever belonging to the park, from any part of the land embraced within the boundaries of the park;

2. To climb upon, or in any way cut, injure, or deface any tree, shrub, building, fence, or other erection within the park;

3. To turn cattle, horses, goats, swine, or poultry of any description upon the park;

4. To carry firearms, or to throw stones or other missiles within the park;

5. To hinder or in any manner delay or interfere with men employed upon the park;

6. To expose any article or thing for sale, or engage in any picnic or game upon the park, except by permission derived from the Board of Commissioners;

7. To post or otherwise display any bill, notice, advertisement, or other paper or device upon any tree, structure, or other erection within the park, or upon any of its inclosures.

ARTICLE II.—Any person who shall violate or offend against any of the provisions of the foregoing article, shall be deemed guilty of a misdemeanor, and shall be punished on conviction, before any court of competent jurisdiction in the county of Kings, by a fine not exceeding fifty dollars, and in default of payment, by imprisonment not exceeding thirty days.

Generated on 2023-07-06 17:32 GMT / https://hdl.handle.net/2027/uc1.c070473596
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google



Original from
UNIVERSITY OF CALIFORNIA

4-ER-0975