No. 23-16164

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII
FIREARMS COALITION,

*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of
Hawaiʻi,

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Hawaiʻi
No. 1:23-cv-00265-LEK-WRP, Hon. Leslie E. Kobayashi

## EXCERPTS OF RECORD (VOLUME 6 OF 6)

ANNE E. LOPEZ
  *Attorney General of the State of Hawaiʻi*
KALIKOʻONĀLANI D. FERNANDES
  *Solicitor General*
NICHOLAS M. MCLEAN
  *First Deputy Solicitor General*
STATE OF HAWAIʻI
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

NEAL KUMAR KATYAL
DANA A. RAPHAEL
  *Special Deputy Attorneys General*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

MARY B. MCCORD
RUPA BHATTACHARYYA
SHELBY B. CALAMBOKIDIS
   *Special Deputy Attorneys General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
(202) 661-6607
mbm7@georgetown.edu

BEN GIFFORD
   *Special Deputy Attorney General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
(202) 662-9835
bg720@georgetown.edu

*Attorneys for Defendant Anne E. Lopez, in her official capacity as
Attorney General of the State of Hawaiʻi*

| THE SENATE<br>THIRTY-SECOND LEGISLATURE, 2023<br>STATE OF HAWAII | **S.B. NO.** | 1230<br>S.D. 2<br>H.D. 1<br>C.D. 1 |
|---|---|---|

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1      SECTION 1.  The legislature finds that there are compelling

2  interests in protecting public health, safety, and welfare from

3  the serious hazards associated with firearms and gun violence.

4  Although the United States Supreme Court has held that the

5  Second Amendment provides for an individual right to keep and

6  bear arms for lawful purposes, the Second Amendment is not "a

7  regulatory straightjacket".  *New York State Rifle & Pistol*

8  *Ass'n, Inc*. *v. Bruen*, 142 S.Ct. 2111, 2133 (2022).  States

9  retain authority to enact "a 'variety' of gun regulations", *id.*

10  at 2162 (Kavanaugh, J., concurring), such as prohibitions

11  against the carrying of firearms in sensitive locations and laws

12  and regulations designed to ensure that those who carry firearms

13  are "'law-abiding, responsible citizens'", *id*. at 2131, 2156

14  (internal citation omitted).

15      The purpose of this Act is to clarify, revise, and update

16  Hawaii's firearms laws to mitigate the serious hazards to public

17  health, safety, and welfare associated with firearms and gun

18  violence, while respecting and protecting the lawful exercise of

2023-2744 SB1230 CD1 SMA-2.docx              1



EXHIBIT 1

**6-ER-1210**

Page 2

# S.B. NO. 1230

S.D. 2
H.D. 1
C.D. 1

1   individual rights.  To accomplish this purpose, this Act amends

2   and enacts requirements and processes for obtaining a license to

3   carry a firearm, updates criteria governing when firearm

4   ownership, possession, or control is prohibited, defines

5   locations and premises within the State where carrying or

6   possessing a firearm is prohibited, prohibits leaving an

7   unsecured firearm in a vehicle unattended, and enacts, amends,

8   and clarifies other provisions relating to firearms.

9      In prohibiting carrying or possessing firearms in certain

10   locations and premises within the State, this Act is intended to

11   protect areas in which carrying or possessing dangerous weapons

12   has traditionally been restricted, such as schools and other

13   places frequented by children, government buildings, polling

14   places, and other analogous locations.

15      This Act also respects the right of private individuals and

16   entities to choose for themselves whether to allow or restrict

17   the carrying of firearms on their property by providing that

18   firearms shall not be carried on private property of another

19   person without the express authorization of the owner, lessee,

20   operator, or manager of the property.  Recognizing the risks to

21   public health, safety, and welfare associated with firearms and



Page 3

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1   gun violence, and based on the legislature's assessment of

2   public sentiment and broadly shared preferences within the

3   State, this Act establishes a default rule with respect to

4   carrying firearms on private property of another person that

5   provides for private entities to "opt-in" to authorize the

6   public carry of firearms on their property.

7      This Act also adjusts certain regulatory fees relating to

8   firearms.  These adjustments are warranted because prior fee

9   amounts were established by statute decades ago and have not

10   been adjusted to reflect inflation and increased costs

11   associated with background checks and investigations.

12      SECTION 2.  Chapter 134, Hawaii Revised Statutes, is

13   amended by adding seven new sections to part I to be

14   appropriately designated and to read as follows:

15   "**§134-A  Carrying or possessing a firearm in certain**

16   **locations and premises prohibited; penalty.**  (a)  A person with

17   a license issued under section 134-9, or authorized to carry a

18   firearm in accordance with title 18 United States Code section

19   926B or 926C, shall not intentionally, knowingly, or recklessly

20   carry or possess a loaded or unloaded firearm, whether the

21   firearm is operable or not, and whether the firearm is concealed

Page 4

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   or unconcealed, while in any of the following locations and

2   premises within the State:

3     (1)  Any building or office owned, leased, or used by the

4          State or a county, and adjacent grounds and parking

5          areas, including any portion of a building or office

6          used for court proceedings, legislative business,

7          contested case hearings, agency rulemaking, or other

8          activities of state or county government;

9     (2)  Any public or private hospital, mental health

10         facility, nursing home, clinic, medical office, urgent

11         care facility, or other place at which medical or

12         health services are customarily provided, including

13         adjacent parking areas;

14    (3)  Any adult or juvenile detention or correctional

15         facility, prison, or jail, including adjacent parking

16         areas;

17    (4)  Any bar or restaurant serving alcohol or intoxicating

18         liquor as defined in section 281-1 for consumption on

19         the premises, including adjacent parking areas;

20    (5)  Any stadium, movie theater, or concert hall, or any

21         place at which a professional, collegiate, high

2023-2744 SB1230 CD1 SMA-2.docx           4



Page 5

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    school, amateur, or student sporting event is being

2    held, including adjacent parking areas;

3    (6)  All public library property, including buildings,

4    facilities, meeting rooms, spaces used for community

5    programming, adjacent grounds, and parking areas;

6    (7)  The campus or premises of any public or private

7    community college, college, or university, and

8    adjacent parking areas, including buildings,

9    classrooms, laboratories, research facilities,

10    artistic venues, and athletic fields or venues;

11    (8)  The campus or premises of any public school, charter

12    school, private school, preschool, summer camp, or

13    child care facility as defined in section 346-151,

14    including adjacent parking areas, but not including:

15    (A)  A private residence at which education is

16    provided for children who are all related to one

17    another by blood, marriage, or adoption; or

18    (B)  A dwelling when not used as a child care

19    facility;

20    (9)  Any beach, playground, park, or adjacent parking area,

21    including any state park, state monument, county park,

Page 6

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1                tennis court, golf course, swimming pool, or other

2                recreation area or facility under control,

3                maintenance, and management of the State or a county,

4                but not including an authorized target range or

5                shooting complex;

6   (10)  Any shelter, residential, or programmatic facility or

7                adjacent parking area operated by a government entity

8                or charitable organization serving unhoused persons,

9                victims of domestic violence, or children, including

10               children involved in the juvenile justice system;

11  (11)  Any voter service center as defined in section 11-1 or

12               other polling place, including adjacent parking areas;

13  (12)  The premises of any bank or financial institution as

14               defined in section 211D-1, including adjacent parking

15               areas;

16  (13)  Any place, facility, or vehicle used for public

17               transportation or public transit, and adjacent parking

18               areas, including buses, paratransit vans, bus shelters

19               and terminals (but not including bus stops located on

20               public sidewalks), trains, rail stations, and

21               airports;

Page 7

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       (14)    Any amusement park, aquarium, carnival, circus, fair,

2               museum, water park, or zoo, including adjacent parking

3               areas; or

4       (15)    Any public gathering, public assembly, or special

5               event conducted on property open to the public,

6               including any demonstration, march, rally, vigil,

7               protest, picketing, or other public assembly, for

8               which a permit is obtained from the federal

9               government, the State, or a county, and the sidewalk

10              or street immediately adjacent to the public

11              gathering, public assembly, or special event; provided

12              that there are signs clearly and conspicuously posted

13              at visible places along the perimeter of the public

14              gathering, public assembly, or special event.

15      (b)   This section shall not apply to a person in an exempt

16  category identified in section 134-11(a).   It shall be an

17  affirmative defense to any prosecution under this section that a

18  person is:

19      (1)    Carrying or possessing an unloaded firearm in a police

20             station in accordance with section 134-23(a)(6), 134-

21             24(a)(6), or 134-25(a)(6);



Page 8

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

  (2) Carrying or possessing an unloaded firearm at an

     organized, scheduled firearms show or exhibit;

  (3) Lawfully carrying or possessing a firearm for hunting

     in compliance with section 134-5;

  (4) A private security officer expressly authorized to

     carry or possess a weapon in a location or premises

     listed in subsection (a) by the owner, lessee,

     operator, or manager of the location or premises;

     provided that the private security officer is acting

     within the private security officer's scope of

     employment;

  (5) Carrying or possessing an unloaded firearm in a

     courthouse for evidentiary purposes with the prior

     express authorization of the court;

  (6) Lawfully present within the person's own home, other

     than a college or university dormitory or shelter or

     residential facility serving unhoused persons or

     victims of domestic violence;

  (7) Carrying a firearm pursuant to a license issued under

     section 134-9 or in accordance with title 18 United

     States Code section 926B or 926C in the immediate area

6-ER-1217

S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1    surrounding the person's vehicle within a parking area

2    for the limited purpose of storing or retrieving the

3    firearm;

4    (8) Possessing a firearm in an airport or any place,

5    facility, or vehicle used for public transportation or

6    public transit; provided that the firearm is unloaded

7    and in a locked hard-sided container for the purpose

8    of transporting the firearm;

9    (9) Walking through a public gathering, public assembly,

10    or special event if necessary to access the person's

11    residence, place of business, or vehicle; provided

12    that the person does not loiter or remain longer than

13    necessary to complete their travel or business; or

14    (10) Carrying a concealed firearm in accordance with title

15    18 United States Code section 926B or 926C in a

16    location or premises within the State that is not a

17    State or county property, installation, building,

18    base, or park, and not a location or premises where a

19    private person or entity has prohibited or restricted

20    the possession of concealed firearms on their

21    property.

6-ER-1218

Page 10

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (c)   The presence of a person in any location or premises

2    listed in subsection (a) shall be prima facie evidence that the

3    person knew it was a location or premises listed in subsection

4    (a).

5    (d)   Where only a portion of a building or office is owned,

6    leased, or used by the State or a county, this section shall not

7    apply to the portion of the building or office that is not

8    owned, leased, or used by the State or a county, unless carrying

9    or possessing a firearm within that portion is otherwise

10   prohibited by this section.

11   (e)   As used in this section, "private security officer"

12   means any person employed and duly licensed to engage in the

13   private detective or guard business pursuant to chapter 463.

14   (f)   Any person who violates this section shall be guilty

15   of a misdemeanor.

16   (g)   If any ordinance of any county of the State

17   establishing locations where the carrying of firearms is

18   prohibited is inconsistent with this section or with section

19   134-E, the ordinance shall be void to the extent of the

20   inconsistency.



Page 11

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1      **§134-B  Duty to maintain possession of license while**

2 **carrying a firearm; duty to disclose; penalty.**  (a)  A person

3 carrying a firearm pursuant to a license issued under section

4 134-9 or in accordance with title 18 United States Code section

5 926B or 926C shall have in the person's immediate possession:

6     (1)  The license issued under section 134-9 or

7          documentation regarding the person's qualifications

8          under title 18 United States Code section 926B or

9          926C;

10     (2)  Government-issued photo identification; and

11     (3)  Except with respect to firearms that are a part of the

12          official equipment of any federal agency as provided

13          under section 134-11(b), documentary evidence that the

14          firearm being carried is registered under this

15          chapter,

16 and shall, upon request from a law enforcement officer, present

17 government-issued photo identification and the license or

18 credentials and evidence of registration.

19     (b)  When a person carrying a firearm, including a person

20 carrying a firearm pursuant to a license issued under section

21 134-9 or in accordance with title 18 United States Code section

Page 12

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1   926B or 926C, is stopped by a law enforcement officer or is a

2   driver or passenger in a vehicle stopped by a law enforcement

3   officer, the person carrying a firearm shall immediately

4   disclose to the law enforcement officer that the person is

5   carrying a firearm, and shall, upon request:

6      (1)   Identify the specific location of the firearm; and

7      (2)   Present to the law enforcement officer a license to

8            carry a firearm issued under section 134-9 or

9            documentation regarding the person's qualifications

10           under title 18 United States Code section 926B or

11           926C.

12     (c)   Any person who violates this section shall be guilty

13  of a petty misdemeanor.

14     §134-C   **Leaving unsecured firearm in vehicle unattended;**

15  **penalty.**   (a)   No person shall intentionally, knowingly, or

16  recklessly store or otherwise leave a loaded or unloaded firearm

17  out of the person's immediate possession or control inside a

18  vehicle without first securely locking the firearm in a safe

19  storage depository that is out of sight from outside of the

20  vehicle.



**6-ER-1221**

Page 13                                         S.B. NO. 1230
                                                        S.D. 2
                                                        H.D. 1
                                                        C.D. 1

1      (b)  For purposes of this section, "safe storage

2  depository" means a safe or other secure impact- and

3  tamper-resistant container that, when locked, is incapable of

4  being opened without a key, keypad, combination, or other

5  unlocking mechanism and is capable of preventing an unauthorized

6  person from obtaining access to or possession of the firearm

7  contained therein.  A vehicle's trunk or glove box alone, even

8  if locked, is not a safe storage depository.

9      (c)  This section shall not apply to a person in an exempt

10  category identified in section 134-11(a).

11      (d)  Any person who violates subsection (a) shall be guilty

12  of a petty misdemeanor.

13      **§134-D  Unlawful conduct while carrying a firearm; penalty.**

14  (a)  A person carrying a firearm shall not:

15      (1)  Consume alcohol or intoxicating liquor;

16      (2)  Consume a controlled substance;

17      (3)  Be under the influence of alcohol or intoxicating

18            liquor; or

19      (4)  Be under the influence of a controlled substance.

20      (b)  As used in this section:

2023-2744 SB1230 CD1 SMA-2.docx                           13



Page 14

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    "Alcohol" and "intoxicating liquor" shall have the same

2    meaning as in section 281-1.

3    "Controlled substance" means a drug, substance, or

4    immediate precursor in schedules I through III of part II of

5    chapter 329.

6    (c)  Any person who violates this section shall be guilty

7    of a misdemeanor; provided that any person who violates this

8    section by consuming or being under the influence of alcohol or

9    an intoxicating liquor shall be guilty of a petty misdemeanor.

10   **§134-E  Carrying or possessing a firearm on private**

11   **property of another person without authorization; penalty.**  (a)

12   A person carrying a firearm pursuant to a license issued under

13   section 134-9 shall not intentionally, knowingly, or recklessly

14   enter or remain on private property of another person while

15   carrying a loaded or unloaded firearm, whether the firearm is

16   operable or not, and whether the firearm is concealed or

17   unconcealed, unless the person has been given express

18   authorization to carry a firearm on the property by the owner,

19   lessee, operator, or manager of the property.

Page 15

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  (b)  For purposes of this section, express authorization to

2  carry or possess a firearm on private property shall be

3  signified by:

4  (1)  Unambiguous written or verbal authorization; or

5  (2)  The posting of clear and conspicuous signage at the

6       entrance of the building or on the premises,

7  by the owner, lessee, operator, or manager of the property, or

8  agent thereof, indicating that carrying or possessing a firearm

9  is authorized.

10  (c)  For purposes of this section:

11  "Private entity" means any homeowners' association,

12  community association, planned community association,

13  condominium association, cooperative, or any other

14  nongovernmental entity with covenants, bylaws, or administrative

15  rules, regulations, or provisions governing the use of private

16  property.

17  "Private property" does not include property that is owned

18  or leased by any governmental entity.

19  "Private property of another person" means residential,

20  commercial, industrial, agricultural, institutional, or

21  undeveloped property that is privately owned or leased, unless

2023-2744 SB1230 CD1 SMA-2.docx                    15



Page 16

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  the person carrying a firearm is an owner, lessee, operator, or

2  manager of the property, including an ownership interest in a

3  common element or limited common element of the property;

4  provided that nothing in this chapter shall be construed to

5  limit the enforceability of a provision in any private rental

6  agreement restricting a tenant's possession or use of firearms,

7  the enforceability of a restrictive covenant restricting the

8  possession or use of firearms, or the authority of any private

9  entity to restrict the possession or use of firearms on private

10  property.

11     (d)  This section shall not apply to a person in an exempt

12  category identified in section 134-11(a).

13     (e)  Any person who violates this section shall be guilty

14  of a misdemeanor."

15     **§134-F  Annual report on licenses to carry.**  (a)  No later

16  than April 1, 2024, and April 1 of each year thereafter, the

17  department of the attorney general shall publish a report on its

18  publicly available website that includes, if available:

19     (1)  The number of licenses to carry applied for, issued,

20          revoked, and denied, further categorized by the age,



Page 17

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1          gender, race, and county of residence of each

2          applicant or licensee;

3    (2)  The specific reasons for each revocation and denial;

4    (3)  Analysis of denials based on applicants' failure to

5          meet the standards of section 134-9(d), and

6          recommendations to remedy any disparities in denial

7          rates by age, gender, or race;

8    (4)  The number of appeals and appeals granted; and

9    (5)  The number of violations of section 134-A.

10    (b)  No later than February 1 of each year, the chief of

11  police of each county shall supply the department of the

12  attorney general with the data the department requires to

13  complete the report under subsection (a).

14    **§134-G   Failure to conceal a firearm by a concealed carry**

15  **licensee; penalty.**   (a)   A person commits the offense of failure

16  to conceal a firearm by a concealed carry licensee if a person

17  is carrying a firearm pursuant to a license issued under section

18  134-9(a) and intentionally, knowingly, or recklessly causes

19  alarm to another person by failing to conceal the firearm, even

20  briefly, whether the firearm was loaded or not, and whether

21  operable or not.



**6-ER-1226**

Page 18

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1      (b)  It shall be a defense to any prosecution under this

2 section if the person:

3      (1)  Was within the person's private residence; or

4      (2)  Caused the firearm to be unconcealed for the purpose

5          of self-defense in accordance with section 703-304 or

6          defense of another person in accordance with section

7          703-305.

8      (c)  Failure to conceal a firearm by a concealed carry

9 licensee shall be a petty misdemeanor."

10     SECTION 3.  Section 134-1, Hawaii Revised Statutes, is

11 amended as follows:

12     1.  By adding three new definitions to be appropriately

13 inserted and to read:

14     ""Concealed" means, in relation to a firearm, that the

15 firearm is entirely hidden from view of the public and not

16 discernible by ordinary observation, in a manner that a

17 reasonable person without law enforcement training would be

18 unable to detect the presence of the firearm.

19     "Criminal offense relating to firearms" means:

20     (1)  Any criminal offense under this chapter punishable as

21          a misdemeanor;

Page 19

# S.B. NO. <sup>1230</sup>

1230
S.D. 2
H.D. 1
C.D. 1

1     (2) Criminally negligent storage of a firearm under

2          section 707-714.5; and

3     (3) Any other criminal offense punishable as a misdemeanor

4          under federal or state law or the law of another

5          state, a United States territory, or the District of

6          Columbia that has as an element of the offense the

7          use, attempted use, threatened use, or possession of a

8          firearm.

9     "Unconcealed" means not concealed."

10    2. By amending the definition of "crime of violence" to

11  read:

12     ""Crime of violence" means [any]:

13     (1) Any offense[, as defined in title 37,] under federal

14          or state law or the law of another state, a United

15          States territory, or the District of Columbia that

16          [involves injury] has as an element of the offense

17          the:

18         (A) Injury or threat of injury to the person of

19              another[, including sexual]; or

20         (B) Use, attempted use, or threatened use of physical

21              force against the person or property of another

6-ER-1228

Page 20

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1          or the creation of a substantial risk of causing

2          bodily injury;

3  (2)  Reckless endangering in the second degree under

4      section 707-714;

5  (3)  Terroristic threatening in the second degree under

6      section 707-717;

7  (4)  Sexual assault in the fourth degree under section 707-

8      733 [and harassment];

9  (5)  Endangering the welfare of a minor in the second

10     degree under section 709-904;

11  (6)  Endangering the welfare of an incompetent person under

12     section 709-905;

13  (7)  Harassment under section 711-1106(1)(a);

14  (8)  Harassment by stalking under section 711-1106.5[.];

15  (9)  Criminal solicitation under section 705-510; provided

16     that the solicitation was for a crime described or

17     listed in paragraphs (1) to (8);

18 (10)  Criminal conspiracy under section 705-520; provided

19     that the conspiracy was for a crime described or

20     listed in paragraphs (1) to (8); and

Page 21

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (11)   Offenses under federal law, or the law of another

2           state, a United States territory, or the District of

3           Columbia, that are comparable to the offenses

4           described or listed in paragraphs (1) to (10)."

5    SECTION 4.  Section 134-2, Hawaii Revised Statutes, is

6    amended to read as follows:

7    "§134-2  **Permits to acquire.**  (a)  No person shall acquire

8    the ownership of a firearm, whether usable or unusable,

9    serviceable or unserviceable, modern or antique, registered

10   under prior law or by a prior owner or unregistered, either by

11   purchase, gift, inheritance, bequest, or in any other manner,

12   whether procured in the State or imported by mail, express,

13   freight, or otherwise, until the person has first procured from

14   the chief of police of the county of the person's place of

15   business or, if there is no place of business, the person's

16   residence or, if there is neither place of business nor

17   residence, the person's place of sojourn, a permit to acquire

18   the ownership of a firearm as prescribed in this section.  When

19   title to any firearm is acquired by inheritance or bequest, the

20   foregoing permit shall be obtained before taking possession of

21   [a] the firearm; provided that upon presentation of a copy of

6-ER-1230

Page 22

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  the death certificate of the owner making the bequest, any heir

2  or legatee may transfer the inherited or bequested firearm

3  directly to a dealer licensed under section 134-31 or licensed

4  by the United States Department of Justice without complying

5  with the requirements of this section.

6      (b)  The permit application form shall [include the]:

7      (1)  Include:

8           (A)  The applicant's name, address, [sex,] gender,

9                height, weight, date of birth, place of birth,

10               country of citizenship, social security number,

11               alien or admission number[, and information];

12           (B)  Information regarding the applicant's mental

13               health history;

14           (C)  Any aliases or other names previously used by the

15               applicant;

16           (D)  Information that is or may be relevant in

17               determining whether the applicant is disqualified

18               under section 134-7 from the ownership,

19               possession, or control of a firearm; and

20           (E)  Information that is or may be relevant in

21               determining whether the applicant lacks the

Page 23

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        essential character or temperament necessary to

2        be entrusted with a firearm as set forth in

3        subsection (e); and [shall require]

4  (2)  Require the fingerprinting and photographing of the

5        applicant by the police department of the county of

6        registration; provided that where fingerprints and a

7        photograph are already on file with the department,

8        these may be waived.

9  (c)  An applicant for a permit shall [sign]:

10  (1)  Sign a waiver at the time of application, allowing the

11        chief of police of the county issuing the permit or a

12        designee of the chief of police access to [any] all

13        records that have a bearing on the mental health of

14        the applicant[.  The permit application form and the

15        waiver form shall be prescribed by the attorney

16        general and shall be uniform throughout the State.];

17        and

18  (2)  Identify any health care providers who possess or may

19        possess the records described in paragraph (1).

20  (d)  The chief of police of the respective counties [may]

21 shall issue permits to acquire firearms to [citizens]:

6-ER-1232

Page 24

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (1)   Citizens, nationals, or lawful permanent residents of

2            the United States of the age of twenty-one years or

3            more[~~, or duly~~];

4      (2)   Duly accredited official representatives of foreign

5            nations[~~, or duly~~];

6      (3)   Duly commissioned law enforcement officers of the

7            State who are aliens; provided that any law

8            enforcement officer who is the owner of a firearm and

9            who is an alien shall transfer ownership of the

10           firearm within forty-eight hours after termination of

11           employment from a law enforcement agency[~~. The chief~~

12           ~~of police of each county may issue permits to aliens~~];

13     (4)   Aliens of the age of eighteen years or more for use of

14           rifles and shotguns for a period not exceeding sixty

15           days, upon a showing that the alien has first procured

16           a hunting license under chapter 183D, part II[~~. The~~

17           ~~chief of police of each county may issue permits to~~

18           ~~aliens~~]; and

19     (5)   Aliens of the age of twenty-one years or more for use

20           of firearms for a period not exceeding six months,

21           upon a showing that the alien is in training for a

Page 25

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    specific organized sport-shooting contest to be held

2    within the permit period.

3    The attorney general [~~shall~~] may adopt rules, pursuant to

4    chapter 91, as to what constitutes sufficient evidence that an

5    alien is in training for a sport-shooting contest.

6    Notwithstanding any law to the contrary and upon joint

7    application, the chief of police may, upon request, issue

8    permits to acquire firearms jointly to spouses who otherwise

9    qualify to obtain permits under this section.

10    (e)  The permit application form shall be signed by the

11    applicant and [~~by the~~] issuing authority.  One copy of the

12    permit shall be retained by the issuing authority as a permanent

13    official record.  Except for sales to dealers licensed under

14    section 134-31, [~~or~~] dealers licensed by the United States

15    Department of Justice, [~~or~~] law enforcement officers, [~~or where~~

16    ~~a license is granted under section 134-9,~~] or where any firearm

17    is registered pursuant to section 134-3(a), no permit shall be

18    issued to an applicant earlier than fourteen calendar days after

19    the date of the application; provided that a permit shall be

20    issued or the application denied before the [~~twentieth~~] fortieth

21    day from the date of application.  Permits issued to acquire any

Page 26

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1   pistol or revolver shall be void unless used within [ten] thirty

2   days after the date of issue.  Permits to acquire a pistol or

3   revolver shall require a separate application and permit for

4   each transaction.  Permits issued to acquire any rifle or

5   shotgun shall entitle the permittee to make subsequent purchases

6   of rifles or shotguns for a period of one year from the date of

7   issue without a separate application and permit for each

8   acquisition, subject to the disqualifications under section 134-

9   7 and [subject to] revocation under section 134-13; provided

10  that if a permittee is arrested for committing a felony [or

11  any], a crime of violence, a criminal offense relating to

12  firearms, or for the illegal sale or distribution of any drug,

13  the permit shall be impounded and [shall be] surrendered to the

14  issuing authority.  The issuing authority shall perform an

15  inquiry on an applicant by using the International Justice and

16  Public Safety Network, including the United States Immigration

17  and Customs Enforcement query, [the] National Crime Information

18  Center, and [the] National Instant Criminal Background Check

19  System, pursuant to section 846-2.7 before any determination to

20  issue a permit or to deny an application is made.  The issuing

21  authority shall not issue a permit to acquire the ownership of a



Page 27

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  firearm if an applicant is disqualified under section 134-7 from

2  the ownership, possession, or control of a firearm, or if the

3  issuing authority determines that issuance would not be in the

4  interest of public health, safety, or welfare because the person

5  lacks the essential character or temperament necessary to be

6  entrusted with a firearm.  In determining whether a person lacks

7  the essential character or temperament necessary to be entrusted

8  with a firearm, the issuing authority shall consider whether the

9  person poses a danger of causing a self-inflicted bodily injury

10 or unlawful injury to another person, as evidenced by:

11      (1)  Information from a health care provider indicating

12           that the person has had suicidal or homicidal thoughts

13           or tendencies within the preceding five years;

14      (2)  Statements or actions by the person indicating any

15           dangerous propensity or violent animus toward one or

16           more individuals or groups, including groups based on

17           race, color, national origin, ancestry, sex, gender

18           identity, gender expression, sexual orientation, age,

19           disability, religion, or any other characteristic, and

20           the propensity or animus is of a nature or to an

21           extent that would objectively indicate to a reasonable

6-ER-1236

Page 28

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    observer that it would not be in the interest of the

2    public health, safety, or welfare for the person to

3    own, possess, or control a firearm or ammunition; or

4    (3)  Other information that would lead a reasonable,

5         objective observer to conclude that the person

6         presents or would present a danger to the community as

7         a result of acquiring or possessing a firearm or

8         intends or is likely to use a firearm for an unlawful

9         purpose or in an unlawful manner.

10   (f)  In all cases where a pistol or revolver is acquired

11   from another person within the State, the permit shall be signed

12   in ink by the person to whom title to the pistol or revolver is

13   transferred and shall be delivered to the person who is

14   transferring title to the firearm, who shall verify that the

15   person to whom the firearm is to be transferred is the person

16   named in the permit and enter on the permit in the space

17   provided the following information:  name, address, and

18   telephone number of the person who transferred the firearm;

19   name, address, and telephone number of the person to whom the

20   title to the firearm was transferred;  names of the manufacturer

21   and importer; model; type of action; caliber or gauge; and

**6-ER-1237**

Page 29

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   serial number, as applicable.  The person who is transferring

2   title to the firearm shall sign the permit in ink and cause the

3   permit to be delivered or sent by registered mail to the issuing

4   authority within forty-eight hours after transferring the

5   firearm.

6        In all cases where receipt of a firearm is had by mail,

7   express, freight, or otherwise from sources [without] outside

8   the State, the person to whom the permit has been issued shall

9   make the prescribed entries on the permit, sign the permit in

10  ink, and cause the permit to be delivered or sent by registered

11  mail to the issuing authority within forty-eight hours after

12  taking possession of the firearm.

13       In all cases where a rifle or shotgun is acquired from

14  another person within the State, the person who is transferring

15  title to the rifle or shotgun shall submit, within forty-eight

16  hours after transferring the firearm, to the authority that

17  issued the permit to acquire, the following information, in

18  writing:  name, address, and telephone number of the person who

19  transferred the firearm[.]; name, address, and telephone number

20  of the person to whom the title to the firearm was transferred;



**6-ER-1238**

Page 30

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  names of the manufacturer and importer; model; type of action;

2  caliber or gauge; and serial number, as applicable.

3      (g)  [Effective July 1, 1995, no] No person shall be issued

4  a permit under this section for the acquisition of a [pistol or

5  revolver] firearm unless the person, [at any time prior to]

6  within the four years before the issuance of the permit, has

7  completed:

8      (1)  An approved hunter education course as authorized

9           under section 183D-28[.], unless the applicant seeks

10          to acquire a pistol or revolver, in which case the

11          applicant shall complete a training satisfying the

12          requirements of paragraph (2), (3), or (4);

13     (2)  A firearms safety or training course or class

14          available to the general public offered by a law

15          enforcement agency of the State or of any county;

16     (3)  A firearms safety or training course offered to law

17          enforcement officers, security guards, investigators,

18          deputy sheriffs, or any division or subdivision of law

19          enforcement or security enforcement by a state or

20          county law enforcement agency; or



Page 31

# S.B. NO. <sup>1230</sup>

S.D. 2
H.D. 1
C.D. 1

1    (4)   A firearms training or safety course or class

2          conducted by a [state certified or National Rifle

3          Association certified firearms instructor] firearms

4          instructor certified or verified by the chief of

5          police of the respective county or a designee of the

6          chief of police or certified by a nongovernmental

7          organization approved for such purposes by the chief

8          of police of the respective county or a designee of

9          the chief of police, or conducted by a certified

10         military firearms instructor; provided that the

11         firearms training or safety course or class provides,

12         at a minimum, a total of at least two hours of firing

13         training at a firing range and a total of at least

14         four hours of classroom instruction, which may include

15         a video, that focuses on:

16   (A)   The safe use, handling, and storage of firearms

17         and firearm safety in the home[.], as well as a

18         component on mental health, suicide prevention,

19         and domestic violence issues associated with

20         firearms and firearm violence; and

21   (B)   Education on the firearm laws of the State.

2023-2744 SB1230 CD1 SMA-2.docx                                    31



Page 32

# S.B. NO. 1230
### S.D. 2
### H.D. 1
### C.D. 1

1           An affidavit signed by the certified or verified

2           firearms instructor who conducted or taught the

3           course, providing the name, address, and phone number

4           of the instructor and attesting to the successful

5           completion of the course by the applicant shall

6           constitute evidence of certified successful completion

7           under this paragraph[.]; provided that an instructor

8           shall not submit an affidavit signed by the instructor

9           for the instructor's own permit application.

10    (h)  No person shall sell, give, lend, or deliver into the

11  possession of another any firearm except in accordance with this

12  chapter.

13    (i)  No fee shall be charged for permits, or applications

14  for permits, under this section, except for a single fee

15  chargeable by and payable to the issuing county[, for

16  individuals applying for their first permit,] in an amount equal

17  to the fee charged by the Hawaii criminal justice data center

18  pursuant to section 846-2.7.  In the case of a joint

19  application, the fee provided for in this section may be charged

20  to each person [to whom no previous permit has been issued].  If

21  an application under this section is denied, the chief of police

Page 33

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  <u>or a designee of the chief of police shall notify the applicant</u>

2  <u>of the denial in writing, stating the ground or grounds for the</u>

3  <u>denial and informing the applicant of the right to seek review</u>

4  <u>of the denial through a hearing pursuant to subsection (k).</u>

5      (j)  In all cases where a permit application under this

6  section is denied because an applicant is prohibited from

7  owning, possessing, receiving, or controlling firearms under

8  federal or state law, the chief of police of the applicable

9  county shall, within ten business days from the date of denial,

10  send written notice of the denial, including the identity of the

11  applicant and the reasons for the denial, to the:

12      (1)  Prosecuting attorney in the county where the permit

13           was denied;

14      (2)  Attorney general;

15      (3)  United States Attorney for the District of Hawaii; and

16      (4)  Director of public safety.

17      If the permit to acquire was denied because the applicant

18  is subject to an order described in section 134-7(f), the chief

19  of police shall, within three business days from the date of

20  denial, send written notice of the denial to the court that

21  issued the order.

2023-2744 SB1230 CD1 SMA-2.docx                                    33



Page 34

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    When the director of public safety receives notice that an

2    applicant has been denied a permit because of a prior criminal

3    conviction, the director of public safety shall determine

4    whether the applicant is currently serving a term of probation

5    or parole, and if the applicant is serving such a term, send

6    written notice of the denial to the applicant's probation or

7    parole officer.

8    (k)  If an application under this section is denied, a

9    person or entity aggrieved by the denial shall be entitled to a

10   hearing before the chief of police of the appropriate county or

11   a designee of the chief of police.  A person or entity aggrieved

12   by the denial shall submit a request for a hearing in writing to

13   the chief of police of the appropriate county no later than

14   thirty days following the date of the decision or determination

15   notice.  The hearing shall constitute a contested case hearing

16   for purposes of chapter 91.  Following the hearing and final

17   decision, an aggrieved party shall be entitled to a judicial

18   review proceeding in state circuit court in accordance with

19   section 91-14.

6-ER-1243

Page 35

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (l)  The permit application form and the waiver form

2   required under this section shall be prescribed by the issuing

3   authority."

4        SECTION 5.  Section 134-4, Hawaii Revised Statutes, is

5   amended by amending subsection (d) to read as follows:

6        "(d)  No person shall intentionally, knowingly, or

7   recklessly lend a firearm to any person who is prohibited from

8   ownership [or], possession, or control of a firearm under

9   section 134-7."

10       SECTION 6.  Section 134-7, Hawaii Revised Statutes, is

11   amended to read as follows:

12       "§134-7  Ownership [or], possession, or control prohibited,

13   when; penalty.  (a)  No person who is a fugitive from justice or

14   [is a person] prohibited from possessing [firearms] a firearm or

15   ammunition under title 18 United States Code section 922 or any

16   other provision of federal law shall own, possess, or control

17   any firearm or ammunition [therefor].

18       (b)  No person who [is under indictment for, or has waived

19   indictment for, or has been bound over to the circuit court

20   for,] is being prosecuted for one or more charges for a felony,

21   a crime of violence, a criminal offense relating to firearms, or

2023-2744 SB1230 CD1 SMA-2.docx                                    35



**6-ER-1244**

Page 36

# S.B. NO. <sub>1230</sub>

1230
S.D. 2
H.D. 1
C.D. 1

1    an illegal sale or distribution of any drug in a court in this

2    State or elsewhere, or who has been convicted in this State or

3    elsewhere of having committed a felony, [or any] a crime of

4    violence, a criminal offense relating to firearms, or an illegal

5    sale or distribution of any drug shall own, possess, or control

6    any firearm or ammunition [therefor].

7         (c)   No person [who:] shall own, possess, or control any

8    firearm or ammunition if the person:

9         (1)   Is or has been under treatment or counseling for

10              addiction to, abuse of, or dependence upon any

11              dangerous, harmful, or detrimental drug, intoxicating

12              compound as defined in section 712-1240, or

13              intoxicating liquor;

14        (2)   Has been acquitted of a crime on the grounds of mental

15              disease, disorder, or defect pursuant to section 704-

16              411[.] or any similar provision under federal law, or

17              the law of another state, a United States territory,

18              or the District of Columbia;

19        (3)   Is or has been diagnosed [as having a significant

20              behavioral, emotional, or mental disorders as defined

21              by the most current diagnostic manual of the American

2023-2744 SB1230 CD1 SMA-2.docx                                              36



Page 37

# S.B. NO. <sub></sub>

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   ~~Psychiatric Association or for treatment for organic~~

2   ~~brain syndromes,~~] with or treated for a medical,

3   behavioral, psychological, emotional, or mental

4   condition or disorder that causes or is likely to

5   cause impairment in judgment, perception, or impulse

6   control to an extent that presents an unreasonable

7   risk to public health, safety, or welfare if the

8   person were in possession or control of a firearm; or

9   (4)   Has been adjudged to:

10      (A)   Meet the criteria for involuntary hospitalization

11            under section 334-60.2; or

12      (B)   Be an "incapacitated person", as defined in

13            section 560:5-102,

14   [~~shall own, possess, or control any firearm or ammunition~~

15   ~~therefor,~~] unless the person [~~has been medically documented to~~

16   ~~be~~] establishes, with appropriate medical documentation, that

17   the person is no longer adversely affected by [~~the addiction,~~

18   ~~abuse, dependence, mental disease, disorder, or defect.~~] the

19   criteria or statuses identified in this subsection.

20   (d)   No person who is less than twenty-five years old and

21   has been adjudicated by the family court to have committed a

Page 38

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  felony, [~~two or more crimes~~] <u>a crime</u> of violence, <u>a criminal</u>

2  <u>offense relating to firearms,</u> or an illegal sale <u>or distribution</u>

3  of any drug shall own, possess<u>,</u> or control any firearm or

4  ammunition [~~therefor~~].

5      (e)  No minor [~~who:~~] <u>shall own, possess, or control any</u>

6  <u>firearm or ammunition if the minor:</u>

7      (1)  Is or has been under treatment for addiction to any

8           dangerous, harmful, or detrimental drug, intoxicating

9           compound as defined in section 712-1240, or

10          intoxicating liquor;

11     (2)  Is a fugitive from justice; or

12     (3)  Has been determined not to have been responsible for a

13          criminal act or has been committed to any institution

14          on account of a mental disease, disorder, or

15          defect[~~;~~]<u>,</u>

16 [~~shall own, possess, or control any firearm or ammunition~~

17 ~~therefor,~~] unless the minor [~~has been medically documented to~~

18 ~~be~~] <u>establishes, with appropriate medical documentation, that</u>

19 <u>the minor is</u> no longer adversely affected by the addiction,

20 mental disease, disorder, or defect.



Page 39

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    For the purposes of enforcing this section, and

2    notwithstanding section 571-84 or any other law to the contrary,

3    any agency within the State shall make its records relating to

4    family court adjudications available to law enforcement

5    officials.

6    (f)  No person who has been restrained pursuant to an order

7    of any court, including a gun violence protective order issued

8    pursuant to part IV, from contacting, threatening, or physically

9    abusing any person, shall possess, control, or transfer

10   ownership of any firearm or ammunition [~~therefor~~], so long as

11   the protective order, restraining order, or any extension is in

12   effect[~~, unless the order, for good cause shown, specifically~~

13   ~~permits the possession of a firearm and ammunition~~].  The

14   protective order or restraining order shall specifically include

15   a statement that possession, control, or transfer of ownership

16   of a firearm or ammunition by the person named in the order is

17   prohibited.  The person shall relinquish possession and control

18   of any firearm and ammunition owned by that person to the police

19   department of the appropriate county for safekeeping for the

20   duration of the order or extension thereof.  At the time of

21   service of a protective order or restraining order involving



**6-ER-1248**

S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1  firearms and ammunition issued by any court, a police officer

2  may take custody of any and all firearms and ammunition in plain

3  sight, those discovered pursuant to a consensual search, and

4  those firearms surrendered by the person restrained.  If the

5  person restrained is the registered owner of a firearm and knows

6  the location of the firearm, but refuses to surrender the

7  firearm or [refuses to] disclose the location of the firearm,

8  the person restrained shall be guilty of a misdemeanor.  In any

9  case, when a police officer is unable to locate the firearms and

10  ammunition either registered under this chapter or known to the

11  person granted protection by the court, the police officer shall

12  apply to the court for a search warrant pursuant to chapter 803

13  for the limited purpose of seizing the firearm and ammunition.

14  [For the purposes of this subsection, good cause shall not

15  be based solely upon the consideration that the person subject

16  to restraint pursuant to an order of any court is required to

17  possess or carry firearms or ammunition during the course of the

18  person's employment.  Good cause consideration may include but

19  not be limited to the protection and safety of the person to

20  whom a restraining order is granted.]



**6-ER-1249**

Page 41

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (g)  Any person disqualified from ownership, possession,

2  control, or the right to transfer ownership of firearms and

3  ammunition under this section shall surrender or dispose of all

4  firearms and ammunition in compliance with section 134-7.3.

5     (h)  Any person who otherwise would be prohibited under

6  subsection (b) from owning, possessing, or controlling a firearm

7  and ammunition solely as a result of a conviction for a crime

8  that is not a felony, and who is not prohibited from owning,

9  possessing, or controlling a firearm or ammunition for any

10  reason under any other provision of this chapter or under title

11  18 United States Code section 922 or another provision of

12  federal law, shall not be prohibited under this section from

13  owning, possessing, or controlling a firearm and ammunition if

14  twenty years have elapsed from the date of the conviction.

15     [(h)] (i)  Any person violating subsection (a) or (b) shall

16  be guilty of a class C felony; provided that any felon violating

17  subsection (b) shall be guilty of a class B felony.  Any person

18  violating subsection (c), (d), (e), (f), or (g) shall be guilty

19  of a misdemeanor."

20     SECTION 7.  Section 134-9, Hawaii Revised Statutes, is

21  amended to read as follows:

**6-ER-1250**

Page 42

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    "§134-9  **Licenses to carry.**  (a)  [~~In an exceptional case,~~

2  ~~when an applicant shows reason to fear injury to the applicant's~~

3  ~~person or property, the~~] The chief of police of [~~the~~

4  ~~appropriate~~] a county [~~may~~] shall grant a license to an

5  applicant [~~who is a citizen of the United States of the age of~~

6  ~~twenty-one years or more or to a duly accredited official~~

7  ~~representative of a foreign nation of the age of twenty-one~~

8  ~~years or more~~] to carry a pistol or revolver and ammunition

9  [~~therefor~~] concealed on the licensee's person within [~~the county~~

10  ~~where the license is granted.  Where the urgency or the need has~~

11  ~~been sufficiently indicated, the respective~~] the State, if the

12  applicant:

13      (1)  Satisfies each of the criteria established by or

14           pursuant to subsection (d);

15      (2)  Is not prohibited under section 134-7 from the

16           ownership, possession, or control of a firearm and

17           ammunition;

18      (3)  Is not found to be lacking the essential character or

19           temperament necessary to be entrusted with a firearm

20           as set forth in subsection (h);

2023-2744 SB1230 CD1 SMA-2.docx                                    42



**6-ER-1251**

Page 43

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    (4)    Is a citizen, national, or lawful permanent resident

2           of the United States or a duly accredited official

3           representative of a foreign nation;

4    (5)    Is a resident of the State; and

5    (6)    Is of the age of twenty-one years or more.

6    (b)    The chief of police of a county may grant to an

7    applicant [of good moral character who is a citizen of the

8    United States of the age of twenty-one years or more, is engaged

9    in the protection of life and property, and is not prohibited

10   under section 134-7 from the ownership or possession of a

11   firearm,] a license to carry a pistol or revolver and ammunition

12   [therefor] unconcealed on the licensee's person within the

13   county where the license is granted[.], if the applicant:

14   (1)    Sufficiently establishes the urgency or need to carry

15          a firearm unconcealed;

16   (2)    Is engaged in the protection of life and property;

17   (3)    Satisfies each of the criteria established by or

18          pursuant to subsection (d);

19   (4)    Is not prohibited under section 134-7 from the

20          ownership, possession, or control of a firearm and

21          ammunition;



Page 44

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       (5)   Is not found to be lacking the essential character or

2             temperament necessary to be entrusted with a firearm

3             as set forth in subsection (h);

4       (6)   Is a citizen, national, or lawful permanent resident

5             of the United States; and

6       (7)   Is of the age of twenty-one years or more.

7       (c)   The chief of police of the appropriate county, or [the

8 chief's] a designated representative[,] of the chief of police,

9 shall perform an inquiry on an applicant by using the National

10 Instant Criminal Background Check System, to include a check of

11 the Immigration and Customs Enforcement databases [where] if the

12 applicant is not a citizen of the United States, before any

13 determination to grant a concealed or unconcealed license is

14 made. [Unless renewed, the license shall expire one year from

15 the date of issue.

16      (b) The chief of police of each county shall adopt

17 procedures to require that any person granted a license to carry

18 a concealed weapon on the person shall:]

19      (d)  To be eligible to receive a license to carry a

20 concealed or unconcealed pistol or revolver on the licensee's

21 person, the applicant shall:

6-ER-1253

Page 45

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (1)   [Be qualified to use the firearm in a safe manner;]

2            Submit the appropriate carry license application, in

3            person, to the chief of police of the appropriate

4            county, with:

5         (A)   All fields on the application form completed and

6               all questions answered truthfully, under penalty

7               of law;

8         (B)   All required signatures present on the

9               application;

10        (C)   Any required documents attached to the

11             application; and

12        (D)   Payment of the nonrefundable license application

13             fee required under this section;

14    (2)   [Appear to be a suitable person to be so licensed;] Be

15            the registered owner of the firearm or firearms for

16            which the license to carry will be issued; provided

17            that this paragraph shall not apply to detectives,

18            private detectives, investigators, and guards with an

19            active license issued pursuant to chapter 463;

6-ER-1254

Page 46

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (3)   Not be prohibited under section 134-7 from the

2          ownership [or]_, possession_, or control of a firearm;

3          [and]

4    (4)   [Not have been adjudged insane or not appear to be

5          mentally deranged.] Have completed a course of

6          training as described in subsection (e) and be

7          certified as qualified to use the firearm or firearms

8          for which the license to carry will be issued in a

9          safe manner; and

10   (5)   Sign an affidavit expressly acknowledging that:

11        (A)   The applicant has read and is responsible for

12              understanding and complying with the federal,

13              state, and county laws governing the permissible

14              use of firearms and associated requirements,

15              including:

16              (i)    The prohibition on carrying or possessing a

17                     firearm in certain locations and premises;

18              (ii)   The prohibition on carrying more than one

19                     firearm on the licensee's person at one

20                     time;

2023-2744 SB1230 CD1 SMA-2.docx                                    46



Page 47

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1              (iii)   The prohibition on carrying a firearm on

2                      private property of another person without

3                      the express authorization of the owner,

4                      lessee, operator, or manager of the private

5                      property;

6              (iv)   The requirement to maintain possession of

7                      the license on the licensee's person while

8                      carrying a firearm;

9               (v)   The requirement to disclose information

10                   regarding the carrying of a firearm when

11                   stopped by law enforcement;

12            (vi)   The provision for absolute liability for

13                   injury or property damage proximately caused

14                   by a legally unjustified discharge of a

15                   firearm under section 663-9.5; and

16         (vii)   Laws regarding the use of deadly force for

17                   self-defense or the defense of another;

18      (B)   A license to carry issued under this section

19             shall be void if a licensee becomes disqualified

20             from the ownership, possession, or control of a

6-ER-1256

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        firearm pursuant to section 134-7(a), (b), (d),

2        or (f);

3    (C)  The license shall be subject to revocation under

4        section 134-13 if a licensee for any other reason

5        becomes disqualified under section 134-7 from the

6        ownership, possession, or control of a firearm;

7        and

8    (D)  A license that is revoked or that becomes void

9        shall be returned to the chief of police of the

10       appropriate county within forty-eight hours after

11       the license is revoked or becomes void.

12  [(c) No person shall carry concealed or unconcealed on the

13 person a pistol or revolver without being licensed to do so

14 under this section or in compliance with sections 134-5(c) or

15 134-25.

16  (d) A fee of $10 shall be charged for each license and

17 shall be deposited in the treasury of the county in which the

18 license is granted.]

19  (e) The course of training for issuance of a license under

20 this section may be any course acceptable to the licensing

21 authority that meets all of the following criteria:

Page 49

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (1)    The course shall include in-person instruction on

2           firearm safety; firearm handling; shooting technique;

3           safe storage; legal methods to transport firearms and

4           secure firearms in vehicles; laws governing places in

5           which persons are prohibited from carrying a firearm;

6           firearm usage in low-light situations; situational

7           awareness and conflict management; and laws governing

8           firearms, including information regarding the

9           circumstances in which deadly force may be used for

10          self-defense or the defense of another;

11   (2)    The course shall include a component on mental health

12          and mental health resources;

13   (3)    Except for the component on mental health and mental

14          health resources, the course shall be conducted by one

15          or more firearms instructors certified or verified by

16          the chief of police of the respective county or a

17          designee of the chief of police or certified by a

18          nongovernmental organization approved for those

19          purposes by the chief of police of the respective

20          county or a designee of the chief of police, or

6-ER-1258

Page 50                                      S.B. NO. 1230
                                                      S.D. 2
                                                      H.D. 1
                                                      C.D. 1

1       conducted by one or more certified military firearms

2       instructors;

3  (4)  The course shall require participants to demonstrate

4       their understanding of the covered topics by achieving

5       a score of at least seventy per cent on a written

6       examination; and

7  (5)  The course shall include live-fire shooting exercises

8       on a firing range and shall include a demonstration by

9       the applicant of safe handling of, and shooting

10      proficiency with, each firearm that the applicant is

11      applying to be licensed to carry.

12  (f) Upon passing the course of training identified in

13  subsection (e), the applicant shall obtain from the instructor,

14  and include as part of the applicant's application package, a

15  certification as to the following:

16  (1)  The applicant's name, as confirmed by reviewing the

17       applicant's government-issued photo identification;

18  (2)  The date and location of the firearm proficiency test;

19  (3)  The firearm or firearms that the applicant used in the

20       firearm proficiency test;



Page 51

# S.B. NO. <small>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</small>

1    (4)   The applicant's score; provided that an indication

2          that the applicant passed or failed, without the score

3          itself, shall be insufficient information for the

4          purposes of the application; and

5    (5)   The instructor's qualifications to administer the

6          firearm proficiency test.

7    The certification of the above information, signed by the

8    firearms instructor who conducted or taught the course,

9    providing the name, address, and phone number of the instructor,

10   shall constitute evidence of successful completion of the

11   course; provided that the instructor shall not submit a

12   certification signed by the instructor for the instructor's own

13   license application.  The course of training for issuance of a

14   license under this section shall be undertaken at the licensee's

15   expense.

16   (g)   An applicant for a license under this section shall:

17   (1)   Sign a waiver at the time of application, allowing the

18         chief of police of the county issuing the license or a

19         designee of the chief of police access to any records

20         that have a bearing on the mental health of the

21         applicant; and



Page 52

# S.B. NO. 1230

S.D. 2
H.D. 1
C.D. 1

1       (2)   Identify any health care providers who possess or may

2             possess the records described in paragraph (1).

3      (h)  In determining whether a person lacks the essential

4  character or temperament necessary to be entrusted with a

5  firearm, the licensing authority shall consider whether the

6  person poses a danger of causing a self-inflicted bodily injury

7  or unlawful injury to another person, as evidenced by:

8      (1)   Information from a health care provider indicating

9             that the person has had suicidal or homicidal thoughts

10           or tendencies within the preceding five years;

11     (2)   Statements or actions by the person indicating any

12           dangerous propensity or violent animus toward one or

13           more individuals or groups, including groups based on

14           race, color, national origin, ancestry, sex, gender

15           identity, gender expression, sexual orientation, age,

16           disability, religion, or any other characteristic, and

17           the propensity or animus is of a nature or to an

18           extent that would objectively indicate to a reasonable

19           observer that it would not be in the interest of the

20           public health, safety, or welfare for the person to

21           own, possess, or control a firearm or ammunition; or

6-ER-1261

Page 53

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1      (3)  Other information that would lead a reasonable,

2           objective observer to conclude that the person

3           presents or would present a danger to the community as

4           a result of carrying a firearm in public or intends or

5           is likely to use a firearm for an unlawful purpose or

6           in an unlawful manner.

7     (i)  A nonrefundable fee of $150 shall be charged for each

8 license application submitted under this section.  The fee shall

9 be chargeable by and payable to the appropriate county and shall

10 be used for expenses related to police services.  The issuing

11 authority shall waive the fee required by this subsection upon a

12 showing of financial hardship by the applicant.

13     (j)  If the applicant satisfies each of the requirements

14 for a concealed carry license, an application for a concealed

15 carry license submitted to the chief of police of the

16 appropriate county under this section shall be approved within a

17 reasonable time after receipt of all required application

18 materials.  If the applicant does not satisfy one or more of the

19 requirements for a concealed carry license, the license shall be

20 denied within a reasonable time after receipt of the application

21 materials.  If an application is denied, the chief of police or



Page 54

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1   a designee of the chief of police shall notify the applicant of

2   the denial in writing, stating the ground or grounds for the

3   denial and informing the applicant of the right to seek review

4   of the denial through a hearing pursuant to subsection (k).  If

5   the chief of police does not grant or deny a submitted

6   application for a concealed carry license within one hundred

7   twenty days following the date of the application, the

8   application shall be deemed denied as of that date for purposes

9   of subsection (k).

10      (k)  If an application under this section is denied, a

11  person or entity aggrieved by the denial shall be entitled to a

12  hearing before the chief of police of the appropriate county or

13  a designee of the chief of police.  A person or entity aggrieved

14  by the denial shall submit a request for a hearing in writing to

15  the chief of police of the appropriate county no later than

16  thirty days following the date of the decision or determination

17  notice.  The hearing shall constitute a contested case hearing

18  for purposes of chapter 91.  Following the hearing and final

19  decision, an aggrieved party shall be entitled to a judicial

20  review proceeding in state circuit court in accordance with

21  section 91-14.



Page 55

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (l)  If an application pursuant to this section is

2  approved, the chief of police shall issue the applicant a

3  license that contains, at minimum:

4      (1)  The licensee's name;

5      (2)  The licensee's address;

6      (3)  A photograph of the licensee taken within ninety days

7            before issuance of the license;

8      (4)  The county of issuance;

9      (5)  A notation as to whether the license permits concealed

10           or unconcealed carry;

11      (6)  The serial number of each registered firearm that the

12           licensee may carry pursuant to the license; and

13      (7)  The license expiration date.

14  The license issued under this subsection shall not constitute a

15  government-issued photo identification document under federal or

16  state law.

17      (m)  Unless renewed, a concealed or unconcealed license

18  shall expire four years from the date of issue.

19      (n)  A license to carry issued under this section shall be

20  void if a licensee becomes disqualified from the ownership,

21  possession, or control of a firearm pursuant to section 134-

2023-2744 SB1230 CD1 SMA-2.docx           55



**6-ER-1264**

Page 56

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   7(a), (b), (d), or (f).  If a licensee for any other reason

2   becomes disqualified under section 134-7 from the ownership,

3   possession, or control of a firearm, the license shall be

4   subject to revocation under section 134-13.  A license that is

5   void or revoked shall be returned to the chief of police of the

6   appropriate county within forty-eight hours after the license

7   becomes void or is revoked.

8       (o)  The chief of police of each county shall adopt

9   procedures to implement this section.

10      (p)  The chief of police of each county shall establish

11  procedures and criteria for the renewal of licenses issued under

12  this section.  No license renewal shall be granted if an

13  applicant for a renewed license does not satisfy, or no longer

14  satisfies, the eligibility criteria for a new license set forth

15  in subsections (a) through (d).  As a precondition for the

16  renewal of licenses issued under this section, the chief of

17  police of each county may establish reasonable continuing

18  education, training, and certification requirements, including

19  requirements pertaining to the safe handling of firearms and

20  shooting proficiency.  A nonrefundable fee of $50 shall be

21  charged for each license renewal application submitted under



**6-ER-1265**

Page 57

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   this section.  The fee shall be chargeable by and payable to the

2   appropriate county and shall be used for expenses related to

3   police services.  The issuing authority shall waive the fee

4   required by this subsection upon a showing of financial hardship

5   by the applicant.

6        (q)  No person carrying a firearm pursuant to a license

7   issued under this section shall intentionally, knowingly, or

8   recklessly carry more than one firearm on the licensee's person

9   at one time.

10        (r)  A license issued by the chief of police of a county

11   within the State under subsection (a) to carry a pistol or

12   revolver and ammunition concealed on the licensee's person shall

13   be valid for use in each county within the State."

14        SECTION 8.  Section 134-13, Hawaii Revised Statutes, is

15   amended to read as follows:

16        "§134-13  **Revocation of permits**[.] **and licenses.**  (a)  All

17   permits and licenses provided for under this part [may] shall be

18   revoked[, for good cause,] by the issuing authority [or], and

19   may be revoked by [the judge of] any court[.], if the issuing

20   authority or court determines that the permit or license is

21   subject to revocation because the permit or license holder does

2023-2744 SB1230 CD1 SMA-2.docx                                    57



Page 58

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    not satisfy, or no longer satisfies, the applicable

2    qualifications or requirements associated with the permit or

3    license.

4         (b)   If the issuing authority determines that a permit or

5    license is subject to revocation, the issuing authority shall

6    notify the permit or license holder of the determination in

7    writing, stating the grounds for the determination and informing

8    the permit or license holder of the right to seek a hearing

9    before the issuing authority regarding the determination before

10   revocation.  Unless the permit or license holder submits a

11   request for a hearing in writing to the issuing authority no

12   later than thirty days following the date of the written notice

13   that the permit or license is subject to revocation, the permit

14   or license shall be immediately revoked by the issuing

15   authority.  Any hearing regarding a determination on whether a

16   permit or license is subject to revocation shall constitute a

17   contested case hearing for purposes of chapter 91.  A person or

18   entity aggrieved by a revocation under this section may apply

19   for judicial review in state circuit court in accordance with

20   section 91-14.



**6-ER-1267**

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (c)  If a permit or license is revoked pursuant to this

2   section, the former permit or license holder shall return the

3   permit or license to the issuing authority within forty-eight

4   hours following receipt of the notice of revocation."

5      SECTION 9.  Section 134-17, Hawaii Revised Statutes, is

6   amended to read as follows:

7      "§134-17  **Penalties.**  (a)  If any person [gives false

8   information or offers false evidence of the person's identity in

9   complying with any of the requirements of this part, that person

10   shall be guilty of a misdemeanor, provided, however that if any

11   person intentionally gives false information or offers false

12   evidence concerning their] intentionally, knowingly, or

13   recklessly makes any materially false, fictitious, or fraudulent

14   statement or representation in connection with any of the

15   requirements of this part, that person shall be guilty of a

16   misdemeanor; provided that if any person intentionally,

17   knowingly, or recklessly makes any materially false, fictitious,

18   or fraudulent statement or representation regarding the person's

19   psychiatric or criminal history in [complying] connection with

20   any of the requirements of this part, that person shall be

21   guilty of a class C felony.



**6-ER-1268**

Page 60

# S.B. NO. 1230

S.D. 2
H.D. 1
C.D. 1

1    [(b)  Any person who violates section 134-3(a) shall be

2    guilty of a petty misdemeanor.

3    (c)] (b)  Any person who violates [section]:

4    (1)  Section 134-2, 134-4, 134-10, [or] 134-13(c), or 134-

5         15 shall be guilty of a misdemeanor[.  Any person who

6         violates section];

7    (2)  Section 134-3(a) or 134-9(q) shall be guilty of a

8         petty misdemeanor; or

9    (3)  Section 134-3(b) shall be guilty of a petty

10        misdemeanor and the firearm shall be confiscated as

11        contraband and disposed of, if the firearm is not

12        registered within five days of the person receiving

13        notice of the violation."

14   SECTION 10.  Section 134-18, Hawaii Revised Statutes, is

15   amended to read as follows:

16   "§134-18  Qualified immunity for physicians, psychologists,

17   [or] psychiatrists, physician assistants, or advanced practice

18   registered nurses who provide information on permit or license

19   applicants.  There shall be no civil liability for any

20   physician, psychologist, [or] psychiatrist, physician assistant,

21   or advanced practice registered nurse who provides information



**6-ER-1269**

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  or renders an opinion in response to an inquiry made for

2  purposes of issuing a firearm permit under section 134-2,

3  issuing or renewing a license under section 134-9, or [for

4  purposes of] investigating the continuing mental health of the

5  holder of a valid firearm permit or license; provided that the

6  physician, psychologist, [or] psychiatrist, physician assistant,

7  or advanced practice registered nurse acted without malice."

8      SECTION 11.  Section 707-716, Hawaii Revised Statutes, is

9  amended by amending subsection (2) to read as follows:

10     "(2)  Terroristic threatening in the first degree is a

11  class C felony[.]; provided that terroristic threatening in the

12  first degree is a class B felony if committed with a firearm as

13  defined in section 134-1, whether the firearm was loaded or not,

14  and whether operable or not, or a simulated firearm, while in

15  one of the locations or premises listed in section 134-A(a)."

16     SECTION 12.  Section 846-2.7, Hawaii Revised Statutes, is

17  amended by amending subsection (b) to read as follows:

18     "(b)  Criminal history record checks may be conducted by:

19     (1)  The department of health or its designee on operators

20          of adult foster homes for individuals with

21          developmental disabilities or developmental



S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1          disabilities domiciliary homes and their employees, as

2          provided by section 321-15.2;

3     (2)  The department of health or its designee on

4          prospective employees, persons seeking to serve as

5          providers, or subcontractors in positions that place

6          them in direct contact with clients when providing

7          non-witnessed direct mental health or health care

8          services as provided by section 321-171.5;

9     (3)  The department of health or its designee on all

10         applicants for licensure or certification for,

11         operators for, prospective employees, adult

12         volunteers, and all adults, except adults in care, at

13         healthcare facilities as defined in section 321-15.2;

14    (4)  The department of education on employees, prospective

15         employees, and teacher trainees in any public school

16         in positions that necessitate close proximity to

17         children as provided by section 302A-601.5;

18    (5)  The counties on employees and prospective employees

19         who may be in positions that place them in close

20         proximity to children in recreation or child care

21         programs and services;

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

| 1 | (6) | The county liquor commissions on applicants for liquor |
| 2 | | licenses as provided by section 281-53.5; |
| 3 | (7) | The county liquor commissions on employees and |
| 4 | | prospective employees involved in liquor |
| 5 | | administration, law enforcement, and liquor control |
| 6 | | investigations; |
| 7 | (8) | The department of human services on operators and |
| 8 | | employees of child caring institutions, child placing |
| 9 | | organizations, and foster boarding homes as provided |
| 10 | | by section 346-17; |
| 11 | (9) | The department of human services on prospective |
| 12 | | adoptive parents as established under section |
| 13 | | 346-19.7; |
| 14 | (10) | The department of human services or its designee on |
| 15 | | applicants to operate child care facilities, household |
| 16 | | members of the applicant, prospective employees of the |
| 17 | | applicant, and new employees and household members of |
| 18 | | the provider after registration or licensure as |
| 19 | | provided by section 346-154, and persons subject to |
| 20 | | section 346-152.5; |

6-ER-1272

Page 64

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (11)   The department of human services on persons exempt

2             pursuant to section 346-152 to be eligible to provide

3             child care and receive child care subsidies as

4             provided by section 346-152.5;

5    (12)   The department of health on operators and employees of

6             home and community-based case management agencies and

7             operators and other adults, except for adults in care,

8             residing in community care foster family homes as

9             provided by section 321-15.2;

10   (13)   The department of human services on staff members of

11           the Hawaii youth correctional facility as provided by

12           section 352-5.5;

13   (14)   The department of human services on employees,

14           prospective employees, and volunteers of contracted

15           providers and subcontractors in positions that place

16           them in close proximity to youth when providing

17           services on behalf of the office or the Hawaii youth

18           correctional facility as provided by section 352D-4.3;

19   (15)   The judiciary on employees and applicants at detention

20           and shelter facilities as provided by section 571-34;

Page 65

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1      (16)   The department of public safety on employees and

2              prospective employees who are directly involved with

3              the treatment and care of persons committed to a

4              correctional facility or who possess police powers

5              including the power of arrest as provided by section

6              353C-5;

7      (17)   The board of private detectives and guards on

8              applicants for private detective or private guard

9              licensure as provided by section 463-9;

10     (18)   Private schools and designated organizations on

11             employees and prospective employees who may be in

12             positions that necessitate close proximity to

13             children; provided that private schools and designated

14             organizations receive only indications of the states

15             from which the national criminal history record

16             information was provided pursuant to section 302C-1;

17     (19)   The public library system on employees and prospective

18             employees whose positions place them in close

19             proximity to children as provided by section

20             302A-601.5;

6-ER-1274

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  (20)  The State or any of its branches, political

2        subdivisions, or agencies on applicants and employees

3        holding a position that has the same type of contact

4        with children, vulnerable adults, or persons committed

5        to a correctional facility as other public employees

6        who hold positions that are authorized by law to

7        require criminal history record checks as a condition

8        of employment as provided by section 78-2.7;

9  (21)  The department of health on licensed adult day care

10       center operators, employees, new employees,

11       subcontracted service providers and their employees,

12       and adult volunteers as provided by section 321-15.2;

13  (22) The department of human services on purchase of

14       service contracted and subcontracted service providers

15       and their employees serving clients of the adult

16       protective and community services branch, as provided

17       by section 346-97;

18  (23) The department of human services on foster grandparent

19       program, senior companion program, and respite

20       companion program participants as provided by section

21       346-97;

S.B. NO. 1230
                                                    S.D. 2
                                                    H.D. 1
                                                    C.D. 1

1    (24)  The department of human services on contracted and

2          subcontracted service providers and their current and

3          prospective employees that provide home and community-

4          based services under section 1915(c) of the Social

5          Security Act, title 42 United States Code section

6          1396n(c), or under any other applicable section or

7          sections of the Social Security Act for the purposes

8          of providing home and community-based services, as

9          provided by section 346-97;

10   (25)  The department of commerce and consumer affairs on

11         proposed directors and executive officers of a bank,

12         savings bank, savings and loan association, trust

13         company, and depository financial services loan

14         company as provided by section 412:3-201;

15   (26)  The department of commerce and consumer affairs on

16         proposed directors and executive officers of a

17         nondepository financial services loan company as

18         provided by section 412:3-301;

19   (27)  The department of commerce and consumer affairs on the

20         original chartering applicants and proposed executive

6-ER-1276

Page 68

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1            officers of a credit union as provided by section

2            412:10-103;

3    (28)  The department of commerce and consumer affairs on:

4         (A)  Each principal of every non-corporate applicant

5              for a money transmitter license;

6         (B)  Each person who upon approval of an application

7              by a corporate applicant for a money transmitter

8              license will be a principal of the licensee; and

9         (C)  Each person who upon approval of an application

10             requesting approval of a proposed change in

11             control of licensee will be a principal of the

12             licensee,

13            as provided by sections 489D-9 and 489D-15;

14    (29)  The department of commerce and consumer affairs on

15            applicants for licensure and persons licensed under

16            title 24;

17    (30)  The Hawaii health systems corporation on:

18         (A)  Employees;

19         (B)  Applicants seeking employment;

20         (C)  Current or prospective members of the corporation

21             board or regional system board; or

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

| | | |
|---|---|---|
| 1 | | (D)   Current or prospective volunteers, providers, or |
| 2 | | contractors, |
| 3 | | in any of the corporation's health facilities as |
| 4 | | provided by section 323F-5.5; |
| 5 | (31) | The department of commerce and consumer affairs on: |
| 6 | | (A)   An applicant for a mortgage loan originator |
| 7 | | license, or license renewal; and |
| 8 | | (B)   Each control person, executive officer, director, |
| 9 | | general partner, and managing member of an |
| 10 | | applicant for a mortgage loan originator company |
| 11 | | license or license renewal, |
| 12 | | as provided by chapter 454F; |
| 13 | (32) | The state public charter school commission or public |
| 14 | | charter schools on employees, teacher trainees, |
| 15 | | prospective employees, and prospective teacher |
| 16 | | trainees in any public charter school for any position |
| 17 | | that places them in close proximity to children, as |
| 18 | | provided in section 302D-33; |
| 19 | (33) | The counties on prospective employees who work with |
| 20 | | children, vulnerable adults, or senior citizens in |
| 21 | | community-based programs; |

6-ER-1278

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (34)    The counties on prospective employees for fire

2             department positions that involve contact with

3             children or vulnerable adults;

4     (35)    The counties on prospective employees for emergency

5             medical services positions that involve contact with

6             children or vulnerable adults;

7     (36)    The counties on prospective employees for emergency

8             management positions and community volunteers whose

9             responsibilities involve planning and executing

10            homeland security measures including viewing,

11            handling, and engaging in law enforcement or

12            classified meetings and assisting vulnerable citizens

13            during emergencies or crises;

14     (37)    The State and counties on employees, prospective

15            employees, volunteers, and contractors whose position

16            responsibilities require unescorted access to secured

17            areas and equipment related to a traffic management

18            center;

19     (38)    The State and counties on employees and prospective

20            employees whose positions involve the handling or use

21            of firearms for other than law enforcement purposes;

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (39)   The State and counties on current and prospective

2           systems analysts and others involved in an agency's

3           information technology operation whose position

4           responsibilities provide them with access to

5           proprietary, confidential, or sensitive information;

6    (40)   The department of commerce and consumer affairs on:

7           (A)   Applicants for real estate appraiser licensure or

8                 certification as provided by chapter 466K;

9           (B)   Each person who owns more than ten per cent of an

10                appraisal management company who is applying for

11                registration as an appraisal management company,

12                as provided by section 466L-7; and

13          (C)   Each of the controlling persons of an applicant

14                for registration as an appraisal management

15                company, as provided by section 466L-7;

16   (41)   The department of health or its designee on all

17          license applicants, licensees, employees, contractors,

18          and prospective employees of medical cannabis

19          dispensaries, and individuals permitted to enter and

20          remain in medical cannabis dispensary facilities as

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    provided under sections 329D-15(a)(4) and

2    329D-16(a)(3);

3    (42)  The department of commerce and consumer affairs on

4    applicants for nurse licensure or license renewal,

5    reactivation, or restoration as provided by sections

6    457-7, 457-8, 457-8.5, and 457-9;

7    (43)  The county police departments on applicants for

8    permits to acquire firearms pursuant to section 134-2

9    [and], on individuals registering their firearms

10    pursuant to section 134-3[,], and on applicants for

11    new or renewed licenses to carry a pistol or revolver

12    and ammunition pursuant to section 134-9;

13    (44)  The department of commerce and consumer affairs on:

14    (A)  Each of the controlling persons of the applicant

15    for licensure as an escrow depository, and each

16    of the officers, directors, and principals who

17    will be in charge of the escrow depository's

18    activities upon licensure; and

19    (B)  Each of the controlling persons of an applicant

20    for proposed change in control of an escrow

21    depository licensee, and each of the officers,

6-ER-1281

S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1          directors, and principals who will be in charge

2          of the licensee's activities upon approval of the

3          application,

4     as provided by chapter 449;

5     (45) The department of taxation on current or prospective

6          employees or contractors who have access to federal

7          tax information in order to comply with requirements

8          of federal law, regulation, or procedure, as provided

9          by section 231-1.6;

10    (46) The department of labor and industrial relations on

11         current or prospective employees or contractors who

12         have access to federal tax information in order to

13         comply with requirements of federal law, regulation,

14         or procedure, as provided by section 383-110;

15    (47) The department of human services on current or

16         prospective employees or contractors who have access

17         to federal tax information in order to comply with

18         requirements of federal law, regulation, or procedure,

19         as provided by section 346-2.5;

20    (48) The child support enforcement agency on current or

21         prospective employees, or contractors who have access

Page 74

# S.B. NO. <sub>1230</sub>
S.D. 2
H.D. 1
C.D. 1

1               to federal tax information in order to comply with

2               federal law, regulation, or procedure, as provided by

3               section 576D-11.5;

4    (49)   The department of the attorney general on current or

5               prospective employees or employees or agents of

6               contractors who have access to federal tax information

7               to comply with requirements of federal law,

8               regulation, or procedure, as provided by section 28-

9               17;

10  [[+]](50)[[+]]The department of commerce and consumer affairs on

11             each control person, executive officer, director,

12             general partner, and managing member of an installment

13             loan licensee, or an applicant for an installment loan

14             license, as provided in chapter 480J;

15  [[+]](51)[[+]]The University of Hawaii on current and prospective

16             employees and contractors whose duties include

17             ensuring the security of campus facilities and

18             persons; and

19  [[+]](52)[[+]]Any other organization, entity, or the State, its

20             branches, political subdivisions, or agencies as may

21             be authorized by state law."

Page 75

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    SECTION 13.  Act 30, Session Laws of Hawaii 2022, is

2  amended by amending section 5 to read as follows:

3    "SECTION 5.  This Act shall take effect upon its approval[,

4  provided that on June 30, 2025, section 2 of this Act shall be

5  repealed and section 134-3, Hawaii Revised Statutes, shall be

6  reenacted in the form in which it read on the day before the

7  effective date of this Act]."

8    SECTION 14.  Every provision in this Act and every

9  application of each provision in this Act is severable from each

10  other.  If any application of any provision in this Act to any

11  person or group of persons or circumstances is determined by any

12  court to be invalid, the remainder of this Act and the

13  application of the Act's provisions to all other persons and

14  circumstances shall not be affected.  All constitutionally valid

15  applications of this Act shall be severed from any applications

16  that a court determines to be invalid or unenforceable, leaving

17  the valid applications in force, because it is the legislature's

18  intent that all valid applications shall remain in force.

19    SECTION 15.  This Act shall be construed to be enforceable

20  up to but no further than the maximum possible extent consistent

21  with federal law and constitutional requirements.



**6-ER-1284**

Page 76

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       SECTION 16.  In codifying the new sections added by section

2   2 of this Act, the revisor of statutes shall substitute

3   appropriate section numbers for the letters used in designating

4   the new sections in this Act.

5       SECTION 17.  Statutory material to be repealed is bracketed

6   and stricken.  New statutory material is underscored.

7       SECTION 18.  This Act shall take effect on July 1, 2023;

8   provided that:

9       (1)   Sections 4 and 7 shall take effect on January 1, 2024;

10            and

11      (2)   The amendments made to section 846-2.7(b), Hawaii

12            Revised Statutes, by section 12 of this Act shall not

13            be repealed when section 28 of Act 278, Session Laws

14            of Hawaii 2022, takes effect on January 1, 2024.

6-ER-1285

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

**Report Title:**
Firearms; Permits; Licenses; Enforcement

**Description:**
Prohibits firearms in certain locations and premises.  Requires possession and disclosure of a license to carry.  Prohibits leaving an unsecured firearm in a vehicle unattended.  Prohibits consuming or being under the influence of alcohol, an intoxicating liquor, or a controlled substance when carrying a firearm.  Prohibits carrying or possessing firearms on certain private property without express authorization.  Requires annual reports from the department of the attorney general on carry licenses.  Amends the requirements for, and revocation of, firearms permits and licenses.  Amends the disqualification of persons from owning, possessing, or controlling a firearm. Expands the qualified immunity for health care providers who provide information on firearms applicants to include physician assistants and advanced practice registered nurses.  (CD1)

*The summary description of legislation appearing on this page is for informational purposes only and is not legislation or evidence of legislative intent.*

2023-2744 SB1230 CD1 SMA-2.docx



**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, RELATING TO FIREARMS.

**BEFORE THE:**
SENATE COMMITTEE ON PUBLIC SAFETY AND INTERGOVERNMENTAL AND
MILITARY AFFAIRS

| | | | |
|---|---|---|---|
| **DATE:** | Monday, February 6, 2023 | **TIME:** | 3:00 p.m. |
| **LOCATION:** | State Capitol, Room 225 | | |
| **TESTIFIER(S):** | Anne E. Lopez, Attorney General, or | | |
| | Dave Day, Special Assistant to the Attorney General | | |

Chair Wakai and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> the intent of this bill and provide the following comments.

The purpose of this bill is to amend chapter 134, part I, Hawaii Revised Statutes (HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive" locations, which is a misdemeanor, (2) require the Attorney General to publish an annual report on licenses to carry firearms, (3) prohibit issuing authorities from issuing permits, under section 134-2, to a person who is found to be lacking the essential character or temperament necessary to be entrusted with a firearm, (4) require issuing authorities to consider certain factors related to the risk of misuse by an applicant when issuing permits under section 134-2, (5) add a definition of the term "enclosed container" to section 134-5, (6) set forth requirements, qualifications, and procedures for an applicant seeking a license to carry a firearm, (7) require a license issued under part I of chapter 134, to be revoked under certain circumstances, and (8) require firearms to be kept in a locked container in a vehicle and place the container out of plain view when leaving the firearm in an unattended vehicle.

The Department <u>strongly supports the intent of this bill.</u> Gun violence represents an urgent public-health and public-safety issue, and S.B. No. 1230 would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing

EXHIBIT 2

**6-ER-1287**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 5

the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings.

In the wake of *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) (*Bruen*), many more people are applying for licenses to carry a firearm. Under *Bruen*, those licenses shall be granted unless there is an objective statutory basis requiring denial.  This will result in a significant increase in the presence of firearms in public, with more individuals carrying concealed weapons in Hawaiʻi than ever before in our State's history.  This presents serious challenges for public health and safety.  But even after the Supreme Court's decision in *Bruen*, there are still a number of important tools available to address the serious and increasing risks posed by firearms and gun violence.  States have the authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying of firearms in sensitive locations and adopting laws to ensure that those who carry firearms are "law-abiding, responsible citizens," *id*. at 2133, 2138.  The Department believes that S.B. No. 1230 would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights—and for these reasons strongly support the intent of the bill.

Consistent with its strong support for this bill, the Department also offers the following comments.

**6-ER-1288**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 5

First, the Committee may wish to consider adding a provision establishing that persons carrying a firearm in public must maintain their license on their person.  Such a provision could, in the view of the Department, help promote public safety by ensuring that those who carry firearms pursuant to a license comply with applicable registration and licensing requirements.  Similarly, the Committee may also wish to include a provision requiring persons stopped by law enforcement to inform a law enforcement officer when they are carrying a firearm concealed on their person.  Such a provision would be intended to protect the public, protect law-enforcement-officer safety, and promote situational awareness during investigatory stops.  A number of states have established similar requirements.  *Cf.* N.C. Gen. Stat. § 14-415.11(a) ("[Licensee] shall carry the permit together with valid identification whenever the person is carrying a concealed handgun, shall disclose to any law enforcement officer that the person holds a valid permit and is carrying a concealed handgun when approached or addressed by the officer, and shall display both the permit and the proper identification upon the request of a law enforcement officer."); Alaska Stat. Ann. § 11.61.220 (providing that a person must "immediately inform the peace officer of [firearm] possession" when stopped by law enforcement).

Possible wording to this effect—drawn from a similar bill, Senate Bill No. 1282—is reproduced below:

**§134-**  **Duty to maintain possession of license while carrying a firearm; duty to disclose; penalty.**  (a)  A person carrying a firearm pursuant to a license issued under section 134-9 or in accordance with title 18 United States Code section 926B or 926C shall have in the person's immediate possession:

(1)   The license issued under section 134-9 or credentials as required under title 18 United States Code section 926B or 926C; and

(2)   Documentary evidence that the firearm being carried is registered under this chapter,

**6-ER-1289**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 5

and shall, upon request from a law enforcement officer, present the license or credentials and evidence of registration.

(b)     When a person carrying a firearm, including but not limited to a person carrying a firearm pursuant to a license issued under section 134-9 or in accordance with title 18 United States Code section 926B or 926C, is stopped by a law enforcement officer or is a driver or passenger in a vehicle stopped by a law enforcement officer, the person carrying a firearm shall immediately disclose to the law enforcement officer that the person is carrying a firearm, and shall, upon request:

(1)     Identify the specific location of the firearm; and

(2)     Present to the law enforcement officer a license to carry a firearm issued under section 134-9 or credentials as required under title 18 United States Code section 926B or 926C.

(c)     Any person who violates this section shall be guilty of a petty misdemeanor.

Second, the Committee may wish to consider amending the bill to require that persons who carry a firearm in public pursuant to a license to maintain insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage arising out of the ownership, maintenance, operation, or use of a firearm carried in public.  The Department believes that such a policy could help to promote safe practices and responsible gun ownership and make it more likely that persons injured by firearms will receive compensation.  A similar provision was adopted by the New Jersey Legislature in December last year.

Possible language to this effect—again, drawn from Senate Bill No. 1282—is reproduced below:

§134-    **Mandatory insurance coverage.** (a)  Effective January 1, 2025, every person who carries a firearm in public pursuant to a license issued under section 134-9 shall maintain insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage sustained by any person arising out of the ownership,

**6-ER-1290**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 5 of 5

maintenance, operation, or use of a firearm carried in public.  Liability coverage shall be not less than $100,000 per person, with an aggregate limit of not less than $300,000 per occurrence.

(b)    Proof of insurance as required pursuant to subsection (a) shall, upon request, be produced by the person carrying a firearm in public within a reasonable amount of time following any injury, death, or property damage alleged to have been caused by the person carrying the firearm in public.  This requirement shall be satisfied by delivering a full and complete copy of the applicable policy or policies of insurance that meet the standards established by subsection (a) and that were in force at the time of the injury, death, or property damage.  Disclosure of policy information under this subsection shall not constitute an admission that the alleged injury, death, or property damage is subject to the policy.

Additionally, the Department notes that the term "handgun" used in page 17, lines 2, 7, 9, 13, 16, and 21, is not defined in chapter 134, HRS.  We recommend replacing it with a term that is already defined for chapter 134, such as "pistol or revolver" or define the term "handgun."  The Department also recommends replacing "firearm" on page 19, line 17, with "pistol or revolver" for consistency with subsection (a) of section 134-9.

Thank you again for the opportunity to provide comments on the bill.  As noted above, the Department strongly supports the intent of this bill.  The Department stands ready to assist this Committee with this measure at any time.

**6-ER-1291**



**WRITTEN TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 1, RELATING TO FIREARMS.

**BEFORE THE:**
SENATE COMMITTEE ON JUDICIARY

**DATE:**   Wednesday, March 1, 2023      **TIME:** 9:30 a.m.

**LOCATION:**   State Capitol, Room 016

**TESTIFIER(S):**   **WRITTEN TESTIMONY ONLY.**
(For more information, contact Dave Day,
 Special Assistant to the Attorney General, at (808) 586-1284)

Chair Rhoads and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> this bill. Gun violence represents an urgent public-health and public-safety issue, and Senate Bill No. 1230, S.D. 1, would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  This policy was preserved and supported across many different administrations and legislative sessions, and it played an important role in helping to reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings, or laws prohibiting carrying a firearm in public while intoxicated.

**6-ER-1292**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 4

        In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary licensing systems for carrying guns in public cannot be used going forward. The Supreme Court also stated that the Second Amendment requires that state law must provide clear and objective criteria for when licenses to carry firearms in public will be granted. Moreover, after *Bruen*, the Second Amendment requires that if an applicant meets the statutory criteria that have been established by the state legislature, then a license to carry a concealed weapon in public "shall" be granted.

        The Supreme Court's *Bruen* decision represents a very significant and disruptive change for our State. In the wake of *Bruen*, many more people are applying for licenses to carry a firearm. Under *Bruen*, those licenses shall be granted unless there is an objective statutory basis requiring denial. This will result in a significant increase in the presence of firearms in public, with more individuals carrying concealed weapons in Hawai'i than ever before in our State's history. This presents serious challenges for public health and safety. This bill is an effort to address these challenges in the post-*Bruen* legal landscape.

        Even after the Supreme Court's decision in *Bruen*, there are still a number of important tools available to address the serious and increasing risks posed by firearms and gun violence. States have the authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying of firearms in sensitive locations and adopting laws to ensure that those who carry firearms are "law-abiding, responsible citizens," *id.* at 2133, 2138.

        This bill would, among other things, amend chapter 134, part I, Hawaii Revised Statutes (HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive" locations or on the private property of another person without authorization; (2) require the Attorney General to publish an annual report on licenses to carry firearms; (3) prohibit issuing authorities from issuing permits, under section 134-2, HRS, to a person who is found to be lacking the essential character or temperament necessary to be entrusted with a firearm; (4) require issuing authorities to consider certain factors related to the risk of misuse by an applicant when issuing permits under section 134-2, HRS;

**6-ER-1293**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 4

(5) define the term "enclosed container" in section 134-1, HRS; (6) set forth
requirements, qualifications, and procedures for an applicant seeking a license to carry
a pistol or revolver; (7) require a license issued under part I of chapter 134, to be
revoked under certain circumstances; (8) require firearms to be kept in a locked
container and placed out of plain view when left in an unattended vehicle; (9) establish a
duty to maintain possession of a license while carrying a firearm; (10) require that when
a person carrying a firearm is stopped by a law enforcement officer or is a driver or
passenger in a vehicle stopped by a law enforcement officer, the person shall
immediately disclose to the law enforcement officer that the person is carrying a firearm
and, upon request, identify the specific location of the firearm and present to the law
enforcement officer a license or credentials to carry a firearm; (11) amend the definition
of "crime of violence" in section 134-1, HRS; (12) require a person carrying a firearm in
public pursuant to a license to maintain insurance coverage; and (13) clarify and amend
section 846-2.7, HRS, to provide that county police departments may conduct criminal
history record checks for licenses to carry a pistol or revolver and ammunition.

* * *

The Department notes that proposed section 134-C, HRS, in the bill would
require insurance coverage for those who engage in the licensed public carry of
firearms (Section 2, section 134-C, HRS, page 11, line 12, through page 12, line 12).  In
particular, section 134-C would require that, effective January 1, 2025, every person
who carries a firearm in public pursuant to a license maintain insurance coverage
insuring against loss resulting from liability imposed by law for bodily injury, death, and
property damage arising out of the ownership, maintenance, operation, or use of a
firearm carried in public.  The Department believes that firearms insurance represents a
promising policy tool that warrants strong consideration.  Several jurisdictions—
including the State of New Jersey and the City of San Jose—have adopted similar
measures in recent months.  However, the Department also recognizes that there are a
number of areas of uncertainty that presently exist in this area.  To that end, the
Committee could consider deleting the proposed section 134-C (page 11, line 12,
through page 12, line 12) from the bill and instead requesting the Legislative Reference

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 4

Bureau to conduct a study analyzing the use and effectiveness of systems of insurance and other financial responsibility requirements associated with the public carry of firearms.

*\* \* \**

As outlined above, the Department <u>strongly supports</u> this bill.  Thank you for your consideration of this important measure.



**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 2, RELATING TO FIREARMS.

**BEFORE THE:**
HOUSE COMMITTEE ON JUDICIARY AND HAWAIIAN AFFAIRS

**DATE:**       Tuesday, March 21, 2023       **TIME:** 2:00 p.m.
**LOCATION:**  State Capitol, Room 325
**TESTIFIER(S):**   Anne E. Lopez, Attorney General, or
                    Dave Day, Special Assistant to the Attorney General

Chair Tarnas and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> this bill. Gun violence represents an urgent public-health and public-safety issue, and Senate Bill No. 1230, S.D. 2, would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  This policy was preserved and supported across many different administrations and legislative sessions, and it played an important role in helping to reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings, or laws prohibiting carrying a firearm in public while intoxicated.

In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary

**6-ER-1296**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 4

licensing systems for carrying guns in public cannot be used going forward.  The
Supreme Court also stated that the Second Amendment requires that state law must
provide clear and objective criteria for when licenses to carry firearms in public will be
granted.  Moreover, after *Bruen*, the Second Amendment requires that if an applicant
meets the statutory criteria that have been established by the state legislature, then a
license to carry a concealed weapon in public "shall" be granted.

The Supreme Court's *Bruen* decision represents a very significant and disruptive
change for our State.  In the wake of *Bruen*, many more people are applying for licenses
to carry a firearm.  Under *Bruen*, those licenses shall be granted unless there is an
objective statutory basis requiring denial.  This will result in a significant increase in the
presence of firearms in public, with more individuals carrying concealed weapons in
Hawaiʻi than ever before in our State's history.  This presents serious challenges for
public health and safety.  This bill is an effort to address these challenges in the post-
*Bruen* legal landscape.

Even after the Supreme Court's decision in *Bruen*, there are still a number of
important tools available to address the serious and increasing risks posed by firearms
and gun violence.  States have the authority to enact "a 'variety' of gun regulations,"
*Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying
of firearms in sensitive locations and adopting laws to ensure that those who carry
firearms are "law-abiding, responsible citizens."  *Id*. at 2133, 2138.

This bill would, among other things, amend chapter 134, part I, Hawaii Revised
Statutes (HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive"
locations or on the private property of another person without authorization; (2) require
the Attorney General to publish an annual report on licenses to carry firearms; (3)
prohibit issuing authorities from issuing permits, under section 134-2, HRS, to a person
who is found to be lacking the essential character or temperament necessary to be
entrusted with a firearm; (4) require issuing authorities to consider certain factors related
to the risk of misuse by an applicant when issuing permits under section 134-2, HRS;
(5) define the term "enclosed container" in section 134-1, HRS; (6) set forth
requirements, qualifications, and procedures for an applicant seeking a license to carry

**6-ER-1297**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 4

a pistol or revolver; (7) require a license issued under part I of chapter 134, to be
revoked under certain circumstances; (8) require firearms to be kept in a locked
container and placed out of plain view when left in an unattended vehicle; (9) establish a
duty to maintain possession of a license while carrying a firearm; (10) require that when
a person carrying a firearm is stopped by a law enforcement officer or is a driver or
passenger in a vehicle stopped by a law enforcement officer, the person shall
immediately disclose to the law enforcement officer that the person is carrying a firearm
and, upon request, identify the specific location of the firearm and present to the law
enforcement officer a license or credentials to carry a firearm; (11) amend the definition
of "crime of violence" in section 134-1, HRS; (12) require a person carrying a firearm in
public pursuant to a license to maintain insurance coverage; (13) provide qualified
immunity to physician assistants and advanced practice registered nurses who provide
information on permit or license applicants; and (14) clarify and amend section 846-2.7,
HRS, to provide that county police departments may conduct criminal history record
checks for licenses to carry a pistol or revolver and ammunition.

\* \* \*

With respect to the scope of the prohibition set forth in section 134-A, the
Department supports the wording in the current draft that limits the applicability of this
section to "a person granted a license to carry a concealed firearm under section 134-9,
or in accordance with title 18 United States Code section 926B or 926C[.]"  (Page 7,
lines 5-7.)  The Department notes that an existing place-to-keep statute—section 134-
25, HRS—already makes it a class B felony to carry a firearm in public "[e]xcept as
provided in sections 134-5 and 134-9[.]"  Accordingly, a person licensed to carry a
firearm under section 134-9, HRS, who carries a firearm in a sensitive place as defined
in section 134-A would be subject to prosecution for a misdemeanor under section 134-
A(h), while a person who carries a firearm in a sensitive place *without* first obtaining a
license under section 134-9, HRS (unless covered by 134-5, HRS), would be subject to
prosecution for a class B felony under section 134-25.

By contrast, a different bill, House Bill No. 984, H.D. 2, would apply the sensitive-
places prohibition to all persons (*see* House Bill No. 984, H.D. 2, page 3, line 18), but

**6-ER-1298**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 4

would then apply an enhanced sentencing provision for persons "not licensed under
section 134-9[.]"  House Bill No. 984 H.D. 2, page 15, lines 6-11.  The Department
believes the approach adopted in Senate Bill No. 1230, S.D. 2, discussed above, would
be preferable to the approach adopted in House Bill No. 984, H.D. 2, because of the
uncertainty that might be created if the unlicensed carrying of a firearm in a sensitive
place were simultaneously both a misdemeanor and a class B felony.  The approach
taken in Senate Bill No.1230—limiting the scope of the misdemeanor offense to
licensees—also obviates the need for a separate enhanced sentencing provision.  *See*
House Bill No. 984, H.D. 2, page 15, lines 6-11.

* * *

As outlined above, the Department strongly supports this bill.  Thank you for your
consideration of this important measure.



**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 2, H.D. 1, RELATING TO FIREARMS.

**BEFORE THE:**
HOUSE COMMITTEE ON FINANCE

| | | | |
|---|---|---|---|
| **DATE:** | Wednesday, April 5, 2023 | **TIME:** | 2:00 p.m. |
| **LOCATION:** | State Capitol, Room 308 | | |
| **TESTIFIER(S):** | Anne E. Lopez, Attorney General, or | | |
| | David D. Day, Special Assistant to the Attorney General | | |

Chair Yamashita and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> this bill. Gun violence represents an urgent public-health and public-safety issue, and this bill would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  This policy was preserved and supported across many different administrations and legislative sessions, and it played an important role in helping to reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings, or laws prohibiting carrying a firearm in public while intoxicated.

In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary

**6-ER-1300**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 13

licensing systems for carrying guns in public cannot be used going forward.  The
Supreme Court stated that the Second Amendment requires that state law must provide
clear and objective criteria for when licenses to carry firearms in public will be granted.
Moreover, after *Bruen*, the Second Amendment requires that if an applicant meets the
statutory criteria that have been established by the state legislature, then a license to
carry a concealed weapon in public "shall" be granted.

The Supreme Court's *Bruen* decision represents a very significant and disruptive
change for our State.  In the wake of *Bruen*, many more people are applying for licenses
to carry a firearm.  Under *Bruen*, those licenses shall be granted unless there is an
objective statutory basis requiring denial.  This will result in a significant increase in the
presence of firearms in public, with more individuals carrying concealed weapons in
Hawaiʻi than ever before in our State's history.  This presents serious challenges for
public health and safety.  This bill is an effort to address these challenges in the post-
*Bruen* legal landscape.

Gun violence presents an urgent public-health issue, and even after the Supreme
Court's decision in *Bruen*, there are still a number of important tools available to address
the serious and increasing risks posed by firearms and gun violence.  States have the
authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh,
J., concurring), such as prohibiting the carrying of firearms in sensitive locations and
adopting laws to ensure that those who carry firearms are "law-abiding, responsible
citizens." *Id*. at 2133, 2138.

At a fundamental level, this bill is intended to do two things.

*First*, some existing provisions of chapter 134, HRS, can no longer be applied
going forward, and should be reframed to address the immediate effects of the
Supreme Court's decision in *Bruen*.  The bill would update and revise these provisions
to preserve the intent and purpose of chapter 134, HRS, to the extent possible.  For
example, the bill would clarify the legal standards and criteria that will be applied when a
person applies for a license to carry a firearm in public.

*Second*, the bill identifies policies that we believe would help address the
significant risks presented by the increased public carrying of firearms.

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 13

As explained in greater detail below, this bill would:

- Prohibit carrying or possessing a firearm in certain sensitive locations;

- Require a person stopped by a law enforcement officer to inform the law enforcement officer if they are carrying a concealed firearm;

- Prohibit leaving an unsecured firearm in a vehicle unattended;

- Prohibit people carrying a firearm from consuming alcohol, consuming a controlled substance, being under the influence of alcohol, or being under the influence of a controlled substance;

- Prohibit carrying or possessing a firearm on private property open to the public without authorization;

- Require the Department of the Attorney General to publish an annual report regarding licenses to carry firearms;

- Revise, clarify, and focus Hawaii's mental-health disqualification for firearms possession;

- Protect public safety by ensuring that firearms are not possessed or carried by those who lack the essential character or temperament necessary to be entrusted with a firearm;

- Add new education and training requirements for applicants for a license to carry a firearm in public;

- Clarify that when a permit to acquire a firearm or a license to carry a firearm is denied, the applicant should be given reasons for the denial and will have a right to a contested case hearing;

- Prohibit a person carrying a firearm in public pursuant to a license from carrying more than one firearm on their person at one time;

- Disqualify individuals who have been convicted of a violent misdemeanor crime or a crime relating to firearms from possessing firearms for 20 years following the conviction and maintain Hawaii's lifetime prohibition on possessing firearms for persons convicted of a felony; and

- Adjust certain regulatory fees relating to firearms.

* * *

**6-ER-1302**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 13

**The bill would prohibit carrying or possessing a firearm in certain sensitive locations (section 2, section 134-A, HRS, page 3, line 16, through page 10, line 9).**
These include the following locations:

- State and local government buildings;
- Schools, colleges, and universities, including research facilities;
- Public or private hospitals, mental health facilities, nursing homes, clinics, medical offices, urgent care facilities, and other places at which medical or health services are customarily provided;
- Bars and restaurants serving alcohol;
- Stadiums, movie theaters, concert halls, and places at which a professional, collegiate, high school, amateur, or student sporting event is being held;
- Prisons and jails;
- Public libraries, including including buildings, facilities, meeting rooms, spaces used for community programming, and adjacent grounds;
- Beaches, playgrounds, state monuments, and other state and county parks;
- Shelters, residential, and programmatic facilities operated by a government entity or charitable organization serving unhoused persons, victims of domestic violence, or children, including children involved in the juvenile justice system;
- Voting service centers and other polling places;
- Banks;
- Places, facilities, or vehicles used for public transportation or public transit, including buses, bus terminals (but not including bus stops located on public sidewalks), trains, rail stations, and airports;
- Amusement parks, aquariums, carnivals, circuses, fairs, museums, water parks, and zoos; and
- Any public gathering, public assembly, or special event conducted on property open to the public, including but not limited to a demonstration, march, rally, vigil, protest, picketing, or other public assembly, that requires the issuance of a permit from a federal, state, or local government and the sidewalk or street immediately adjacent to the public gathering, public assembly, or special event and within one

**6-ER-1303**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 5 of 13

> thousand feet from the public gathering, public assembly, or special event;
> provided that there are signs clearly and conspicuously posted at visible places
> along the perimeter of the public gathering, public assembly, or special event.

These provisions are intended to protect particularly sensitive locations from the
risks of gun violence.  These locations fall into three general categories: high-density
locations; locations with vulnerable populations; and locations of governmental activity.
Parking areas adjacent to the sensitive locations identified above are also deemed
sensitive locations where possessing firearms is prohibited.  These prohibitions do not
apply to law enforcement and authorized security guards, and are subject to various
affirmative defenses.

The U.S. Supreme Court has made clear that the Second Amendment does not
prohibit states from prohibiting carrying firearms in "sensitive locations."  The collection
of sensitive locations defined in the bill is in line with the set of sensitive locations that a
number of other states have identified in recent legislation.  Although many states
protect sensitive locations from firearms, Hawaiʻi currently has no such law in place.
We believe these provisions are legally appropriate and are grounded in longstanding
history and tradition—as required by the legal test the Supreme Court established in
*Bruen*.

This prohibition would not apply to law enforcement officers.

**The bill would require a person carrying a firearm in public pursuant to a
license to maintain possession of the license and proof that the firearm being
carried is properly registered (section 2, section 134-B(a), HRS, page 10, line 11,
through page 11, line 4).**  This provision is intended to promote public safety by
making sure that those who carry firearms pursuant to a license comply with registration
and licensing requirements.  Many states have established similar requirements for
licensees.

**The bill would require a person stopped by a law enforcement officer to
inform the law enforcement officer if they are carrying a concealed firearm
(section 2, section 134-B(b), HRS, page 11, lines 5-20).**  This provision is intended to
protect the public, protect law-enforcement-officer safety, promote situational

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 6 of 13

awareness during investigatory stops, and avoid the risks of escalation.  Many states
have already established similar public safety requirements.  *See, e.g.*, N.C. Gen. Stat.
§ 14-415.11(a) ("[Licensee] shall carry the permit together with valid identification
whenever the person is carrying a concealed handgun, shall disclose to any law
enforcement officer that the person holds a valid permit and is carrying a concealed
handgun when approached or addressed by the officer, and shall display both the
permit and the proper identification upon the request of a law enforcement officer.");
Alaska Stat. Ann. § 11.61.220 (requiring that a person must "immediately inform the
peace officer of [firearm] possession" if stopped).

   **The bill would prohibit leaving an unsecured firearm in a vehicle
unattended (section 2, section 134-C, HRS, page 12, lines 1-19).**  A significant
concern associated with the increased public carry of firearms is the increased risk of
theft of firearms from automobiles.  *See* Megan J. O'Toole et al., *Gun Thefts from Cars:
The Largest Source of Stolen Guns*, Everytown Research & Policy (May 9, 2022),
https://everytownresearch.org/gun-thefts-from-cars-the-largest-source-of-stolen-guns
(reporting, based on FBI crime data, that "gun thefts from cars are now the largest
source of stolen guns—one that continues rising in parallel with rising rates of gun sales
and violence").

   Under this provision, a person leaving a firearm inside a vehicle unattended
would be required to securely lock the firearm in a gun safe or other secure container
within the vehicle that is out of sight from outside of the vehicle.  This provision is similar
to laws that have been enacted in a number of other states, including New York,
California, and Connecticut.  *See, e.g.*, N.Y. Penal Law § 265.45; Conn. Gen. Stat. Ann.
§ 29-38g(a)(1) ("No person shall store or keep any pistol or revolver in any motor
vehicle that is unattended unless such pistol or revolver is in the trunk, a locked safe or
locked glove box."); Cal. Pen. Code § 25140 ("[A] person shall, when leaving a handgun
in an unattended vehicle, lock the handgun in the vehicle's trunk, lock the handgun in a
locked container and place the container out of plain view, lock the handgun in a locked
container that is permanently affixed to the vehicle's interior and not in plain view, or
lock the handgun in a locked toolbox or utility box.").

**6-ER-1305**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 7 of 13

This provision would not apply to law enforcement officers.

**The bill would prohibit people carrying a firearm from consuming alcohol, consuming a controlled substance, being under the influence of alcohol, or being under the influence of a controlled substance (section 2, section 134-D, HRS, page 12, line 20, through page 13, line 19).**  This provision is intended to combat the very serious public health risks that are presented when intoxicated persons carry or use firearms.  Research demonstrates that "people who abuse alcohol or illicit drugs are at an increased risk of committing acts of violence," and "[d]rug and alcohol use by domestic abusers has been strongly linked with the perpetration of fatal and non-fatal domestic violence."  D.W. Webster & J.S. Vernick, *Keeping Firearms from Drug and Alcohol Abusers*, 15 Injury Prevention 425 (2009); *see also* B.G. Carr et al., *A Randomised Controlled Feasibility Trial of Alcohol Consumption and the Ability to Appropriately Use a Firearm*, 15 Injury Prevention 409, 409 (2009) (concluding that "[i]ntoxicated subjects were less accurate, slower to fire in reaction time scenarios, and quicker to fire in scenarios requiring judgement relative to controls" and determining that "[a]n association between firearm injury and heavy alcohol consumption has been demonstrated").

Notably, "studies consistently reported that alcohol use was significantly associated with the possession of firearms, the ownership of firearms, and the use of firearm as a suicide means, and that the association was stronger for heavy alcohol use."  Charles C. Branas et al., *Alcohol Use and Firearm Violence*, 38 Epidemiologic Reviews 32, 43-44 (2016).  Moreover, "an overwhelming proportion (70%) of [intimate-partner] homicide perpetrators were under the influence of substances when the crime occurred, . . . and the use of alcohol is a strong predictor of intimate terrorism of women."  Darryl W. Roberts, *Intimate Partner Homicide: Relationships to Alcohol and Firearms*, 25 J. Contemp. Crim. Just. 67, 70 (2009).

The majority of states either prohibit carrying a firearm while under the influence of alcohol or a controlled substance, prohibit carrying a firearm while consuming alcohol or a controlled substance, or both.  Hawai'i currently has no law prohibiting either.

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 8 of 13

**The bill would prohibit carrying or possessing a firearm on private property open to the public without authorization (section 2, section 134-E, HRS, page 13, line 20, through page 15, line 8).**  The bill would create a "default rule" that a person may not carry firearms on other peoples' private property without express permission of the owner or manager of the property.  The purpose of this provision is to reduce the risks of gun violence on private property, to reduce the likelihood of armed confrontations, and to respect the right of private entities and property owners to decide for themselves whether to allow the carrying of firearms on their property.

This is similar to laws adopted in New York and New Jersey in 2022.  *See* N.Y. Penal Law § 265.01-d(1) ("[a] person is guilty of criminal possession of a weapon in a restricted location when such person possesses a firearm, rifle, or shotgun and enters into or remains on or in private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or has otherwise given express consent."); N.J. Stat. Ann. § 2C:58-4.6(a)(24) (prohibiting carrying a firearm onto "private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun"); *see also* Alaska Stat. § 11.61.220(a) (prohibiting possession of a firearm "that is concealed on the person within the residence of another person unless the person has first obtained the express permission of an adult residing there to bring a concealed deadly weapon within the residence").

Under this provision, an owner or operator of private property may signify authorization for others to carry a firearm on their property by providing written or verbal authorization, or by posting a conspicuous sign indicating that carrying or possessing a firearm is authorized.  To be subject to this provision, the private property must be "open to the public"—this includes places like malls, hotels, other retail establishments, etc.

Consistent with this provision, survey data indicates that most people would prefer that the default rule be that guns should not be carried on others' private property

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 9 of 13

without their express consent.  As one recent study found, "a substantial and statistically significant majority of Americans reject the default right to carry weapons onto other people's residences, unoccupied rural land, retail establishments and businesses."  Ian Ayres & Spurthi Jonnalagadda, *Guests with Guns: Public Support for "No Carry" Defaults on Private Land*, 48 Journal of Law, Medicine & Ethics 183, 189 (2020).

In light of the above, it appears that of the two possible alternatives for a rule like this—(1) a rule <u>allowing</u> the concealed carrying of firearms on others' private property unless the property owners take affirmative steps to expressly <u>deny</u> consent or (2) a rule that <u>prohibits</u> concealed carry of firearms on others' private property unless property owners expressly <u>grant</u> consent—most people would prefer option (2).  As noted above, a central purpose of this provision is to protect the important right of owners and operators of private property to decide for themselves whether they want to allow other people to carry firearms on their property.

**The bill would require the Department of the Attorney General to publish an annual report regarding licenses to carry firearms (section 2, section 134-F, HRS, page 15, line 9, through page 16, line 6).**

**The bill would establish the offense of failure to conceal a firearm by a concealed carry licensee (section 2, section 134-G, HRS, page 16, line 7, through page 17, line 2).**  The bill would make it a petty misdemeanor for a person to be carrying a firearm pursuant to a license issued under section 134-9 and to intentionally, knowingly, or recklessly cause alarm to another person by failing to conceal the firearm.

**The bill would revise, clarify, and focus Hawaii's mental-health disqualification for firearms possession (section 6, section 134-7(c), HRS, page 35, line 1, through page 36, line 13).**  Currently, section 134-7(c)(3), HRS, prohibits persons "diagnosed as having a significant behavioral, emotional, or mental disorders [sic] as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes" from possessing firearms. The bill would replace the current disqualifier provision with a new provision establishing that a person shall not possess a firearm if they have been "diagnosed with or treated for a medical, behavioral, psychological, emotional, or mental condition or disorder that

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 10 of 13

causes or is likely to cause impairment in judgment, perception, or impulse control to an
extent that presents an unreasonable risk to public health, safety, or welfare if the
person were in possession or control of a firearm or ammunition[.]"  The proposed
revision is intended to update the statutory language to create a more targeted provision
that focuses on reducing risks to public welfare.  Additionally, the term "organic brain
syndrome" is no longer commonly used.  *See, e.g.*, Donald W. Black, M.D. & Jon E.
Grant, M.D., M.P.H., J.D., *The Essential Companion to the Diagnostic and Statistical
Manual of Mental Disorders, Fifth Edition* 360 (2014).

  The wording of this provision is similar to an analogous Texas statute.  *See* Tex.
Gov't Code § 411.172(d) (disqualification for license to carry based on "diagnos[is] by a
licensed physician as suffering from a psychiatric disorder or condition that causes or is
likely to cause substantial impairment in judgment, mood, perception, impulse control,
or intellectual ability").

  **The bill would protect public safety by ensuring that firearms are not
possessed or carried by those who lack the essential character or temperament
necessary to be entrusted with a firearm (section 4, page 25, line 15, through
page 27, line 4, and section 7, page 41, lines 10-12; page 42, lines 13-15; and page
50, line 12, through page 51, line 15).**  The bill provides that "[i]n determining whether
a person lacks the essential character or temperament necessary to be entrusted with a
firearm, the issuing authority shall consider whether the person poses a danger of
causing a self-inflicted bodily injury or unlawful injury to another person, as evidenced
by:

  (1) Information from a healthcare provider indicating that the person has had
     suicidal or homicidal thoughts or tendencies within the preceding five years;

  (2) Statements by the person indicating dangerousness or violent animus
     towards one or more individuals or groups, including but not limited to
     groups based on race, color, national origin, ancestry, sex, gender identity,
     gender expression, sexual orientation, age, disability, religion, or other
     characteristic, of a nature or to an extent that would objectively indicate to a
     reasonable observer that it would not be in the interest of the public health,

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 11 of 13

> safety, or welfare for the person to own, possess, or control a firearm or
> ammunition; or
>
> (3)   Other information that would lead a reasonable, objective observer to
>       conclude that the person presents a danger to the community or intends or
>       is likely to use a firearm for an unlawful purpose or in an unlawful manner."

**The bill would add new education and training requirements for applicants
for a license to carry a firearm in public (section 7, section 134-9, HRS, page 47,
line 8, through page 48, line 21).**  This includes components on firearm safety, firearm
handling, shooting technique, safe storage, legal methods to transport firearms and
secure firearms in vehicles, laws governing places in which persons are prohibited from
carrying a firearm, firearm usage in low-light situations, situational awareness and
conflict management, and laws governing firearms, including information regarding the
circumstances in which deadly force may be used for self-defense or the defense of
another, mental health and mental health resources, as well as a live-fire shooting
exercise on a firing range, with a demonstration by the applicant of safe handling of
(and shooting proficiency with) each firearm that the applicant is applying to be licensed
to carry in public.  Increased education and training is expected to play an important role
in mitigating risks associated with the public carry of firearms.  This provision is intended
to align with recent reforms in several other states.

The bill would also adjust the duration of a license to carry a firearm from one
year to four years.  *See* Section 7, section 134-7(m), HRS, page 54, lines 2-3 (providing
that "[u]nless renewed, a concealed or unconcealed license shall expire four years from
the date of issue").

The bill also provides that a concealed carry license is valid throughout the State,
rather than being valid only in the particular county in which it was issued.  *See* Section
7, section 134-9(a), HRS, page 41, lines 1-4.

**The bill would clarify that when a permit to acquire a firearm or a license to
carry a firearm is denied, the applicant should be given reasons for the denial and
will have a right to a contested case hearing (section 4, section 134-2(i) and (k),
HRS, page 31, lines 14-19, and page 33, lines 3-14; section 7, section 134-9(j) and**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 12 of 13

**(k), HRS, page 52, line 1, through page 53, line 9).**  This is intended to ensure efficient and fair administrative processes for applicants.

      **The bill would prohibit a person carrying a firearm in public pursuant to a license under section 134-9 from carrying more than one firearm on their person at one time (section 7, section 134-9(q), HRS, page 55, lines 12-15).**  This provision is intended to address the risks to public health and safety associated with carrying multiple firearms in public without impairing the ability of a law-abiding, responsible individual to engage in effective self-defense with a firearm.

      **The bill would disqualify individuals who have been convicted of a non-felony crime relating to firearms from possessing firearms for 20 years following the conviction (section 6, section 134-7(h), HRS, page 39, line 18, through page 40, line 6).**  Under current law, felonies and certain other crimes result in an indefinite disqualification from possessing firearms.  The bill would modestly expand the set of crimes that trigger a disqualification from firearms possession and establish a category of firearms crimes that also, upon conviction, result in disqualification.  These provisions are intended to reduce the risks to public health and safety posed by armed individuals who have a track record of dangerous criminal conduct—rather than being responsible, law-abiding gun owners.  The core purpose is to ensure that those who carry guns are responsible, law-abiding gun owners.  With respect to misdemeanor convictions, the bill would revise the length of the firearms prohibition associated with such convictions from an indefinite disqualification to a 20-year disqualification.  In other states, qualifying misdemeanor convictions generally result in prohibitions on firearms possession that range from 3-20 years.  The bill would maintain Hawaii's indefinite prohibition on firearms possession by felons, which parallels federal law.

      **The bill would adjust certain regulatory fees relating to firearms (section 7, section 134-9(i), HRS, page 51, lines 16-21, and section 7, section 134-9(p), HRS, page 55, lines 5-11).**  The bill would provide for a nonrefundable fee of $150 for an application to carry a firearm pursuant to section 134-9, HRS, and would establish a nonrefundable fee of $50 for a license renewal application under section 134-9, HRS.  These revisions are warranted because the prior fee ($10 for a license issued under

**6-ER-1311**

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 13 of 13

section 134-9, HRS) was set decades ago and it should be adjusted to reflect inflation and increased costs, including costs associated with background checks and investigations and additional procedures established in this bill.  These fees shall be chargeable by and payable to the appropriate county and shall be used for expenses related to police services.

These fees are comparable to fees established in a number of other states.  *See, e.g.*, N.J. Stat. Ann. § 2C:58-4 (New Jersey: "[e]ach application [for a permit to carry handguns] shall be accompanied by a $200 application fee"); Mass. Gen. Laws Ann. ch. 140, § 131(i) (Massachusetts: "[t]he fee for the application [to carry a firearm] shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial"); Okla. Stat. tit. 21, §§ 1290.5 and 1290.12 (Oklahoma: $100 application fee and $85 renewal fee); Tenn. Code Ann. § 39-17-1351 (Tennessee: $100 application fee).

The bill would provide for a waiver of the fees upon a showing of financial hardship by the applicant.  Page 55, lines 9-11.

* * *

As outlined above, the Department strongly supports this bill.  The bill will help to maintain the longstanding public policy and legislative intent of chapter 134, HRS, amid a changing legal landscape following recent United States Supreme Court decisions.

Thank you for your consideration of this important measure.

THE SENATE
THIRTIETH LEGISLATURE, 2019
STATE OF HAWAII

# S.C.R. NO. 42

MAR 0 5 2019

# SENATE CONCURRENT RESOLUTION

URGING THE UNITED STATES CONGRESS TO PROPOSE AND ADOPT A
PROPOSED AMENDMENT TO THE UNITED STATES CONSTITUTION
PURSUANT TO ARTICLE V OF THE UNITED STATES CONSTITUTION TO
CLARIFY THE CONSTITUTIONAL RIGHT TO BEAR ARMS.

1     WHEREAS, the Second Amendment of the United States
2   Constitution reads: "A well regulated Militia, being necessary
3   to the security of a free State, the right of the people to keep
4   and bear Arms, shall not be infringed."; and
5
6     WHEREAS, this language has created considerable debate
7   regarding the constitutional provision's intended scope; and
8
9     WHEREAS, some believe that this constitutional provision
10   creates an individual constitutional right for citizens of the
11   United States; and
12
13     WHEREAS, under this "individual right theory", the United
14   States Constitution restricts legislative bodies from
15   prohibiting firearm possession, or at the very least, the Second
16   Amendment renders prohibitory and restrictive regulation
17   presumptively unconstitutional; and
18
19     WHEREAS, however, others contend that the prefatory
20   language of "a well regulated militia" indicates that the
21   framers of the United States Constitution intended only to
22   restrict the United States Congress from legislating away a
23   state's right to self-defense; and
24
25     WHEREAS, under this "collective rights theory", the Second
26   Amendment asserts that United States citizens do not have an
27   individual right to possess guns and that local, state, and
28   federal legislative bodies possess the authority to regulate
29   firearms without implicating a constitutional right; and
30

EXHIBIT 3

2019-0357 SCR SMA.doc                                                    1

Page 2

# S.C.R. NO. 42

1    WHEREAS, these two interpretations of the Second Amendment
2    have been considered and adopted by the United States Supreme
3    Court; and
4
5    WHEREAS, in 1939, the United States Supreme Court adopted a
6    collective rights approach under *United States v. Miller*, 307
7    U.S. 174 (1939) by determining that the United States Congress
8    could regulate a sawed-off shotgun that had moved in interstate
9    commerce under the National Firearms Act of 1934; and
10
11   WHEREAS, the *Miller* Court determined the evidence did not
12   suggest that the shotgun had a reasonable relationship to the
13   preservation or efficiency of a well-regulated militia; and
14
15   WHEREAS, the Court further held that the framers of the
16   United States Constitution included the Second Amendment to
17   ensure the effectiveness of the military; and
18
19   WHEREAS, the precedent established under *United States v.*
20   *Miller* stood for nearly seventy years until the United States
21   Supreme Court revisited the issue in 2008 under *District of*
22   *Columbia v. Heller*, 554 U.S. 570 (2008); and
23
24   WHEREAS, the plaintiff in *District of Columbia v. Heller*
25   challenged the constitutionality of the District of Columbia
26   handgun ban, which is a statute that stood for thirty-two years;
27   and
28
29   WHEREAS, the *Heller* Court held that the Second Amendment
30   established an individual right for United States citizens to
31   possess firearms and struck down the District of Columbia
32   handgun ban as a violation of that right; and
33
34   WHEREAS, the majority in *Heller* carved out *Miller* as an
35   exception to the general rule that United States citizens may
36   possess firearms by claiming that law abiding citizens cannot
37   use sawed-off shotguns for any law abiding purpose; and
38
39   WHEREAS, thus, the United States Supreme Court has
40   revitalized the discussion of whether the Second Amendment is a
41   collective or individual constitutional right; and
42

2019-0357 SCR SMA.doc                                              2



**6-ER-1314**

Page 3

# S.C.R. NO. 42

```
 1       WHEREAS, in light of the numerous tragic mass shootings at
 2  schools, work places, and public events, this body believes that
 3  it is necessary to repeal or amend the Second Amendment of the
 4  United States Constitution; now, therefore,
 5
 6       BE IT RESOLVED by the Senate of the Thirtieth Legislature
 7  of the State of Hawaii, Regular Session of 2019, the House of
 8  Representatives concurring, that the United States Congress is
 9  urged to propose and adopt a proposed amendment to the United
10  States Constitution pursuant to article V of the United States
11  Constitution to clarify the constitutional right to bear arms;
12  and
13
14       BE IT FURTHER RESOLVED that the United States Congress is
15  requested to consider and discuss whether the Second Amendment
16  of the United States Constitution should be repealed or amended
17  to clarify that the right to bear arms is a collective, rather
18  than individual, constitutional right; and
19
20       BE IT FURTHER RESOLVED that certified copies of this
21  Concurrent Resolution be transmitted to the President Pro
22  Tempore of the United States Senate, Speaker of the United
23  States House of Representatives, Members of the Hawaii
24  congressional delegation, and the Governor.
25
26
27
```

OFFERED BY: _____



Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION<br><br>Plaintiffs,<br><br>v.<br><br>ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII. MAUI COUNTY,<br><br>Defendants | Civil Action No. _____ |

EXHIBIT 4

**6-ER-1316**

## DECLARATION OF PLAINTIFF JASON WOLFORD

**COMES NOW**, Jason Wolford, and states as follows:

1. I am a natural person, an adult male, United States of America citizen, resident of the State of Hawaii, Maui county and I reside in Lahaina and am competent to provide this declaration. If called as a witness in this matter, I would provide the following testimony and I make this declaration based on personal knowledge, except where otherwise stated;

2. All statements made about me in the complaint in this action are true and accurate;

3. I am a member of the Hawaii firearms Coalition (HIFICO);

4. I am a law abiding citizen;

5. I am not legally prohibited from acquiring, owning, possessing, carrying[1] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

---

[1] Except as indicated here specifically with regard not to me, but to the places I intend to carry concealed with a permit and activities I intend to perform but for the enactment of SB1230.

**6-ER-1317**

6. I own several firearms, lawfully, and I am familiar with firearms and have the following training: USCCA Instructor- Training Counselor. Concealed Carry and Home Defense Fundamentals, Countering the Mass Shooter Threat, Emergency First Aid, Defensive Shooting Fundamentals (DSF) level 1, NRA Instructor-Pistol; Rifle; Shotgun; Chief Range Safety Officer, SASS Range Safety Officer; SABRE Civilian Pepper Spray Instructor;

7. I have a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to this declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and I have been, am and expect to be fully qualified to obtain another concealed carry permit and have not been, am not now, nor do I expect to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

8. I have in the past regularly frequented the following beaches listed below, and have, as a carry concealed license holder since 2022, and will in the future, own, possess, and carry a firearm with my concealed carry permit.  I have every intention and desire to continue to carry my personal firearm in and at all these locations in the future, and places like them, but I will

decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. I intend to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

A) I frequent Kahana Bay which is only a few hundred yards from where I live, and I have frequented it about once a month in the past while carrying a concealed weapon and my permit. Kahana bay is a moderately frequented beach and moderately populated, in front of condominiums and near residential areas. I will and would continue to frequent this beach in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Kaanapali Beach which is approximately 4 miles from my house and I have, in the past, frequented this beach about two times a month while carrying a concealed weapon and my carry concealed weapon permit. Kaanapali beach is a very populated large beach in front of many resorts. I will and would continue to frequent Kaanapali beach while armed with a concealed firearm and with my concealed firearm permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Kapalua beach which is only 1.7 miles from where I live, and I have frequented it about once every two months in the past while carrying a concealed weapon and my permit. Kapalua bay is a very populated and frequented beach with a mixture of locals and tourists. I will and would continue to frequent this beach in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

D) I frequent Napili bay which is about a mile or so from where I live, and I have frequented it about once every two months in the past while carrying a concealed weapon and my permit. Napili bay is a moderately frequented beach and moderately populated, in front of condominiums and near residential areas. I will and would continue to frequent this beach in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

E) I frequent Launipoko Beach park which is about nine miles from where I live, and I have frequented it about twice a year and for special occasions in the past while carrying a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach in the future

armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

9. I have in the past regularly frequented the following areas which are listed as a "park", has in the past, as a carry concealed license holder since 2022, carried concealed with his permit in these areas listed herein, and fully intends to in the future, own, possess, and carry a firearm with my concealed carry permit in these locations. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, with a permit, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230;

A) I frequent Launipoko Beach park which is about nine miles from where I live, and I have frequented it about twice a year and for special occasions in the past while carrying a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution. I go to this park, beach park, for water sports and for special occasions;

B) I frequent Kahekili Beach park which is about three miles from where I live, and I have frequented it about once a month and for exercise, family time, special occasions and water sports in the past while carrying a concealed weapon and my permit. Kahekili Beach park is a very popular and busy park and beach, with a boardwalk and behind local resorts. I will and would continue to frequent this beach in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

10. I have in the past regularly frequented the following areas which are, according to information and belief, restaurants that serves alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, and I have, in the past carried a concealed arm with my permit in the locations referenced herein, and I intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and locations like them. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, in the future but I will decline to do so because of the credible fear of

arrest and prosecution after July 1, 2023, the effective date of SB1230;

A) I frequent Monkey Pod restaurant in Kaanapali about once every three months, and I have frequented it in the past, about once every three months, while carrying a concealed weapon and my permit. Monkey pod, I believe, sells liquor, though I do not consume any while carrying a weapon. I will and would continue to frequent this restaurant in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Ruth's Chris restaurant about once a year for special occasions, and I have frequented it in the past, while carrying a concealed weapon and my permit. Ruth's Chris, I believe sells liquor, though I do not consume any while carrying a weapon. I will and would continue to frequent this restaurant in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Miko's restaurant in Wailuku about every two months, and I have frequented it in the past, while carrying a concealed weapon and my permit. Miko's, I believe, sells liquor, though I do not

consume any while carrying a weapon. I will and would continue to
frequent this restaurant in the future armed with a concealed firearm
and with my concealed carry permit but for the enactment of SB1230
and the likely criminal prosecution;


11. I have in the past regularly frequented the following areas which are,
according to information and belief, banks or financial institutions as defined
in section 211D-1, and have in the past carried a concealed arm with my
permit and intend to, as a carry concealed license holder since 2022, in the
future, own, possess, and carry a firearm with my concealed carry permit in
these locations and locations like them. I have every intention and desire to
continue to carry my personal firearm and permit in and at all these
locations, and locations like them, in the future but I will decline to do so
because of the credible fear of arrest and prosecution after July1, 2023, the
effective date of SB1230;

A) I have regularly in the past about two times per month gone to First
Hawaiian Bank, including specifically, but not limited to the branches at
Kahana, Lahaina and Kahului including the parking lot and adjacent
areas. I will and would continue to frequent this bank in the future
armed with a concealed firearm and with my concealed carry permit but

for the enactment of SB1230 and the likely criminal prosecution;

B) I have regularly in the past about two times per month gone to Bank of Hawaii, including specifically, but not limited to the branches at Kahana, Lahaina and Kahului including the parking lot and adjacent areas. I will and would continue to frequent this bank in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

12. I have in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property owners to "opt-in" and post signage allowing the exercise of the Second Amendment right to carry an arm for self- defense or in case of confrontation, and I have carried a concealed arm with a permit in the past and I intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and similar locations. I have every intention and desire to continue to carry my personal firearm and permit in and at all these locations, and locations like them, in the future but I will decline to do so because of the credible fear of arrest and prosecution

after July1, 2023, the effective date of SB1230;

A) I have regularly in the past about two times per week gone to one of
these locations- Safeway, Island Grocery, Foodland Farms, all in
Lahaina and Costco in Kahului, ABC stores in Honokowai, Whaler's
Village in Kahana, Circle K in Maalaea, Ace Hardware, Ross Stores,
Zippy's and Chick-Fil-A, including the parking lot and adjacent areas,
and I note that Ace Hardware and Ross Stores share a parking lot with
the Maui County Satellite DMV at the Lahaina gateway Center, with a
concealed weapon and my concealed carry permit. I will and would
continue to frequent these locations in the future armed with a
concealed firearm and with my concealed carry permit but for the
enactment of SB1230 and the likely criminal prosecution;

13. I have in the past regularly frequented adjacent properties and parking lots
of all of the above locations with a firearm concealed with my concealed
carry permit and fully intend to do so again, but for the enactment of
SB1230. Additionally, I have in the past regularly frequented adjacent
properties and parking lots while not going to any of the above locations,
such as a beach or park or bank or restaurant, but the other location shares an
adjacent property or parking lot, and I have carried a concealed weapon with

my concealed carry permit and I fully intend to do so again in the future, but for the enactment of SB1230.

**FURTHER, DECLARANT SAYETH NAUGHT**.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2022.

Jason Wolford



The Licensee identified on the front of this card is hereby authorized to carry the following firearm therefor concealed on the person in Maui County:

Make: _____

Model: _____   Caliber: _____

Color: _____   Serial No. _____

- Upon contact with a Law Enforcement Officer, you must immediately announce that you are a CCW licensee and that you are ARMED.

- This license fixed to ... your possession while carrying a concealed firearm and must be presented to a law enforcement Officer upon request.

- This license does not authorize you to carry or possess any weapon prohibited by State and Federal law.

- This license does not authorize you to carry your firearm in buildings or establishments that prohibit weapons on the premises.

- This license must be presented with an official form of photo identification (State issued Driver's License, State Identification Card, Military ID, or U.S. Passport).

6-ER-1329

Case 1:23-cv-00265-LEK-WRP  Document 1-5  Filed 06/23/23  Page 1 of 1  PageID.192

| | |
|---|---|
| A-101 | B-106A |
| B-106B | A-201/A-202 |
| D-101 | E-108 |
| B-109 | B-110 |
| B-108 | B-114A-B117 |
| C-101 | A-104 |
| C-104 | E-104 |
| E-106 | B-104 |
| E-112 | B-114 |
| F-101C/F-101D | E-111 |
| B-112 | B-119 |
| B-113 | E-101 |
| B-107 | F-101A/F-101B |
| B-105A | E-107 |

| | |
|---|---|
| ACE Hardware | Maui Bubble Tea |
| Blue Hawaii Spa & Reflexology | Maui Powerhouse Gym |
| Central Pacific Bank | Minit Medical Urgent Care |
| Compass | Moku Roots |
| County of Maui DMVL | O'Reilly Auto Parts |
| Da Shrimp Hale | Pieology Pizzeria |
| Foodland Farms | Rainbow Dialysis Lahaina |
| Galun Sports Chiropractic | Ross Dress for Less |
| Island Cream Co. | Spectrum |
| Kihei Caffe Lahaina | Supercuts |
| Khloella's Garden | Teddy's Bigger Burgers |
| Local Motion | The Vitamin Shoppe |
| Mahina Maui | T-Mobile |
| Management Office | Verizon |



2ⁿᵈ Level

EXHIBIT 5

HONOAPIILANI HWY

KEAWE ST

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. _____ |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII. MAUI COUNTY, | ) ) ) ) ) | |
| Defendants | ) ) ) | |

EXHIBIT 6

## DECLARATION OF PLAINTIFF ALISON WOLFORD

**COMES NOW**, Alison Wolford, and states as follows:

1. I am a natural person, an adult female, United States of America citizen, resident of the State of Hawaii, Maui County and I reside in Lahaina and am competent to provide this declaration. If called as a witness in this matter, I would provide the following testimony and I make this declaration based on personal knowledge, except where otherwise stated;

2. All statements made about me in the complaint in this action are true and accurate;

3. I am a member of the Hawaii firearms Coalition (HIFICO);

4. I am a law abiding citizen;

5. I am not legally prohibited from acquiring, owning, possessing, carrying[1] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

_____

[1] Except as indicated here specifically with regard not to me, but to the places I intend to carry concealed with a permit and activities I intend to perform but for the enactment of SB1230.

6. I own several firearms, lawfully, and I am familiar with firearms and have the following training: NRA Instructor-Pistol; Rifle; Shotgun; CCW; Chief Range Safety Officer, NRA Refuse to be a Victim; NRA Range Development USCCA Instructor-Concealed Carry Home Defense; Women's Firearms; Training Counselor, USCCA RSO, SASS RSO;

7. I have a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to this declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and I have been, am and expect to be fully qualified to obtain another concealed carry permit and have not been, am not now, nor do I expect to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

8. I have in the past regularly frequented the following beaches, parking lots and adjacent areas, listed below, and have, as a carry concealed license holder since 2022, and will in the future, own, possess, and carry a firearm with my concealed carry permit. I have every intention and desire to continue to carry my personal firearm in and at all these locations in the future, and places like them, but I will decline to do so because of the

credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. I intend to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

A) I frequent Kahana Bay, and the adjacent area and parking lot, which is only a few hundred yards from where I live, and I have frequented it about once a month in the past while carrying a concealed weapon and my permit. Kahana bay is a moderately frequented beach and moderately populated, in front of condominiums and near residential areas. I will and would continue to frequent this beach, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Kaanapali Beach, and the adjacent area and parking lot, which is approximately 4 miles from my house and I have, in the past, frequented this beach about two times a month while carrying a concealed weapon and my carry concealed weapon permit. Kaanapali beach is a very populated large beach in front of many resorts. I will and would continue to frequent Kaanapali beach, the adjacent area and parking lot, while armed with a concealed firearm

and with my concealed firearm permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Kapalua beach, adjacent area and parking lot, which is only a 1.7 miles from where I live, and I have frequented it about once every two months in the past while carrying a concealed weapon and my permit. Kapalua bay is a very populated and frequented beach with a mixture of locals and tourists. I will and would continue to frequent this beach, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

D) I frequent Napili bay, adjacent areas and parking lot, which is about a mile or so from where I live, and I have frequented it about once every two months in the past while carrying a concealed weapon and my permit. Napili bay is a moderately frequented beach and moderately populated, in front of condominiums and near residential areas. I will and would continue to frequent this beach, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

E) I frequent Launipoko Beach park, adjacent areas and parking lot, which is about nine miles from where I live, and I have frequented it about twice a year and for special occasions in the past while carrying a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

9. I have in the past regularly frequented the following areas which are listed as a "park", has in the past, as a carry concealed license holder since 2022, carried concealed with his permit in these areas listed herein, and fully intends to in the future, own, possess, and carry a firearm with my concealed carry permit in these locations. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, with a permit, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230;

A) I frequent Launipoko Beach park, adjacent area and parking lot, which is about nine miles from where I live, and I have frequented it about twice a year and for special occasions in the past while carrying

a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution. I go to this park, beach park, for water sports and for special occasions;

B) I frequent Kahekili Beach park, adjacent areas and parking lot, which is about three miles from where I live, and I have frequented it about once a month and for exercise, family time, special occasions and water sports in the past while carrying a concealed weapon and my permit. Kahekili Beach park is a very popular and busy park and beach, with a boardwalk and behind local resorts. I will and would continue to frequent this beach, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

10. I have in the past regularly frequented the following areas which are, according to information and belief, restaurants that serves alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, and I have, in the past carried a concealed arm with my permit

in the locations referenced herein, and I intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and locations like them. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, in the future but I will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230;

A) I frequent the Monkey Pod, adjacent areas and parking lot, restaurant in Kaanapali about once every three months, and I have frequented it in the past, about once every three months, while carrying a concealed weapon and my permit. Monkey pod, I believe, sells liquor, though I do not consume any while carrying a weapon. I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Ruth's Chris restaurant and adjacent area and parking lot about once a year for special occasions, and I have frequented it in the past, while carrying a concealed weapon and my permit. Ruth's Chris, I believe, sells liquor, though I do not consume any while

carrying a weapon.  I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Miko's restaurant, adjacent area and parking lot in Wailuku about every two months, and I have frequented it in the past, while carrying a concealed weapon and my permit. Miko's, I believe, sells liquor, though I do not consume any while carrying a weapon.  I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

11. I have in the past regularly frequented the following areas which are, according to information and belief, banks or financial institutions as defined in section 211D-1, and has in the past carried a concealed arm with my permit and intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and locations like them.  I have every intention and desire to continue to carry my personal firearm and permit in and at all these locations, and locations like them,

in the future but I will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230;

A) I have regularly in the past about two times per month gone to First Hawaiian Bank, adjacent areas and parking lot, including specifically, but not limited to the branches at Kahana, Lahaina and Kahului including the parking lot and adjacent areas. I will and would continue to frequent this bank, adjacent area and parking lot in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I have regularly in the past about two times per month gone to Bank of Hawaii, and adjacent area and parking lot, including specifically, but not limited to the branches at Kahana, Lahaina and Kahului including the parking lot and adjacent areas. I will and would continue to frequent this bank, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

12. I have in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property

owners to "opt-in" and post signage allowing the exercise of the Second
Amendment right to carry an arm for self- defense or in case of
confrontation, and I have carried a concealed arm with a permit in the
past and I intend to, as a carry concealed license holder since 2022, in
the future, own, possess, and carry a firearm with my concealed carry
permit in these locations and similar locations. I have every intention
and desire to continue to carry my personal firearm and permit in and at
all these locations, and locations like them, in the future but I will
decline to do so because of the credible fear of arrest and prosecution
after July1, 2023, the effective date of SB1230;

A) I have regularly in the past about two times per week gone to one of
these locations, including adjacent areas and parking lots- Safeway,
Island Grocery, Foodland Farms, all in Lahaina and Costco in Kahului,
ABC stores in Honokowai, Whaler's Village in Kahana, Circle K in
Maalaea, Ace Hardware, Ross Stores, Zippy's and Chick-Fil-A,
including the parking lot and adjacent areas, and I note that Ross Stores
and Ace Hardware shares a parking lot with the Maui County satellite
DMV office at the Lahaina gateway Center, with a concealed weapon
and my concealed carry permit. I will and would continue to frequent
these locations in the future armed with a concealed firearm and with

my concealed carry permit but for the enactment of SB1230 and the

likely criminal prosecution;

12. I have in the past regularly frequented adjacent properties and parking lots

of all of the above locations with a firearm concealed with my concealed

carry permit and fully intend to do so again, but for the enactment of

SB1230.  Additionally, I have in the past regularly frequented adjacent

properties and parking lots while not going to any of the above locations,

such as a beach or park or bank or restaurant, but the other location shares an

adjacent property or parking lot, and I have carried a concealed weapon with

my concealed carry permit and I fully intend to do so again in the future, but

for the enactment of SB1230.

**FURTHER, DECLARANT SAYETH NAUGHT**.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2023.

Alison Wolford





| HAIR | EYES | HEIGHT | WEIGHT | AGE |
|------|------|--------|--------|-----|
|      |      |        |        |     |

Address

Lahaina, HI

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. _____ ) ) |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII. MAUI COUNTY, | ) ) ) ) ) |
| Defendants | ) ) |
| _____ | ) |

EXHIBIT 7

**6-ER-1345**

## DECLARATION OF PLAINTIFF ATOM KASPRZYCKI

**COMES NOW**, Atom Kasprzycki, and states as follows:

1. I am a natural person, an adult male, United States of America citizen, resident of the State of Hawaii, Maui county, and I reside in Lahaina and am competent to provide this declaration. If called as a witness in this matter, I would provide the following testimony and I make this declaration based on personal knowledge, except where otherwise stated;

2. All statements made about me in the complaint in this action are true and accurate;

3. I am a member of the Hawaii firearms Coalition (HIFICO);

4. I am a law abiding citizen;

5. I am not legally prohibited from acquiring, owning, possessing, carrying[1] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

6. I own several firearms, lawfully, and I am familiar with firearms and have the following training: NRA Basic Pistol Safety Course, Certificate of

---

[1] Except as indicated here specifically with regard not to me, but to the places I intend to carry concealed with a permit and activities I intend to perform but for the enactment of SB1230.

Completion, Concealed Carry Handgun Course, North Carolina, Nebraska Hunter's Education;

7. I have a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to this declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and I have been, am and expect to be fully qualified to obtain another concealed carry permit and have not been, am not now, nor do I expect to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

8. I have in the past regularly frequented the following beaches, parking lots and adjacent areas, listed below, and have, as a carry concealed license holder while armed since 2022, and will in the future, own, possess, and carry a firearm with my concealed carry permit. I have every intention and desire to continue to carry my personal firearm in and at all these locations in the future, and places like them, but I will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. I intend to and will use my carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

A) I frequent Kaopala Beach, and the adjacent area and parking lot, across the street from where I live, and I have frequented it about once to six times a month in the past while carrying a concealed weapon and my permit. I will and would continue to frequent this beach, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Kaanapali Beach, and the adjacent area and parking lot, and I have, in the past, frequented this beach about two times a month to go to restaurants for breakfast and or dinner, and or pick up food, and two to four times a year and also to eat, shop and or swim while carrying a concealed weapon and my carry concealed weapon permit. Kaanapali beach is a very populated large beach in front of many resorts. I will and would continue to frequent Kaanapali beach, the adjacent area and parking lot, while armed with a concealed firearm and with my concealed firearm permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Launipoko Beach park, adjacent areas and parking lot, and I have frequented it about once a year and for special occasions in the past while carrying a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

D) I frequent DT Fleming beach/park, adjacent areas and parking lot, and I frequent it two to six times a year for events and swimming and I have, in the past, carried a concealed weapon and my concealed carry permit. I will and would continue to frequent this beach, adjacent areas and parking lot, in the future, armed and with my concealed carry permit, but for the enactment of SB1230 and the likely criminal prosecution. This park has a county or state government lifeguard building on the grounds. DT Fleming is both a beach and a park.

9. I have in the past regularly frequented the following areas which are listed as a "park", have in the past, as a carry concealed license holder since 2022, carried concealed with my permit in these areas listed

herein, and fully intends to in the future, own, possess, and carry a firearm with my concealed carry permit in these locations. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, with a permit, in the future but will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230;

A) I frequent Launipoko Beach park, adjacent area and parking lot, and I have frequented it about once a year and for special occasions in the past while carrying a concealed weapon and my permit. Launipoko Beach park is a very popular and populated beach. I will and would continue to frequent this beach, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Lahaina Banyan Court Park, adjacent areas and parking lot, and I have frequented it about six to twenty-four times a year to access restaurants and a cinema, and also go with my office team, in the past while carrying a concealed weapon and my permit. I will and would continue to frequent this park, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Lahaina Aquatic Center, which is a county facility and park, adjacent areas and parking lot, and I have frequented it about two to six times a year to meet family members, visit friends, and swim, in the past while carrying a concealed weapon and my permit. I will and would continue to frequent this park, adjacent areas and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

10. I have in the past regularly frequented the following areas which are, according to information and belief, restaurants that serve alcohol or intoxicating liquor as defined in section 281-1 for consumption on the

premises, and I have, in the past carried a concealed firearm with my permit in the locations referenced herein, and I intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and locations like them. I have every intention and desire to continue to carry my personal firearm in and at all these locations, and locations like them, in the future but I will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230;

A) I frequent the Alaloa Lounge, adjacent areas and parking lot, restaurant in Kapalua about once to three times a year, and I have frequented it in the past, while carrying a concealed weapon and my permit. Alaloa Lounge, I believe, sells liquor, though I do not consume any while carrying a weapon. I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I frequent Sansei restaurant and adjacent area and parking lot in Lahaina about four to six times a year, and I have frequented it in the past, while carrying a concealed weapon and my permit. Sansei, I believe, sells liquor, though I do not consume any while carrying a weapon. I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

C) I frequent Kihei Cafe Lahaina restaurant, adjacent area and parking lot, in Lahaina, about one to two times a month, and I have frequented it in the past, while carrying a concealed weapon and my permit. This restaurant shares a parking lot with a bank, Spectrum

(my internet service provider), and a medical facility, Minit Medical Urgent Care, and the Maui County Department of Motor Vehicles).   I will and would continue to frequent this restaurant, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

11. I have in the past regularly frequented the following areas which are, according to information and belief, banks or financial institutions as defined in section 211D-1, and has in the past carried a concealed arm with my permit and intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry permit in these locations and locations like them.   I have every intention and desire to continue to carry my personal firearm and permit in and at all these locations, and locations like them,  in the future but I will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230;

A) I have regularly in the past about two times per month gone to First Hawaiian Bank, adjacent areas and parking lot, including specifically, but not limited to the branches at Kahana, four to six times a year, Lahaina, twenty-four to thirty-six times a year, and Kahului, four to six times a year, including the parking lot and adjacent areas.   I will and would continue to frequent this bank, adjacent area and parking lot in

the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

B) I have regularly in the past about two times per month gone to Bank of Hawaii, and adjacent area and parking lot, including specifically, but not limited to the branches at Kahana, two to six times a year, Lahaina branch two to six times a year including the parking lot and adjacent areas. I will and would continue to frequent this bank, adjacent area and parking lot, in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

12. I have in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property owners to "opt-in" and post signage allowing the exercise of the Second Amendment right to carry an arm for self- defense or in case of confrontation, and I have carried a concealed arm with a permit in the past and I intend to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with my concealed carry

permit in these locations and similar locations. I have every intention and desire to continue to carry my personal firearm and permit in and at all these locations, and locations like them, in the future but I will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230;

A) I have regularly in the past about two times per week gone to one of these locations, including adjacent areas and parking lots- Napili market, one to two times a week, Times Supermarket, one to four times a year, Safeway Lahaina three to six times a year, Ace Hardware one to two times a month, HPM Building Supply Lahaina one to three times a year, Lowes four to twelve times a year, Maui Laminates two to six times a year, Whaler's General store, six to twelve times a year which also shares a parking lot with both of my banks, Liberty Dialysis and Maui Brewing Company, Lahaina Gateway Center one to three times a month, as well as Ace Hardware, Kihei Café, Spectrum and all of the entities at Lahaina Gateway Center share a parking lot with the local DMV (Department of Motor Vehicles (see, https://www.mauicounty.gov/2125/DMV-Wait-Times, last accessed June 21, 2023, the DMV address is Lahaina Gateway Center 335 Keawe Street, Suite 209, Lahaina, Maui, HI 96761), including the

parking lot and adjacent areas, with a concealed weapon and my concealed carry permit. I will and would continue to frequent these locations in the future armed with a concealed firearm and with my concealed carry permit but for the enactment of SB1230 and the likely criminal prosecution;

13. I have in the past regularly frequented adjacent properties and parking lots of all of the above locations with a firearm concealed with my concealed carry permit and fully intend to do so again, but for the enactment of SB1230. Additionally, I have in the past regularly frequented adjacent properties and parking lots while not going to any of the above locations, such as a beach or park or bank or restaurant, but the other location shares an adjacent property or parking lot, and I have carried a concealed weapon with my concealed carry permit and I fully intend to do so again the future, but for the enactment of SB1230.

14. I have a private business and am self-employed and I have a team that works for me. I own my own business property. I have many clients. I do not want to post a sign that tells the public that they are authorized to carry a concealed weapon with a permit on my property. I do not want to post a sign that tells the public that they are not authorized to carry a concealed weapon with a permit on my property. I do not wish to be compelled to

6-ER-1354

speak, through the posting of signs related to the exercise of constitutional rights, including specifically the Second Amendment and the carrying of arms, that I either support or oppose the carrying of arms. I wish to remain neutral and I wish that my property remain neutral.

**FURTHER, DECLARANT SAYETH NAUGHT**.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2023.

Atom Kasprzycki

## LICENSE TO CARRY CONCEALED FIREARM
### IN MAUI COUNTY ONLY

License No. _____  Issued **Sept.** , 20**22**

**KASPRZYCKI, Atom**

whose photograph, thumbprint, and description are on the reverse hereof, is hereby granted a license pursuant to Section 134-9 HRS, to carry the following firearm:

Caliber: _____   Manufacturer: _____

Serial No.: _____   Type: _____

Chief of Police

This license becomes VOID at the expiration of one year from issue date.

## LICENSE TO CARRY CONCEALED FIREARM
### IN MAUI COUNTY ONLY

License No. _____  Issued **Sept.** , 20 **22**

**KASPRZYCKI, Atom**

whose photograph, thumbprint, and description are on the reverse hereof, is hereby granted a license pursuant to Section 134-9 HRS, to carry the following firearm:

Caliber: _____   Manufacturer: _____

Serial No.: _____   Type: _____

Chief of Police

This license becomes VOID at the expiration of one year from issue date.

**6-ER-1356**

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. _____ |
| v. | ) ) | |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII. MAUI COUNTY, | ) ) ) ) ) | |
| Defendants | ) ) ) | |

EXHIBIT 8

**6-ER-1357**

## DECLARATION OF ANDREW NAMIKI ROBERTS ON BEHALF OF HAWAII FIREARMS COALITION

**COMES NOW**, Andrew Namiki Roberts, and states as follows:

1. I am a natural person, an adult male, legal permanent resident of the United States of America, resident of the State of Hawaii, Honolulu county and I reside in Honolulu and am competent to provide this declaration. If called as a witness in this matter, I would provide the following testimony and I make this declaration based on personal knowledge, except where otherwise stated;

2. All statements made about me, and the Hawaii Firearms Coalition (HIFICO) in the complaint in this action are true and accurate;

3. I am a member of the Hawaii firearms Coalition (HIFICO);

4. I am a law abiding citizen;

5. I am the Director of HIFICO;

6. Hawaii Firearm Coalition has 416 members.

7. Hawaii Firearms Coalition has members in Maui and the other counties that have concealed carry permits.

8. Hawaii Firearm Coalition has members in Maui and elsewhere in

Hawaii who would carry in areas prohibited by the laws at issue in

this litigation but for the laws challenge in this lawsuit.

**FURTHER, DECLARANT SAYETH NAUGHT.**

I certify under penalty of perjury that the foregoing is true and correct.

Executed on June 22, 2022.

Andrew Namiki Roberts

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jason Wolford, Allison Wolford, Atom Kasprzycki, Hawaii Firearms Coalition (HIFICO) | Anne E. Lopez, in her official Capacity as the Attorney General of the State of Hawaii, Maui County |

**(b)** County of Residence of First Listed Plaintiff    Maui
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
       THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin O'Grady, Law office of Kevin O'Grady, LLC, 1164 Bishop Street, Ste 1605, Honolulu, HI 96813, (808) 521-3367, Alan Beck, Law Office of Alan Beck, 2692 Harcourt Dr., San Diego, CA 92123, (619) 905-9105

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1 U.S. Government
    Plaintiff

❏ 2 U.S. Government
    Defendant

❏ 3 Federal Question
    *(U.S. Government Not a Party)*

❏ 4 Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ☒ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1 Original Proceeding
❏ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from Another District *(specify)*
❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. section 1983
Brief description of cause:
The State has enacted SB1230, effective July 1, 2023, that deprives plaintiffs of their Second Amendment rights

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE                 DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/22/2023 | /S/ Kevin O'Grady |

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

**6-ER-1360**

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**6-ER-1361**

ANNE E. LOPEZ (7609)
  Attorney General of the State of Hawaiʻi
KALIKOʻONĀLANI D. FERNANDES (9964)
  Solicitor General
NICHOLAS M. MCLEAN (10676)
  First Deputy Solicitor General
Department of the Attorney General
  State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi 96813
Tel.: (808) 586-1360
Email: kaliko.d.fernandes@hawaii.gov

NEAL K. KATYAL*
DANA A. RAPHAEL*
  Special Deputy Attorneys General
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel.: (202) 637-5600
Email: neal.katyal@hoganlovells.com

MARY B. MCCORD*
RUPA BHATTACHARYYA*
  Special Deputy Attorneys General
Institute for Constitutional
  Advocacy & Protection
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
Tel.: (202) 661-6607
Email: mbm7@georgetown.edu
*Pro Hac Vice

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as
the Attorney General of the State of Hawaiʻi

(Additional Counsel on Next Page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION, | Civil No. 1:23-cv-00265-LEK-WRP |
| Plaintiffs-Appellees, | PRELIMINARY INJUNCTION APPEAL |
| v. | **DEFENDANT ANNE E. LOPEZ'S NOTICE OF APPEAL; REPRESENTATION STATEMENT; CERTIFICATE OF SERVICE** |
| (caption continued) | |

**6-ER-1362**

ANNE E. LOPEZ, in her official
capacity as the Attorney General of the
State of Hawai'i,

     Defendant-Appellant.

District Judge:
Hon. Leslie E. Kobayashi

Magistrate Judge:
Hon. Wes Reber Porter

## <u>ADDITIONAL COUNSEL</u>

BEN GIFFORD*
  Special Deputy Attorney General
Institute for Constitutional
  Advocacy & Protection
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
Tel.: (202) 662-9835
Email: bg720@georgetown.edu

*Pro Hac Vice

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendant ANNE E. LOPEZ, in her official capacity as Attorney General of the State of Hawaiʻi, Defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from this Court's September 6, 2023 Preliminary Injunction (ECF No. 80), which converted to and adopted as a preliminary injunction the Court's Temporary Restraining Order dated August 8, 2023 (ECF No. 66), as well as all prior orders and decisions that merge into the Preliminary Injunction, including the August 8 Order (ECF No. 66).

DATED: Brooklyn, NY, September 7, 2023.

*/s/ Ben Gifford*

KALIKOʻONĀLANI D. FERNANDES
  Solicitor General
NICHOLAS M. MCLEAN
  First Deputy Solicitor General

NEAL K. KATYAL*
MARY B. MCCORD*
BEN GIFFORD*
RUPA BHATTACHARYYA*
DANA A. RAPHAEL*
  Special Deputy Attorneys General

  * *Pro Hac Vice*

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi

1

**6-ER-1365**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION, | Civil No. 1:23-cv-00265-LEK-WRP |
| | **REPRESENTATION STATEMENT** |
| Plaintiffs-Appellees, | |
| v. | |
| ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi, | |
| Defendant-Appellant. | |

**REPRESENTATION STATEMENT**

| **Party** | **Counsel** |
|---|---|
| Plaintiffs-Appellees<br><br>JASON WOLFORD,<br>ALISON WOLFORD,<br>ATOM KASPRZYCKI,<br>HAWAII FIREARMS COALITION | KEVIN GERARD O'GRADY<br>Law Office of Kevin O'Grady<br>1164 Bishop Street, Suite 1605<br>Honolulu, HI 96813<br>Phone: (808) 521-3367<br>E-mail: Kevin@KevinOGradyLaw.com<br><br>ALAN ALEXANDER BECK<br>Law Office of Alan Beck<br>2692 Harcourt Drive<br>San Diego, CA 92123<br>Phone: (619) 905-9105<br>E-mail: Alan.alexander.beck@gmail.com |

1

**6-ER-1366**

Defendant-Appellant

ANNE E. LOPEZ, in her official
capacity as the Attorney General of
the State of Hawaiʻi

ANNE E. LOPEZ
  Attorney General of the State of Hawaiʻi
KALIKOʻONĀLANI D. FERNANDES
  Solicitor General
NICHOLAS M. MCLEAN
  First Deputy Solicitor General
Department of the Attorney General
  State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi 96813
Tel.: (808) 586-1360
Email: kaliko.d.fernandes@hawaii.gov
nicholas.mclean@hawaii.gov

NEAL K. KATYAL*
DANA A. RAPHAEL*
  Special Deputy Attorneys General
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel.: (202) 637-5600
Email: neal.katyal@hoganlovells.com
dana.raphael@hoganlovells.com

MARY B. MCCORD*
RUPA BHATTACHARYYA*
  Special Deputy Attorneys General
Institute for Constitutional
  Advocacy & Protection
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
Tel.: (202) 661-6607
Email: mbm7@georgetown.edu
rb1796@georgetown.edu
*Pro Hac Vice

BEN GIFFORD*
  Special Deputy Attorney General

**6-ER-1367**

Institute for Constitutional
 Advocacy & Protection
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
Tel.: (202) 662-9835
Email: bg720@georgetown.edu

*Pro Hac Vice*

DATED:  Brooklyn, NY, September 7, 2023.

/s/ Ben Gifford

| | |
|---|---|
| KALIKOʻONĀLANI D. FERNANDES | NEAL K. KATYAL* |
|   Solicitor General | MARY B. MCCORD* |
| NICHOLAS M. MCLEAN | BEN GIFFORD* |
|   First Deputy Solicitor General | RUPA BHATTACHARYYA* |
| | DANA A. RAPHAEL* |
| |   Special Deputy Attorneys General |

* *Pro Hac Vice*

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as the Attorney
General of the State of Hawaiʻi

3

**6-ER-1368**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION, | Civil No. 1:23-cv-00265-LEK-WRP |
| | **CERTIFICATE OF SERVICE** |
| Plaintiffs-Appellees, | |
| v. | |
| ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi, | |
| Defendant-Appellant. | |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was

served electronically through the Court's CM/ECF system upon the following:

KEVIN GERARD O'GRADY
Law Office of Kevin O'Grady
1164 Bishop Street, Suite 1605
Honolulu, HI 96813
Phone: (808) 521-3367
E-mail: Kevin@KevinOGradyLaw.com

ALAN ALEXANDER BECK
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
Phone: (619) 905-9105
E-mail: Alan.alexander.beck@gmail.com

1

**6-ER-1369**

Attorneys for Plaintiffs JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION

DATED: Brooklyn, NY, September 7, 2023.

_/s/ Ben Gifford_

KALIKOʻONĀLANI D. FERNANDES
   Solicitor General
NICHOLAS M. MCLEAN
   First Deputy Solicitor General

NEAL K. KATYAL*
MARY B. MCCORD*
BEN GIFFORD*
RUPA BHATTACHARYYA*
DANA A. RAPHAEL*
   Special Deputy Attorneys General

_* Pro Hac Vice_

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi

2

**6-ER-1370**

CM/ECF-DC V10.7.1.1

**Query    Reports    Utilities    Help    Log Out**

<span style="color:red">APPEAL</span>

# U.S. District Court
## District of Hawaii (Hawaii)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00265-LEK-WRP

Wolford et al v. Lopez et al                          Date Filed: 06/23/2023
Assigned to: JUDGE LESLIE E. KOBAYASHI               Jury Demand: None
Referred to: MAGISTRATE JUDGE WES REBER PORTER       Nature of Suit: 440 Civil Rights: Other
Case in other court: Ninth Circuit Court of Appeals, 23-16094    Jurisdiction: Federal Question
                     Ninth Circuit Court of Appeals, 23-16164
Cause: 28:1331 Federal Question: Other Civil Rights

**Plaintiff**

**Jason Wolford**                    represented by    **Alan A. Beck**
                                                       Law Office of Alan Beck
                                                       2692 Harcourt Drive
                                                       San Diego, CA 92123
                                                       (619) 905-9105
                                                       Email: ngord2000@yahoo.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Kevin Gerard O'Grady**
                                                       Law Office of Kevin O'Grady, LLC
                                                       1164 Bishop St Ste 1605
                                                       Honolulu, HI 96813
                                                       808-521-3367
                                                       Fax: 808-521-3369
                                                       Email: Kevin@KevinOGradyLaw.com
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alison Wolford**                   represented by    **Alan A. Beck**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Kevin Gerard O'Grady**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Atom Kasprzycki**                  represented by    **Alan A. Beck**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Kevin Gerard O'Grady**

**6-ER-1371**

CM/ECF-DC V10.7.1.1

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Hawaii Firearms Coalition**          represented by **Alan A. Beck**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Gerard O'Grady**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Anne E. Lopez**                      represented by **Ben Gifford**
*in her official capacity as the Attorney*          Institute for Constitutional Advocacy &
*General of the State of Hawaii*                     Protection
                                       Georgetown University Law Center
                                       PO Box 211178
                                       Brooklyn, NY 11221
                                       (202) 662-9042
                                       Fax: (202) 661-6730
                                       Email: bg720@georgetown.edu
                                       *LEAD ATTORNEY*
                                       *PRO HAC VICE*
                                       *ATTORNEY TO BE NOTICED*

                                       **Dana A. Raphael**
                                       Hogan Lovells US LLP
                                       555 Thirteenth Street, N.W.
                                       Washington, DC 20004
                                       (202) 637-3694
                                       Fax: (202) 637-5910
                                       Email: dana.raphael@hoganlovells.com
                                       *LEAD ATTORNEY*
                                       *PRO HAC VICE*
                                       *ATTORNEY TO BE NOTICED*

                                       **Mary B. McCord**
                                       Institute for Constitutional Advocacy &
                                       Protection
                                       Georgetown University Law Center
                                       600 New Jersey Ave., NW
                                       Washington, DC 20001
                                       (202) 662-9042
                                       Fax: (202) 661-6730
                                       Email: mbm7@georgetown.edu
                                       *LEAD ATTORNEY*
                                       *PRO HAC VICE*
                                       *ATTORNEY TO BE NOTICED*

**6-ER-1372**

**Neal Katyal**
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5528
Fax: (202) 637-5910
Email: neal.katyal@hoganlovells.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rupa Bhattacharyya**
Institute for Constitutional Advocacy &
Protection
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, DC 20001
(202) 662-9042
Fax: (202) 661-6730
Email: rb1796@georgetown.edu
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Adam Gifford**
Institute for Constitutional Advocacy and
Protection
PO Box 211178
Brooklyn, NY 11221
617-816-7190
Email: bg720@georgetown.edu
*ATTORNEY TO BE NOTICED*

**Kaliko'onalani D. Fernandes**
Office of the Attorney General-Hawaii
425 Queen St
Honolulu, HI 96813
808-586-1393
Email: kaliko.d.fernandes@hawaii.gov
*ATTORNEY TO BE NOTICED*

**Nicholas Matthew McLean**
State of Hawaii
Department of the Attorney General
425 Queen St
Honolulu, HI 96813
808-586-1360
Email: nicholas.mclean@hawaii.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Maui County**
*TERMINATED: 07/03/2023*

represented by **Thomas W. Kolbe**
Department of the Corporation Counsel
County of Maui

**6-ER-1373**

200 S High St
Fl. 3
Wailuku, HI 96793
808-270-7580
Email: thomas.kolbe@co.maui.hi.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley Jordan Sova**
Department of the Corporation Counsel
County of Maui
200 S High St
Fl. 3
Wailuku, HI 96793
808-270-7742
Fax: 808-270-7152
Email: bradley.j.sova@co.maui.hi.us
*ATTORNEY TO BE NOTICED*

**Victoria J. Takayesu**
Department of Corporation Counsel
County of Maui
200 S. High Street
3rd Floor
Wailuku, HI 96793
808-270-7742
Fax: 808-270-7152
Email: victoria.takayesu-
hamilton@co.maui.hi.us
*ATTORNEY TO BE NOTICED*

**Amicus**

**California Rifle & Pistol Association,**          represented by   **Carl D. Michel**
**Incorporated**                                                    Michel & Associates, P.C.
                                                                    180 East Ocean Blvd.
                                                                    Suite 200
                                                                    Long Beach, CA 90802
                                                                    562-216-4444
                                                                    Fax: 562-216-4445
                                                                    Email: cmichel@michellawyers.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Konstadinos T. Moros**
                                                                    Michel & Associates, P.C.
                                                                    180 East Ocean Blvd., Suite 200
                                                                    Long Beach, CA 90802
                                                                    (562) 216-4444
                                                                    Fax: (562) 216-4445
                                                                    Email: kmoros@michellawyers.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

**6-ER-1374**

**Lloyd James Hochberg , Jr.**
Topa Financial Center
700 Bishop Street
Suite 2100
Honolulu, HI 96813
808-256-7382
Email: jim@JamesHochberglaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Gun Owners of California**            represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Konstadinos T. Moros**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lloyd James Hochberg , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Second Amendment Law Center, Inc.**    represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Konstadinos T. Moros**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lloyd James Hochberg , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Gun Owners of America, Inc.**          represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Konstadinos T. Moros**
(See above for address)

**6-ER-1375**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lloyd James Hochberg , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Gun Owners Foundation**                represented by  **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Konstadinos T. Moros**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lloyd James Hochberg , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Second Amendment Foundation**         represented by  **Matthew Larosiere**
The Law Office of Matthew Larosiere
6964 Houlton Cir
Lake Worth, FL 33467
(561) 452-7575
Fax: (844) 894-6204
Email: Larosieremm@gmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald L. Wilkerson**
PO Box 42
Laupahoehoe, HI 96764
533-4447
Fax: 528-2440
Email: don@allislandslaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Hawaii Rifle Association**            represented by  **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Konstadinos T. Moros**

**6-ER-1376**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lloyd James Hochberg , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Association for Gun Rights**          represented by **Marc Jeffrey Victor**
The Attorneys for Freedom Law Firm
1003 Bishop Street, Suite 1260
Honolulu, HI 96813
808-647-2423
Email: marc@attorneysforfreedom.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**City and County Honolulu**          represented by **Daniel M. Gluck**
Department of Corporation Counsel
City & County of Honolulu
530 S. King Street, Ste 110
Honolulu, HI 96813
808-768-5233
Email: daniel.gluck@honolulu.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/23/2023 | 1 | Verified COMPLAINT *for Declaratory and Injunctive Relief* against Anne E. Lopez, Maui County ( Filing fee $ 402 receipt number AHIDC-2857575.), filed by Jason Wolford, Hawaii Firearms Coalition, Atom Kasprzycki, Alison Wolford. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5 , # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Civil Cover Sheet)(O'Grady, Kevin) Docket text modified on 6/23/2023 (eta). (Entered: 06/23/2023) |
| 06/23/2023 | 2 | NOTICE of Appearance by Alan A. Beck on behalf of Alison Wolford, Jason Wolford on behalf of Alison Wolford, Jason Wolford. (Beck, Alan) (Entered: 06/23/2023) |
| 06/23/2023 | 3 | Summons (Proposed) (O'Grady, Kevin) (Entered: 06/23/2023) |
| 06/23/2023 | 4 | Summons (Proposed) (O'Grady, Kevin) (Entered: 06/23/2023) |
| 06/23/2023 | 5 | NOTICE of Appearance by Alan A. Beck on behalf of Hawaii Firearms Coalition, Atom Kasprzycki on behalf of Hawaii Firearms Coalition, Atom Kasprzycki. (Beck, Alan) (Entered: 06/23/2023) |
| 06/23/2023 | 6 | NOTICE of Case Assignment: Please reflect Civil case number CV 23-00265 JAO-WRP on all further pleadings. (eta) (Entered: 06/23/2023) |
| 06/23/2023 | | ADVISORY ENTRY. **Incomplete Filing** - Please be advised that Documents 3 Summons (Proposed), 4 Summons (Proposed) are incomplete. Please include the name(s) and address(es) of Plaintiffs' counsel where service of the answer or motion may be served |

|  |  |  |
|---|---|---|
|  |  | ("The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:... "). Please resubmit the proposed summonses for the Clerk's issuance. (eta) (Entered: 06/23/2023) |
| 06/23/2023 | 7 | MOTION for Temporary Restraining Order *and* *Preliminary Injunction* Kevin Gerard O'Grady appearing for Plaintiffs Hawaii Firearms Coalition, Atom Kasprzycki, Alison Wolford, Jason Wolford (Attachments: # 1 Memorandum , # 2 Exhibit 1, # 3 Declaration of Alan Beck re pre notice, # 4 Exhibit (Email) re prenotice, # 5 Exhibit (Email) re prenotioce, # 6 Exhibit (Email) re prenotice, # 7 Exhibit (Email) re prenotice, # 8 Exhibit Notice EM, # 9 Certificate of Service )(O'Grady, Kevin) Modified on 6/23/2023 (eta).. Added MOTION for Preliminary Injunction on 8/8/2023 (eta). (Entered: 06/23/2023) |
| 06/23/2023 | 8 | Order Setting Telephonic Rule 16 Scheduling Conference is set for 09:00AM on 8/21/2023 before MAGISTRATE JUDGE WES REBER PORTER - Signed by CHIEF JUDGE DERRICK K. WATSON on 6/23/2023. <hr> **ATTACH THE SCHEDULING ORDER TO THE INITIATING DOCUMENT (COMPLAINT/NOTICE OF REMOVAL). THE SCHEDULING ORDER MUST BE SERVED WITH THE DOCUMENT.** (eta) (Entered: 06/23/2023) |
| 06/23/2023 | 9 | Summons (Proposed) (O'Grady, Kevin) (Entered: 06/23/2023) |
| 06/23/2023 | 10 | Summons (Proposed) (O'Grady, Kevin) (Entered: 06/23/2023) |
| 06/23/2023 | 11 | Summons Issued as to Maui County. (jni) (Entered: 06/23/2023) |
| 06/23/2023 | 12 | Summons Issued as to Anne E. Lopez. (jni) (Entered: 06/23/2023) |
| 06/23/2023 | 13 | NOTICE of Case Reassignment: Please reflect new Civil case number CV 23-00265 LEK-WRP on all further pleadings. JUDGE JILL A. OTAKE is no longer assigned to this case. This case has been reassigned to JUDGE LESLIE E. KOBAYASHI from the TRO assignment wheel. (eta) (Entered: 06/23/2023) |
| 06/23/2023 | 14 | CIVIL Waiver of Service Packet ~ Notice to Parties Regarding Service Pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Attachments: # 1 AO 398 Notice of Lawsuit and Request to Waive Service of Summons, # 2 AO 399 Waiver of Service of Summons)(eta) (Entered: 06/23/2023) |
| 06/23/2023 | 15 | **Notice to Parties re : Corporate Disclosure Statements** - Federal Rule of Civil Procedure 7.1 and Criminal Rule 12.4 both address the filing of Corporate Disclosure Statements. Both rules state A party must:(1) file the Rule 7.1(a) (or 12.4(a)) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and (2) promptly file a supplemental statement upon a change in the information that the statement requires. (eta) (Entered: 06/23/2023) |
| 06/23/2023 | 16 | Corporate Disclosure Statement by Hawaii Firearms Coalition. (Attachments: # 1 Certificate of Service)(Beck, Alan) (Entered: 06/23/2023) |
| 06/23/2023 | 17 | NOTICE of Hearing on Motion: 7 First MOTION for Temporary Restraining Order *AND Preliminary Injunction*: <br><br> Motion Hearing is set for 6/28/2023 at 10:00 AM via Video Conference before JUDGE LESLIE E. KOBAYASHI. <br><br> The Courtroom manager will provide participants with the instructions and information to connect by video in advance of the scheduled video conference. Participants must connect to the conference at least five (5) minutes prior to the scheduled start time of the hearing. |

**6-ER-1378**

| | | |
|---|---|---|
| | | (rls) (Entered: 06/23/2023) |
| 06/23/2023 | 18 | NOTICE of Appearance by Kaliko'onalani D. Fernandes on behalf of Anne E. Lopez on behalf of Anne E. Lopez. (Fernandes, Kaliko'onalani) (Entered: 06/23/2023) |
| 06/23/2023 | 19 | NOTICE of Appearance by Nicholas Matthew McLean on behalf of Anne E. Lopez on behalf of Anne E. Lopez. (McLean, Nicholas) (Entered: 06/23/2023) |
| 06/26/2023 | 20 | SUMMONS Returned Executed by Jason Wolford, Alison Wolford. Anne E. Lopez served on 6/26/2023. (Beck, Alan) (Entered: 06/26/2023) |
| 06/27/2023 | 21 | SUMMONS Returned Executed by Jason Wolford, Hawaii Firearms Coalition, Atom Kasprzycki, Alison Wolford. Maui County served on 6/27/2023. (Beck, Alan) (Entered: 06/27/2023) |
| 06/27/2023 | 22 | NOTICE of Appearance by Thomas W. Kolbe on behalf of Maui County on behalf of Maui County. (Kolbe, Thomas) (Entered: 06/27/2023) |
| 06/27/2023 | 23 | NOTICE of Appearance by Victoria J. Takayesu on behalf of Maui County on behalf of Maui County. (Takayesu, Victoria) Modified on 6/28/2023 This document is signed by Thomas Kolbe, Deputy Corporation Counsel (eta). (Entered: 06/27/2023) |
| 06/27/2023 | 24 | NOTICE of Appearance by Bradley Jordan Sova on behalf of Maui County on behalf of Maui County. (Sova, Bradley) Modified on 6/28/2023 This document is signed by co-counsel Thomas Kolbe, Deputy Corporation Counsel (eta). (Entered: 06/27/2023) |
| 06/28/2023 | | ADVISORY ENTRY. **Incorrect Attorney Filer** - Please be advised that Documents 23 Notice of Appearance and 24 Notice of Appearance, filed by County of Maui were signed by an attorney other than the ones identified as the e-filers. The name of the CM/ECF User under whose login and password the document is being electronically filed must correspond to the signature of the attorney signing the CM/ECF filed document. The filing party shall use its discretion should they feel the necessity to re-submit corrected filings. (eta) (Entered: 06/28/2023) |
| 06/28/2023 | 25 | EP: Status Hearing on First MOTION for Temporary Restraining Order AND Preliminary Injunction held by video teleconference ("VTC"). Plaintiff, Jason Wolford present by VTC.Counsel: Alan Beck, Kevin OGrady, Kaliko'onalani Fernandes, Nichola McLean Thomas Kolbe, Bradley Sova, present by VTC. <br><br> Court addresses the parties regarding, service, briefing schedule and whether or not an evidentiary is required. Discussion held. Defendants confirm that service is not an issue. <br><br> Briefing schedule as related to the Temporary Restraining Order is as follows: <br> Opposition Memorandum due by: **7/14/2023**. <br> Reply Memorandum due by: **7/21/2023**. <br><br> Hearing on MOTION for Temporary Restraining Order set for Monday 7/31/2023 at 02:30 PM in Aha Nonoi before JUDGE LESLIE E. KOBAYASHI. <br><br> (Reporter-Debra Read) <br> (JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 06/28/2023) |
| 06/28/2023 | 26 | NOTICE by Maui County *Amended Notice of Appearance; Certificate of Service* Maui County. (Sova, Bradley) (Entered: 06/28/2023) |
| 06/28/2023 | 27 | NOTICE by Maui County *Amended Notice of Appearance; Certificate of Service* Maui County. (Takayesu, Victoria) (Entered: 06/28/2023) |

**6-ER-1379**

| 06/30/2023 | 28 | EO: At the Parties request, a Status Conference is set for 7/3/2023 at 11:00 AM via Video Conference, before JUDGE LESLIE E. KOBAYASHI.<br><br>The Courtroom manager will provide participants with the instructions and information to connect by video in advance of the scheduled video conference. Participants must connect to the conference at least five (5) minutes prior to the scheduled start time of the hearing.<br><br>(JUDGE LESLIE E. KOBAYASHI)<br>(rls) (Entered: 06/30/2023) |
|---|---|---|
| 07/03/2023 | 29 | ORDER APPROVING REQUEST FOR MEDIA BLOGGING (THE ASSOCIATED PRESS) - Signed by JUDGE LESLIE E. KOBAYASHI on 7/3/2023.<br><br>Media Outlet: The Associated Press; Representative(s): Jennifer Kelleher and/or Audrey McAvoy<br>Hearing: TRO motion, 7/31/2023 at 2:30 p.m.<br><br>(eta) (Entered: 07/03/2023) |
| 07/03/2023 | 30 | EP: Status Hearing held by video teleconference ("VTC"). Counsel: Alan Beck, Kevin OGrady, Nicholas McLean, Thomas Kolbe, present by VTC.<br><br>Court addresses the parties regarding ongoing discussions with dismissing the County of Maui. Discussion held.<br><br>Parties agree to submit a stipulation to Dismiss the Maui County without prejudice. Stipulation to be submitted by **July 7, 2023**.<br><br>(Reporter-Debra Read)<br>(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 07/03/2023) |
| 07/03/2023 | 31 | STIPULATION TO DISMISS MAUI COUNTY WITHOUT PREJUDICE - Signed by JUDGE LESLIE E. KOBAYASHI.<br><br>Maui County terminated.<br><br>(eta) (Entered: 07/03/2023) |
| 07/10/2023 | 32 | MOTION for Pro Hac Vice *C. D. Michel* Filing fee $ 300, receipt number AHIDC-2863631.Lloyd James Hochberg, Jr appearing for Amicus Parties CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, GUN OWNERS OF CALIFORNIA, SECOND AMENDMENT LAW CENTER, INC., GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, SECOND AMENDMENT FOUNDATION, Hawaii Rifle Association (Hochberg, Lloyd) (Entered: 07/10/2023) |
| 07/10/2023 | 33 | MOTION for Pro Hac Vice *Konstadinos T. Moros* Filing fee $ 300, receipt number AHIDC-2863698.Lloyd James Hochberg, Jr appearing for Amicus Parties CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC., GUN OWNERS OF CALIFORNIA, Hawaii Rifle Association, SECOND AMENDMENT FOUNDATION, SECOND AMENDMENT LAW CENTER, INC. (Hochberg, Lloyd) (Entered: 07/10/2023) |
| 07/11/2023 | 34 | MOTION for Pro Hac Vice *(Matthew Larosiere, Esq.)* Filing fee $ 300, receipt number AHIDC-2864266.Donald L. Wilkerson appearing for Amicus SECOND AMENDMENT FOUNDATION (Wilkerson, Donald) Modified on 7/12/2023 (eta). (Entered: 07/11/2023) |
| 07/11/2023 | 35 | FIRST STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT - Signed by JUDGE LESLIE E. KOBAYASHI. |

| | | |
|---|---|---|
| | | The Attorney General's deadline to file an answer or other responsive pleading to Plaintiffs' Complaint shall be:<br>1. September 15, 2023; or<br>2. 10 days following the date on which the Court grants or denies Plaintiffs' Motion for a Preliminary Injunction, whichever occurs later.<br><br>(eta) (Entered: 07/11/2023) |
| 07/11/2023 | 36 | EO: The Declarations of Counsel submitted in support of [32](#) [33](#) California Rifle & Pistol Association, Incorporated, Gun Owners of California, Second Amendment Law Center, Inc., Gun Owners of America, Inc., Gun Owners Foundation, Second Amendment Foundation, Hawaii Rifle Association's Motions to Appear Pro Hac Vice do not contain complete information in Paragraph 7 regarding counsel's request to waive CM/ECF training. No later than 7/14/2023, counsel shall file amended declarations.<br><br>(MAGISTRATE JUDGE WES REBER PORTER)<br>(jo) (Entered: 07/11/2023) |
| 07/12/2023 | 37 | EO: REGARDING: [7](#) First MOTION for Temporary Restraining Order *; due to a conflict with the Court's schedule and by agreement of the parties; Motion Hearing is reset from 7/31/2023 to **7/28/2023 at 10:30 AM** by Video Conference Hearing before JUDGE LESLIE E. KOBAYASHI.*<br><br>*(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 07/12/2023)* |
| 07/12/2023 | [38](#) | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO MATTHEW LAROSIERE, ESQ. re [34](#) - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/12/2023. (eta) (Entered: 07/12/2023) |
| 07/13/2023 | [39](#) | ~~AMENDED DOCUMENT~~ *(Amended Declaration of Counsel for C.D. Michel to* [32](#) *MOTION for Pro Hac Vice C. D. Michel)* by CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC., GUN OWNERS OF CALIFORNIA, Hawaii Rifle Association, SECOND AMENDMENT LAW CENTER, INC. Filing fee $ 300, receipt number AHIDC-2863631. *AMENDED DECLARATION OF COUNSEL FOR ADMISSION PRO HAC VICE FOR C.D. MICHEL.* (Michel, Carl) Modified on 7/14/2023 (eta). (Entered: 07/13/2023) |
| 07/13/2023 | [40](#) | ~~AMENDED DOCUMENT~~ *(Amended Declaration of Counsel for Konstadinos T. Moros to* re [33](#) MOTION for Pro Hac Vice Konstadinos T. Moros) by CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, GUN OWNERS FOUNDATION, GUN OWNERS OF AMERICA, INC., GUN OWNERS OF CALIFORNIA, Hawaii Rifle Association, SECOND AMENDMENT LAW CENTER, INC.. . (Michel, Carl) Modified on 7/14/2023 (eta). (Entered: 07/13/2023) |
| 07/13/2023 | [41](#) | *Amicus Brief of the Second Amendment Foundation in Support of* [7](#) *Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction .* (Wilkerson, Donald) Modified on 7/14/2023 (eta). (Entered: 07/13/2023) |
| 07/14/2023 | [42](#) | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO C. D. MICHEL, ESQ. re [32](#) - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/14/2023. (eta) (Entered: 07/14/2023) |
| 07/14/2023 | [43](#) | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO KONSTADINOS T. MOROS, ESQ. re [33](#) - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/14/2023. (eta) (Entered: 07/14/2023) |
| 07/14/2023 | [44](#) | MOTION for Pro Hac Vice *of Neal Katyal* Filing fee $ 300, receipt number AHIDC-2866131.Kaliko'onalani D. Fernandes appearing for Defendant Anne E. Lopez (Fernandes, |

**6-ER-1381**

| | | Kaliko'onalani) (Entered: 07/14/2023) |
|---|---|---|
| 07/14/2023 | 45 | MOTION for Pro Hac Vice *for Dana A. Raphael* Filing fee $ 300, receipt number AHIDC-2866141.Kaliko'onalani D. Fernandes appearing for Defendant Anne E. Lopez (Fernandes, Kaliko'onalani) (Entered: 07/14/2023) |
| 07/14/2023 | 46 | ~~Application~~ MOTION *for Pro Hac Vice of Rupa Bhattacharyya*. (Fernandes, Kaliko'onalani) Modified on 7/14/2023 (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 47 | ~~Application~~ MOTION *for Pro Hac Vice of Ben Gifford*. (Fernandes, Kaliko'onalani) Modified on 7/14/2023 (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 48 | ~~Application~~ MOTION *for Pro Hac Vice of Mary B. McCord*. (Fernandes, Kaliko'onalani) Modified on 7/14/2023 (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 49 | Filing fee: $ 300, receipt number (Pay.gov Tracking ID): 276K9QJ2 re 46 MOTION for Pro Hac Vice of Rupa Bhattacharyya (eta) (Entered: 07/14/2023) |
| 07/14/2023 | 50 | Filing fee: $ 300, receipt number (Pay.gov Tracking ID): 276K9QGE re 47 MOTION for Pro Hac Vice of Ben Gifford (eta) (Entered: 07/14/2023) |
| 07/14/2023 | 51 | Filing fee: $ 300, receipt number (Pay.gov Tracking ID): 276K9QID re 48 MOTION for Pro Hac Vice of Mary B. McCord (eta) (Entered: 07/14/2023) |
| 07/14/2023 | 52 | Brief of *Amicus Curiae* City and County of Honolulu in Opposition to 7 Plaintiff's MOTION for Temporary Restraining Order *AND Preliminary Injunction* . (Gluck, Daniel) Modified on 7/17/2023 to add City and County of Honolulu as "Amicus Curiae", docket text modified (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 53 | *Amicus* Brief of *Gun Owners of America, Inc., Second Amendment Law Center, Hawaii Rifle Association, California Rifle & Pistol Association, Incorporated, Gun Owners of California, and Gun Owners Foundation* in Support of 7 Plaintiffs' MOTION for Temporary Restraining Order *AND Preliminary Injunction* . (Michel, Carl) Docket text modified on 7/17/2023 (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 54 | ~~MEMORANDUM~~ *Amicus Curiae Brief of National Association for Gun Rights* re 7 Plaintiffs' MOTION for Temporary Restraining Order *AND Preliminary Injunction* filed by National Association for Gun Rights. (Victor, Marc) Docket text modified on 7/17/2023 (eta). (Entered: 07/14/2023) |
| 07/14/2023 | 55 | MEMORANDUM in Opposition 7 to Plaintiffs' MOTION for Temporary Restraining Order *AND Preliminary Injunction* filed by Anne E. Lopez. (Attachments: # 1 Declaration of Nicholas M. McLean, # 2 Declaration of Saul Cornell, # 3 Exhibit 1 (Cornell), # 4 Declaration of Dr. Brennan Gardner Rivas, # 5 Exhibit A (Rivas), # 6 Exhibit B (Rivas), # 7 Exhibit C (Rivas), # 8 Exhibit D (Rivas), # 9 Exhibit E (Rivas), # 10 Exhibit F (Rivas), # 11 Exhibit G (Rivas), # 12 Exhibit H (Rivas), # 13 Exhibit I (Rivas), # 14 Exhibit J (Rivas), # 15 Exhibit K (Rivas), # 16 Exhibit L (Rivas), # 17 Exhibit M (Rivas), # 18 Exhibit N (Rivas), # 19 Exhibit O (Rivas), # 20 Exhibit P (Rivas), # 21 Exhibit Q (Rivas), # 22 Exhibit R (Rivas), # 23 Exhibit S (Rivas), # 24 Exhibit T (Rivas), # 25 Exhibit U (Rivas), # 26 Exhibit V (Rivas), # 27 Exhibit W (Rivas), # 28 Exhibit X (Rivas), # 29 Exhibit Y (Rivas), # 30 Declaration of Terence Young, # 31 Exhibit 1 (Young), # 32 Declaration of Patrick McCall, # 33 Declaration Laura H. Thielen, # 34 Exhibit 1 (McLean), # 35 Exhibit 2 (McLean), # 36 Exhibit 3 (McLean), # 37 Exhibit 4 (McLean), # 38 Exhibit 5 (McLean), # 39 Exhibit 6 (McLean), # 40 Exhibit 7 (McLean), # 41 Exhibit 8 (McLean), # 42 Exhibit 9 (McLean), # 43 Exhibit 10 (McLean), # 44 Exhibit 11 (McLean), # 45 Exhibit 12 (McLean), # 46 Exhibit 13 (McLean), # 47 Exhibit 14 (McLean), # 48 Exhibit 15 (McLean), # 49 Exhibit 16 (McLean), # 50 Exhibit 17 (McLean), # 51 Exhibit 18 (McLean), # 52 Exhibit 19 (McLean), # 53 Exhibit 20 (McLean), # 54 Exhibit 21 (McLean), # 55 Exhibit 22 (McLean), # 56 Exhibit 23 (McLean), # 57 Exhibit 24 |

| | | |
|---|---|---|
| | | (McLean), # 58 Exhibit 25 (McLean), # 59 Exhibit 26 (McLean), # 60 Exhibit 27 (McLean), # 61 Exhibit 28 (McLean), # 62 Exhibit 29 (McLean), # 63 Exhibit 30 (McLean), # 64 Exhibit 31 (McLean), # 65 Exhibit 32 (McLean), # 66 Exhibit 33 (McLean), # 67 Exhibit 34 (McLean), # 68 Exhibit 35 (McLean), # 69 Exhibit 36 (McLean), # 70 Exhibit 37 (McLean), # 71 Exhibit 38 (McLean), # 72 Exhibit 39 (McLean), # 73 Exhibit 40 (McLean), # 74 Exhibit 41 (McLean), # 75 Exhibit 42 (McLean), # 76 Exhibit 43 (McLean), # 77 Exhibit 44 (McLean), # 78 Exhibit 45 (McLean), # 79 Certificate of Service)(McLean, Nicholas) Modified on 7/17/2023 (eta). (Entered: 07/14/2023) |
| 07/17/2023 | 56 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO NEAL KUMAR KATYAL, ESQ. re 44 - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/17/2023. (eta) (Entered: 07/17/2023) |
| 07/17/2023 | 57 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO DANA A. RAPHAEL, ESQ. re 45 - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/17/2023. (eta) (Entered: 07/17/2023) |
| 07/17/2023 | 58 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO RUPA BHATTACHARYYA, ESQ. re 46 - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/17/2023. (eta) (Entered: 07/17/2023) |
| 07/17/2023 | 59 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO BEN GIFFORD, ESQ. re 47 - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/17/2023. (eta) (Entered: 07/17/2023) |
| 07/17/2023 | 60 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE AS TO MARY B. MCCORD, ESQ. re 48 - Signed by MAGISTRATE JUDGE WES REBER PORTER on 7/17/2023. (eta) (Entered: 07/17/2023) |
| 07/21/2023 | 61 | REPLY to Response to Motion re 7 First MOTION for Temporary Restraining Order *AND Preliminary Injunction* filed by Alison Wolford, Jason Wolford. (Attachments: # 1 Exhibit 1: *Declarations of Clayton Cramer* , # 2 Exhibit 2: *Map of Maui County* , # 3 Exhibit 3: *Declaration of Maui Businesses* , # 4 Exhibit 4: *Declaration of Maui Restaurants* , # 5 Exhibit 5: *Supplemental Declaration of Plaintiffs* , # 6 Certificate of Service)(Beck, Alan) Docket text modified (to label/describe exhibits) on 7/24/2023 (eta). (Entered: 07/21/2023) |
| 07/28/2023 | 62 | EP: 7 Plaintiffs Motion for Temporary Restraining Order held by video teleconference ("VTC").<br><br>Counsel for Plaintiffs: Alan Beck, Kevin OGrady presentby VTC.Counsel for Defense: Ben Gifford, Kaliko Fernandes, Nicholas McLean, Mary McCord, Dana Raphael present by VTC.<br><br>Arguments presented by: Alan Beck and Ben Gifford.<br><br>Matter is taken under advisement; Court to issue order.<br><br>(Reporter-Debra Read)<br>(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 07/28/2023) |
| 08/01/2023 | 64 | EO: For good cause shown, the Court GRANTS the parties' request to continue the Telephonic Rule 16 Scheduling Conference. The Telephonic Rule 16 Scheduling Conference is **CONTINUED** from 8/21/2023 **to 10/17/2023 at 8:30 a.m.** before MAGISTRATE JUDGE WES REBER PORTER via Zoom: Dial in number: 1-833-568-8864; Meeting ID: 161 0084 2470. |

| | | |
|---|---|---|
| | | (MAGISTRATE JUDGE WES REBER PORTER) (jo) (Entered: 08/01/2023) |
| 08/07/2023 | 65 | NOTICE *of Supplemental Authority* by Hawaii Firearms Coalition, Atom Kasprzycki, Alison Wolford, Jason Wolford . (Attachments: # 1 Exhibit Teter ruling)(O'Grady, Kevin) <span style="font-size:small">Modified on 8/8/2023 (eta).</span> (Entered: 08/07/2023) |
| 08/08/2023 | 66 | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION re 7 - Signed by JUDGE LESLIE E. KOBAYASHI on 8/8/2023.<br><br>For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, filed June 23, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The TRO Motion is GRANTED to the extent that the following provisions are enjoined:<br><br>- the portions of § 134-A(a)(1) that prohibit carrying firearms in parking areas owned, leased, or used by the State or a county which share the parking area with non-governmental entities, are not reserved for State or county employees, or do not exclusively serve the State or county building;<br><br>- the entirety of §§ 134-A(a)(4) and (a)(12);<br><br>- the portions of § 134-A(a)(9) prohibiting the carrying of firearms in beaches, parks, and their adjacent parking areas; and<br><br>- the portion of § 134-E that prohibits carrying firearms on private properties held open to the public.<br><br>The TRO Motion is DENIED in all other respects.<br><br>(eta) (Entered: 08/08/2023) |
| 08/11/2023 | 67 | MOTION for Stay *Pending Appeal and, In the Alternative, Temporary Administrative Stay* re 66 Order on Motion for TRO Benjamin Adam Gifford appearing for Defendant Anne E. Lopez (Attachments: # 1 Memorandum in support, # 2 Certificate of Service )(Gifford, Benjamin) <span style="font-size:small">Modified on 8/14/2023 (eta).</span> (Entered: 08/11/2023) |
| 08/14/2023 | 68 | NOTICE OF APPEAL as to 66 Order on Motion for TRO, by Anne E. Lopez. Filing fee $ 505, receipt number AHIDC-2880033. USCA No. 23-16094. (Attachments: # 1 Representation Statement, # 2 Certificate of Service)(McLean, Nicholas) <span style="font-size:small">Modified on 8/15/2023 (eta).</span> (Entered: 08/14/2023) |
| 08/15/2023 | 69 | USCA Case Number 23-16094 for 68 Notice of Appeal filed by Anne E. Lopez. (eta) (Entered: 08/15/2023) |
| 08/15/2023 | 70 | ORDER of USCA as to 68 Notice of Appeal, filed by Anne E. Lopez, USCA No. 23-16094. (eta) (Entered: 08/15/2023) |
| 08/15/2023 | 71 | **Attorney Appeal Packet** re 68 Notice of Appeal filed by Anne E. Lopez, USCA No. 23-16094. (Attachments: # 1 Notice of Appeal, # 2 Instructions for Civil Appeals, # 3 Additional Instructions for Transcript Designation and Ordering Form, # 4 Letter Re Court Reporters, # 5 Transcript Designation and Ordering Form, # 6 Docket Sheet)(eta) (Entered: 08/15/2023) |
| 08/16/2023 | 72 | EO: Defendant Anne E. Lopez's MOTION 67 for Stay Pending Appeal and in the Alternative, Temporary Administrative Stay re 66 Order on Motion for TRO will be considered by Judge Leslie E. Kobayashi as a Non Hearing Motion.<br><br>Memorandum in Opposition is due: 8/25/2023. Reply Memorandum is due: 9/1/2023. |

Defendant Anne E. Lopez's MOTION 67 for Stay Pending Appeal and in the Alternative, Temporary Administrative Stay re 66 Order on Motion for TRO will be taken under submission thereafter. Court to issue Order.

(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 08/16/2023)

| | | |
|---|---|---|
| 08/17/2023 | 73 | ORDER of USCA as to 68 Notice of Appeal, filed by Anne E. Lopez, USCA No. 23-16094: This court will take no action on appellant's emergency motion at this time, as the stay motion, filed on August 11, 2023, is pending before the district court. This denial is without prejudice to renewing the motion once the district court decides the stay motion or if the district court does not decide the motion by September 1, 2023. (eta) (Entered: 08/18/2023) |
| 08/21/2023 | 74 | TRANSCRIPT of STATUS CONFERENCE ON FIRST MOTION FOR TRO and PRELIM. INJUNCTION Proceedings held on 06/28/2023, before Judge Leslie E. Kobayashi. Court Reporter - Debi Read, Telephone number - 808-541-2062,Email Address - readit3949@gmail.com. PP. - 14 **90-Day Transcript Restriction:** PACER access to filed transcripts is restricted for 90 days from the file date to permit redaction of personal identifiers. Citations to restricted transcripts in filed documents must be limited to those portions of the proceedings that are relevant and in need of judicial review. Attaching restricted transcripts, in their entirety, to filed documents should be limited to situations with specific need. Transcript may be viewed at the court public terminal or ordered through the Court Reporter before the deadline for Release of Transcript. Redaction Request due 9/8/2023. Redacted Transcript Deadline set for 9/18/2023. Release of Transcript Restriction set for 11/16/2023. (Read, Debra) (Entered: 08/21/2023) |
| 08/21/2023 | 75 | TRANSCRIPT of STATUS CONFERENCE Proceedings held on 07/03/2023, before Judge Leslie E. Kobayashi. Court Reporter - Debi Read, Telephone number - 808-541-2062,Email Address - readit3949@gmail.com. PP. - 10 **90-Day Transcript Restriction:** PACER access to filed transcripts is restricted for 90 days from the file date to permit redaction of personal identifiers. Citations to restricted transcripts in filed documents must be limited to those portions of the proceedings that are relevant and in need of judicial review. Attaching restricted transcripts, in their entirety, to filed documents should be limited to situations with specific need. Transcript may be viewed at the court public terminal or ordered through the Court Reporter before the deadline for Release of Transcript. Redaction Request due 9/8/2023. Redacted Transcript Deadline set for 9/18/2023. Release of Transcript Restriction set for 11/16/2023. (Read, Debra) (Entered: 08/21/2023) |
| 08/21/2023 | 76 | TRANSCRIPT of PLFS' MOTION FOR TRO and PRELIM INJUNCTION Proceedings held on 07/28/2023, before Judge Leslie E. Kobayashi. Court Reporter - Debi Read, Telephone number - 808-541-2062,Email Address - readit3949@gmail.com. PP. - 39 **90-Day Transcript Restriction:** PACER access to filed transcripts is restricted for 90 days from the file date to permit redaction of personal identifiers. Citations to restricted transcripts in filed documents must be limited to those portions of the proceedings that are relevant and in need of judicial review. Attaching restricted transcripts, in their entirety, to filed documents should be limited to situations with specific need. Transcript may be viewed at the court public terminal or ordered through the Court Reporter before the deadline for Release of Transcript. Redaction Request due 9/8/2023. Redacted Transcript Deadline set for 9/18/2023. Release of Transcript Restriction set for 11/16/2023. (Read, Debra) (Entered: 08/21/2023) |
| 08/22/2023 | 77 | EO: COURT ORDER DIRECTING THE PARTIES TO: MEET AND CONFER REGARDING A PROPOSED BRIEFING SCHEDULE AND HEARING DATE FOR PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; AND SUBMIT THEIR |

6-ER-1385

| | | |
|---|---|---|
| | | PROPOSED SCHEDULE<br><br>On June 23, 2023, Plaintiffs Jason Wolford, Alison Wolford, Atom Kasprzycki, and Hawaii Firearms Coalition (collectively "Plaintiffs") filed their Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). [Dkt. no. 7 .] On August 8, 2023, the Court issued an order ruling on the portion of the Motion requesting a temporary restraining order. See Order Granting in Part and Denying in Part Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, filed 8/8/23 (dkt. no. 66 ) ("8/8 Order"). The 8/8 Order only addressed Plaintiffs request for a temporary restraining order and stated that "Plaintiffs' request for a preliminary injunction will be subsequently and separately briefed, heard, and ruled on." [8/8 Order at 2 n.2.]<br><br>Accordingly, Plaintiffs and Defendant Anne E. Lopez, in her official capacity as the Attorney General of the State of Hawai'i ("Defendant"), are DIRECTED: to meet and confer regarding a proposed briefing schedule and hearing date for the portion of the Motion requesting a preliminary injunction; and to submit their proposed schedule by **September 7, 2023**. If the parties are unable to agree upon a proposed schedule, Plaintiffs and Defendant may submit separate proposals.<br><br>(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 08/22/2023) |
| 08/25/2023 | 78 | RESPONSE in Opposition re 67 MOTION for Stay, *Pending Appeal and, In the Alternative, Temporary Administrative Stay* re 66 Order on Motion for TRO filed by Alison Wolford, Jason Wolford. (Attachments: # 1 Certificate of Service)(Beck, Alan) (Entered: 08/25/2023) |
| 09/01/2023 | 79 | REPLY MEMORANDUM in Support of 67 MOTION for Stay, *Pending Appeal and, In the Alternative, Temporary Administrative Stay* re 66 Order on Motion for TRO filed by Anne E. Lopez. (Attachments: # 1 Certificate of Compliance with Word Limitations, # 2 Certificate of Service Certificate of service)(Gifford, Benjamin) Modified on 9/5/2023 (eta). (Entered: 09/01/2023) |
| 09/06/2023 | 80 | JOINT STIPULATION TO CONVERT TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION AND TO STAY FURTHER PROCEEDINGS IN THE DISTRICT COURT PENDING APPEAL re 7 , 66 , 67 - Signed by JUDGE LESLIE E. KOBAYASHI on 9/6/2023. (eta) Modified on 9/6/2023 (eta). (Entered: 09/06/2023) |
| 09/07/2023 | 81 | **NOTICE OF APPEAL** by Anne E. Lopez. <span style="color:red">USCA No. 23-16164.</span> Filing fee $ 505, receipt number AHIDC-2890764. (Attachments: # 1 Representation Statement, # 2 Certificate of Service)(Gifford, Benjamin) Modified on 9/8/2023 (jni) (Entered: 09/07/2023) |
| 09/07/2023 | 82 | ORDER of USCA as to 68 Notice of Appeal, filed by Anne E. Lopez; USCA No. 23-16094:<br><br>The motion filed by the appellant on September 7, 2023 for voluntary dismissal of this appeal is granted. This appeal is dismissed. *See* Fed. R. App. P. 42(b); 9th Cir. R. 27-9.1.<br><br>This order shall constitute the mandate.<br><br>(jni) (Entered: 09/08/2023) |
| 09/08/2023 | 83 | USCA Case Number 23-16164 for 81 Notice of Appeal, filed by Anne E. Lopez. (jni) (Additional attachment(s) added on 9/8/2023: # 1 Notice to All Parties and Counsel, # 2 Mediation Letter, # 3 Mediation Questionnaire) (jni). (Entered: 09/08/2023) |
| 09/08/2023 | 84 | **Attorney Appeal Packet** re 81 Notice of Appeal, filed by Anne E. Lopez; USCA No. 23-16164.<br>(Attachments: # 1 Notice of Appeal, # 2 District Court Instructions for Civil Appeals, # 3 |

**6-ER-1386**

| | | Docket Sheet)<br>(jni) (Entered: 09/08/2023) |
|---|---|---|
| 09/10/2023 | 85 | EO: In light of 80 Joint Stipulation to Convert Temporary Restraining Order to Preliminary Injunction and to Stay Further Proceedings in the District Court Pending Appeal, the Court VACATES the Telephonic Rule 16 Scheduling Conference set for 10/17/2023 before Magistrate Judge Wes Reber Porter.<br><br>(MAGISTRATE JUDGE WES REBER PORTER)<br>(jo) (Entered: 09/10/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/15/2023 06:43:54 | | |
| **PACER Login:** | shelbycalambokidis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00265-LEK-WRP |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |