No. 23-16164

# United States Court of Appeals for the Ninth Circuit

JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION,

*Plaintiffs-Appellants,*

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawai'i,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I

NO. 1:23-cv-00265-LEK-WRP, Hon. Leslie E. Kobayashi

**BRIEF OF THE NATIONAL ASSOCIATION FOR GUN RIGHTS AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES**

SEBASTIAN D. TORRES
Gatlin Voelker, PLLC.
50 East Rivercenter Blvd., Suite 1275
Covington, Kentucky 41011
(859) 781-9100
storres@gatlinvoelker.com
*Attorney for Amici Curiae*

## <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

The National Association for Gun Rights (NAGR) is a nonprofit organization operating under § 501(c)(4) of the Internal Revenue Code. NAGR is not a subsidiary or affiliate of a publicly owned corporation, and does not issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to *amicus*' participation.

# **<u>TABLE OF CONTENTS</u>**

*Page*

CORPORATE DISCLOSURE STATEMENT.......................................*i*

TABLE OF AUTHORITIES.....................................................*iv*

INTEREST OF AMICUS CURIAE ......................................................1

INTRODUCTION ...............................................................2

    A.    Appellees' Injuries are Traceable to the Challenged Conduct of the Appellant...............................................................4

    B.    H.R.S. §134-E Violates the Second Amendment.................................7

    C.    H.R.S. §134-E Violates the First Amendment………………...……...10

CONCLUSION .................................................................13

CERTIFICATE OF COMPLIANCE......................................................vi

CERTIFICATE OF SERVICE...........................................................vii

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                               *Page(s)*

*303 Creative LLC v. Elenis*, 2023 WL 4277208 (U.S. June 30, 2023) ................4,11

*Antonyuk v. Hochul*, 2022 WL 16744700, at *82 (N.D.N.Y. Nov. 7, 2022) ......10,13

*Autolog Corp. v. Regan*, 731 F.2d 25, 31, 235
U.S. App. D.C. 178 (D.C. Cir. 1984).........................................................................7

*Christian v. Nigrelli*, 2022 WL 17100631, at *9 (W.D.N.Y. Nov. 22, 2022) ..........10

*Frudden v. Pilling*, 742 F.3d 1199 (9th Cir. 2014) ...........................................10, 11

*Hurley v. Irish-American Gay*, 515 U.S. 557, 115 S. Ct. 2338 (1995) ...................11

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)..................................8

*Laird v. Tatum*, 408 U.S. 1, 11 (1972) ...................................................................12

*Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)....................................7

*McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 780 (2010) ...................................7

*Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) .....................7

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
138 S. Ct. 2361, 2371 (2018) ................................................................................12

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022).....................................................................................passim.

*O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) .......................................5

*Peruta v. California*, 137 S. Ct. 1995, 1999 (2017) ..................................................4

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988) ....11, 12

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
547 U.S. 47, 61 (2006) ..........................................................................................11

*Turner Broad. Sys. V. FCC*, 512 U.S. 622, 642 (1994) ...........................................12

*Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ................................................10, 12

*W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 633-634 (1943) ...............10, 12

*Statutes*

H.R.S. §134-A ..................................................................................2

H.R.S. §134-E ............................................................................passim

Senate Bill 1230 ..............................................................................2

U.S. CONST. amend. I........................................................ 10, 11, 12, 13

U.S. CONST. amend. II.................................................................passim

## INTEREST OF AMICUS CURIAE

*Amicus Curiae*, the National Association for Gun Rights, Inc. ("NAGR"), is a nonprofit membership and donor-supported organization that seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has over 240,000 members nationwide, many of whom reside in Hawai'i. As a national organization whose sole focus is on the protection of Second Amendment rights, NAGR brings particular insight and expertise to the issues presented in this action. NAGR submits the attached brief to ensure a proper understanding of the impact of H.R.S. §134 on its members and the constitutional issues implicated by the statute.

Pursuant to Fed. R. App. P. 29, counsel for *amicus* states that all parties have consented to the filing of this brief. No party's counsel authored any part of this brief and no person other than *amicus* made a monetary contribution to fund its preparation or submission.

## INTRODUCTION

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court affirmed that individuals have a constitutional right under the Second Amendment to publicly carry firearms for self-defense. The State of Hawai'i's statute regulating carrying firearms was manifestly unconstitutional under the Second Amendment standard set forth in *Bruen*. Seemingly in response to *Bruen*, the State adopted Senate Bill 1230. But instead of following the Supreme Court's guidance in *Bruen*, with Senate Bill 1230, Hawai'i defied it, trading one unconstitutional set of firearms laws for another. Through the provisions of Senate Bill 1230, it seeks, *inter alia,* to actively prevent the carrying of firearms throughout the state's public areas and businesses such as banks, bars, and beaches as enacted by H.R.S. §134-A, while placing additional restrictions upon all private property by way of H.R.S. §134-E. That provision states:

**H.R.S. §134-E Carrying or possessing a firearm on private property of another person without authorization; penalty.**

(a) A person carrying a firearm pursuant to a license issued under section 134-9 shall not intentionally, knowingly, or recklessly enter or remain on private property of another person while carrying a loaded or unloaded firearm, whether the firearm is operable or not, and whether the firearm is concealed or unconcealed, unless the person has been given express authorization to carry a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by: (1) Unambiguous written or verbal authorization; or (2) The posting of clear and conspicuous signage at the entrance of the building or on the premises,

by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section: "Private entity" means any homeowners association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property. "Private property" does not include property that is owned or leased by any governmental entity. "Private property of another person" means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner, lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided that nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-ll(a).

e) Any person who violates this section shall be guilty of a misdemeanor.

H.R.S. §134-E designates all private property in the State to be a restricted location where carrying firearms is forbidden absent affirmative steps by the property owner to allow carriage. Contrary to the Second Amendment, the State has established a presumption against carrying firearms for self-defense in public. Under §134-E, ordinary, law-abiding citizens are prevented from carrying handguns in public for self-defense in almost all corners of the State. As such, H.R.S. §134-E makes a mockery of the Supreme Court's holding in *Bruen*, which reaffirmed that personal security extends to more than just "those . . . who work in marbled halls,

guarded constantly by a vigilant and dedicated police force," *Peruta v. California*, 137 S. Ct. 1995, 1999 (2017) (Thomas, J., dissenting from the denial of certiorari), but also emphatically extends to include ordinary, law-abiding Americans outside the home. *Bruen*, 142 S. Ct. at 2122. Since the State's expansive restrictions on carriage in public do not allow typical law-abiding citizens to carry a loaded and operable handgun outside their home in all sorts of places of everyday life, these restrictions deny individuals any meaningful right to bear arms in clear violation of the Second Amendment. In addition, H.R.S. §134-E runs afoul of the Supreme Court's recent ruling in *303 Creative LLC v. Elenis*, 2023 WL 4277208 (U.S. June 30, 2023). In that case the Court held that the government may not compel a person to speak on a matter when he would prefer to remain silent. Many of NAGR's members are in the same position as Plaintiff Kasprzycki, who may not wish to be forced to express support or disapproval of carrying concealed arms on his property. Verified Compl. ¶ 65. Yet, in H.R.S. §134 the State mandates that they speak regarding these issues whether they want to or not. As such, the law violates the longstanding "compelled speech" doctrine the Supreme Court emphatically reaffirmed in *303 Creative LLC*.

## A. Appellees' Injuries are Traceable to the Challenged Conduct of the Appellant

The Appellant's Opening Brief asserts that the Appellees are unable to demonstrate that their alleged injuries can be traced back to the challenged conduct

of the State of Hawai'i. Specifically, the Appellant makes such claims in relation to the allegations related to H.R.S. §134 (a) (12) and H.R.S. §134-E.

The Appellant's Opening Brief attempts to assert that the lower court was incorrect in its finding that Appellees had standing since the Appellees' injuries are not traceable to Hawai'i's actions. In support, it asserts that *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), is distinguishable from the present case. Though *O'Handley v. Weber* was concerned with censorship of speech as opposed to firearms, the matter's analysis of the issue of standing is instructive. In *O'Handley,* Plaintiff Rogan O'Handley alleged Twitter Inc. and the California Secretary of State acted in concert to censor his speech online in violation of his constitutional rights. Specifically, he alleged that a government official brought to Twitter Inc.'s attention an allegedly false and/or misleading social media post that he had made. Three months after the post was reported, Twitter Inc. suspended O'Handley's account. Notably, such action occurred after Twitter Inc. expanded its internal enforcement actions as well as after continued alleged misuse by O'Handley of the platform. *Id.* at *1161. The district court originally dismissed O'Handley's claims against the government due to a lack of Article III standing, an absence of state action, and the failure to state a viable claim for relief.

Upon appellate review, this Court found that O'Handley's injuries, the inability to communicate with his followers and pursue a career in social media,

were traceable to the California Secretary of State's actions despite Twitter Inc. making the final decision to suspend his account. It did so based on the ability to "draw a casual line" from the flagging of the post to the suspension despite several months of time passing and the expansion of internal enforcement actions. Explicitly, this Court found that the traceability requirement was easily met given the fact that O'Handley had never suffered any disciplinary action levied by Twitter Inc. prior to the California Secretary of State's actions. *Id.* at *1162.

Applying such facts to the present case, Appellees' injuries are traceable to the Appellant's challenged conduct despite Appellant's assertions that standing can't be established due to the decision-making of private institutions. Such claim ignores this Court's finding that the enforcement actions of Twitter Inc., a non-governmental entity, when combined with the flagging by the California Secretary of State, were sufficient to establish traceability and standing. Here, Appellees have produced evidence demonstrating that they would conceal-carry their firearms on private properties if not for Appellant's statute. A sufficient "casual line" exists between the Appellant's prospective enforcement of the statute and the Appellees' inability to exercise their Second Amendment rights.

Finding that the Appellees' injuries were traceable to the challenged conduct due to a "casual line" or chain, would be consistent with this Court's jurisprudence that a causal chain does not fail simply because it has several "links," provided those

links are "not hypothetical or tenuous" and remain "plausibil[e]." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) citing to *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002); *Autolog Corp. v. Regan*, 731 F.2d 25, 31, 235 U.S. App. D.C. 178 (D.C. Cir. 1984) (What matters is not the "length of the chain of causation," but rather the "plausibility of the links that comprise the chain."). While traceability is clearly met based on the Court's own precedent, this Court should rebuff the Appellant's attempt to subject claims related to the Second Amendment to an alternate standard since the Supreme Court has made clear that it is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), citing to *McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 780 (2010).

## B.    H.R.S. §134-E Violates the Second Amendment.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129–30 (emphasis added). Another way of expressing the same thing is that when a law burdens conduct covered by the plain text of the Second Amendment, it is *presumptively*

*unconstitutional*. Here, H.R.S. §134-E seeks to regulate the carrying of firearms. Therefore, it is presumptively unconstitutional. The State may attempt to rebut the presumption by "demonstrating that [§134-E] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*., quoting *Konigsberg v. State Bar of Cal*., 366 U.S. 36, 50 n. 10 (1961). In considering whether the government has met its historical burden, courts are to engage in "reasoning by analogy" looking to historical examples "relevantly similar" to the restriction before the Court. *Bruen*, at 2132. Two "metrics" are particularly salient in determining if a historical regulation is "relevantly similar": "[1] how and [2] why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133. By considering these two metrics, a court can determine if the government has demonstrated that a "modern-day regulation" is "analogous enough" to "historical precursors" that the regulation may be upheld as consistent with the Second Amendment's text and history. *Id*. at 2133. The State cannot meet its burden of identifying a sufficiently close historical analogue to justify the challenged restriction Bruen has already addressed the limited tradition of designating certain narrow areas as "sensitive places." *Bruen*, 142 S. Ct. at 2133. The Court explained that there was a tradition of "forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id.* And

while "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited – e.g., legislative assemblies, polling places, and courthouses – [the Court was] also aware of no disputes regarding the lawfulness of such prohibitions." *Id.* Thus, the Court held that going forward, "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Id.* (emphasis added). In other words, courts must assess claimed sensitive place restrictions by whether they are "relevantly similar" to longstanding restrictions on students carrying firearms in schools and firearms in legislative assemblies, polling places, and courthouses.

Hawai'i's designation of sensitive places in H.R.S. §134-E is inconsistent with the Second Amendment because the State is unable to justify such restrictions with historically grounded analogies. H.R.S. §134-E establishes an "anti-carry" presumption throughout the State and is unconstitutional to the extent that it establishes a default ban on the carry of firearms for self-defense in areas open to members of the public. The State's establishment of an anti-carry presumption for all private property is a significant restriction on the right to bear arms in public for self-defense - one that does not have historically grounded analogies as district courts have already found while invalidating similar statutes in New York and New

Jersey. See *Antonyuk v. Hochul*, 2022 WL 16744700, at *79 (N.D.N.Y. Nov. 7, 2022) ("imposition of a state-wide restriction on concealed carry on all private property that is open for business to the public finds little historical precedent."); *Christian v. Nigrelli*, 2022 WL 17100631, at *9 (W.D.N.Y. Nov. 22, 2022) ("Nothing in the Nation's history or traditions presumptively closes the door on that right across all private property."). In summary, H.R.S. §134-E burdens the right of the law-abiding citizens of Hawai'i to carry firearms in public for self-defense. This conduct is covered by the plain text of the Second Amendment, and therefore H.R.S. §134-E is presumptively unconstitutional. The State of Hawai'i cannot rebut the presumption of unconstitutionality by demonstrating that the law is consistent with the Nation's historical tradition of firearms regulation, because there is no such tradition, as the courts that have examined the historical record in great detail have already held. Therefore, H.R.S. §134-E is plainly unconstitutional and should be enjoined.

**C.**     **H.R.S. §134-E Violates the First Amendment.**

In *Frudden v. Pilling*, 742 F.3d 1199 (9th Cir. 2014), this Court echoed the Supreme Court's jurisprudence that the "right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) citing *W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 633-634 (1943);

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc*., 547 U.S. 47, 61 (2006) (stating that "freedom of speech prohibits the government from telling people what they must say"). Here, the Appellant's action of forcing private business owners to engage/refrain from speech has violated the First Amendment. H.R.S. §134-E creates a default presumption across the entire State of Hawai'i that all private property is off-limits to law-abiding citizens who wish to carry firearms for self-defense. The default presumption can be rebutted only by the conspicuous expression of affirmative consent by landowners. In other words, the State has said to landowners that with respect to this conduct – and this conduct only – the normal presumptive license does not apply, and you must affirmatively speak to grant consent even if you would prefer to remain silent. The statute thus violates the First Amendment. The Supreme Court in *303 Creative LLC* found that the First Amendment is violated in cases in which the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include. See *Hurley v. Irish-American Gay*, 515 U.S. 557, 115 S. Ct. 2338 (1995). This prohibition is not limited to ideological messages; it extends equally to compelled statements of fact. See *Frudden v. Pilling*, 742 F.3d 1199, 1206 (9th Cir. 2014); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988) ("These cases cannot be distinguished simply because they involved compelled statements of

opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech.").

The Supreme Court has made clear that the act of mandating speech that a speaker would not otherwise make necessarily alters the content of the speech and is therefore a "content-based" regulation of speech. *Riley*, 487 U.S. 781, 795 (1988). See also *Turner Broad. Sys. V. FCC*, 512 U.S. 622, 642 (1994) (Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny as laws that suppress, disadvantage, or impose differential burdens upon speech because of its content.). Content-based regulations on speech are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

Generally, to prevail on a compelled-speech claim under the First Amendment, a plaintiff must prove three elements: (1) speech, (2) to which the speaker objects or disagrees, (3) which is compelled by governmental action that is regulatory, proscriptive, or compulsory in nature. *Wooley*, 430 U.S. 705, 714-15 (1977); *Laird v. Tatum*, 408 U.S. 1, 11 (1972); and *Barnette*, 319 U.S. at 642. The first two elements of a compelled-speech claim appear present here, regardless of whether the speech were deemed factual and not ideological in nature, and regardless of whether the speaker agreed with the truth of the message and just disagreed with

12

having to speak it. *Antonyuk v. Hochul*, 2022 WL 16744700, at *82 (N.D.N.Y. Nov. 7, 2022). H.R.S. §134-E compels speech by coercing property owners to conspicuously speak the state's controversial message (visible to neighbors and passersby on the sidewalk or street) if (1) they want to welcome onto their property all license-holding visitors whom the State has spooked with the threat of a criminal charge, but (2) they are otherwise unable to give express consent to those visitors for some reason (say, because as small-business owners they do not enjoy the luxury of being able to sit at the front entrance to their property twenty-four hours a day, seven days a week, twelve months a year). Cf. *Id*. at *83. In summary, therefore, H.R.S. §134-E is presumptively unconstitutional under the First Amendment. Applying strict scrutiny, the State has not offered any evidence that the law is narrowly tailored to serve a compelling state interest. Therefore, the presumption is unrebutted, and the lower court's decision affirmed.

## <u>CONCLUSION</u>

For these reasons, and those stated by the Appellees, the District Court's decision should be affirmed.

13

Respectfully,

/s/ Sebastian D. Torres
Sebastian D. Torres
Gatlin Voelker, PLLC.
50 East Rivercenter Blvd., Suite 1275
Covington, Kentucky 41011
(859) 781-9100
storres@gatlinvoelker.com
*Attorney for Amici Curiae*

## CERTIFICATION PURSUANT TO
## <u>Fed. R. App. P. 32(a)(7)(B) and (C)</u>

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 3,151 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2016, Times New Roman, Size 14.

Respectfully,

/s/ Sebastian D. Torres
Sebastian D. Torres
Gatlin Voelker, PLLC.
50 East Rivercenter Blvd., Suite 1275
Covington, Kentucky 41011
(859) 781-9100
storres@gatlinvoelker.com
*Attorney for Amici Curiae*

vi

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

/s/ Sebastian D. Torres
Sebastian D. Torres