No. 23-16164

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII
FIREARMS COALITION,

*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of
Hawai'i,

*Defendant-Appellant*.

On Appeal from the United States District Court for the District of Hawai'i
No. 1:23-cv-00265-LEK-WRP, Hon. Leslie E. Kobayashi

## SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT ANNE E. LOPEZ

ANNE E. LOPEZ
    *Attorney General of the State of Hawai'i*
KALIKO'ONĀLANI D. FERNANDES
    *Solicitor General*
NICHOLAS M. MCLEAN
    *First Deputy Solicitor General*
STATE OF HAWAI'I
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

NEAL KUMAR KATYAL
DANA A. RAPHAEL
    *Special Deputy Attorneys General*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

MARY B. MCCORD
RUPA BHATTACHARYYA
SHELBY B. CALAMBOKIDIS
ALEXANDRA LICHTENSTEIN
   *Special Deputy Attorneys General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
(202) 661-6607
mbm7@georgetown.edu

BEN GIFFORD
   *Special Deputy Attorney General*
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
(202) 662-9835
bg720@georgetown.edu

*Attorneys for Defendant Anne E. Lopez, in her official capacity as the Attorney General of the State of Hawaiʻi*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................3

    I.       Sensitive-Place Restrictions Are Presumptively Lawful .....................3

    II.      The Challenged Provisions Are Consistent with the
            Principles Underlying the Nation's Tradition of Firearms
            Regulation .............................................................................................4

    III.     The State's Historical Analogues Support the
            Constitutionality of the Challenged Provisions Under
            *Bruen* and *Rahimi* .................................................................................9

    IV.     *Rahimi* Also Demonstrates That Plaintiffs' Facial
            Challenges Fail ...................................................................................12

CONCLUSION ..................................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B & L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) .................................4

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...........................................1, 3

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012)............. 13, 14

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).........................................................12

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) .................................................... 1, 2, 3, 4, 5, 8, 9, 11

*United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024).............................................4

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) .............................................5

*United States v. Rahimi*,
   No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024)................................ *passim*

*United States v. Salerno*, 481 U.S. 739 (1987) .......................................................2

**Statutes**

18 U.S.C. § 922(g)(8).............................................................................................1, 5

**Other Authorities**

Declaration of Hendrik Hartog, *Koons v. Platkin*,
   No. 1:22-cv-07464 (D.N.J. Feb. 13, 2023), ECF No. 84.....................................8

Transcript of Oral Argument, *United States v. Rahimi,*
   2024 WL 3074728 (U.S. June 21, 2024) (No. 22-915) .......................................6

**INTRODUCTION**

This supplemental brief responds to the Court's order directing the parties to address "the effect, if any, of the Supreme Court's decision in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024), on the issues in this case." Dkt. 89. *Rahimi* rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits firearm possession by individuals subject to domestic violence restraining orders. *See* 2024 WL 3074728, at *10. In applying *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *Rahimi* clarified several methodological points regarding the *Bruen* analysis. *Rahimi* strongly supports the State's position in this case, and it confirms that this Court should vacate the district court's sweeping injunction.

First, *Rahimi* reiterated *District of Columbia v. Heller*'s acknowledgement that certain categorical firearms prohibitions—including "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," 554 U.S. 570, 626 (2008)—are "'presumptively lawful,'" *Rahimi*, 2024 WL 3074728, at *10 (quoting *Heller*, 554 U.S. at 626, 627, n.26). Because Plaintiffs in this case have failed to rebut that presumption, this Court should reject their challenge to the sensitive-place provisions at issue.

Second, *Rahimi* emphasized that courts evaluating Second Amendment challenges must "consider[] whether the challenged regulation is consistent with

the *principles* that underpin our regulatory tradition." *Id.* at *6 (emphasis added).

Contrary to recent decisions that "have misunderstood the methodology of" *Bruen*

and *Heller*—including the district court's decision in this case—a regulation does

not need to "precisely match its historical precursors." *Id.* Here, the State has

amply demonstrated that the challenged provisions are consistent with the

principles underlying the historical regulations of firearms in sensitive places and

the laws that prohibited firearms on private property absent consent.

Third, *Rahimi* relied on a range of historical sources, including both state

and territorial laws, when identifying the relevant historical tradition. *See, e.g.*, *id.*

at *8-9. The opinion in *Rahimi* did not limit itself to pre-ratification laws or to

laws that applied to a particular percentage of the Nation's population. The district

court here, by contrast, artificially constrained the universe of laws on which the

State was permitted to rely. In doing so, the court ignored several "dead ringer[s],"

*Bruen*, 597 U.S. at 30, that unambiguously support the constitutionality of the

challenged provisions.

Fourth, *Rahimi* fatally undermines Plaintiffs' facial challenge. It clarifies

that a facial Second Amendment challenge succeeds only if "no set of

circumstances exists under which the [challenged law] would be valid." *Rahimi*,

2024 WL 3074728, at *6 (quoting *United States v. Salerno*, 481 U.S. 739, 745

(1987)). The State has demonstrated that the challenged provisions are

constitutional in all of their applications.  But at a minimum, the fact that these provisions are constitutional in some applications establishes that granting facial relief was erroneous.

## ARGUMENT

*Rahimi* clarifies the *Bruen* framework, demonstrates why Plaintiffs' unduly restrictive theories should be rejected, and confirms that the extraordinary injunction issued by the district court should be vacated.

## I.     Sensitive-Place Restrictions Are Presumptively Lawful

First, *Rahimi* supports the State's position that "sensitive-place restrictions are presumptively lawful."  OB20 (internal quotation marks omitted); *accord* RB17.  Although the *Rahimi* majority did not discuss sensitive places specifically, it cited approvingly *Heller*'s list of "presumptively lawful" categorical prohibitions, which included sensitive-place restrictions.  *See Rahimi*, 2024 WL 3074728, at *10 (quoting *Heller*, 554 U.S. at 626, 627, n.26).  Justice Kavanaugh's concurrence in *Rahimi* also reiterated that sensitive-place restrictions are "presumptively constitutional," *see id.* at *28, echoing his *Bruen* concurrence, which was joined by the Chief Justice, *see* 597 U.S. at 81.

Because sensitive-place restrictions are presumptively lawful, they fall outside the scope of the Second Amendment.  OB20.  A number of post-*Heller* decisions reached this conclusion under the first step of the then-governing Second

Amendment test, which *Bruen* described as "broadly consistent with *Heller*." 597 U.S. at 19. This Court should do the same, especially in light of Plaintiffs' failure to rebut the challenged restrictions' presumptive lawfulness. *See* OB10–11.[1] But Plaintiffs' challenge fails in its entirety even if the Court assumes *arguendo* that the regulations at issue implicate the plain text of the Second Amendment and thus pass the first step of the *Bruen* test.

## II. The Challenged Provisions Are Consistent with the Principles Underlying the Nation's Tradition of Firearms Regulation

Second, the Supreme Court's *Rahimi* opinion clarifies the proper approach to analogical reasoning under *Bruen*.[2] *Rahimi* makes clear that for a challenged regulation to " 'pass constitutional muster,' " it "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' " 2024 WL 3074728, at *6 (quoting *Bruen*, 597 U.S. at 30).

---

[1] Although dicta in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), *pet. for reh'g en banc pending*—a pre-*Rahimi* case that had nothing to do with sensitive places—suggested that " 'sensitive place' laws" should be analogized "to a sufficiently comparable historical counterpart," *id*. at 669, this Court held in *B & L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024), that challenges to "presumptively lawful" regulations are properly addressed "at the first step of the *Bruen* test" because "[f]or any law to be 'presumptively lawful,' it necessarily must not implicate the plain text of the Second Amendment," *id*., slip op. at 23.

[2] *Rahimi* focused on *Bruen*'s second step, presumably because "no one question[ed] that the law Mr. Rahimi challenges addresses individual conduct covered by the text of the Second Amendment." 2024 WL 3074728, at *14 (Gorsuch, J., concurring); *see id.* at *32 (Jackson, J., concurring) (observing that *Bruen* requires a "two-step evaluation").

Crucially, when evaluating the constitutionality of 18 U.S.C. § 922(g)(8), the Court did *not* ask the narrow question of whether the government had established a specific tradition of disarming domestic abusers. *See id*. at *6–10; *see also id*. at *12 (Sotomayor, J., concurring) (noting that the government had not identified any such laws). Nor did the Court ask whether there was a specific "tradition . . . of prohibiting gun possession . . . for people . . . subject to civil protective orders," as the Fifth Circuit had. *United States v. Rahimi*, 61 F.4th 443, 460 n.11 (5th Cir. 2023) (internal quotation marks omitted).[3]

Instead, the Court asked generally whether "preventing individuals who threaten physical harm to others from misusing firearms" fell within the Nation's regulatory tradition. *Rahimi*, 2024 WL 3074728, at *5. In holding that it did, the Court drew on "two distinct legal regimes"—surety laws and going-armed prohibitions—and concluded that these regimes, despite being "by no means identical" to the modern prohibition on firearm possession by those subject to domestic violence restraining orders, shared an underlying principle that defined the contours of a broader tradition into which the challenged law "fit[ ] neatly." *Id.*

---

[3] The Court held that the Fifth Circuit made "two errors," the first of which was "read[ing] *Bruen* to require a 'historical twin' rather than a 'historical analogue.'" *Rahimi*, 2024 WL 3074728, at *11 (quoting *Bruen*, 597 U.S. at 30). The second was incorrectly applying precedent concerning facial challenges. *See infra* Part IV.

at *7–9.  That is, the Court considered the broader "tradition the surety and going armed laws represent."  *Id.* at *9.

In this case, the State has demonstrated that the challenged provisions are "consistent with the principles that underpin our regulatory tradition."  *Id.* at *6. Hawaiʻi's restrictions on firearms in government parking lots, bars and restaurants serving alcohol, parks and beaches, and banks and financial institutions are consistent with the principles underpinning historical sensitive-place restrictions. *Cf. id.* at *30 (Barrett, J., concurring) (describing "sensitive places" as a "principle that limits the right to public carry" (internal quotation marks omitted)).  As the State explained, "*Heller* and *Bruen* yield several principles that justify a place's designation as sensitive, including that the government is acting as a proprietor, and that the people found there or the activities that take place there are particularly susceptible to the risks of gun violence."  OB22 (internal quotation marks and citations omitted); *see* RB14 ("For sensitive-place restrictions, the relevant constitutional principle is that a legislature can restrict firearms 'where carrying weapons will pose unique dangers . . . .' " (quoting Transcript of Oral Argument at 12, *Rahimi*, No. 22-915)).  The challenged sensitive-place restrictions all "fit[ ] neatly within the tradition" that these principles undergird.  *Rahimi*, 2024 WL 3074728, at *9.

By contrast, Plaintiffs and the district court defined the relevant principles in an unduly narrow way. *Rahimi* confirms that this approach is wrong. For example, the district court faulted the State for failing to identify "a national historical tradition of regulating people from carrying firearms in establishments serving alcohol irrespective of whether the individual carrying is consuming alcohol." 1-ER-0055; *see also* 1-ER-0059.[4] Plaintiffs make a similar mistake—suggesting, for example, that the State must establish a precise "historical tradition of prohibiting carry in parking lots analogous to the parking lots at issue here." AB32.[5] Plaintiffs and the district court employ exactly the overly narrow analogical inquiry that *Rahimi* rejected. "[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 2024 WL 3074728, at *6; *see also id.* at *30 (Barrett, J., concurring) ("a challenged regulation need not be an updated model of a historical counterpart," and "'[a]nalogical reasoning' under *Bruen* demands a wider lens"). Instead, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at *6

---

[4] The district court was wrong; the State identified multiple laws prohibiting firearms in establishments serving alcohol irrespective of personal consumption. *See infra* p. 9.

[5] To the extent that Plaintiffs try to identify a generalizable principle underlying sensitive-place restrictions at all, they advance a baseless and ahistorical "comprehensive government security" theory. *See* RB8–9.

(majority opinion).  The challenged sensitive-place restrictions are " 'relevantly similar' " to the historical laws the State identified "in both why and how [they] burden[] the Second Amendment right."  *Id.* at *9 (quoting *Bruen*, 597 U.S. at 29).

Likewise, the private property default rule is consistent with the principles underlying historical provisions restricting the carry of firearms on private property without consent.  *See* OB52–56.  As the State has explained, "[t]he aim of these provisions was to protect the powerful right of the property owners to prevent armed individuals from coming on to their property without license."  OB54 (quoting Declaration of Hendrik Hartog ¶ 22, *Koons v. Platkin*, No. 1:22-cv-07464 (D.N.J. Feb. 13, 2023), ECF No. 84).  The default rule was enacted in the same vein, to "respect[] the right of private individuals and entities to choose for themselves whether to allow or restrict the carrying of firearms on their property." 4-ER-0705 (text of Act 52).  The default rule is also within the historical tradition when it comes to the "how"—and is in fact less burdensome than analogous historical laws, which required permission from the property owner in writing.  *See* OB53.  Under *Rahimi*, that justifies the default rule.

The district court erroneously concluded that the State failed to identify a tradition of prohibiting unauthorized carry on private property open to the public because, in the court's view, most of the State's analogues "concern[ed] prohibiting carrying firearms on enclosed premises or plantations."  1-ER-0085.

As an initial matter, the district court was mistaken in its understanding that these analogues did not apply to property held open to the public. *See* OB54–55; *see also*, *e.g.*, 5-ER-1060 (1865 Louisiana law banning "fire-arms on the premises . . . of any citizen, without the consent of the owner or proprietor"). In any event, *Rahimi* confirms that historical laws requiring permission to carry firearms on private property are part of the same general tradition as the challenged default rule, "regardless of whether those laws dealt with 'enclosed' lands, 'plantations,' or other kinds of private property." OB56.

## III. The State's Historical Analogues Support the Constitutionality of the Challenged Provisions Under *Bruen* and *Rahimi*

Third, *Rahimi* demonstrates that each of the historical analogues identified by the State supports the constitutionality of the challenged provisions. Before the district court, the State identified a host of laws from the Founding and Reconstruction Eras that are " 'relevantly similar' " to the challenged provisions. *See Rahimi*, 2024 WL 3074728, at *6 (quoting *Bruen*, 597 U.S. at 29). With respect to the restriction on firearms in places that serve alcohol, for example, the State submitted several laws from the 1800s that banned firearms in locations where alcohol was sold, part of a continuing tradition from the Founding. *See* OB27–30. And with respect to the restriction on firearms in parks and beaches, the State introduced a number of historical laws that banned guns in parks, beginning with the first modern American parks in the years immediately preceding

Reconstruction. *See* OB39–41; *see also, e.g.*, 1-Add-167; 1-Add-203; 1-Add-289; 1-Add-305; 1-Add-307; 2-Add-376; 2-Add-382.

The district court discounted a number of these analogues—including some that were historical *twins* of the challenged regulations—because it apparently believed that courts should "dismiss any law enacted unless it was done in a state where a significant percentage of the people . . . resided at the time that the Fourteenth Amendment was enacted." 1-ER-0057; *see also* AB24 (similar). The district court also disregarded many other historical analogues—including a number passed in the years immediately following the Civil War—because the court concluded that such analogues were categorically too late to "sufficiently assist in determining the prevailing understanding of the right to bear arms in public at the time of ratification." 1-ER-0068 n.18 (emphasis omitted); *see also* AB41 (similar).

The district court's analysis—including its narrow focus on percentages and cutoff dates—is inconsistent with *Rahimi*'s admonition that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791" and is not "a law trapped in amber." 2024 WL 3074728, at *6. When discussing historical surety laws that regulated firearm usage, for example, *Rahimi* cited a single example from the Founding Era, and even that example came several years after the ratification of the Second Amendment. *See id.* at *8

(discussing a 1795 Massachusetts law). The Court then bolstered its analysis by citing several laws that were not only enacted much later—between the 1830s and 1860s—but were also drawn from states and territories alike. *See id.* (citing *Bruen*, 597 U.S. at 56 n.23 (collecting state and territorial laws)). And in discussing going-armed regulations, the Court examined a handful of common-law and statutory prohibitions, but it did not include any analysis whatsoever regarding the percentage of the Nation's population they covered. *See id.* at *9.

The *Rahimi* concurrences confirm that narrowly restricting the inquiry to only pre-enactment laws in states with particularly large populations is wrong. As Justice Kavanaugh explained, "[p]ost-ratification interpretations and applications by government actors—at least when reasonably consistent and longstanding—can be probative of the meaning of vague constitutional text." *Id.* at *22. Indeed, "the Framers themselves intended that post-ratification history would shed light on the meaning of vague constitutional text." *Id.* at *23. Justice Barrett similarly cautioned that "a test that demands overly specific analogues has serious problems" because it "forces 21st-century regulations to follow late-18th-century policy choices" and "assumes that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority." *Id.* at *30. Those "assumptions are flawed, and originalism does not require them." *Id.*

Here, the State offered several unbroken chains of regulation stretching from the Founding and Reconstruction through the present day. *See, e.g.*, OB27–30 (tradition of regulating firearms and alcohol, beginning in the 1700s and continuing through the 1800s); OB40–41, 41 n.18 (tradition of regulating firearms in parks, beginning before the Civil War and continuing through the twentieth century); OB45–46 (tradition of regulating firearms at commercial and social assemblies, spanning the 1800s). *Bruen* does not impose a strict cut-off at ratification, and it does not require subsequent analogues to be disregarded or discounted. Had it done so, it would have created "a law trapped in amber"—the very thing *Rahimi* disclaims. 2024 WL 3074728, at *6.

## IV.    *Rahimi* Also Demonstrates That Plaintiffs' Facial Challenges Fail

The district court awarded facial relief to Plaintiffs on their challenges to the State's restrictions on firearms in bars and restaurants that serve alcohol (even though Plaintiffs never challenged the restriction as applied to bars, *see* OB26), parks and beaches, and banks and financial institutions. *See* 1-ER-0095. And although the district court purported to award only as-applied relief to Plaintiffs on their challenge to the private property default rule, *see id.*, it effectively awarded facial relief with respect to all private property held open to the public, *see John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (where the "claim and the relief that

would follow . . . reach beyond the particular circumstances of these plaintiffs," they must "satisfy our standards for a facial challenge to the extent of that reach").

*Rahimi* makes clear that each of these awards was improper because a party making a facial challenge must "establish that no set of circumstances exists under which the [challenged regulation] would be valid." 2024 WL 3074728, at *6 (internal quotation marks omitted). *Rahimi* also clarified that it is inappropriate in a facial challenge to "focus[] on hypothetical scenarios where [a law] might raise constitutional concerns." *Id.* at *11. Because each of the challenged provisions is, at the very least, "constitutional in some of its applications," *id.* at *6, this Court should vacate the district court's decision to the extent it awarded facial relief.

The decision to award facial relief with respect to private property held open to the public is particularly unwarranted given the State's discussion of *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), which is directly on point. *See* RB28. There, the Eleventh Circuit rejected a facial challenge to a Georgia statute that restricted carrying firearms in a private establishment without authorization because the law was "capable of numerous constitutional applications," including where the establishment denied authorization. *GeorgiaCarry.Org*, 687 F.3d at 1266. The same is true of the private property default rule in this case, and the same logic applies to sensitive-place restrictions in private establishments generally, including bars, restaurants,

banks, and financial institutions. The State has already explained that Plaintiffs lack standing to challenge sensitive-place restrictions in locations where they would not be allowed to carry firearms in the absence of the challenged provisions. *See* OB17; RB4. But even if Plaintiffs had standing, they would not be entitled to relief with respect to such locations because "the Second Amendment, whatever its full scope, certainly must be limited by the equally fundamental right of a private property owner to exercise exclusive dominion and control over its land." *GeorgiaCarry.Org*, 687 F.3d at 1265.

The district court also erred by awarding facial relief with respect to parks and beaches. The State has explained that the challenged restriction is constitutional in all of its applications, *see* OB34–42, but it is unquestionably constitutional as applied to parks and beaches that include playgrounds, are located next to schools, are particularly crowded, or are frequently used for protected constitutional expression, *see* OB36–37. If any of these applications are constitutional, then the district court's award of facial relief was incorrect.

## CONCLUSION

*Rahimi* confirms that the Court should vacate the district court's preliminary injunction.

Dated: July 12, 2024

ANNE E. LOPEZ
  *Attorney General of the State of Hawai'i*
KALIKO'ONĀLANI D. FERNANDES
  *Solicitor General*
NICHOLAS M. MCLEAN
  *First Deputy Solicitor General*
STATE OF HAWAI'I
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

MARY B. MCCORD
RUPA BHATTACHARYYA
SHELBY B. CALAMBOKIDIS
ALEXANDRA LICHTENSTEIN
  *Special Deputy Attorneys General*
INSTITUTE FOR CONSTITUTIONAL
  ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
(202) 661-6607
mbm7@georgetown.edu

Respectfully submitted,

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
DANA A. RAPHAEL
  *Special Deputy Attorneys General*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

BEN GIFFORD
  *Special Deputy Attorney General*
INSTITUTE FOR CONSTITUTIONAL
  ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
(202) 662-9835
bg720@georgetown.edu

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-16164

I am the attorney or self-represented party.

**This brief contains** | 3,235 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | 6/21/2024 |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Neal Kumar Katyal | **Date** | 7/12/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 12, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


<u>/s/ Neal Kumar Katyal</u>
Neal Kumar Katyal