No. 23-16164

# In the United States Court of Appeals
## for the Ninth Circuit

---

JASON WOLFORD, *et al.,*

*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ,

*Defendant-Appellant.*

**On Appeal from the United States District Court
For the District of Hawaii
Civ. No. 1:23-cv-002665—LEK-WRP, Hon. Leslie E. Kobayashi**

---

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES

---

KEVIN GERARD O'GRADY
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 968123
Telephone: (808) 521-3367
Kevin@KevinOGradyLaw.Com

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Alan.alexander.beck@gmail.com

## <u>Contents</u>

**Table of Authorities**..................................................................... ii

**I.** *RAHIMI'S* **HOLDING AND ANALYSIS** ........................................1

**II.** **RAHIMI REASONING APPLIES HERE.** ...................................4

**A.** **The Court's Reasoning** ...............................................................4

**B.** *Rahimi* **Supports the Unconstitutionality of Act 52** .............11

**III.** **CONCLUSION** ..........................................................................14

i

## <u>Table of Authorities</u>

**Cases**

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023, *vacated and remanded*, 2024 WL 3259671 (U.S., July 02, 2024).....................................................5, 6

*District of Columbia v. Heller*, 554 U.S. 570 (2008)...................................10, 11, 14

*Koons v. Platkin*, 673 F. Supp. 3d 515 (D.N.J. 2023), *appeal pending*, Nos. 23-1900 & 23-2043 (3d Cir.) ................................................................................9, 14

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U. S. 1 (2022) .......... passim

*O'Neill v. State*, 16 Ala. 65 (1849).........................................................................3, 9

*O'Connor v. Donaldson*, 422 U.S. 563 (1975)...........................................................6

*State v. Huntly*, 25 N. C. 418 (1843) ................................................................. 3, 8, 9

*United States v. Rahimi*, 602 U.S. ----, 2024 WL 3074728 (U.S. June 21, 2024) .................................................................................................................. passim

*Vidal v. Elster*, 602 U.S. 286 (2024) ........................................................................8

*Wolford v. Lopez*, 686 F.Supp.3d 1034 (D. Haw. 2023)............................. 6, 7, 9, 10

**Statutes**

18 U.S.C. § 922(g)(8)(C)(i) ............................................................................ passim

**Other Authorities**

Bartlett's Roget's Thesaurus, First Edition, 1996 ....................................................12

*Wolford v Lopez* (9th Cir. April 11, 2024 ( No. 23-16164) Oral Argument at 17:00-17:50 available at https://www.youtube.com/watch?v=0Uq3O6kR_2Q.............11

In accordance with this Court's June 21, 2024 order, Plaintiffs-Appellees respectfully submit this supplemental brief on the effect of the Supreme Court's holding in *United States v. Rahimi*, 602 U.S. ----, 2024 WL 3074728 (U.S. June 21, 2024), on this case. As detailed below, the Supreme Court's reasoning in *Rahimi* confirms that the district court did not err in entering a preliminary injunction.

## I. *RAHIMI'S* HOLDING AND ANALYSIS

The issue decided by the Supreme Court in *Rahimi* was whether 18 U.S.C. § 922(g)(8)(C)(i) facially violated the Second Amendment by prohibiting the possession of firearms by a person against whom a domestic violence restraining order had issued and where the order was supported by a judicial finding that the person "represents a credible threat to the physical safety" of his intimate partner or his or his partner's child. The Court found that "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect." Slip op. at 5. See also slip op. at 11 ("An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").[1]

_____

[1] The Court found it sufficient that *Rahimi* was disqualified under Section 922(g)(8)(C)(i), imposing a disqualification if the restraining order found "a credible

1

In so holding, the Court faithfully applied the text, history and tradition approach set forth in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U. S. 1 (2022). The Court reaffirmed that "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, bears the burden to 'justify its regulation.'" Slip op. at 6-7, quoting *Bruen*, 597 U.S. at 24. The Court further made clear that "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" Slip op. at 7, quoting *Bruen*, 597 U.S. at 29 and n.7. The Court stressed that "[w]hy and how the regulation burdens the right are central to this inquiry" and thus "if laws at founding regulated firearm use" that would support "imposing similar restrictions for similar reasons." *Id*. But the Court also noted that such a law "may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.*

The Court found that Section 922(g)(8)(C)(i) was sufficiently analogous to founding era laws requiring a "surety" and the "going armed" affray laws because these laws were "on the possession of firearms by those found by a court to present

threat to the physical safety" of a protected person, and thus stated that it "need not decide whether regulation under Section 922(g)(8(C)(ii) is also permissible." Slip op. at 8-9.

2

a threat to others" and thus were "relevantly similar" to Section 922(g)(8)(C)(i) "in both why and how it burdens the Second Amendment right." *Id*. at 13-14. At the time of the founding surety laws, the Court noted, "targeted the misuse of firearms" op. at 11) and required "'the offender to find sureties for his keeping the peace.'" Slip op. at 11, quoting a Massachusetts 1795 statute. Relying on *State v. Huntly*, 25 N. C. 418, 421–422 (1843) (per curiam), and *O'Neill v. State*, 16 Ala. 65, 67 (1849), the Court reasoned that the law of affray was part of the American "common law" tradition. Id. at 13.

The Court stressed that "[u]nlike the regulation struck down in *Bruen*, Section 922(g)(8)(C)(i) does not broadly restrict arms use by the public generally," and that the restriction was both "temporary" and applied "only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id*. The Court recognized that *Bruen* had held that surety laws were insufficient to justify the "good cause" New York requirement there at issue but held that "focused regulations like the surety laws are not a historical analogue for a broad prohibitory regime like New York's does not mean that they cannot be an appropriate analogue for a narrow one" like Section 922(g)(8)(C)(i). Id. at 15-16.

## II.    RAHIMI REASONING APPLIES HERE.

### A.    The Court's Reasoning

*Rahimi* confirms that the District Court applied the correct approach to the issues presented in this appeal. Unlike *Rahimi*, Plaintiffs here are all law-abiding individuals who have undergone Hawaii's stringent background check process to obtain a concealed carry permit. The issue of which individuals can be deprived of Second Amendment rights due to previously adjudicated criminal conduct or a court order having been issued and then in effect temporarily disarming a specific person, simply is not before this court. Rather, Hawaii's law regulates "arms-bearing conduct" and must therefore justify its regulations under the text, history and tradition of *Bruen* as reaffirmed and applied in *Rahimi*.

First, *Rahimi* makes clear that there is nothing limited about the test to be applied under *Bruen*, a test that the Court reaffirmed in every way. The Court held that "[i]n *Bruen*, we directed courts to examine our "historical tradition of firearm regulation" to help delineate the contours of the right." Slip op. at 6, quoting *Bruen*, at 17. The *Bruen* analysis thus applies to all "firearm regulation," including regulations of "arms-bearing conduct," not merely broad bans, such as at issue in *Bruen*. *Rahimi* reaffirmed the holding in *Bruen* that that the government bears the burden to "justify its regulation" of Second Amendment rights, just as it does when it attempts to regulate other constitutional rights. Indeed, *Rahimi* holds that a more

4

demanding analogue inquiry is appropriate for regulations that "broadly restrict arms use by the public in general" instead of the more "focused" and "temporary" restriction at issue in *Rahimi*. *Id*. at 14.

These holdings reject the approach taken by the Second Circuit in *Antonyuk v. Chiumento*, 89 F.4th 271, 302 (2d Cir. 2023, *vacated and remanded*, 2024 WL 3259671 (U.S., July 02, 2024), where the Second Circuit went to some lengths to characterize the restriction at issue in *Bruen* as "exceptional" because it "conditioned the exercise of a federal constitutional right on the rightsholder's reasons for exercising the right." The Second Circuit thus held that a less demanding and "more nuanced approach" was applicable "in cases challenging less exceptional regulations." Id. at 339. That attempt to restrict *Bruen* to its facts and thus minimize the historical inquiry is incompatible with *Rahimi*.

The Second Circuit made other errors as well. For example, the Second Circuit sustained New York's reliance on "good moral character" because, it was, in the court's view, permissible for New York to inquiry not only as to whether the applicant was "dangerous" but whether the applicants "are law abiding and responsible persons." *Antonyuk* 89 F.4th at 317. *Rahimi* expressly rejected "the Government's contention that Rahimi may be disarmed simply because he is not 'responsible.'" Slip op. at 17. Hawaii's restrictions thus cannot be justified as necessary to ensure that only "responsible persons" carry arms.

The Second Circuit likewise erred in holding that "[b]ecause the CCIA is a state law, the prevailing understanding of the right to bear arms in 1868 and 1791 are both focal points of our analysis." *Antonyuk* 89 F.3d at 304. *Bruen* made clear that there is only one Second Amendment, and it has "the same scope" regardless of whether it is applied to the States or the federal government. *Bruen* 597 U.S. at 37. Thus, while *Rahimi* concerned only a federal statute, there can be no suggestion that an identical State statute would have been treated any differently. The Court's analysis in *Rahimi* is directly applicable to State restrictions. Given this multitude of errors it is not surprising that the Supreme Court vacated and remanded the Second Circuit's decision "for further consideration in light of" *Rahimi*. *Antonyuk v. James,* --- S.Ct. ----, 2024 WL 3259671 (Mem) (July 02, 2024).[2] Here, unlike the Second Circuit in *Antonyuk*, the district court faithfully applied *Bruen* and conducted the historical inquiry confirmed by *Rahimi*. *Wolford v. Lopez*, 686 F.Supp.3d 1034, 1056-65 (D. Haw. 2023).

Second, *Rahimi* confirms that the courts must apply "faithfully the balance struck by the founding generation to modern circumstances.'" Slip op. at 7, quoting *Bruen*, at 29, and n. 7. That focus on "the balance struck by the founding generation"

---

[2] The Second Circuit's *Antonyuk* decision is thus no longer precedential. See, e.g., *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect").

is repeated throughout the opinion. See slip op. at 5,6,7,10,11,13,14. While the Court in *Rahimi* found it "unnecessary" to decide formally whether courts should "primarily rely on the prevailing understanding" in 1789 or 1868 (slip op. at 8 n.1), the Court did not even cite (much less rely on) a single Reconstruction Era or later statute, practice or tradition. That singular focus on the founding makes clear that the district court did not err in refusing to give much weight to Reconstruction Era and later analogues proffered by Hawaii. *Wolford*, 686 F.Supp.3d 1034, 1066-68 (D. Haw. 2023) ("Of the sixteen laws and ordinances passed after the Fourteenth Amendment's ratification, fifteen of those were passed at least twenty years after the Fourteenth Amendment's ratification.").

Third, *Rahimi* confirmed *Bruen*'s holding that the "[w]hy and how the regulation burdens the right are central to this inquiry." Slip op. at 7. In *Rahimi*, the Court found a match on both elements in surety and "going armed" affray laws. Both of those analogues trace to the founding and both required a judicial finding that the person was dangerous. See slip op. at 12. Specifically, the surety laws "targeted the misuse of firearms" and required a complaint that the person "would do him [the complainant] harm or breach the peace." Id. at 11-12. The affray laws were analogous only because affrays were understood to "encompass the offense of "arm[ing]" oneself "to the Terror of the People," Id. at 12. Neither the surety law nor the affray laws limited carry by the law-abiding.

7

The Court in *Rahimi* stressed that these surety and affray laws were "focused regulations" and explained that while such "focused regulations" centered on a particular individual were analogous to the restriction imposed by Section 922(g)(8)(C)(i), such regulations would not provide support "for a broad prohibitory regime." Id. at 15. In short, *Rahimi* holds that the "how and why" inquiry for analogues must be tailored to the type of restriction imposed by the modern regulation. The Court made clear that broad restrictions can only be justified if the State is able to demonstrate similar broadly applicable historical analogues from the founding. And, as Justice Barrett notes in concurring in *Rahimi*, "evidence of 'tradition' unmoored from original meaning is not binding law." *Rahimi*, slip op. at 2 (Barrett, J., concurring), quoting *Vidal v. Elster*, 602 U.S. 286, 324 (2024) (Barrett, J., concurring). Accord *Bruen*, 597 U.S. at 37 ("But to the extent later history contradicts what the text says, the text controls.").

Here, as in *Bruen* (but unlike in *Rahimi*), Hawaii's law imposes a "broad prohibitory regime" on the right of all law-abiding persons to be armed in public. The very cases relied on by the *Rahimi* Court (slip op. at 13) as recognizing the crime of affray demonstrate that such peaceful carry was perfectly permissible at the founding. See *Huntley*, 25 N.C. at 423 ("For any lawful purpose--either of business or amusement--the citizen is at perfect liberty to carry his gun. It is the wicked purpose--and the mischievous result--which essentially constitute the crime.");

8

*O'Neill*, 16 Ala. at 67 ("no authority goes so far as to hold that mere vulgar or low abuse, can constitute this offence [of affray]").

The same is true for surety laws, which imposed a bond only if the individual offender was found to pose a danger. As stated in *Bruen*, "the surety laws did not prohibit public carry in locations frequented by the general community." *Bruen*, 597 U.S. at 56. See also *Koons v. Platkin*, 673 F. Supp. 3d 515, 645 (D.N.J. 2023), *appeal pending*, Nos. 23-1900 & 23-2043 (3d Cir.) (relying on *Huntley* and rejecting Viriginia and North Carolina affray laws as not "relevantly similar" to New Jersey's broad bans on carry by permit holders). The district court did not err in holding that there is no founding era support for Hawaii's restrictions. *Wolford*, 686 F. Supp. 3d at 1064 ("the State has not proffered evidence that there was a historical tradition of prohibiting the carrying of firearms in parks").

As *Rahimi* demonstrates, at the founding the regulation of "arms-bearing conduct" was limited to surety statutes and the "going armed" affray laws. See *Koons*, 673 F. Supp. 3d at 569 ("the government can disarm or regulate arms bearing by dangerous individuals or persons who would endanger the public if allowed to have firearms"). *Rahimi* holds that "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." Slip op. at 7. But the Court in *Rahimi* also cautioned "[e]ven when

9

a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent *beyond what was done at the founding*." *Rahimi*, slip op. at 7. (Emphasis added). That holding echoes *Bruen*'s statement that "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. *Bruen*, 597 U.S. at 26-27. Broad bans on law-abiding persons and on peaceful carry, like those imposed by Hawaii at issue here, are not defensible under this historical method. The district court did not err in so holding. *Wolford*, 686 F.Supp.3d at 1057.

Hawaii will no doubt try to make much of the *Rahimi*'s colorful statement that laws are not "trapped in amber" and that "the Second Amendment permits more than just those regulations *identical* to ones that could be found in 1791." Slip op. at 7. But that holding is indistinguishable from the same point made in *Bruen*, as the *Rahimi* Court took pains to stress. Slip op. at 8. What matters is the analogical inquiry and reasoning that the Court actually conducted in *Rahimi*, including its ruling that narrow or focused historical restrictions cannot be used to justify modern broad restrictions. As the Court explained, the same principle was applied in *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008), where the Court held that "the Second Amendment is not limited only to those arms that were in existence at the founding" but extended "'to all instruments that constitute bearable arms, even those

10

that were not [yet] in existence.'" Slip op. at 7, quoting *Heller*, 554 U.S. at 582 (brackets the Court's).

## B.    *Rahimi* Supports the Unconstitutionality of Act 52

Applying these principles to the instant case, *Rahimi* confirms that Act 52 is unconstitutional. *Rahimi* focused on history and tradition- in *Rahimi* it was a tradition of temporarily disarming an individual after a judicial hearing. There simply is no tradition of the government designating most of the state and specifically most of the county of Maui as a 'sensitive place" and barring all forms of carry. Here, 96.4% of the publicly accessible land on Maui, where Plaintiffs live is deemed a sensitive place by the State of Hawaii.[3] 2-ER-308-318. No historical law infringed on the Second Amendment right to this extent. Thus, even if the State had a permissible reason to regulate Plaintiffs' arms carrying, if "it does so to an extent beyond what was done at the founding" it is unconstitutional. *Rahimi,* slip op. at 7.

---

[3] During oral argument, Judge Graber asked Counsel if an island is entirely comprised of a polling place or other place which is undisputedly sensitive, what difference does it make that the area is on an island. *See Wolford v Lopez* (9th Cir. April 11, 2024 ( No. 23-16164) Oral Argument at 17:00-17:50 available at https://www.youtube.com/watch?v=0Uq3O6kR_2Q. The short answer is there is no founding era tradition that would remotely support designating an entire land mass as sensitive, thereby disarming all the inhabitants. Furthermore, sensitive places are only presumptively constitutional.  If an entire island is considered sensitive, it is likely that the presumption can be rebutted in that instance.

*Rahimi* demonstrates that early American societies typically dealt with firearms violence by removing the right to carry firearms only to those that had been judged unsafe to carry firearms. Sensitive places laws were "***exceptional circumstances*** under which one could not carry arms, such as before justices of the peace and other government officials."[4] *Bruen* at 70. (Emphasis added). Hawaii has expanded its definition of sensitive places to virtually all public places. *Bruen* holds "expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly." *Bruen* at 31. Hawaii goes even further than this by prohibiting any firearms carry in isolated areas like at remote parks and beaches.

In *Rahimi*, the Supreme Court reiterated that *Bruen* had struck down New York law because it "effectively presumed that no citizen had such a right, absent a special need" and sustained Section 922(g)(8)(C)(i) because it "does not make the same faulty presumption." Slip op. at 15. In effectively banning carry in much of Hawaii, the State makes the "same faulty presumption" only it does so by broadly designating sensitive areas to achieve the same result rejected in *Bruen*. As *Rahimi* makes clear, such broad regulation of the law-abiding can only be justified by the

---

[4] "Exceptional", according to Bartlett's Roget's Thesaurus, First Edition, 1996, describes "exceptional" as "special, one of a kind, unique, *sui generis,…*".

same sort of broad restrictions imposed at the founding. Hawaii has pointed to none because none exists.

The surety and affray laws justified Section 922(g)(8)(C)(i) because those laws were narrowly focused and applied only to dangerous people, the very type of person subject to disqualification under Section 922(g)((C)(i) and thus satisfied the "how and why" test articulated in *Bruen* and applied in *Rahimi*. Hawaii's restrictions are not even remotely justified under these principles. For example, to justify its ban on carry in restaurants that serve alcohol, the State primarily relies on militia law and laws which prohibited carrying firearms while intoxicated. *See* Opening Brief at 27-30. *Rahimi* holds that "the government must establish that, in at least some of its applications, the challenged law 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation." Slip op at 2, quoting *Bruen*, 597 U.S. at 29. Disarming all non-drinking restaurant patrons cannot be justified by laws that disarmed the intoxicated. At the Founding, sober people in colonial taverns were not disarmed by such laws.

Similarly, Hawaii relies on laws concerning *urban* parks from a *small* selection of cities in the 19th Century to totally ban carry for self-defense in parks State-wide, *including* in rural parks where hunting is allowed. *See* 2-ER-0377. While hunting is certainly among the interests protected by the Second Amendment, the right of self-defense is "*the central component* of the right itself." *Heller*, 597 U.S.

13

at 599. (Emphasis the Court's). There is no historical tradition that remotely supports allowing the possession of arms for hunting but banning such arms for self-defense Nor has Hawaii produced any evidence that carry in parks or similar areas was broadly banned at the founding or even much later. *Koons*, 673 F.Supp.3d at 637-42.

Hawaii justifies its ban on carry in banks by relying on what it claims are restrictions on carry in fairs and marketplaces. But at the founding these regulations were limited to affrays and did not ban peaceful carry and thus are not analogous under *Rahimi*. See *Koons*, 673 F.Supp.3d at 564-67. As *Rahimi* holds, affray laws are concerned with dangerous individuals who carry "to the Terror of the People." Slip op. at 12. Such laws cannot support broad prohibitions on the law-abiding. None of those laws on which the State relies were established at the time of the founding, much less embody any common law prohibition in existence at the founding. In contrast, the surety and affray laws on which the Court relied in *Rahimi* were rooted in the common law and codified in founding era statutes in "at least four States— Massachusetts, New Hampshire, North Carolina, and Virginia—[which] expressly codified prohibitions on going armed." Slip op. at 13. Nothing in *Rahimi* supports Hawaii's use of territorial and municipal laws or Reconstruction era and later laws.

## III.   CONCLUSION

The district court's preliminary injunction should be affirmed.

14

Respectfully submitted,

*/s/ Kevin G. O'Grady*

KEVIN GERARD O'GRADY
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
Telephone: (808) 521-3367
Kevin@KevinOGradyLaw.Com

*/s/ Alan A. Beck*

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Alan.alexander.beck@gmail.com

## **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it complies with the page limit of 15 pages given by this Court's June 21, 2024 order

2.     This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: July 12, 2024.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, I filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck