No. 23-16164

# In the United States Court of Appeals
## for the Ninth Circuit

---

JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI;
HAWAII FIREARMS COALITION,
*Plaintiffs-Appellees*,

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of
the State of Hawaii,
*Defendant-Appellant*.

**On Appeal from the United States District Court For the District of Hawaii
Civ. No. 1:23-cv-00265—LEK-WRP, Hon. Leslie E. Kobayashi**

---

## MOTION TO STAY MANDATE

---

KEVIN GERARD O'GRADY
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 968123
(808) 521-3367
Kevin@KevinOGradyLaw.Com

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
(619) 905-9105
Alan.alexander.beck@gmail.com

*Counsel for Plaintiffs-Appellees*

**Introduction**

Under Rule 41(d) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 41-1, Plaintiffs respectfully move this Court to stay issuance of its mandate pending the filing and disposition of a timely petition for a writ of certiorari. A stay is warranted because Plaintiffs' certiorari petition will present substantial questions arising from the panel's decision, and good cause exists for a stay. *See* Fed. R. App. P. 41(d)(2)(A). The petition will present substantial constitutional issues because there is a conflict between this Court's precedent and the Second Circuit's precedent on the issue which will be appealed. Fed. R. App. P. 35. There is also good cause for a stay because if the mandate is issued and the trial court's preliminary injunction is lifted, thousands of Hawaiians will see the exercise of their Second Amendment rights denied while this case proceeds at the Supreme Court. Preserving the status quo while the Supreme Court considers the weighty constitutional issues of this case will best serve the interests of orderly judicial review. Counsel for Plaintiffs have conferred with counsel for the State. The State opposes this motion.

**BACKGROUND**

In 2023, the Hawaii legislature enacted Act 52, specifically to counter *Bruen*. *See Wolford v. Lopez*, No. 23-16164 (9th Cir. 2025) at *4 (Van Dyke, Dissenting). The statute generally criminally prohibits a person with a carry permit from bringing

1

a handgun onto fifteen broad and expansive types of property. Haw. Rev. Stat.§ 134-9.1(a). The law also flips the default rule on all private property. Whereas the old rule allowed a person with a carry permit to bring firearms onto private property unless the owner prohibited it, the new rule generally prohibits the carry of firearms onto private property unless the owner affirmatively gives permission by "[u]nambiguous written or verbal authorization" or by the "posting of clear and conspicuous signage." *Id.* § 134-9.5(b).

ACT 52 restricts the carrying of a handgun even with a valid concealed carry permit in 96.4% of the publicly accessible land in Maui County which is where the individual plaintiffs reside. 2-ER-308-318; See also *Wolford,* No. 23-16164 at *7 (Van Dyke, Dissenting). Plaintiffs are three residents of the County of Maui and an organizational plaintiff which has members who have been issued concealed carry permits in Hawaii. 5-ER-1138-1139. All individual plaintiffs possess a valid license to carry a handgun. 5-ER-1150-1151. Prior to the enactment of ACT 52, all three individual plaintiffs carried handguns at beaches, parks, restaurants that serve alcohol and on private property locations otherwise open to the public. 6-ER-13166-1327 (Declaration of Jason Wolford); 6-ER-1331-1342 (Declaration of Alison Wolford); 6-ER-1345-1355 (Declaration of Atom Kasprzycki). But for the challenged regulations, Plaintiffs would carry in all the areas at issue in this litigation. *Id.* On September 6, this Court largely upheld the challenged portions of

Act 52 including Hawaii's private property default rule i.e. H.R.S. § 134-9.5(b). This is the law which will be the focus of the petition for certiorari. *See* Doc. No. [104]

## <u>REASONS FOR GRANTING A STAY</u>

Under Federal Rule of Appellate Procedure 41, "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." Fed. R. App. P. 41(d)(1). To obtain such relief, the moving party "must show that the petition would present a substantial question and there is good cause for a stay." *Id.* This generally requires that the movant establish "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). Although a stay of the mandate pending petition to the Supreme Court is not necessarily "granted as a matter of course," *see* 9th Cir. R. 41-1, the movant "need not demonstrate that exceptional circumstances justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Indeed, the comments to Circuit Rules confirm that a stay is only denied where the petition would be "frivolous or filed merely for delay." *See* 9th Cir. R. 41-1. Applying these factors here, this Court should stay the mandate pending the filing of a petition for certiorari. If the Court disagrees, it should grant a

14-day administrative stay so that Plaintiffs may seek emergency relief from the Supreme Court.

## THIS CASE PRESENTS SUBSTANTIAL QUESTIONS THAT THE SUPREME COURT IS REASONABLY LIKELY TO TAKE

The Supreme Court is likely to grant a certiorari petition when "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter." Sup. Ct. R. 10(a). Plaintiffs will be seeking certiorari on the question of whether H.R.S. § 134-9.5(b) i.e. Hawaii's private property default rule violates the Second Amendment. As shown below, the panel opinion has created a clear conflict with the Second Circuit's opinion in *Antonyuk v. James*, No. 22-2908, 2023 WL 11963034 (2d Cir. Oct. 24, 2024) regarding this issue. This circuit split means there is "a reasonable probability that four Justices will consider the issue[s] sufficiently meritorious to grant certiorari." *Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010). And because it does so in ways that conflict with the precedents of the Supreme Court, there is more than a fair prospect that Plaintiffs will prevail.

The Panel struck down California's default rule, but sustained Hawaii's default rule on the grounds that in "California, a property owner may consent to the carrying of firearms only by 'clearly and conspicuously post[ing] a sign at the

entrance of the building or on the premises indicating that license holders are permitted to carry firearms on the property.'" *Wolford v. Lopez*, 116 F.4th 959, 973 (C.A.9 (Hawaii), 2024). "Other forms of permission, such as oral or written consent, do not suffice." *Id.* The Panel found Hawaii's default rule constitutional because Hawaii's law permitted a private property owner to consent to carry either through posting a sign, verbally or in writing. *See* H.R.S. § 134-9.5. *See also Wolford*, 116 F.4th at 995. The Panel did not dispute that Hawaii's law is identical to the New York law enjoined in *Antonyuk v. Chiumento,* 89 F.4th at 379, as well as by district courts in Maryland, *Kipke v. Moore,* 695 F.Supp.3d 638, 646 (D.Md. 2023), appeals pending No. 24-1799(L) (4th Cir.) (describing Maryland law as requiring either a posted sign or express consent to carry a firearm on private property), and in New Jersey, *Koons v. Platkin,* 673 F.Supp.3d 515, 607 (D.N.J., 2023), appeal pending No. 23-1900 (3d Cir.) (same). Until now, no court has sustained such a default rule.

The Panel acknowledged "that our primary holding—that a national tradition likely exists of prohibiting the carrying of firearms on private property without the owner's oral or written consent—differs from the decisions by the Second Circuit and some district courts." *Wolford*, 116 F.4th at 996. The panel was referring to the Second Circuit's opinion in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), vacated and remanded, 144 S.Ct. 2709 (2024). The Supreme Court vacated *Antonyuk* following *Rahimi. See Antonyuk v. James*,144 S. Ct. 2709 (2024). The Second

Circuit has since issued a new opinion, in which it reached the same conclusions as its original opinion. *See Antonyuk v. James*, No. 22-2908, 2023 WL 11963034 (2d Cir. Oct. 24, 2024). Thus, the panel's acknowledgment that its opinion has created a conflict with the Second Circuit remains true. The Second Circuit also acknowledged this conflict in its most recent *Antonyuk* opinion and found that "we are therefore unable to agree with the Ninth Circuit in *Wolford*, 116 F.4th at 995, that any of these statutes "applied to all private property," regardless of whether the property was open to the public, so as to be a sufficient analog for the provision at issue here." *Antonyuk*, 120 F.4th at 1047. Pursuant to this acknowledged circuit conflict, it is reasonably likely that the Supreme Court will grant certiorari. Furthermore, it is fairly probable that this Court's decision will be reversed because it conflicts with Supreme Court precedent.

## It Is Fairly Probable That This Court's Decision Will Be Reversed Because it Conflicts With Supreme Court Precedent

*New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022) holds that "the Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Id* at 33. Private property open to the public are part of that "public" space. As *Bruen* held, "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally

6

by the New York City Police Department." 597 U.S. at 31. *Bruen* found that such a rule swept "far too broadly" because it "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." Hawaii's rule effectively does the same thing and is unconstitutional for the same reasons.

At the founding, "private property owners" had the sole right to "exclude others from their property" and thus carry on private property was "generally permitted absent the owner's prohibition." *Christian v. Nigrelli,* 642 F.Supp.3d 393, 407 (W.D.N.Y. 2022) *affirmed in relevant part*, *Antonyuk*, 89 F.4th. at 386. That conclusion flows from the law of trespass, specifically "the well-developed concept of implied license." *Koons,* 673 F.Supp.3d at 610. Generally, the public has implied consent to enter property open to the public, "unless such consent is conditioned or subsequently revoked by the property owner." *Id.* And because "[t]he right to armed self-defense follows the individual everywhere he or she lawfully goes" in public, carrying on property open to the public is permitted unless the owner "withdraw[s] consent[.]" *Id.* at 613.

To be sure, there is a historical tradition of allowing private-property owners to decide whether to exclude firearms and people from their property. *See Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2072 (2021). But that power resides with the *property owner*, not the government. There is no comparable historical—or even

7

modern-day—tradition of allowing the government to create a no-carry default for private property open to the public. *Antonyuk*, 89 F.4th. at 386 ("The State has produced no evidence that those terms were in fact otherwise understood to apply to private property open to the public or that the statutes were in practice applied to private property open to the public."). "The Nation's historical tradition is that individuals may carry arms on private property unless the property owner chooses otherwise." *Christian*, 642 F.Supp.3d at 407 n.19. The "general right to public carry" cannot be restricted absent "*exceptional circumstances*" and Hawaii's default rule is not such an "exceptional circumstance." *Bruen*, 597 U.S. at 38 (emphasis added).

Default rules are inherently sticky. *See generally* Ian Ayres and Robert Gertner, *Filling Gaps in Incomplete Contracts: An Economic Theory of Default Rules*, 99 Yale L J 87 (1989). The default rule was designed to make carrying firearms very inconvenient, so that fewer people will carry them. Ian Ayres & Spurthi Jonnalagadda, *Guests with Guns: Public Support for "No Carry" Defaults on Private Land*, 48 J.L. Med. & Ethics 183, 184 (2020). Hawaii adopted its default rule knowing that it would be an effective means of discouraging lawful carry. *See* Joseph Blocher & Darrell A. H. Miller, *What is Gun Control? Direct Burdens Incidental Burdens, and the Boundaries of the Second Amendment*, 83 University of Chicago Law Review 295, 316 (2016) ("Though both of these rules give business owners the final say over whether to permit guns, the former regime would almost

certainly result in less gun carrying overall due to the inevitable stickiness of default rules."). That purpose, which is to discourage the exercise of a constitutional right, is illegitimate. *See, e.g., Espinoza v. Montana Department of Revenue*, 591 U.S. 464, 478 (2020).

The record bears out this practical reality. In the trial court, Plaintiffs submitted the declarations of business owners who would be willing to let people carry firearms in their stores but have not put up a sign. 2-ER-0319-0360 (Declarations of Maui Business Owners). As the Panel noted, "many property owners will not post signs of any sort or give specialized permission, regardless of the default rule" and that reality was "the impetus" for Hawaii's rule. *Wolford*, 116 F.4th at 993. The net result of §134-9.5 is that Hawaiians, including Plaintiffs, no longer may carry firearms for lawful self-defense in tens of thousands of private property locations in Hawaii. That result is impossible to square with the "general right" to carry in public recognized in *Bruen*. Thus, it is fairly probable that the Supreme Court will rule in Plaintiffs' favor.

## THERE IS GOOD CAUSE TO STAY THE MANDATE

Good cause plainly supports staying the mandate while Plaintiffs pursue Supreme Court review. Plaintiffs and the thousands of citizens who have been issued concealed carry permits since *Bruen* have been able to lawfully carry handguns for self-defense since the issuance of the trial court's preliminary

injunction. Upending the preliminary injunction now—before the Supreme Court has had a chance to consider the important constitutional questions this case presents—will do nothing but deny thousands of Hawaiians their Second Amendment rights while this case proceeds. This unquestionably constitutes an irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

And it is more than good cause to stay the mandate. On the other hand, no countervailing interest warrants changing the status quo at this stage. For the state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). To be sure, the State may have a public safety interest in preventing "gun violence." But enforcement of the challenged laws does not serve those interests in any meaningful (or appropriately tailored) way— particularly because the State can readily further such goals by enforcing existing laws.

10

## **CONCLUSION**

For these reasons, the Court should grant Plaintiffs' motion for a stay of the mandate pending the filing and disposition of Plaintiffs' petition for writ of certiorari. Alternatively, if the Court is unwilling to stay the mandate pending the filing of Plaintiffs' certiorari petition, Plaintiffs' asks the Court to grant a 14-day administrative stay so that Plaintiffs' may seek emergency relief from the Supreme Court.

Respectfully submitted,


*/s/ Kevin G. O'Grady*                    */s/ Alan A. Beck*

KEVIN GERARD O'GRADY              ALAN ALEXANDER BECK
Law Office of Kevin O'Grady, LLC      Attorney at Law
1164 Bishop Street, Suite 1605           2692 Harcourt Drive
Honolulu, Hawaii 96813                     San Diego, California 92123
Telephone: (808) 521-3367                 Telephone: (619) 905-9105
Kevin@KevinOGradyLaw.Com            Alan.alexander.beck@gmail.com


*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2025, an electronic PDF of Appellees'

MOTION TO STAY THE MANDATE was uploaded to the Court's CM/ECF

system, which will automatically generate and send by electronic mail a Notice of

Docket Activity to all registered attorneys participating in the case. Such notice

constitutes service on those registered attorneys.

Date:  January 15, 2025.


/s/ Alan A. Beck
ALAN ALEXANDER BECK
Attorney at Law